1

1                    IN THE UNITED STATES DISTRICT COURT

2                  FOR THE SOUTHERN DISTRICT OF TEXAS

3                           GALVESTON DIVISION

4   TRAVIS JAMES MULLIS                        3:13-cv-00121

5
    VS.                                        February 12, 2016
6                                              Galveston, Texas
                                               11:34:32 a.m.
7   WILLIAM STEPHENS,
    Director, Texas Department of
8   Criminal Justice, Correctional
    Institutional Division, et al
9

10
                          TELEPHONE CONFERENCE
11
             BEFORE THE HONORABLE GEORGE C. HANKS, JR.
12
                     UNITED STATES DISTRICT COURT
13
    APPEARANCES:
14
    Petitioner                     Travis James Mullis
15                                 (Telephonically)

16  For the Petitioner             Shawn Nolan
                                   Federal Community Defender Office
17                                 Eastern District of Pennsylvania
                                   Curtis Center, Suite 545 W
18                                 601 Walnut Street
                                   Philadelphia, Pennsylvania 19106
19                                 (Telephonically)

20  For the Respondent             Matthew Dennis Ottoway
                                   Office of the Attorney General
21                                 Postconviction Litigation
                                        Division
22                                 P. O. Box 12548
                                   Austin, Texas 78711
23                                 (Telephonically)

24  Case Manager                   Dana Perez

25
    Proceedings from official electronic sound recording;
    transcript produced by court approved transcriber.

DIGITAL SCROLL TRANSCRIPTION                      281.382.9862

2

```
 1   Electronic Recording Operator     Donna Wilkerson
                                       U. S. District Clerk's
 2                                        Office
                                       601 Rosenberg
 3                                     Galveston, Texas 77550

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    THE COURT:  The next case on the Court's docket is

2    Cause No. 3:13-cv-121, Mr. Mullis versus Stephens, et al.

3    Can all counsel on the line just introduce

4    themselves to the Court and state the parties that they

5    represent, starting with the Plaintiff?

6    MR. NOLAN:  Good morning, Your Honor, this is Shawn

7    Nolan with the Federal Community Defender Office, in

8    Philadelphia, Capital Habeas Unit.  I am the appointed co-

9    counsel to Pete Walker, and we're working on the Petition.

10    THE COURT:  Okay.

11    MR. OTTOWAY:  Your Honor, this is Matthew Ottoway

12    with the Texas Attorney General's Office.  I represent the

13    Director of TDCJ, CID, William Stephens, and I am on – her on

14    behalf of the Respondent.

15    THE COURT:  Okay.

16    And Mr. Mullis, are you also on the line, sir?

17    MR. MULLIS:  Yes, Your Honor.

18    THE COURT:  Okay.  And if you could just introduce

19    yourself for the record, sir, and just state your name.

20    MR. MULLIS:  Travis James Mullis, Petitioner.

21    THE COURT:  Okay.

22    Well, welcome, everyone to this hearing this

23    morning.  The first thing that I understand that we need to

24    address is whether or not the Petitioner in this case should

25    be allowed to move forward and waive this habeas review and

4

1    representation by counsel in this case.

2                    I know the case is currently stayed.  In order

3    for me to proceed, the Court intends to remove the stay for

4    this limited purpose.

5                    Does anyone have any objection to that?

6             MR. NOLAN:  No, Your Honor.

7             MR. OTTOWAY:  The Respondent has no objection, Your

8    Honor.

9             THE COURT:  Okay.  Great.

10                   Well, the stay is removed for purposes of

11   evaluating the Petitioner's request to waive habeas review and

12   representation by counsel.

13                   Pursuant to the Supreme Court holding in *Rees v.*

14   *Peyton*, 384 U.S. 312, 314, the Court has a standard for

15   assessing the competency of the death row inmate to further

16   abandon appeals to a sentence.  And under the standard, the

17   Court needs to determine whether or not the Petitioner has the

18   capacity to appreciate his position and make a rational choice

19   with respect to continuing or abandoning further litigation,

20   or on the other hand, whether he's suffering from mental

21   disease, disorder or defect which will substantially affect

22   his capacity in the premises.

23                   So, in order to do that, Mr. Mullis, I just need

24   to ask you a few questions, but before I do that I'd like to

25   place you under oath.

1                        Is that okay?

2                MR. MULLIS:  Yes, Your Honor.

3                THE COURT:  Okay.  If you could, sir, just raise your

4    right hand and be sworn.

5          (Petitioner sworn by the Court.)

6                MR. MULLIS:  Yes, Your Honor.

7                THE COURT:  Okay.

8                               EXAMINATION

9    BY THE COURT:

10   Q   Mr. Mullis, do you wish to continue –

11               MR. NOLAN:  Your Honor, I'm sorry.  May I – I'm very

12   sorry to interrupt you, but if I could interject this – this

13   is Mr. Nolan from Philadelphia on behalf of Mr. Mullis.

14               It would be our position that the Court should

15   hold a hearing in open court where Mr. Mullis would be

16   counseled face to face with the Court.  We believe that

17   comports with the Fifth Circuit law under *Lopez* and *Mata* and

18   that the Court should have a pre-hearing which we could

19   present expert testimony and other evidence in relation to Mr.

20   Mullis' competency to – and voluntarily dismiss.

21               THE COURT:  Oh, yes, sir.  I completely agree with

22   you.  What I'm going to do this morning is ask some

23   preliminary questions, and then based on those preliminary

24   questions determine – and ask some questions of Mr. Mullis,

25   you and the Respondent, and then based on those questions,

1    determine whether or not to appoint a psychologist to evaluate

2    Mr. Mullis.  And then, once that is done and I receive that

3    report, then have an in person hearing to confirm what the

4    psychologist said.

5                    So, I completely agree with you.  I'm just

6    conducting a preliminary investigation with respect to the

7    nature of the Petitioner's request.

8                    MR. NOLAN:  Understood, Your Honor.

9                    Thank you.

10                   THE COURT:  Okay.  But not a problem.

11                   Thank you for raising that.

12   BY THE COURT:

13   Q   Mr. Mullis, sir, do you wish to continue in your desire to

14   dismiss your federal habeas petition?

15   A   Yes, Your Honor.

16   Q   And can you tell me why you wish to dismiss your habeas

17   petition?

18   A   Well, it really starts before I even turned myself in for

19   this crime to the police.  I made a conscience decision to

20   walk before it or even announce what was being sought before

21   the magnet that when I turned myself into the police, not

22   knowing what my charge was at that time, whether it was first

23   degree capital or even not knowing whether the crime had even

24   been discovered, that I would accept my punishment for the

25   crime, whatever the jury decided after a trial.


DIGITAL SCROLL TRANSCRIPTION                         281.382.9862

 1            Throughout the entire process, I made it clear

 2   to trial counsel that I intended to do so.  And when it was

 3   brought to my attention that the charge was capital and that

 4   death was a possibility, I had made it clear that I – I

 5   actually anticipated that the court would probably – or that

 6   the State may seek death, and if that was the case then I

 7   would accept it.  And the State was – or the jury was to rule

 8   in a way that would provide the right of parole, well, I would

 9   accept that that as well.  And that really I had that in mind,

10   my family, throughout the process.

11   Q   Okay.

12   A   So, once the jury – we went through the trial and the jury

13   made that ruling, and the judge ultimately confirmed that the

14   jury had expressed the issues in a way that provided for the

15   death penalty I was completely accepting.  I considered it and

16   started to go through the process almost immediately of

17   terminating my state representation counsel for the purposes

18   of waiving it.

19   Q   Okay.

20            Has anyone pressured you to dismiss your habeas

21   petition in this matter?

22   A   No, Your Honor.  In fact, it's actually been to the

23   contrary; I've been pressured to continue forward.

24   Q   Okay.  And do you under- -- do you understand the

25   consequences of dismissing your federal petition in this case?

1  A   Yes, sir.  I do.

2  Q   And what is your under-

3  A   The –

4  Q   I'm sorry.

5  A   I'm sorry.  Should this – I hate to interrupt – should

6  this Court ultimately gain the confident you got away with, in

7  effect that would – that would obviously terminate the appeal;

8  it would terminate Mr. Nolan and Mr. Walker's representation

9  as my counsel.

10          At that point – and the timeline is really

11  dependent on the State's – the Attorney General's decision on

12  how quickly to proceed.  As early as the same date as that

13  decision comes down or the same dates, weeks, months,

14  depending on their position, they can ultimately file with the

15  state court to set an execution date because the appeal is no

16  longer – is no longer going forward.

17          And at which point, I believe from Mr. Walker

18  either provides more and especially current law provides it

19  from the issuance of a death warrant they cannot set an

20  execution date any earlier than at least ninety days from the

21  initial hearing, which would allow me a ninety-day waiting

22  period from the time of the death warrant being issued to the

23  actual execution date or at a minimum.

24          And of course, through the whole process of the

25  things that would happen to me within the TDC system once that

1  occurs.

2  Q    Okay.

3  A    Ultimately leading to my eventual execution on a date that

4  the Court set.

5  Q    Okay.  So, you understand, sir, that after dismissing the

6  federal petition the State will likely seek an execution date;

7  you understand that?

8  A    Yes, sir.  I fully expect that they would do that as

9  quickly and promptly as that is legally allowed.

10  Q    Okay.  And do you understand that after – you know, if the

11  Court, after considering all the evidence decides to dismiss

12  your petition, you will not likely be able to seek federal

13  relief again?

14  A    Yes, sir.  And I had no – I would have no intent to do so.

15  Q    Okay.  And do you think you might change your mind after

16  the Court has dismissed your Petition?

17  A    No, Your Honor, I do not.

18  Q    Okay.  And do you understand that the dismissal will

19  probably foreclose federal review of all claims, including the

20  DNA issue your attorneys are currently pursuing?

21  A    Yes, Your Honor.  And that is – that is my full

22  understanding, and I actually when the DNA issue was raised by

23  Mr. Nolan prior to my filing I made it clear that I had no

24  desire to investigate it, much less argue it.

25  Q    Okay.  Now, I just want to ask you a few questions about

10

1   your incarceration with TDCJ.

2                   Have you been treated for mental illness while

3   in TDCJ custody?

4   A   No, sir.  I have not.

5   Q   Okay.  And are you currently on any medication?

6   A   No, sir.

7   Q   And do you have suicidal thoughts or desire to kill

8   yourself?

9   A   No, sir.

10  Q   Okay.  And based on the things you've told me, do you wish

11  to continue in your desire to terminate your federal

12  representation in this case?

13  A   Yes, Your Honor.

14  Q   Okay.  It seems like from our discussion you have a pretty

15  good understanding of what's going to happen, you know, should

16  the Court dismiss your Petition.

17                  Let me ask you a little bit about your attorneys

18  in this matter.

19                  Do you understand what your attorney's job –

20  your federal attorney's job is in this case?

21  A   Yes, I do.  Their job is, for all intents and purposes, is

22  to represent me on appeal and ultimately, if possible, to seek

23  – eventually getting rid of my death sentence, if they can

24  acquire that or possibly getting, whether it's through a new

25  conscience stay, a new trial or otherwise.

1  Q   Okay.  And do you understand that they're trying to

2  represent your interest in this case?

3  A   Yes, Your Honor, I do, although I would argue that at

4  least under state law, that I have the legal authority to

5  instruct them to proceed otherwise --

6  Q   Okay.

7  A   -- in, you know, a different direction.

8  Q   Okay.

9  A   Well, I don't know that the state law would apply in

10 federal court.

11 Q   Okay.  And do you understand that after dismissing the

12 federal attorneys you will then be in charge of your own legal

13 proceedings?

14 A   Yes, Your Honor.

15 Q   Okay.  And I know that you're pretty familiar, Mr. Mullis,

16 with the law, but do you feel that you're familiar enough with

17 the law to represent yourself should the Court decide to

18 dismiss your federal attorneys?

19 A   Yes, Your Honor.

20 Q   Okay.

21            Mr. Nolan, counsel for Mr. Mullis, I just have a

22 couple of questions to ask you before I proceed.

23            MR. NOLAN:  Sure, Your Honor.  Yes, sir.

24            THE COURT:  THE Court has stayed this action for the

25 exhaustion of the state court remedies.  Can you tell me the

1   status of the state court case?

2         MR. NOLAN:  Yes, Your Honor.  We agreed and informed

3   the Court in our administration filing with this Court that we

4   had retained a new expert, a Mr. Libby (phonetic), presented

5   with the DNA, and we had provided him with all of the

6   information and we were able to get from the state lab – we

7   were just recently told there is electronic data from the

8   state lab that they will not provide us without court order.

9         So, we are praying with the Advocate's court

10  for a court order to get those things and then these

11  proceedings came up, so we haven't done anything further in

12  that regard.  We have not yet filed a petition in state court.

13        THE COURT:  Okay.

14        If no state pleading has yet been filed, I

15  understand, couldn't you really get a state action if the

16  Court found that Mr. Mullis was not competent?

17        MR. NOLAN:  If the Court found he was not competent –

18  yes.

19        THE COURT:  Okay.

20        MR. NOLAN:  We could.

21        THE COURT:  Okay.

22        And without divulging any protected information,

23  sir, how is your relationship with Mr. Mullis?

24        MR. NOLAN:  We spend a time a lot of time with Mr.

25  Mullis, Your Honor.  I would say that our relationship is

1    good.  We have a number of people on our team here who visit

2    him regularly.

3                THE COURT:  Okay.

4                MR. NOLAN:  And so, I would say that our relationship

5    is good.

6                THE COURT:  Okay.

7                And Mr. Mullis, can I just ask you the same

8    question?  I know I've asked your attorneys.

9                How is your relationship – how do you feel your

10   relationship is with your counsel in this case?

11               MR. MULLIS:  I would think it's perfectly fine, with

12   the exception of the fact obviously we have a fundamental

13   disagreement on my position, and –

14               THE COURT:  Okay.

15               MR. MULLIS:  -- they're obviously not happy with

16   that.

17               THE COURT:  Okay.  I understand, sir.  I understand.

18               Let me switch gears and ask questions of the

19   Office of the Attorney General in this matter.

20               Counsel for the Respondent, does the Office of

21   the Attorney General take any position on Mr. Mullis' motion

22   to withdraw his federal petition?

23               MR. OTTOWAY:  I think of it as insuring that there's

24   a moderate hearing.  I don't think I would be taking a

25   position on it; it's got the appropriate procedures are

1  engaged here.

2        THE COURT:  Okay.

3             As the Court proceeds with its competency

4  inquiry in this case, will your offices agree to allow access

5  to Mr. Mullis for a competency evaluation?

6        MR. OTTOWAY:  Oh, I'm sorry.

7        THE COURT:  It's okay.

8        MR. OTTOWAY:  Okay.  I – so long as it comports with

9  TDCJ's general policy, I don't believe that that there's any

10  impediment to having, you know, a psychologist go in there.

11        THE COURT:  Okay.  Can you just identify yourself for

12  the record?  I'm sorry.  I just said, counsel for Respondent.

13        MR. OTTOWAY:  I apologize.  Matthew Ottoway for the

14  Respondent.

15        THE COURT:  Okay.

16             And with – will you coordinate with TDCJ for an

17  in-court hearing to assess Mr. Mullis' demeanor, if the Court

18  should order it?

19        MR. OTTOWAY:  Absolutely, Your Honor.

20        THE COURT:  Okay.  Based on the information that was

21  provided to me from the parties questioned by the Court, I

22  feel that the Court needs to proceed with a further evaluation

23  of Mr. Mullis' competency and a further analysis of his

24  request to dismiss his federal habeas petition.

25             What I want to do is appoint a psychologist to

1  examine Mr. Mullis and, preferably, I would like to have that

2  psychologist agreed by all the parties.

3          Does anyone have any suggestions as to who would

4  be appropriate, or if you don't have a suggestion now, would

5  you like time to try to come up with someone for the Court?

6          MR. NOLAN:  Your Honor, if I could – this is Shawn

7  Nolan.  I could make a suggestion.

8          This case is a little different than the typical

9  case where CJA counsel is appointed under 3599 and the Court

10  has to provide funds for experts and things like that.

11          Because we are Federal Defender organization, we

12  have been able to retain our own experts in this regard.  In

13  fact, one of those experts is Dr. Dudley.  Dr. Dudley and I

14  have been involved in this case from the beginning; he was

15  retained at trial.

16          Since we were in the case, we retained him

17  again.  He has examined Mr. Mullis several times.  He was

18  examined approximately six months ago, and we are – we – I

19  requested a report from him once these proceedings got started

20  over the last couple of weeks.  So, we're waiting for a report

21  from Dr. Dudley.

22          But what we could do is get that report, provide

23  that to the Court, and the state court determine if they would

24  like to hire their own expert, rather than having to meet for

25  a court-appointed expert.

1          THE COURT:  Okay.

2          MR. OTTOWAY:  Your Honor, I would object to that

3    particular process.  I believe that *Mata* envisions an

4    independent court appointed expert that efforts to the Court

5    provides a report to both parties and that a hearing is to be

6    deemed after that.

7          THE COURT:  I agree.

8          MR. NOLAN:  Your Honor, Shawn Nolan for Petitioner,

9    Your Honor.

10         In the process, I would argue that my client

11   just does not suggest or we would let it fall rather on very,

12   very timely, because I would proceed it thorough the Court for

13   numerous experts and plead prior multiple, for each party to,

14   I think, provide the Petitioner and to present their

15   applications to the Court, as we've done it now.

16         We would like to – hold up here.  So, I think we

17   would be calling for the action of the state to restore, I

18   believe, either the defense experts or either for the

19   Petitioner's.  They work for the state funds, just to be

20   careful.

21         THE COURT:  Okay.

22         MR. OTTOWAY:  Well, I would point out to the Court –

23   this is the Respondent again – that the most recent published

24   opinion out of the Fifth Circuit endorsed a proceeding out of

25   the Southern District – this is *Lopez v. Stephens* – where

1   there was a single expert appointed by the Court, a colloquy

2   between the Court and the Petitioner, and that was sufficient

3   for purposes of determining competency, Your Honor.

4          MR. NOLAN:  I would bring back that what happened in

5   that case, Your Honor, however, the difference so is that was

6   CJA counsel.  So, the court would have had to approve an

7   expert in that case.  And we are in a different situation;

8   there has already been experts in this case, who can educate

9   the Court; the Court with regards to Mr. Mullis' status.

10         THE COURT:  Okay.

11         MR. MULLIS:  Your Honor, may I – may I speak, Your

12  Honor?

13         THE COURT:  Oh, yes, sir.

14         MR. MULLIS:  All right.  First of all, the experts

15  previously, with the exception of the visit by Mr. Dudley,

16  Dr. Dudley, that Mr. Nolan referred to six months ago, all of

17  those experts were brought in early on in this case, mostly

18  before the petition was filed for the purposes of evaluating

19  my competency at a particular moment in 2011, that the waiver

20  of habeas counsel – or the waiver of – the decision allowing

21  me to proceed, blocking habeas counsel from filing, would

22  occur.  They were not evaluating my competency at this moment

23  and time for filing, nor was he evaluating – Mr. Dudley did it

24  six months ago that was also prior to filing.

25              Competency is based on competency at the time of

1   the waiver, not seen the day of.  In a modest decision, Mr.

2   Mata, did the decision on waiving and his ruling on competence

3   waivers back and forth.  There were a period of years before

4   we got the model precedence.  So, it really would not be

5   necessary rather than a competency several years ago.

6           As well, when Dr. Dudley came to speak to me six

7   months ago, Dr. Dudley and I sat here in a contact visit in

8   TDC, and Dr. Dudley expressed to me, specifically, as did

9   counsel before he even came up here, that he was coming in a

10  personal capacity to speak with me to check on my well-being.

11  And he, Dr. Dudley, himself stated that he was not there in a

12  professional capacity to evaluate me for anything.

13          THE COURT:  Okay.

14          MR. MULLIS:  Or that was my understanding on that

15  last visit from Dr. Dudley it was not meant to be in a

16  professional capacity.

17          So, I would argue – I'm sorry – I would argue

18  they made the report he may submit based on that with it being

19  a violation of my confidence of our discussion.  Because he

20  wasn't there in a professional capacity, as well as the fact

21  that he's making claims by the bias of counsel, given their

22  disagreement with my decision.

23          THE COURT:  Okay.

24          Counsel, I've heard arguments from all the

25  parties, and I understand the issue.  I think that given the

DIGITAL SCROLL TRANSCRIPTION                           281.382.9862

1   weight of the decisions that Mr. Mullis is making here, as

2   well as the Court's responsibilities, under *Rees v. Peyton* and

3   *Mata v. Johnson*, I believe that a court appointed psychologist

4   is necessary, so –

5               I understand the parties' arguments.

6   Respectfully, I'm not going to choose anyone that's already

7   evaluated Mr. Mullis in the past.  I want someone to do it

8   currently, and I want it to be someone who's appointed by the

9   Court.

10              So, I will give the parties, I guess, until next

11  Friday.  I believe that's the 19th to provide me with names of

12  psychologists that you believe – names and CVs of

13  psychologists that you believe would be appropriate as a court

14  appointed expert in this matter.

15              If you could agree on someone, that would be

16  great, but it sounds like you're probably are not going to be

17  able to do that.

18              So, if you can't agree, then submit names to me

19  and then the Court will decide.  And then –

20          MR. OTTOWAY:  Your Honor, Matthew Ottoway for the

21  Respondent.  Do you have a numerical limitation on how many

22  experts you'd like each side to provide the Court if we do not

23  come to an agreement?

24          THE COURT:  Let's say, three from each side.

25          MR. NOLAN:  And, Your Honor – this is Mr. Nolan –

1  just to be clear, psychologists and not psychiatrists?

2          THE COURT:  Right, psychologists.

3          MR. NOLAN:  Okay.

4          THE COURT:  Yes, sir, psychologists.

5              So, if you could do that by close of business,

6  which is 5:00 p.m. next Friday.  At that time, the Court will

7  pick or decide on a psychologist and then order the evaluation

8  to proceed, and then, once I enter that order then I'll decide

9  when our next hearing on this matter should be.

10              And basically, I need to find out who it's going

11  to be and then how long it's going to take them to perform the

12  evaluation, look at the results and then at that point in time

13  decide whether to proceed with this matter with an in person

14  hearing as required by the Fifth Circuit and the Supreme

15  Court.

16              So, is there anything else, counsel, that we

17  need to address at this hearing, this preliminary hearing this

18  morning?

19          MR. NOLAN:  Your Honor – this is Mr. Nolan – just so

20  I'm clear about what method.  Should we be filing that as a

21  motion to the Court by next Friday, but it just –

22          THE COURT:  Yeah, that would be perfect, yes, sir.

23          MR. NOLAN:  Also and perhaps we'll file a quick

24  motion that must be agreed to by Mr. Ottoway in terms of some

25  of the classification records; the TDCJ classification records

1   we have requested those and have been denied some records

2   that, you know, we feel normally routine.  And so, maybe the

3   Court could order that we be provided with those records as

4   well.

5          THE COURT:  Okay.

6          MR. OTTOWAY:  Your Honor, Respondent, Matthew

7   Ottoway, I don't think we need an order on that.  I will

8   obtain all TDCJ records that we typically obtain and needed

9   medical records by the state, Your Honor, that sort of thing,

10  and I will provide an exact duplicate to opposing counsel.

11         THE COURT:  Okay.

12         MR. NOLAN:  Your Honor, I just want to – Mr. Nolan –

13  just as to where we are as to what's been provided by them I

14  think we can work that out down the line.  But with our

15  representative it would be a full time job; it would be such a

16  tough job that we would object to the state and sort of

17  provide our records to the experts in this case.

18         THE COURT:  Okay.  So, it's –

19         MR. OTTOWAY:  Your Honor, I think – this is

20  Respondent again – normally, when we got an independent court

21  expert both parties are free to submit whatever records that

22  they have – seem are relevant to the experts, then verbal

23  consider them all.

24         THE COURT:  Right.

25         MR. NOLAN:  Okay.

1              THE COURT:  So, it seems to me that this is something

2   we can resolve once the expert has been selected, but also it

3   sounds like the Respondent is going to get you the documents

4   you need.

5              And if what you need, Mr. Nolan, isn't in those

6   records, then you will be free to submit whatever

7   documentation you believe that the expert should be reviewing.

8              MR. NOLAN:  That's great.  Thank you, Your Honor.

9              THE COURT:  So, is there anything else, counsel?

10             Okay.

11             MR. NOLAN:  No, not at this moment.

12             MR. OTTOWAY:  With the Respondent, nothing else, Your

13  Honor.

14             THE COURT:  Okay.  Counsel, thank you all for being

15  available this afternoon.  And I look forward to speaking with

16  you again at our next hearing.

17              The hearing's adjourned.

18              Good luck, everyone,

19             MR. NOLAN:  Thank you, Your Honor.

20             MR. MULLIS:  Thank you, Your Honor.

21             MR. OTTOWAY:  Thank you, Your Honor.

22      (Proceedings adjourned at 12:00:25 p.m.)

23

24

25

1                IN THE UNITED STATES DISTRICT COURT

2                FOR THE SOUTHERN DISTRICT OF TEXAS

3                        GALVESTON DIVISION

4

5        I, Linda Griffin, court approved transcriber, certify that

6    the foregoing is a correct transcript from the official

7    electronic sound recording of the proceedings in the above-

8    entitled matter.

9

10   /s/ Linda Griffin                    March 11, 2016
     Linda Griffin                             Date
11   Digital Scroll Transcription

12

13

14

15

16

17

18

19

20

21

22

23

24

25