**76,525**

Volume II of IV

C L E R K ' S   R E C O R D

**TRIAL COURT NO. 08CR0333**

In the 122ND District Court of Galveston County, Texas. Honorable JOHN ELLISOR, Judge Presiding

THE STATE OF TEXAS

VS.

**TRAVIS JAMES MULLIS**

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUL 05 2011

Louise Pearson, Clerk

**Appealed to the Court of Criminal Appeals for Texas, in Austin, Texas.**

Attorney for Appellant:
Name: TRAVIS JAMES MULLIS
Address: POLUNSKY UNIT
   3872 FM 350 SOUTH
   LIVINGSTON, Texas  77351

TDCJ # 999563

Attorney for Appellee:
JACK ROADY, Criminal District Attorney
600 59TH STREET, SUITE 1001
Galveston, Texas 77551

Phone No.: (409) 766-2355
Bar No.: 24027780

Delivered to the Court of Criminal Appeals for Texas, in Austin, Texas, by mail on the ___1st___ day of ___July___, 2011.

*Jason E. Murray*
JASON E. MURRAY
District Clerk
Galveston County

By: *Brandi Maps*
       Deputy Clerk

FILED IN
COURT OF CRIMINAL APPEALS

JUL 05 2011

Louise Pearson, Clerk

**Court of Criminal Appeals Cause No. AP-76,525**

Filed in the Court of Criminal Appeals, Austin, Texas, on this the _____ day of _____, 2011.

**LOUISE PEARSONS, CLERK**

By: _____, Deputy Clerk

SCANNED

_____
DATE

CASE NUMBER 08CR0333

THE STATE OF TEXAS            IN THE 122nd DISTRICT COURT
VS

TRAVIS JAMES MULLIS            GALVESTON COUNTY, TEXAS

**TRANSCRIPT**

| INDEX | PAGE |
|---|---|
| Caption | 1 |
| Re-Indictment | 2 |
| Indictment | 4 |
| Docket Sheet | 6 |
| Paupers Oath | 21 |
| Statutory Magistrate's Warning | 23 |
| Request for Counsel | 24 |
| Correspondence from District Attorney's Office | 25 |
| Correspondence From Court | 26 |
| Order of Transfer | 28 |
| Application for Court Order and Order | 29 |
| Precept and Return | 32 |
| Notice of Seeking the Death Penalty | 33 |
| State's Motion for Discovery of Expert Witnesses Article 39.14(b) C.C.P. | 34 |
| Correspondence from Court | 36 |
| Pro Se Letter from Defendant dated 8-29-09 | 39 |
| Pro Se Motion to Dismiss Court- Appointed Counsel | 40 |
| Pro Se Motion for Discovery and Inspection of Evidence | 43 |
| Pro Se Defendant's Motion for Exculpatory Evidence | 47 |
| Pro Se Motion for Fair and Speedy Trial | 48 |
| Pro Se Motion for an Examining Trial | 49 |
| Motion to Suppress Illegally Obtained Evidence | 51 |
| Defendant's Motion to Suppress Confession | 55 |
| Motion for Discovery of Extraneous Offenses at Guilt and Punishment and Order | 61 |
| Motion for Witness List (Lay and Expert) and Order | 65 |
| Motion to Reveal the Deal and Order | 70 |

Defendant's Motion Pursuant to Brady v. Maryland for Production of Exculpatory Evidence.    74

Defendant's Assertion of Rights    81

Motion to Discover Arrest and conviction Records of Witnesses and Order    84

Motion for Discovery and Inspection and Order    87

Pro Se Letter from Defendant dated 10-10-08    98

Pro Se Letter from Defendant dated 9-30-08    99

Pro Se Letter from Defendant dated 10-10-08    100

Pro Se Letter from Defendant dated 11-4-08    103

Motion to Appoint Expert and to Order Examination and Testing of Case File and Lab Reports for DNA purposes    104

Order to Appoint Expert and to Order Examination and Testing of Case File and Lab Reports for DNA Purposes    107

Motion to Compel Disclosure of Medical Records and Order    107

Precept and Return    115

State's Motion for Discovery of Expert Witnesses Article 39.14(b) C.C.P. and Order .    116

Motion for Pre-Trial Hearing and Order .    118

Precept and Return    121

Notice of Seeking the Death Penalty    122

Notice of Filing business Records – Medical Records    123

Motion for Continuance and Order    134

Motion in Opposition to Defendant's Motion for Continuance    139

Pro Se Letter from Defendant dated 1-21-10    143

Pro Se Motion to Dismiss Court-Appointed Counsel    150

Order Directing Availability of Counsel .    155

Discovery Order.    157

Docket Control Order    158

Motion for Order "In Limine" to Preserve the True and Correct Meaning of "Probability" in the Future Dangerous Instruction and Order .    159

Election of Jury Punishment    167

Motion in Limine to Exclude Psychiatric or Psychological Testimony Concerning Future Dangerousness .    168

Motion in Limine and Order    199

*Volume 2*

Defendant's Motion Regarding Victim Character/Impact Testimony After Mosley V. State . 204

Motion Preclude the State from Offering Victim Impact Testimony and Order . . 209

Motion to Preserve Right to File Other Motions and Order. . . . . 217

Motion Preclude the Death Penalty as a Sentencing Option Due to Lack of Elements in the
Indictment and Order . . . . . . . . . 220

Motion to Declare the Death Penalty Unconstitutional Based on Texas' Lethal Injection Protocol
and Order . . . . . . . . . . . 226

Motion for Hearing on Admissibility of any Statement by Defendant Whether Written or Oral or
Evidence Resulting From Same . . . . . . . . 256

Motion Preclude the Offer of Evidence of Extraneous Offenses (Ring V. Arizona) and Order . 261

Motion to Prohibit Comment on the Weight to be Given or Credibility of Testimony During Trial
and Order . . . . . . . . . . . 270

Motion in Limine and Order . . . . . . . . 274

Motion in Limine . . . . . . . . . . 279

Motion to List Witnesses and Request for Criminal Histories . . . . 284

Motion to Hold That Tex. Code Crim. Proc. Art. 37.071 is Unconstitutional and Order . 287

Motion for Complete Recordation of all Pre-Trial and Trial Proceedings and Order . . 294

Defendant's Motion for a Restrictive Order Regulating News Accounts, Comments and Editorials
Concerning Certain Circumstances of the Case . . . . . . 300

Motion to Protect the Privacy and Confidentiality of all Lawyer and Client Communications. 304

Motion Preclude the Death Penalty as a Sentencing Option and Delcare Article 37.071
Unconstitutional (Jones V. United States; Apprendi V. New Jersey; and Ring V. Arizona) and Order 310

Motion Preclude the Death Penalty as a Sentencing Option (Unequal Funding) and Order . 317

Motion to Declare Article 37.071 § 2(2) of the Texas Code of Criminal Procedure Unconstitutional
on its Face and Order . . . . . . . . . 322

Motion to Declare Article 37.071 § 2(b)(1) of the Texas Code of Criminal Procedure Unconstitutional
on its Face and Order . . . . . . . . . 322

Motion for Court to Find Art. 37.071 of the Texas Code of Criminal Procedure Unconstitutional as
Applied to Travis James Mullis and Order . . . . . . 346

Motion to Hold Unconstitutional Tex. Code Crim. Proc. Art. 37.071 Sec. 2 (e) and (f) – Burden of
Proof and Order. . . . . . . . . . 354

Motion for Equal Access to Background Information on Prospective Jurors and Order . 359

Motion for Discovery, Production, and Inspection of Evidence . . . . 362

Motion for the Production of Witness Interview Notes . . . . . 376

Defendant's Motion to Discover State's Extraneous and / or Unadjudicated Acts of Misconduct to be Offered at Guilt or Punishment and Order   .   .   .   .   .   .   380

Defendant's Motion for Discovery of Experts and Order   .   .   .   .   .   384

Motion for discovery and Limiting Instructions to the Jury.   .   .   .   .   387

Defendant's Motion for Discovery and Inspection and Order   .   .   .   .   392

*Volume 3*

Motion for Discovery, Production and Rule 702/705 Hearing and Order   .   .   .   404

Motion to Find that Tex. Code Crim, Proc. Art. 37.071 Sec. 2 (2)(b)(1) is Unconstitutional("Future Danger" Issue)   .   .   .   .   .   .   .   .   .   412

Motion to Hold Unconstitutional Tex. Code Crim. Proc. Art. 37.071 Sec. 2(e) and (f) – Failure to Require Mitigation be Considered   .   .   .   .   .   .   .   425

Motion to Declare Texas Death Penalty Statute to be Unconstitutional   .   .   .   429

Motion Requesting the Court to Find Tex. Code Crim. Proc. Art. 37.071, Section 2 (f)(4) to be Unconstitutional.   .   .   .   .   .   .   .   .   .   434

Motion to Declare the "10-12 Rule" Unconstitutional   .   .   .   .   .   441

Motion for Preservation and Disclosure to the Defense of Grand Jury Testimony   .   .   463

Motion for Production of Impeachment Evidence and Order   .   .   .   .   468

Motion to List Exhibits to be Offered in Both Phases of Trial and Order   .   .   .   474

Motion to Discover the Portions of the Defendant's Statement Which the State Intends to Use at Time of Trial   .   .   .   .   .   .   .   .   .   477

Motion for Production of Exculpatory, Impeachment and Mitigating Evidence and Order   .   480

Motion for Discovery and Inspection of All Tests Performed and Order   .   .   .   484

Motion to Preserve Evidence and Order   .   .   .   .   .   .   .   490

Motion for *in camera* Inspections of State's Entire File   .   .   .   .   .   501

Notice of Filing Certificates / Affidavits   .   .   .   .   .   .   .   504

Application for Subpoena   .   .   .   .   .   .   .   .   505

Application for Subpoena   .   .   .   .   .   .   .   .   506

Application for Subpoena   .   .   .   .   .   .   .   .   507

Notice   .   .   .   .   .   .   .   .   .   .   508

Motion for Extension of Time to Designate Expert Witnesses   .   .   .   .   518

Order Granting Extension of Time to Designate Expert Witnesses   .   .   .   .   528

Notice of Filing Certificates / Affidavits   .   .   .   .   .   .   .   529

Defendant's Motion to Transfer All documents and Communications Pertaining to Cause No. 08-3872 to Cause No. 08CR0333 and Order . . . . . . . . 531

Notification of Defendant's Expert Witnesses . . . . . . 534

Application for Subpoena . . . . . . . . . 538

Application for Subpoena . . . . . . . . . 539

Pro Se Letter from Defendant dated 11-2-10 . . . . . . 540

Pro Se Letter from Defendant dated 11-8-10 . . . . . . 546

Application for Subpoena . . . . . . . . . 552

Application for Subpoena . . . . . . . . . 553

Order on Motion for Production of Records to Children Services of Maryland . . 554

Order on Motion for Production of Records to Children Services of North Carolina . . 556

Order on Motion for Production of Records to Carolinas Medical Center-Northeast . . 558

Order on Motion for Production of Records to Carolinas Medical Center . . . 560

Order Directing Availability of Counsel . . . . . . . 562

Application for Subpoena . . . . . . . . . 564

Motion Preclude the Death Penalty as a Sentencing Option . . . . . 565

Precept and Return . . . . . . . . . . 584

Memorandum of Law in Support of Defendant's Motion *in Limine* to Exclude Psychiatric or Psychological Testimony Concerning Future Dangerousness . . . . 585

Motion *in Limine* to Exclude Psychiatric or Psychological Testimony Concerning Future Dangerousness . . . . . . . . . . . 615

Motion for Production of Records . . . . . . . . 618

Application for Subpoena . . . . . . . . . 622

Memorandum in Response to Defendant's Motion to Suppress . . . . 623

State's Request for Preliminary Ruling on Admissibility . . . . . 650

*Volume 4*

Defendant's Motion for Discovery of Experts Order . . . . . 655

Application for Subpoena . . . . . . . . . 658

Application for Subpoena . . . . . . . . . 659

Application for Subpoena . . . . . . . . . 660

Application for Subpoena . . . . . . . . . 661

Application for Subpoena . . . . . . . . . 662

Application for Subpoena . . . . . . . . 663

Application for Subpoena . . . . . . . . 664

State's Proposed Findings of Fact and Conclusions of Law . . . . . 665

Order . . . . . . . . . . . 671

Application for Subpoena . . . . . . . . 672

First Amended Notice of Defendant's Expert Witnesses . . . . . 673

First Amended Notice of Defendant's Expert Witnesses . . . . . 676

Application for Subpoena . . . . . . . . 679

Motion to Withdraw State's Exhibit . . . . . . . 680

Travis James Mullis' Memorandum of Law in Support of a Full, fair and Constitutional Voir Dire 681

Motion for Issuance of Certificate of Material Witness in Pending Criminal Case Under Uniform
Act to Secure Attendance of Witnesses and Order . . . . . . 717

Certificate of Material Witness in Pending Criminal Case Under Uniform Act to Secure Attendance of
Witnesses . . . . . . . . . . 721

Media Plan . . . . . . . . . . 723

State's Motion for Release of Medical Information and Order . . . . 727

Application for Subpoena . . . . . . . . 730

Still Camera Pool Photographer . . . . . . . 731

Jury Strike List . . . . . . . . . 732

Jury List . . . . . . . . . . 754

Application for Subpoena . . . . . . . . 755

Application for Subpoena . . . . . . . . 756

Application for Subpoena . . . . . . . . 757

Application for Subpoena . . . . . . . . 758

Application for Subpoena . . . . . . . . 759

Certificate of Material Witness in Pending Criminal Case Under Uniform Act to Secure Attendance of
Witnesses . . . . . . . . . . 760

Certificate of Material Witness in Pending Criminal Case Under Uniform Act to Secure Attendance of
Witnesses . . . . . . . . . . 761

Motion for Issuance of Certificate of Material Witness in Pending Criminal Case Under Uniform
Act to Secure Attendance of Witness Sally Ann Jennings and Order . . . 762

Motion for Issuance of Certificate of Material Witness in Pending Criminal Case Under Uniform
Act to Secure Attendance of Witness David Baltzer and Order . . . . 766

Letter from Court . . . . . . . . . . 770

Arraignment – Felony . . . . . . . . . . 771

Charge of the Court and Verdict . . . . . . . . 772

Jury Communication . . . . . . . . . . 781

Jury Communication . . . . . . . . . . 782

Motion to Properly Instruct Jury at Penalty Phase as to the Use of Mental Health Evidence and
Order . . . . . . . . . . 783

Motion that the Jury be Instructed on the Consequences of the Failure to Agree on the Special Issue
And Order . . . . . . . . . . 798

Motion for Order Prohibiting Use of "No Sympathy" Instruction and Order . . 802

Motion that Jury Be Instructed on the Definition of "Criminal Acts of Violence" and Order . 807

Mr. Mullis' Proposed Jury Instructions and Order . . . . . 811

Defendant's Exhibit List . . . . . . . . . 817

Charge of the Court on Punishment and Verdict . . . . . . 820

Jury Communication . . . . . . . . . . 828

Jury Communication . . . . . . . . . . 829

Jury Communication . . . . . . . . . . 830

Jury Communication . . . . . . . . . . 831

Judgment of Conviction by Jury – Capital Murder. . . . . . 832

Abstract of Felony Conviction . . . . . . . . 834

Bill of Cost . . . . . . . . . . . 835

Notice of Appeal. . . . . . . . . . . 836

Pauper's Oath . . . . . . . . . . . 837

Motion to Withdraw and Order . . . . . . . . 838

List of Attorneys of Record for the Defendant In Capital Murder Case . . . 842

Order Appointing Writ Counsel . . . . . . . . 843

Correspondence Letter . . . . . . . . . . 844

Correspondence Email from Clerk to OCA . . . . . . 845

Correspondence Email from Clerk to OCA . . . . . . 858

Correspondence Court of Criminal Appeals Letter . . . . . 859

Trial Court Certification of Defendants Right of Appeal . . . . . 861

Pro Se Letter from Defendant dated 4-6-11 . . . . . . 862

Post Card from Court of Criminal Appeals . . . . . 863

Receipt of Correspondence Court of Criminal Appeals Letter . . . . 864

Correspondence Letter from Court of Criminal Appeals . . . . . 865

Motion for Final Payment of Attorney Fees and Order . . . . . 866

Motion for Final Payment of Attorney Fees and Order . . . . . 869

Court of Criminal Appeals Notice of Assignment . . . . . . 872

Motion for New Trial (Sealed) . . . . . . . . 875

Defendant's Waiver of Appearance at Motion for New Trial . . . . 884

Designation of Material for Inclusion in the Record on Appeal . . . . 889

Receipt from Court of Criminal Appeals Notice of Assignment . . . . 891

Application for Subpoena . . . . . . . . 894

Application for Subpoena . . . . . . . . 895

Application for Subpoena . . . . . . . . 896

State's Response to the Defendant's Motion for New Trial . . . . . 897

Subpoena and Return . . . . . . . . . 900

Subpoena and Return . . . . . . . . . 901

Subpoena and Return . . . . . . . . . 902

Waiver of Rights and Invocation of Defendant's Right to Proceed *Pro-Se* and Order . . 903

Correspondence from Board of Pardons and Paroles . . . . . 908

Receipt from Court of Criminal Appeals Notice of Assignment . . . . 909

Sheriff's Certificate . . . . . . . . . 910

Clerk's Certificate . . . . . . . . . 911

0333

**CAUSE NO. 08-~~3872~~**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## DEFENDANT'S MOTION REGARDING VICTIM CHARACTER/IMPACT TESTIMONY AFTER *MOSLEY V. STATE*

COMES NOW, TRAVIS JAMES MULLIS, by and through his attorneys of record, and files this his Amended Motion Regarding Victim Character/Impact Testimony After *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998), and as grounds therefor would show the following:

1. The Court of Criminal Appeals has recently issued a significant opinion on the issue of victim impact and character evidence. In that opinion, written by Judge Keller, the Court informs us that:

> "Our jurisprudence in this area has been somewhat inconsistent and confusing at times. We take this opportunity to announce a consistent, if not always clear-cut rule to be followed in future cases: Both victim impact and victim character evidence are admissible, in the context of the mitigation special issue, to show the uniqueness of the victim, the harm caused by the Defendant, and as rebuttal to the Defendant's mitigating evidence. Rule 403 limits the admissibility of such evidence when the evidence predominantly encourages comparisons based upon the greater or lesser worth or morality of the victim. When the focus of the evidence shifts from humanizing the victim and illustrating the harm caused by the Defendant to measuring the worth of the victim compared to other members of society then the State exceeds the bounds of permissible testimony. We recognize that this standard

1

does not draw a bright and easy line for determining when evidence concerning the victim is admissible and when it is not. Trial judges should exercise their sound discretion in permitting some evidence about the victim's character and the impact on others' lives while limiting the amount and scope of such testimony. Considerations in determining whether testimony should be excluded under Rule 403 should include the nature of the testimony, the relationship between the witness and the victim, the amount of testimony to be introduced, and the availability of other testimony relating to victim impact and character. And, mitigating evidence introduced by the Defendant may also be considered in evaluating whether the State may subsequently offer victim-related testimony" *Mosley* 983 S.W.2d 249 (Tex. Crim. App. 1998)

## 2. VICTIMS DEFINED BY INDICTMENT

There are several things this opinion does not do. It does not broaden the right of the State to include victim impact or character evidence about people not named in the indictment. Only those named in the indictment are properly considered as "victims." *See Cantu v. State* 939 S.W.2d 627 (Tex. Crim. App. 1997).

## 3. DISCOVERY AND HEARING NECESSARY

Counsel requests that the State be required to detail, in writing, exactly which witness will testify and the substance of the testimony regarding victim impact. Counsel further requests that the Court conduct a pretrial hearing to evaluate each witness's testimony and demeanor. Only with this pretrial disclosure and hearing can the Court properly engage in the balancing test now required by the Court of Criminal Appeals, and only in that manner can Counsel render effective assistance in deciding whether to waive submission of the mitigation special issue to prevent the State's introducing the victim testimony.

## 4. *BRADY* IMPLICATED

2

If the State attempts to offer victim impact or character evidence to create a sympathetic picture of the victims, the State is also obligated to disclose, and indeed to discover, any information which is to the contrary. The "anti-victim impact" evidence sought includes conviction and arrest records, problems in school, work or family, and any other character related information which, in fairness, might rebut the good character or impact evidence as offered by the State. This evidence must be disclosed under *Brady v. Maryland,* 373 U.S. 83 (1963).

**WHEREFORE, PREMISES CONSIDERED**, the Defendant respectfully prays that this Motion be in all things sustained.

Respectfully Submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEY FOR DEFENDANT**

3

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorney's Office, on ___March 8___, 2010.

ROBERT K. LOPER

4

207

0339

## CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED, that on the _____ day of _____,

2010, came to be considered the **DEFENDANT'S MOTION REGARDING VICTIM**

**CHARACTER/IMPACT TESTIMONY AFTER *MOSLEY V. STATE.***

After consideration, the court has determined that the motion shall be, and is hereby,

_____GRANTED

_____DENIED.

SIGNED the _____ day of _____, 2010.

_____

**JUDGE PRESIDING**

5

208

c333

**CAUSE NO. 08-3872**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## MOTION PRECLUDE THE STATE FROM OFFERING
## VICTIM IMPACT TESTIMONY

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, TRAVIS JAMES MULLIS, Defendant in the above cause, by and through counsel and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3,10, 13 & 19 of the Texas Constitution and Tex. Code Crim. Proc. arts. 1.05, 1.051, 15.17, 16.01, 20.17, 26.04 26.052 and would show the court the following:

1. The Defendant has been indicted for the offense of capital murder.

2. The State is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993); and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). This Court and the Court of Criminal Appeals are bound by the law to make certain that a sentence of death is not wantonly or freakishly imposed and that the purposes of Art. 37.071 are accomplished in a constitutional manner. *Ellason v. State*, 815 S.W.2d 656 (Tex. Crim. App. 1991).

3. Victim Impact Evidence generally includes the following types of evidence that the state commonly seeks to offer during the punishment phase of a capital trial:

(a) **victim impact evidence**: the impact of the capital murder on relatives and

friends of the deceased;

(b) **victim worth evidence**: aspects of the deceased's character and background that increased the worth of her life to others;

(c) victim opinion evidence: an opinion of a relative or friend of the deceased about the punishment that the defendant deserves the crime that he committed or his character and background.

4. In *Booth v. Maryland*, 482 U.S. 496 (1987) (overruled)  the United States Supreme Court ruled that admission of the victim impact evidence described above was not admissible during the punishment phase of a trial because it violated the 8th Amendment to the United States Constitution.    The Court reasoned that the evidence was inflammatory, irrelevant to the defendant's moral culpability, impossible to rebut without offending the jury, allowed jurors to discriminate against victims who are members of unpopular minorities and invited jurors to arbitrarily determine the value of a victim's life by comparing him to other victims.    Its admission creates a constitutionally unacceptable risk that the jury may impose the death penalty in an arbitrary and capricious manner. *Id.* at 503-503.   The dissenting opinion in Booth wrote that the legislature's judgment to allow a capital sentencing jury to consider victim impact evidence is entitled to particular deference; determinations of appropriate sentencing considerations are peculiarly questions of legislative policy.   The Court should recognize that in a democratic society, legislatures not courts are constituted to respond to the will and consequently the moral values of the people. *Id* at 515.

5. Further, the Court prohibited prosecutors from making jury arguments that were based upon the victim's worth or the impact of his murder on others, even if the evidence was admitted for a different purpose. *South Carolina v. Gathers*, 490 U.S. 805 (1989) (overruled).

6. In 1991 the Supreme Court partially overruled Booth and Gathers in holding that the 8th Amendment did not bar *per se* evidence about the victim's personal characteristics or the impact of the murder on the victim's family at the punishment stage of a capital trial if the State chooses to permit it. However, the Due Process Clause provides a safety net to protect a defendant if that evidence or argument was unduly prejudicial or fundamentally unfair. *Payne v. Tennessee*, 111 S. Ct. 2597 (1991); and *Tong v. State*, 25 S.W.3d 707, 711 (Tex. Crim. App. 2000).

7. Admissibility of victim impact evidence is governed by state law, subject to protections afforded by the Constitutions of the United States and the State of Texas. *Goff v. State*, 931 S.W.2d 537, 554-55 (Tex. Crim. App. 1996).

8. The Court of Criminal Appeals, not the Texas legislature, has adopted a rule that both victim impact and victim character evidence is admissible, in the context of the mitigation issue, to show the uniqueness of the victim, the harm caused by the defendant and as a rebuttal to the defendant's mitigating evidence. *Mosley v. State*, 983 S.W.2d 249, 262 (Tex. Crim. App. 1998); and *Jackson v. State*, 992 S.W.2d 469, 480 (Tex. Crim. App. 1999). The court in *Mosley* limits the admissibility of such evidence when the evidence predominantly encourages comparisons based upon the greater or lesser worth or morality of the victim. The evidence cannot measure the worth of the victim to other members of society. The court also admonished courts to place

appropriate limits on the amount, kind and source of victim impact and character evidence. *Id.* at 263.

9. All forms of victim impact evidence should be precluded by this Court upon the trial of the Accused for the following reasons:

(a) Allowing any degree of victim impact evidence that is not shown to be known by the defendant when he committed the crime creates an unacceptable risk that the jury's verdict will be influenced by community pressure, emotion or passion. Such a verdict would be arbitrary and capricious in violation of the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Section ____ of the Texas Constitution. The cited risks are enhanced because of the refusal by the Court of Criminal Appeals to conduct a sufficiency review of the jury's answer to the mitigation issue. Because the weighing of mitigating evidence is a subjective determination undertaken by each individual juror, we decline to review that evidence for sufficiency." *McFarland v. State*, 928 S.W.2d 482,498 (Tex. Crim. App. 1996) (overruled by *Mosley v. State, supra*).

(b) The Texas legislature has never seen fit to provide for the admission of any kind of victim impact evidence during the punishment phase of a capital trial. This is particularly noteworthy in light of Court of Criminal Appeals decisions that have effectively said that if it is not provide for in Article 37.071 then it is not part of a capital prosecution. It is within the legislature's exclusive power to define the elements of capital murder and establish guidelines for deciding when the sentence of death is an appropriate penalty." *Wesbrook v. State*, 29 S.W.3d

103, 112-13 (Tex. Crim. App. 2000).  If the long march of death penalty jurisprudence means anything, it is that it is the legislature's obligation to carefully structure a statutory procedure which achieves the twin goals of individualized sentencing and channeled discretion in the sentencing authority and which avoids arbitrary and capricious action by that sentencing authority.  Obviously, at the heart of that statutory procedure lie those matters which are deemed relevant to determination of the sentence.  Those matters can only be identified and authorized by the legislative representatives of the people, not by the courts.  *Olsen v. State*, 67 P.3d 536, 595 (Wyo. 2003); *accord Commonwealth v. Fisher*, 681 A.2d 130, at 144, *et. seq.* (Penn. 1996).

Accordingly, neither the court nor counsel have guidance from the legislature on significant issues that relate to this evidence, such as (a) whether or not defense counsel is entitled to discovery of the victim impact evidence; (b)  whether or not the court will hear the proposed witnesses prior to trial in order to determine the permissible scope and content of their testimony; (c)  whether or not the testimony shall be in a written form and be read to the jury by a neutral party; (d)   how many witnesses may testify and how close their relationship to the deceased must be; (e) whether the court must give cautionary instructions to the jury and what the instructions must say.    As noted by Justice Antonin Scalia, in his concurrence in *Payne*, the 8th Amendment Apermits the people to decide (within the limits of other constitutional guarantees) what a crime is and what constitutes aggravation and mitigation of a crime." *Payne*, 111 S. Ct. at 2613 (O=Connor and Kennedy, J.J., joining).

The Wyoming Supreme Court's decision in 2003, in *Olsen, supra,* identified the following states which amended their statutes in a way that would provide direction to the courts on the issue of Victim Impact Evidence: Arkansas, Colorado, Florida, Louisiana, Missouri,

Montana, New Jersey, Oklahoma, Pennsylvania, South Dakota and Utah.  Margaret F. Case, Victim Impact Evidence Not Admissible in Kentucky Death Penalty Trials, *The Advocate*, Vol. 26, No.1 (January, 2004).

In determining the intent of the Texas legislature, it is clear that the legislature has had the opportunity to amend the Texas Death Penalty Statute, Article 37.071, but did not do so. Tex. Code Crim. Proc. art. 56.03 (amended as late as September, 2001), entitled AVictim Impact Statement, clearly has no application to the capital sentencing process.  Additionally, Tex. Code Crim. Proc. art. 42.03 Sec. 1(b)(1) allows for a victim statement to be made **after sentencing**. This statute was amended as late as 1995 and certainly if the legislature had intended to make this type of evidence admissible in a capital trial, Article 37.071 could easily be amended as well.

(c)   Victim Impact Evidence is not probative of any issue that prosecution is required to prove. The Court of Criminal Appeals has held that it is relevant to the mitigation issue, but the defendant has the burden as to that issue.  The very nature of victim impact evidence assures that any probative value that it has is substantially outweighed by the danger of unfair prejudice to the defendant under Rule 403 of the Texas Rules of Evidence. Evidence is unfairly prejudicial when it has an undue tendency to suggest that a decision be made on an improper basis. *Reese v. State*, 33 S.W.3d 238, 240-41 (Tex. Crim. App. 2000).   It is improper for jurors to make a decision as to whether someone lives or dies when that decision is bound to be influenced in some irrational, but indelible way. *Wiley v. State*, 74 S.W.3d 399, 407 n.21 (Tex. Crim. App. 2002).  The more respectable a victim is shown to be, the less open the jurors are to consider mitigating evidence. Green, Koehering & Quiat, Victim Impact Evidence in Capital Cases: Does the Victim's Character Matter, 28 *Journal of Applied Social Psychology*, No. 2 (1998).

**WHEREFORE, PREMISES CONSIDERED**, the Defendant prays that this Court preclude the death penalty as a sentencing option in this case.

Respectfully submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorney's Office, on March 8 ,2010.

**ROBERT K. LOPER**

7

0333

## CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

JASON E. MURRAY
CLERK DISTRICT COURT
FILED
Pay Court
JAN 2 0 2011
GALVESTON COUNTY, TEXAS
DEPUTY

## ORDER

BE IT REMEMBERED, that on the ___20___ day of ___Jan.___,

2010, came to be considered the MOTION PRECLUDE THE STATE FROM OFFERING

VICTIM IMPACT TESTIMONY.

After consideration, the court has determined that the motion shall be, and is hereby,

_____ GRANTED

___✓___ DENIED.

SIGNED the ___20___ day of ___Jan.___, 2010.

_John Ellison_

JUDGE PRESIDING

8

216

CAUSE NO. 08-~~3872~~ 0333

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## MOTION TO PRESERVE RIGHT TO FILE OTHER MOTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, TRAVIS JAMES MULLIS, Defendant in the above-cause, by and through counsel and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13 and 19 of the Texas Constitution and files this Motion to Preserve Right to File Other Motions, and for good and sufficient cause would show the Court the following:

1. The Defendant has been indicted for the offense of capital murder.

2. The State is seeking the death penalty.

3. Defense counsel is not always able to present every pertinent motion at the initial pre-trial motion hearing in that, even with due diligence, they may not learn of the relevance of a particular motion until after said hearing, e.g., Motion to Quash because of defective indictment based on recent Court of Criminal Appeals of federal court ruling, or a Motion to Suppress based on evidence that is produced as a result of a Pre-Trial Motion hearing.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that relief be granted as prayed for herein.

1

217

Respectfully Submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorney's Office, on March 8 , 2010.

**ROBERT K. LOPER**

2

218

CAUSE NO. 08-3872  0333

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED, that on the __20__ day of ____Jan.____, 2010,

came to be considered the foregoing **MOTION TO PRESERVE RIGHT TO FILE OTHER**

**MOTIONS.**

After consideration, the court has determined that the motion shall be, and is hereby,

____✓____ **GRANTED.**

_____ **DENIED.**


SIGNED the __20__ day of _____Jan._____, 2010.

_____
**JUDGE PRESIDING**

3

CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## MOTION PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION DUE TO LACK OF ELEMENTS IN THE INDICTMENT

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Robert K. Loper and Gerald Bourque, Attorneys for the accused, TRAVIS JAMES MULLIS, and pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 3, 10, 13 and 19 of the Texas Constitution, moves this Court to preclude the death penalty as a sentencing option in this case. In support of his motion, Mr. Mullis states as follows:

1. Mr. Mullis was indicted for the offense of capital murder. The State is seeking the death penalty.

2. The Eight Amendment requires a greater degree of accuracy and fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333 (1993); *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). The courts of this state are bound by the law to make certain that a death sentence is not wantonly or freakishly imposed and that the purposes of Art. 37.071 are accomplished in a constitutional manner. *Ellason* v. State, 815 S.W.2d 656 (Tex. Crim. App. 1991).

3. The maximum penalty for the offense of capital murder is life in prison without the possibility of parole. Tex. Penal Code § 12.31 (Vernon 2005). The maximum penalty for the

1

offense of capital murder is life in prison without the possibility of parole on November 04, 1994. Tex. Penal Code § 12.31 (Vernon 1994). It is only when the state seeks the death penalty that the prescribed statutory maximum can be exceeded and then only if the jury concludes, beyond a reasonable doubt, that "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc. art. 37.071, § 2(b)(1). The Texas legislature has created two offenses: (1) a Capital Felony where the state seeks death penalty, and (2) a Capital Felony where the state does not seek the death penalty. Tex. Penal Code § 12.31(a).

4. Mr. Mullis has the constitutional right to be accused of Capital Murder only on an indictment of a grand jury. Tex. Const. art I, § 10 ("no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary"); *Cook v. State*, 902 S.W.2d 471, 475 (Tex. Crim. App. 1995) (holding that Texas Constitution guarantees right to indictment by grand jury for all felony offenses). Further, Mr. Mullis has the right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, sections 10, 13, and 19 of the Texas Constitution, to be informed of the specific nature of the accusations against him. *See In re Oliver*, 333 U.S. 257, 273 (1948) ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense ... are basic in our system of jurisprudence...").

5. Indictment by grand jury protects citizens against arbitrary accusations by the government. *King v. State*, 473 S.W.2d 43, 45 (Tex. Crim. App. 1971). The most "celebrated purpose" of the grand jury "is to stand between the government and the citizen" and protect

individuals from the abuse of arbitrary prosecution. *United States v. Mara*, 410 U.S. 19, 45 (1973).

6. An indictment is essential to vest the trial court with jurisdiction. Tex. Const. art. V, § 12(b); *Cook*, 902 S.W.3d at 475. The purpose of an indictment is to provide notice of the charged offense so that the presumptively innocent accused may prepare, before trial, an informed and effective defense. *Riney v. State*, 28 S.W.3d 561, 565 (Tex. Crim. App. 2000). "The accused is not required to anticipate any and all variant facts the State might hypothetically seek to establish." *Brasfield v. State*, 600 S.W.2d 288, 295 (Tex. Crim. App. 1980) (overruled on other grounds by *Janecka v. State*, 739 S.W.2d 813, 819 (Tex. Crim. App. 1987)).

7. In *Jones v. United States*, 526 U.S. 227 (1999), the United States Supreme Court held that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than a prior conviction) that increase[d] the maximum penalty for a crime must be charged in an indictment, submitted to a jury and proven beyond a reasonable doubt," *Jones*, 526 U.S. at 243, n.6. In *Apprendi v. New Jersey*, 530 U.S. 466, 475 (2000), the United States Supreme Court extended the Jones holding to the States through the Fourteenth Amendment. In *Ring v. Arizona*, 122 S. Ct. 2428 (2002) the United States Supreme Court held that the rule of *Jones* and *Apprendi* applies with equal force to capital cases. Aggravating factors operate as the functional equivalent of an element or a greater offense. *Ring*, 122 S. Ct. at 2443. "The relevant inquiry is one not of form but of effect." *Apprendi*, 530 U.S. at 494. Thus, aggravating factors must be pled in the indictment, submitted to a jury and proved by the prosecution beyond a reasonable doubt. Likewise, the absence of a circumstance that would justify a life sentence must be plead in the indictment and established by

3

the state, beyond a reasonable doubt.

8. The logical conclusion that can be drawn from this is that the discretion to choose to seek death in a "capital eligible" case lies with the grand jury, not the State of Texas through its prosecutors. The only discretion that is left to the prosecutors following the application of *Jones*, *Apprendi* and *Ring* are to (1) decide if evidence of statutory and non-statutory aggravators are to be presented to the grand jury and (2) should the grand jury find the aggravators to be "true," whether or not the State will offer evidence in support of those aggravators.     This constitutionally mandated procedure was not followed in this case in that no evidence of aggravating circumstances was presented to this grand jury, no findings were made as to the existence of aggravating circumstances, accordingly death should be precluded as a sentencing option.

**WHEREFORE, PREMISES CONSIDERED,** Mr. Mullis prays that this Court preclude the death penalty as a sentencing option in this case.

4

223

Respectfully submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same March , 2010.

**ROBERT K. LOPER**

5

CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

JASON E. MURRAY
DISTRICT COURT
FILED
Day Court
JAN 2 9 2011
GALVESTON COUNTY, TEXAS
BY_____
DEPUTY

ORDER

BE IT REMEMBERED, that on the 20 day of Jan.,
2010, came to be considered the Defendant's **MOTION PRECLUDE THE DEATH
PENALTY AS A SENTENCING OPTION DUE TO LACK OF ELEMENTS IN THE
INDICTMENT.** The court is of the opinion the motion should be in all things:

**GRANTED** _____

**DENIED** ✓

_____
JUDGE PRESIDING

6

225

0333

## CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

### MOTION TO DECLARE THE DEATH PENALTY UNCONSTITUTIONAL BASED ON TEXAS' LETHAL INJECTION PROTOCOL

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW, TRAVIS JAMES MULLIS,** by Counsel and pursuant to the Fifth,

Sixth, Eighth and Fourteenth Amendments to the UNITED STATES CONSTITUTION and Articles 1,

Section 13 of the TEXAS CONSTITUTION, and pursuant to international law, moves this Court to

declare Texas' capital punishment scheme unconstitutional based on its lethal injection protocol.

In support, TRAVIS JAMES MULLIS would show:

### I.

### FACTUAL BACKGROUND

TRAVIS JAMES MULLIS has been charged with the offense of capital murder.  If

TRAVIS JAMES MULLIS is found guilty and sentenced to death, he will face death by lethal

injection of a drug cocktail that includes an agent – pancuronium bromide – that the State of

Texas has outlawed for use in euthanizing animals.  Because TRAVIS JAMES MULLIS believes

that Texas' lethal injection protocol is violative of his rights under the Texas and United States

constitutions, as well as under international law, he brings this motion.

## II.

## M O T I O N:

## TEXAS' LETHAL INJECTION PROTOCOL VIOLATES THE TEXAS AND FEDERAL CONSTITUTIONS AND INTERNATIONAL LAW.

### A.

## TEXAS' USE OF PANCURONIUM BROMIDE DRAWS A "CHEMICAL VEIL" OVER THE LETHAL INJECTION PROCEDURE WHICH VIOLATES THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 13 OF THE TEXAS CONSTITUTION.

1.    **Summary**.

Pancuronium bromide is the second of three drugs administered to the condemned inmate during the lethal injection process. Pancuronium bromide draws a "chemical veil" over the procedure. It is a neuromuscular blocking agent, which is illegal for use in animal euthanasia. It has the effect of rendering the muscles unable to contract but does not affect the brain or the nerves of the inmate. The paralytic effect on the muscles make the inmate look serene, when that is not necessarily true. TRAVIS JAMES MULLIS contends that the use of this drug creates an unreasonable risk that the inmate will be paralyzed but will not be rendered unconscious before he is administered the final horrific painful drug. The effect of pancuronium bromide can therefore be to subject the inmate to torturous pain, but because of his paralysis he is unable to communicate his consciousness or his agony and viewers are unable to perceive that the inmate is conscious or in agony. This result offends the human dignity of the inmate and of society. It is therefore unconstitutional to use it in the lethal injection procedure. *See Weems v. United States*, 217 U.S. 349, 367-8 (1910). The use of pancuronium bromide inflicts the type of unnecessary psychological suffering during the inmate's final living moments which was prohibited by the U.S. Supreme Court in *Weems*.

Counsel for TRAVIS JAMES MULLIS submits three affidavits in support of this motion. They are from Dr. Mark Heath of Columbia University, Dr. Dennis Geiser of the University of Tennessee, and Carol Weihrer, founder of Anesthesia Awareness. These affidavits were submitted in the case of *Texas v. Jesus Flores*, No. 877,994A and are attached to this motion as Exhibits 1 through 3.

**2.     The "Chemical Veil" Causes an Unnecessary and Wanton Infliction of Pain.**

The Eighth Amendment prohibition against cruel and inhuman punishment forbids punishments that involve unnecessary and wanton inflictions of pain. *Estelle v. Gamble*, 429 U.S. 97, 102-5 (1976). The use of pancuronium bromide (also known as *Pavulon)* is unnecessary in the lethal injection process. The Court of Appeals of Tennessee, at Nashville, recognized that "there is no dispute that Pavulon can mask the pain and suffering of persons who are not completely sedated and that these persons would appear to be peaceful despite the pain they were experiencing." *Abdur'Rahman v. Bell*, (No. M2003-01767-COA-R3-CV),  2004 Tenn. App. LEXIS 643 at *70, *cert. granted on other grounds, judgment vacated and case remanded*,  2005 U.S. LEXIS 5217 (U.S. Sup. Ct. June 28, 2005). Pancuronium bromide is a neuromuscular blocking agent that  renders the muscles unable to contract but does not affect the brain or the nerves of the inmate. The paralytic effect on the muscles make the inmate look serene, when that is not necessarily true. *See* Affidavit of Dr. Mark Heath, attached as Exhibit 1. If pancuronium bromide were not used in the process at all, it would not decrease the efficacy of the procedure. It would, however, increase the humaneness of the procedure because it would lift the "chemical veil" behind which the inmate's agony hides. *See id.*  It would also allow the observers to witness actual pain that the inmate is suffering.  Pancuronium bromide is administered so that the executioner and viewing public are themselves "sedated" into thinking that the execution process

is a calm, peaceful and humane procedure. This is only true because the 2nd drug in the cocktail is designed to mask the true pain experienced by the inmate as he is dying.

Carol Weihrer is the President and Founder of the charity Anesthesia Awareness. She has provided an affidavit describing her personal experience of agony under a neuromuscular blocking agent when the brain-scrambling anesthesia was ineffective. This is the same as the experience the condemned inmate may endure. *See* Affidavit of Carol Weihrer, attached as Exhibit 2. She is of the opinion that the experience was "worse than death" because she is unable to sleep at night, and has to cope every day with the horror of what happened.

A punishment is cruel under the Eighth Amendment when it includes "something more than the mere extinguishment of life." *In re Kemmler*, 136 U.S. 436, 447 (1890). As interpreted by the Supreme Court, the Eighth Amendment prohibition is intended to reduce the punishment as far as possible to no more than that of death itself. Methods of execution have evolved over time in keeping with this principle. The "chemical veil" of pancuronium bromide now constitutes that extra factor that makes the punishment more than merely taking the life of the inmate; in some cases it makes the punishment worse than death itself. For the short time before the inmate's life expires, there is the substantial risk that the punishment is more than the law allows. The punishment is therefore unconstitutional under the law as it stands.

This false impression of serenity to viewers raises the age-old concerns of government abuses of power. By masking the real effects of government actions, the government is manipulating the setting and "gilding the lily" in order to orchestrate and manipulate public reaction to the death penalty; it, therefore, offends the dignity and the evolving standards of decency of our society. *See Trop v. Dulles*, 356 U.S. 86, 101 (1958).

**3.**     **Substantial Risk**

The Eighth Amendment prohibition against cruel and inhuman punishment forbids punishments when the method of execution creates a substantial risk of wanton and unnecessary infliction of pain, torture or lingering death. *See Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947). The risk of unnecessary pain is substantial in the lethal injection procedure because the first drug to be administered, sodium thiopental, is an anachronistic anesthetic. It does not always render the inmate unconscious. *See* Exhibit 1 (Heath Aff.). Unnecessary psychological pain and torture is inflicted when the inmate is not unconscious because the chemical veil of the pancuronium bromide prevents the inmate from expressing the pain he/she is experiencing.

The risks of the sodium thiopental not rendering the inmate unconscious do not affect the end result of the execution, but they do affect the constitutionality of the execution. In a study of post-mortem levels of thiopental in 49 persons executed by lethal injection, medical researchers have found that "most of the executed inmates had concentrations that would not be expected to produce a surgical plane of anaesthesia, and 21 (43 per cent) had concentrations consistent with consciousness." Dr. Leonidas G. Koniaris, et al., *Inadequate Anaesthesia in Lethal Injection for Execution*, 365 LANCET 1412, 1413 (2005). The study concluded: "In view of these data, we suggest that it is possible that some of these inmates were fully aware during their executions. We certainly cannot conclude that these inmates were unconscious and insensate." *Id.* at 1414.

Once in liquid form, sodium thiopental has a very short shelf life of less than 24 hours. This compromises its potency. *See* Exhibit 1 (Heath Aff.). The dose of sodium thiopental fails to adequately cater to the different drug tolerances, the different drug histories and the different physical sizes of inmates. Sodium thiopental was originally chosen to be used because it is fast acting, but now it is this characteristic of the drug which can cause the anesthesia to wear off in a

matter of minutes and cause the inmate to awaken while the other drugs are administered; it is another aspect of the execution procedure which is in need of updating. In surgery, the injection of sodium thiopental will be followed almost immediately, subject to the monitoring of the patient, with administration of another, longer-lasting anesthetic. Other drugs, such as sodium pentobarbital, endure far longer and would serve the desired purposes better.

It is often difficult for a physician to find a suitable vein to inject, especially when the inmate is nervous, or obese, or a drug user, or diabetic, or muscular, or has heavily pigmented skin. It is therefore even harder for the person entrusted with this job by the State of Texas because he/she is not a qualified physician. It is not proposed here to retell the numerous accounts of botched injections in the State of Texas, but they exist as proof of the substantial risk that the anesthesia does not protect the inmate from the torture of the "chemical veil." There are plenty of opportunities throughout the process for a botched execution. These risk factors, when taken all together, amount to a substantial risk of unnecessary pain. They therefore make the lethal injection procedure, as it currently stands, unconstitutional under the law as described by the U.S. Supreme Court. The fact that pancuronium bromide is unnecessary to bring about the death of the inmate makes these risks all the more unacceptable and unconstitutional. It is only the third drug in the series that causes the heart to stop beating.

**4. Conclusion**

Lethal injection is seen by the public to be the most humane method of execution. The result, therefore, is the most duplicitous irony of all: the very method which seems the most appealing in the eyes of the public is also one of the most unjustifiably cruel. The use of pancuronium bromide creates a double veil over the process. It disguises the fact that there is a disguise over the process. *See* Exhibit 1 (Heath Aff.). Pancuronium bromide is psychologically

horrific and its use violates the Eighth Amendment. Further, any argument that the risk of

unnecessary suffering is remote is disingenuous. No one has survived an execution to testify to

his or her experience. All evidence of suffering has first been masked by pancuronium bromide

and then ultimately buried by the state.

**B.**

**TEXAS' USE OF PANCURONIUM BROMIDE IN ITS LETHAL INJECTION
PROCEDURE OFFENDS HUMAN DIGNITY, AND VIOLATES THE EIGHTH
AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 1, § 13 OF
THE TEXAS CONSTITUTION, BECAUSE THE DRUG IS ILLEGAL IN THE
EUTHANASIA OF ANIMALS.**

**1.     Pancuronium Bromide is Illegal in Animal Euthanasia, and Therefore Does Not
Pass the Evolving Standards of Decency Test.**

Although Texas' lethal injection procedure was held not to violate the Eighth

Amendment in *Ex Parte Granviel*, 561 S.W.2d 503, 510 (1978), it would be error for this court

to assume the protocol would survive constitutional scrutiny today.  All Eighth Amendment

determinations are subject to the evolving standards of decency that mark the progress of a

maturing society. *See Atkins v. Virginia,* 536 U.S. 304, 311-2 and 321 (2002); *see also Trop v.*

*Dulles*, 356 U.S. 86, 101 (1958).  *Compare Roper v. Simmons*, 125 S.Ct. 1183, 1198 (2005) *with*

*Stanford v. Kentucky*, 492 U.S. 361, 369 (1989).  The lethal injection procedure must conform to

the contemporary norms and standards of American society. *See Weems v. United States*, 217

U.S. 349, 367 (1910).  Science has moved on since the late 1970's, and a greater knowledge is

7

available of the drugs involved in lethal injection. Pancuronium bromide is strongly discouraged by the American Veterinary Medical Association[1]

In the euthanasia of animals, with the warning that animals may perceive pain and distress after they are immobilized. *See* Affidavit of Dr. Dennis Geiser, attached as Exhibit 2. The use of the drug is banned in the State of Texas for this purpose. TEX. HEALTH & SAFETY CODE Article 821.052.[2] The euthanasia of animals in Texas must now be in accordance with the American Veterinary Medical Association Panel on Euthanasia Report 2000, which condemns the use of pancuronium bromide. *See id.* (Geiser Aff.)

If the use of pancuronium bromide is unacceptable for killing animals, it cannot be acceptable in killing human beings. The standards of decency in Texas must have evolved to the point of treating humans with more humanity and dignity than we treat our animals. Texas is not the only State to use pancuronium bromide as part of the lethal injection process; the States who use lethal injection copied each other's techniques when the process became fashionable in the late 1970s. Oklahoma and Texas were the first to codify the method. The fact that the other States use the same chemical is therefore not evidence of the standards of decency not having evolved. They are locked in to the same standards, and they are waiting for a State to take the lead in modernizing the method in accordance with contemporary standards.

A punishment is 'cruel' under the Eighth Amendment when it includes "something more than the mere extinguishment of life." *In re Kemmler*, 136 U.S. 436, 447 (1890). The aim is to

---

[1] The American Veterinary Medical Association is the national association for veterinarians. It is a governing body for the veterinary medical profession. The AVMA standards establish the standards of veterinary practice throughout the state of Texas as well as the rest of the country.

8

222

reduce the punishment as far as possible to no more than that of death itself. The humiliation of being executed using a drug which is banned for use in animal euthanasia makes the current execution procedure something more than the mere extinction of life. The standards of decency have evolved to make such a humiliation unacceptable.

2. **Pancuronium Bromide is Illegal in Animal Euthanasia, and Therefore Its Use on Humans Offends Human Dignity.**

The United States Supreme Court has made clear that the principle of human dignity is central to the Eighth Amendment's cruel and unusual punishments clause, and that this principle of dignity goes beyond the mere infliction of physical pain or suffering. *See Trop v. Dulles*, 356 U.S. 86, 101 (1958). Human dignity can be offended in unconstitutional ways through unacceptable stigmatization of an inmate or through other means that may not involve excessive pain or suffering.        In *Furman v. Georgia*, 408 U.S. 238 (1972), the Court explained this principle of human dignity as follows: "The State, even as it punishes, must treat its members with respect for their intrinsic worth as human beings.  A punishment is 'cruel and unusual,' therefore, if it does not comport with human dignity. . ." *Id.* at 270.  The Court went on to hold that "The primary principle is that a punishment must not be so severe as to be degrading to the dignity of human beings. Pain, certainly, may be a factor in the judgment." *Id.* at 271.  The Court continued, "Yet the Framers also knew 'that there could be exercises of cruelty by laws other than those which inflicted bodily pain or mutilation.' *Id.* (internal citations omitted). The Court concluded although "'[t]here may be involved no physical mistreatment, no primitive torture,' severe mental pain may be inherent in the infliction of a particular punishment. . .The true

---

[2] The TEX. HEALTH AND SAFETY CODE codified Senate Bill 572 and House Bill 1115, which were signed into law by the Governor of Texas on May 14, 2003.

significance of these punishments is that they treat members of the human race as nonhumans, as objects to be toyed with and discarded." *Id.* at 272-3 (internal citations omitted).

This principle was implicitly applied in *Rupe v. Wood*, 863 F. Supp. 1315, 1321 (W.D. Wash. 1994). In *Rupe*, the federal district court declared that, although death by hanging at that time was not generally considered to be unconstitutional, if there is significant risk of decapitation in the hanging of an obese death row inmate the hanging would violate the Eighth Amendment. Such a hanging would not increase the inmate's pain or physical suffering, but it would offend the principle of dignity to treat an inmate in such a manner.[3]

If the State of Texas were permitted to execute TRAVIS JAMES MULLIS, or any other human being, pursuant to a procedure that would be deemed inhumane if used in the euthanasia of animals, then it would certainly violate the Eighth Amendment principle of human dignity. This is true regardless of whether it would create the kind of horrifying and excruciating experience that is possible under the Texas procedure.

The Texas procedure also offends the dignity of our society as well as the dignity of the inmate. If it offends the dignity of the inmate, then it necessarily offends society's sense of dignity. When the state executes one of its citizens, it does so in the name of all of its citizens, and all citizens therefore have a constitutionally protected interest in ensuring that executions are carried out in a humane way.

## 3.   An Alternative Method is Available.

---

[3]The issue of execution by hanging was later held moot because of a change in the Washington capital statue removing a presumption in favor of hanging.   *Rupe v. Wood*, 93 F.3d 1434, 1438 (9th Cir. 1996).

10

235

It should not be left to TRAVIS JAMES MULLIS to suggest a more humane alternative to Texas' lethal injection procedure. However, there is at least one such alternative. The most common method of euthanasia for domesticated animals is a single intravenous injection of sodium pentobarbital, which, like sodium thiopental, quickly creates its anesthetic effect. But sodium pentobarbital is quite different from sodium thiopental in other important respects: it is more stable, its anesthetic effect lasts much longer, and it will bring about death within a two or three minute period, which is less time than is required to complete the long process under the Texas protocol. Sodium pentobarbital is inexpensive. A simple method of making a single injection of sodium pentobarbital would carry virtually none of the risks of causing inhumane suffering that are inherent in the Texas lethal injection procedure.

The question of what might constitute minimal contemporary standards of decency also must be considered in light of the availability of alternatives. TRAVIS JAMES MULLIS submits that normal citizens of our state would rebel against the idea of using the present lethal injection procedure if they understood that Texas could easily develop a safe, simple, and properly regulated procedure that would involve a single injection of sodium pentobarbital, the most commonly used method in the euthanasia of domesticated animals.

In light of this alternative, the state can offer no justification or excuse for its antiquated and barbaric method.

4.   **Conclusion**

Although Texas' lethal injection procedure is outdated and inhumane, time stands still for it in Texas and other states while society marches on toward a more humane standard of decency. The law of the land should afford even the vilest criminal the same dignity afforded to

11

an animal *in extremis*. It is of no moment that society may view a murderer as a life form lower than that of an animal. Although some may subscribe to this view, the law does not permit us to punish men via methods we consider beneath the dignity of animals.

C.

## THE ADMINISTRATION OF SODIUM THIPOPENTAL AND PANCURONIUM BROMIDE IN THE LETHAL INJECTION PROCEDURE AMOUNTS TO STATE-SPONSORED TORTURE IN VIOLATION OF INTERNATIONAL LAW.

Torture is prohibited by the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. 23 ILM 1027 (1984). The United States is a party to this agreement and its provisions must be applied in full. The United States signed this treaty on April 18, 1988 and ratified it on October 21, 1994. *See* Status of Ratification of the Convention Against Torture *available at* **Error! Reference source not found.** *(website for Office of the United Nations High Commissioner for Human Rights updated as of November 2, 2004).*

*The Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment prohibits torture and cruel, inhuman or degrading treatment or punishment. Torture is defined in Article 1, 1 of the Convention as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as. . .punishing him for an act he or a third person has committed. . ." 23 ILM 1027.*

*Thus, execution by means of lethal injection is substantially likely to result in torture such that international law is violated. The prisoner can physically feel the horrific pain of the lethal injection process if the anesthesia effects of sodium thiopental have worn off, or if it was not properly administered in the first place. In addition, the prisoner will experience atrocious mental torture as he will be unable to communicate (physically or orally) the horrific agonizing*

12

pain he is experiencing due to the paralytic effects of the pancuronium bromide. Article 2, 2 of

the Convention requires: "each State Party shall take effective legislative, administrative,

judicial or other measures to prevent acts of torture in any territory under its jurisdiction." Id.

Thus, this court is required to act in accordance with this provision and rule that the chemical

cocktail presently applied during the lethal injection process is illegal.

  Further, if the court does not find this horrific suffering tantamount to torture, section 1 in

Article 16 of the Convention requires Texas to "undertake to prevent in any territory under its

jurisdiction other acts of cruel, inhuman or degrading treatment or punishment which do not

amount to torture. . ." Id. The use of pancuronium bromide in the lethal injection process, when it

is illegal to use it in the euthanasia of animals, makes the procedure cruel and inhuman and

degrading. Therefore, the Court is still obliged to find the current lethal injection procedure to be

a violation of international law and the dignity of mankind, even if it does not believe the present

procedure amounts to torture.

### III.

### A R G U M E N T

#### A.

### TRAVIS JAMES MULLIS PRESENTS A COLORABLE CLAIM THAT LETHAL INJECTION – AS IT IS CURRENTLY ADMINISTERED IN TEXAS – PRODUCES UNNECESSARY PAIN, TORTURE, AND LINGERING DEATH, AND VIOLATES THE EIGHTH AMENDMENT.

  The Eighth Amendment's proscription against cruel and unusual punishment forbids the

infliction of unnecessary pain in the execution of a sentence of death. *Louisiana ex rel. Francis*

*v. Resweber*, 329 U.S. 459, 463 (1947) (opinion of Reed, J.); *Fierro v. Gomez*, 865 F. Supp.

1387, 1413 (N.D. Cal. 1994) (execution by lethal gas in California held unconstitutional where

13

238

evidence indicated "death by this method is not instantaneous.  Death is not extremely rapid or within a matter of seconds.  Rather . . . inmates are likely to be conscious for anywhere from fifteen seconds to one minute from the time that the gas strikes their face" and "during this period of consciousness, the condemned inmate is likely to suffer intense physical pain" from "air hunger"; "symptoms of air hunger include intense chest pains . . . acute anxiety, and struggling to breath"), *aff'd*, 77 F.3d 301, 308 (9th Cir. 1996), *vacated on other grounds*, 519 U.S. 918 (1996). Further, "[p]unishments are cruel when they involve . . . a lingering death." *In re Kemmler*, 136 U.S. 436, 447 (1890).  A punishment is particularly constitutionally offensive if it involves the *foreseeable* infliction of suffering. *Furman v. Georgia*, 408 U.S. 238, 273 (1973), citing *Resweber*, *supra* (had failed execution been intentional and not unforeseen, punishment would have been, like torture, "so degrading and indecent as to amount to a refusal to accord the criminal human status.")

It is not only foreseeable, it is predictable that death by lethal injection as it is currently practiced in Texas–using a paralytic agent in combination with a sedative–will produce unnecessary pain, torture, and lingering death.  Evidence has existed for at least fifty years that the "drugs used in lethal injections pose a substantial threat of torturous pain to persons being executed." *Chaney v. Heckler*, 718 F.2d 1174, 1178 (C.A.D.C. 1983), *overturned on other grounds*, *Heckler v. Chaney*, 470 U.S. 821 (1985) (citing ROYAL COMMISSION ON CAPITAL PUNISHMENT, 1949-1953 REPORT (1953)). The Court of Appeals in *Chaney* found: "substantial and uncontroverted evidence to support their claim that execution by lethal injection poses a serious risk of cruel, protracted death.  Even a slight error in dosage or administration can leave a

14

prisoner conscious but paralyzed while dying, a sentient witness of his or her own slow, lingering asphyxiation." *Id.* at 1191 (internal citation omitted.)

Further, the Texas lethal injection protocol has not changed since it was first used in 1982. *Judge Denies Stays of Three Executions*, HOUSTON CHRONICLE, Dec. 9, 2003, at A29 (quoting a TDCJ official who acknowledges that no changes have been made to the procedure in place since 1982). What has changed over the last two decades, however, is that numerous states, most recently the State of Texas, have enacted statutes regulating the euthanasia of animals which preclude using the same combination of drugs currently administered to human beings during executions. If evolving standards of decency, as reflected by legislative action and the professional association of veterinarians, preclude the use of these particular drugs when killing a dog or a cat, then certainly those same standards of decency would require a more humane, readily available version of the lethal injection for human beings. "'The basic concept underlying the Eighth Amendment is nothing less than the dignity of man . . . . The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Atkins v. Virginia*, 536 U.S. 304, 311-2 (2002) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-101(1958)).

1.   **The combination of chemicals used to execute inmates in Texas creates a strong probability of unnecessary suffering and torture.**

The State of Texas executes its inmates by poisoning them with a lethal combination of three chemical substances: sodium thiopental, or sodium pentothal (an ultrashort-acting barbiturate); pancuronium bromide, or Pavulon (a curare-derived agent which paralyzes all skeletal or voluntary muscles, but which has no effect whatsoever on awareness, cognition or

15

sensation); and potassium chloride (an extraordinarily painful chemical which activates the nerve fibers lining the person's veins and which can interfere with the rhythmic contractions of the heart and cause cardiac arrest). While each of these chemicals individually creates concern about their use in the execution process, in combination they cannot pass constitutional muster. Far from producing a rapid and sustained loss of consciousness and humane death, this particular combination of chemicals often causes the inmate to consciously suffer an excruciatingly painful and protracted death.

### a. Sodium Thiopental

Sodium thiopental, or sodium pentothal, is a short-acting barbiturate which is ordinarily used to render a surgical patient unconscious for mere minutes, only in the induction phase of anesthesia, specifically so that the patient may re-awaken and breathe on their own power if any complications arise in inserting a breathing tube pre-surgery. Because of its brief duration, sodium thiopental may not provide a sedative effect throughout the entire execution process. Dr. Dennis Geiser, chairman of the Department of Large Animal Clinical Sciences at the College of Veterinary Medicine at the University of Tennessee, recently explained:

> Sodium thiopental is not a proper anesthetic for use in lethal injection. Indeed, the American Veterinary Medical Association standards for euthanasia indicate that the ideal barbituric acid derivative for animal euthanasia should be potent, long acting, stable in solution, and inexpensive. Sodium pentobarbital (not sodium thiopental) best fits these criteria. Sodium thiopental is a potent barbituric acid derivative but very short acting with one therapeutic dose.

Affidavit of Dr. Dennis Geiser, attached as Exhibit 2.

Due to the chemical combination used in the Texas execution process, there is also a probability that the sedative effect of the sodium thiopental is neutralized by the second

16

241

chemical, pancuronium bromide.  As Dr. Mark Heath, Assistant Professor of Clinical

Anesthesia at Columbia University states:

> Sodium thiopental is an ultra short-acting barbiturate.  It would not be used to maintain a patient in a surgical plane of anesthesia for purposes of performing surgical procedures.  It is unnecessary, and risky, to use a short-acting anesthesia in the execution procedure.  If the solution of sodium thiopental comes into contact with another chemical, such as pancuronium bromide, the mixture of the two will cause the sodium thiopental immediately to precipitate or crystallize.  These factors are significant in the risk of the inmate not being properly anesthetized, especially since no-one checks that the inmate is unconscious before the second drug is administered.

Affidavit of Dr. Heath, attached as Exhibit 1.

Concerns about using sodium thiopental are heightened by the lack of medical

personnel, the lack of proper monitoring of the inmate during the process and the lack of

inmate-specific dosing of the barbiturate.  According to Dr. Geiser:

> [T]he dosage of thiopental sodium must be measured with some degree of precision, and the administration of the proper amount of the dosage will depend on the concentration of the drug and the size and condition of the subject.  Additionally, the drug must be administered properly so that the full amount of the dosage will directly enter the subject's blood stream at the proper rate.  If the dosage is not correct, or if the drug is not properly administered, then *it will not adequately anaesthetize the subject, and the subject may experience the untoward effects of the neuromuscular blocking agent. . .*

Exhibit 2, (Geiser Aff.) (emphasis supplied).[4]

---

[4] The problems inherent in Texas' use of sodium thiopental and pancuronium bromide cannot be directly discounted because of TDCJ's sudden administrative decision in 1989 to cease conducting autopsies of executed individuals.  Texas' failure to collect any post-mortem data precludes the State from presenting any direct evidence to argue that the dosage of sodium pentothal injected into the veins of Texas condemned inmates still provides therapeutic levels of sodium pentothal: the terrible specter of inadequate anesthesia can never be ruled out for any Texas condemned inmate.  *But see* Dr. Leonidas G. Koniaris et. al., *Inadequate Anaesthesia in Lethal Injection for Execution*, 365 LANCET 1412 (2005) (finding insufficient levels of anaesthesia in post-mortem studies of executed individuals.)

17

242

Moreover, drug manufacturers warn that without careful medical supervision of dosage and administration, sedatives can cause "paradoxical excitement" and can heighten sensitivity to pain. *See* PHYSICIANS DESK REFERENCE, 50th Ed. (1996) at 438-440. Manufacturers warn against administration by intravenous injection unless a patient is unconscious or out of control. *Id.*

### b.   Pancuronium Bromide

The second chemical involved in the lethal injection process, pancuronium bromide, or Pavulon, is a derivative of curare that acts as a neuromuscular blocking agent. If, as is probable in the Texas execution process, the sedative effect of the sodium thiopental is ineffective or neutralized, the pancuronium bromide would serve only to mask the excruciating pain of the condemned inmate. Pancuronium bromide makes the patient look serene because of its paralytic effect on the muscles. The face muscles cannot move or contract to show pain and suffering. It therefore provides a 'chemical veil' over the proceedings. By completely paralyzing the inmate, pancuronium bromide masks the normal physical parameters that an anesthesiologist or surgeon would rely upon to determine if a patient is completely unconscious and within a proper surgical plane of anesthesia. Because pancuronium bromide is an invisible chemical veil and not a physical veil like a blanket or hood that is easily identifiable, the use of pancuronium bromide in lethal injection creates a double veil. It disguises the fact that there is a disguise over the process.

Exhibit 1, (Heath Aff.).

In *Abdur' Rahman v. Bell*, Dr. Geiser asserted that while Pavulon paralyzes skeletal muscles, including the diaphragm, it has *no effect on consciousness or the perception of pain or suffering*. Administration of Pavulon is "*like being tied to a tree, having darts thrown at you, and feeling the pain without any ability to respond.*" Exhibit 2, (Geiser Aff.) (emphasis added). This assertion is corroborated by the experience of eye surgery patient, Carol Weihrer. During Ms. Weihrer's surgery the sedative she received was ineffectual and Ms. Weihrer was

18

conscious of the entire surgery. Due to the administration of a neuromuscular blocking agent like pancuronium bromide, however, she was unable to indicate her consciousness to doctors:

> I experienced what has come to be known as Anesthesia Awareness, in which I was able to think lucidly, hear, perceive and feel everything that was going on during the surgery, but I was unable to move. It burnt like the fires of hell. It was the most terrifying, torturous experience you can imagine. The experience was worse than death.

Affidavit of Carol Weihrer, attached as Exhibit 3. In short, the second chemical, pancuronium bromide, or Pavulon, in the lethal injection protocol serves no purpose other than to guarantee that the condemned inmate will be forced into a total chemical straightjacket and gag while he consciously experiences the potassium chloride ravaging his internal organs. Persons viewing the lethal injection procedure and the public will never realize that a cruel fraud is being perpetrated upon them: instead of witnessing an inmate quiet and motionless while being "put to sleep," they are in fact witnessing the cover-up of a deliberate act of excruciating torture for which only the inmate is fully conscious.

### c.    Potassium Chloride

Finally, the use of potassium chloride itself raises important Eighth Amendment concerns. James J. Ramsey, a certified perfusionist and currently the Program Director in the Program in Cardiovascular Perfusion at Vanderbilt Medical Center, Nashville, Tennessee, gave a lengthy statement in Abdur Rahman's case regarding the use of potassium chloride in lethal injections. Perfusion involves the study of medicine related to the artificial circulation technologies, including but not limited to the operation of the heart-lung machine, a medical

19

244

device commonly used during open-heart surgeries of all kinds.  The arena involving the

chemical arrest of the heart lies uniquely within the practice of the clinical perfusionist.

      Regarding the administration and efficacy of potassium chloride in the lethal injection

context, Ramsey stated that:

> It is my understanding that during the performance of lethal injection as carried out
> during the death penalty, potassium (and other agents) are administered intravenously to
> the defendant.  Such administration is, in my professional opinion based upon my
> knowledge, training, and experience, and within a reasonable degree of medical certainty,
> *entirely inadequate in order to achieve reasonable cardiac standstill.*  Since the agents are
> introduced intravenously, there will occur an immediate dilution of the solution,
> weakening any potential effect it may have.  By illustration an 80 kilogram person would
> have a blood volume of approximately 5.5 to 6 liters.  An administration of 100 milli-
> equivalents of potassium intravenously to the 80 kilogram person would result in a blood
> concentration of <u>only</u> 16.6 meq/L.  Such a dose is according to scientific literature… and
> as evidenced in my practice, inadequate to achieve cardiac standstill.

> Furthermore, it must be remembered that [in contrast to the administration of
> potassium chloride in the surgical context] such administration is: (1) NOT DIRECTED
> INTO THE CORONARY ARTERIES; (2) DIRECTED ONLY IN AN ANTEGRADE
> FASHION; AND (3) IS AT MORMOTHERMIA (37 degrees Celsius, NOT at five
> degrees Celsius).  Without reasonable data regarding any one person's anatomic and
> pathologic state as to their myocardial function prior to administration of the potassium,
> there can be no reasonable certainty that the potassium solution intended to arrest the heart
> would be distributed in a fashion that would arrest the heart.  Thus, the very orchestrated
> and methodical methods used in surgery should not be thought of as optimizing the arrest
> of the heart, but should be considered to be necessary as the only reasonable means of
> ensuring that the heart is arrested.  If the heart could be arrested by intravenous objections,
> cardiac surgery today would be a very different animal-science and research tells us that
> mere intravenous injection of potassium is not sufficient.

> . . .

> Additionally, in my professional opinion and within a reasonable degree of medical
> certainty, barring an effective cardiac arrest, it is entirely possible that a lethal injection as I
> understand it will serve ONLY to arrest the function of the pulmonary system, thereby
> causing a state of ischemia to the entire body (no oxygen delivery), which, in turn, will
> ultimately arrest the heart as well (with no oxygen delivery to it.) *As a result, the defendant
> is simply suffocated due to lack of oxygen.*

Affidavit of James J. Ramsey (emphasis supplied), in *Abu-Ali Abdur' Rahman v. Bell*, 226 F.3d 696 (6th Cir.2000).

2.      <u>The danger of lethal injection creating unnecessary suffering and torture is greatly increased by the lack of physician involvement in the execution process.</u>

The risk of inflicting severe and unnecessary pain and suffering upon TRAVIS JAMES MULLIS in the lethal injection process is particularly grave in Texas because the meager procedures and protocols designed by TDCJ fail to include safeguards regarding the manner in which the execution is to be carried out. They fail to establish the minimum qualifications and expertise required of the personnel performing the critical tasks in the lethal injection procedure. Finally, they fail to establish appropriate criteria and standards that these personnel must rely upon in exercising their discretion during the lethal injection procedures. For instance, TDCJ execution protocols do not explain what to do in case an IV port cannot be established. The experience of other states teaches that, in such a case, a medically trained person must perform a "cut down" to expose a deeply buried vein, or perform an infraclavicular catheterization, or other invasive medical procedure to facilitate the subsequent lethal injection such as an attempt to establish a port through the carotid enclosure in the neck. In Texas, the physician's services are limited to his or her pronouncing death.

There are no directions and no standards for the necessary training, education, or expertise of the personnel who will be exercising this critical discretion and performing these tasks and duties. TDCJ guidelines totally fail to articulate the criteria or standards that such

21

personnel must rely upon in exercising this discretion.[5]  The consequences of this failure will likely result in the unnecessary and wanton infliction of severe pain and suffering.

Perhaps most importantly, there are no apparent  answers to  critical questions governing a number of crucial tasks and procedures in the lethal injection procedure such as:

(a)   the minimum qualifications and expertise required for the different personnel performing the tasks involved in the lethal injection procedure after the catheter is inserted;

(b)   the methods for obtaining, storing, mixing, and appropriately labeling the drugs, the minimum qualifications and expertise required for the person who will determining the concentration and dosage of each drug to give, and the criteria that shall be used in exercising this discretion;

(c)   the manner in which the IV tubing, three-way valve, saline solution and other apparatus shall be modified or fixed in the event it is malfunctioning during the execution process, the minimum qualifications and expertise required of the person who shall have the discretion to decide to attempt such action, and the criteria that shall be used in exercising this discretion;

(d)   the manner in which the heart monitoring system shall be modified or fixed in the event it is malfunctioning during the execution process, the minimum qualifications and expertise required of the person who shall have the discretion to decide to attempt such action, and the criteria that shall be used in exercising this discretion;

(e)   the manner in which the IV catheters shall be inserted into the condemned prisoner, the minimum qualifications and expertise required of the person who is given the responsibility and discretion to decide when efforts at inserting the IV catheters should be abandoned and the cut down procedure begun, and the criteria that shall be used in exercising this discretion;[6]

---

[5]   The protocols also fail to provide any direction regarding how TDCJ  is to obtain these controlled substances in a manner that insures the drugs are effective, how to store the drugs in a manner to keep them effective, how to "mix" the drugs, or how to store and label the drugs once they have been prepared and transported to the execution chamber.

[6]*See* Deborah Denno, *When Legislatures Delegate Death: The Troubling Paradox Behind State Uses of Electrocution and Lethal Injection and What It Says About Us*, 63 OHIO ST. L.J. 63, n.

22

247

(f)    the manner in which the condition of the condemned prisoner will be monitored to confirm that proceeding to the next procedure would not inflict severe and unnecessary pain and suffering on the condemned prisoner;

(g)    the minimum qualifications and expertise required of the person who is given the responsibility and discretion to order the staff to divert from the established protocols if necessary to avoid inflicting severe and unnecessary pain and suffering on the condemned prisoner, and the criteria that shall be used in exercising this discretion; and

(h)    the minimum qualifications and expertise required of the person who is given the responsibility and discretion to insure that appropriate procedures are followed in response to unanticipated problems or events arising during the lethal injection procedure, and the criteria that shall be used in exercising this discretion.

This disturbing lack of outlined medical procedure and personnel in Texas contributes in part to the numerous execution errors in Texas. *See, e.g.,* Deborah Denno, *When Legislatures Delegate Death: The Troubling Paradox Behind State Uses of Electrocution and Lethal Injection and What It Says About Us*, 63 OHIO ST. L.J. 63, 111 (February 2002) (quoting Fred Leuchter, "the highly controversial and later-discredited creator of much, if not most, of the execution

---

324 (February 2002) (citing Thomas O. Finks, Lethal Injection: An Uneasy Alliance of Law and Medicine, 4 J. LEGAL MED. 383, 397 (1983) (explaining that "(l)ethal injections may not work effectively on diabetics, drug users, and people with heavily pigmented skins"); Harold L. Hirsh, Physicians as Executioners, LEGAL ASPECTS OF MED. PRAC., Mar. 1984, at 1 (noting that "if a person is nervous or fearful, his veins become constricted"); *On Lethal Injections and the Death Penalty*, 12 HASTINGS CENTER REP. 2, 2 (Oct. 1982) (explaining that lethal injections are particularly difficult to administer "to people with heavily pigmented skins . . . and to diabetics and drug users"); Jacob Weisberg, *This is Your Death: Capital Punishment: What Really Happens,* NEW REPUBLIC, July 1, 1991, at 23 (describing the 45 minutes required for technicians to find a serviceable vein in a former heroin addict); Another U.S. Execution Amid Criticism Abroad, N.Y. TIMES Apr. 24, 1992, at B7 (reporting that the difficulty in executing Billy Wayne White was due to his history as a heroin user).)

23

equipment in this country," as admitting that "'about eighty percent' of the lethal injections in

Texas "have had one problem or another.")

Some of the previous errors in Texas executions include:[7]

    !    **Stephen Peter Morin** – March 13, 1985 – "Technicians" punctured him repeatedly in both arms and legs for 45 minutes before they found a suitable vein.

    !    **Randy Woolls** – August 20, 1986 -- A drug addict, Woolls had to help the executioner technicians find a good vein for the execution.

    !    **Elliot Johnson** – June 24, 1987 – Executioners struggled for 35 minutes to insert the catheter into his veins.

    !    **Raymond Landry** – December 13, 1988 – Pronounced dead 40 minutes after being strapped to the execution gurney and 24 minutes after the drugs first started flowing into his arms.  Two minutes into the killing, the syringe came out of Landry's vein, spraying the deadly chemicals across the room toward the witnesses.  The execution team had to reinsert the catheter into the vein.  The curtain was drawn for 14 minutes so witnesses could not see the intermission.

    !    **Stephen McCoy** – May 24, 1989 – Had such a violent physical reaction to the drugs (heaving chest, gasping, choking, etc.) that one of the witnesses (male) fainted, crashing into and knocking over another witness.  Houston attorney Karen Zellars, who represented McCoy and witnessed the execution, thought that the fainting would catalyze a chain reaction.  The Texas Attorney General admitted the inmate "seemed to have a somewhat stronger reaction," adding "The drugs might have been administered in a heavier dose or more rapidly."

    !    **Billy Wayne White** – April 23, 1992 – It took 47 minutes for authorities to find a suitable vein, and White eventually had to help.

    !    **Justin Lee May** – May 7, 1992 – May had an unusually violent reaction to the lethal drugs.  According to Robert Wernsman, a reporter for the Item (Huntsville), Mr. May "gasped, coughed and reared against his

---

[7]Sources for this information include: Michael Radelet, "On Botched Executions" Peter Hodgkinson and William Schabas (eds.), *Capital Punishment: Strategies for Abolition* (Cambridge University Press, 2001) and Stephen Trombley, *The Execution Protocol*, (1992).

heavy leather restraints, coughing once again before his body froze . . ." Associated Press reporter Michael Graczyk wrote, "He went into coughing spasms, groaned and gasped, lifted his head from the death chamber gurney and would have arched his back if he had not been belted down. After he stopped breathing his eyes and mouth remained open."

! **Joseph Cannon** – April 22, 1998 – After his final statement, the execution commenced. A vein in Cannon's arm collapsed and the needle popped out. Seeing this, Cannon lay back, closed his eyes, and exclaimed to the witnesses, "It's come undone." Officials then pulled a curtain to block the view of witnesses, reopening it fifteen minutes later when a weeping Cannon made a second final statement and execution process resumed.

**3.    Euthanasia Practices that Include the Use of a Sedative in Conjunction with a Neuromuscular Blocking Agent Violate Evolving Standards of Decency.**

Recent legislative changes regarding pet euthanasia cast serious doubt as to whether the Texas execution protocol passes constitutional muster. Since 1981, at least nineteen states, including Texas, have passed laws that preclude the use of a sedative in conjunction with a neuromuscular blocking agent. Moreover, in the year 2000, the leading professional association of veterinarians promulgated guidelines for euthanasia that preclude the practice. Those guidelines specifically state that "[a] combination of pentobarbital with a neuromuscular blocking agent is not an acceptable euthanasia agent." *See* AVMA Panel on Euthanasia, *2000 Report of the American Veterinary Medical Association Panel on Euthanasia*, 218 JAVMA, 669, 680 (2001), attached as Exhibit 4. A euthanasia practice widely considered unfit for a dog is certainly unfit for humans as well, especially in light of the fact that the State may easily accomplish the same result with a more humane combination of chemicals. Given the consistency in the statutory regulation of euthanasia, the method currently practiced by the State of Texas is outside the bounds of evolving standards of decency.

25

Texas recently passed legislation mandating inhumane methods of euthanizing animals which precludes the use of neuromuscular blocking agents such as pancuronium bromide. TEX. HEALTH & SAFETY CODE Article 821.052(a), (b) (specifically prescribing the methods of euthanasia for cats and dogs in the custody of animal shelters and requiring that shelters euthanize all other animals "only in accordance with the applicable methods, recommendations, and procedures set forth in the 2000 Report of the American Veterinary Medical Association Panel on Euthanasia . . . ."). With this legislation, Texas has joined numerous states with laws recognizing that use of these chemicals would be inhumane in the euthanasia of dogs and cats. *See* Florida, FLA. STAT. §§ 828.058 and 828.065 (enacted in 1984); Georgia, GA. CODE ANN. § 4-11-5.1 (enacted in 1990); Maine, ME. REV. STAT. ANN., tit. 17, § 1044 (enacted in 1987); Maryland, MD. CODE ANN. Criminal Law, § 10-611 (enacted in 2002); Massachusetts, MASS. ANN. LAWS ch. 140, § 151A (enacted in 1985); New Jersey, N.J. STAT. ANN. § 4:22-19.3 (enacted in 1987); New York, N.Y. AGRIC. & MKTS LAW § 374 (enacted in 1987); Oklahoma, OKLA. STAT. tit. 4, § 501 (enacted in 1981); Tennessee, TENN. CODE ANN. § 44-17-303 (enacted in 2001). Other States have implicitly banned such practices. *See* Illinois, 510 ILL. COMP. STAT. 70/2.09 (2005); Kansas, KAN. STAT. ANN. § 47-1718(a) (2005); Louisiana, LA. REV. STAT. ANN. § 3:2465 (2005); Missouri, 2 CSR 30-9.020(F)(5) (2005); Rhode Island, R.I. GEN. LAWS § 4-1-34 (2005), Connecticut, CONN. GEN. STAT. § 22-344a (2005); Delaware, DEL. CODE ANN. tit. 3, § 8001 (2005); Kentucky, KY. REV. STAT. ANN. § 321.181(17) (2004); South Carolina, S.C. CODE ANN. § 47-3-420 (2004).

In addition to explicitly forbidding the use of sedatives with a neuromuscular blocking agent, the American Veterinary Medical Association stressed that only personnel trained and

26

251

knowledgeable in anesthetic techniques should administer potassium chloride (the third drug in

Texas' lethal injection) in conjunction with any anesthesia:

> [i]t is of utmost importance that personnel performing this technique are trained and
> knowledgeable in anesthetic techniques, and are competent in assessing anesthetic depth
> appropriate for administration of potassium chloride intravenously. Administration of
> potassium chloride intravenously requires animals to be in a surgical plane of anesthesia
> characterized by loss of consciousness, loss of reflex muscle response, and loss of
> response to noxious stimuli.

Exhibit 4, (*AVMA Report*) at 681.   The statutes in at least five other states, in addition to Texas,

expressly reference the AVMA guidelines when delimiting humane methods of animal

euthanasia. Illinois, 510 ILL. COMP. STAT. 70/2.09 (2005); Kansas, KAN. STAT. ANN. § 47-

1718(a) (2005); Louisiana, LA. REV. STAT. ANN. § 3:2465 (2005); Missouri, 2 CSR 30-

9.020(F)(5) (2005); Rhode Island, R.I. GEN. LAWS § 4-1-34 (2005).

"A claim that punishment is excessive is judged not by the standards that prevailed in

1685 when Lord Jeffreys presided over the 'Bloody Assizes' or when the Bill of Rights was

adopted, but rather by those that currently prevail." *Atkins v. Virginia*, 536 U.S. 304, 311 (2002).

The scope of the substantive protections afforded by the Eighth Amendment, as the *Atkins* Court

reiterated, is defined by "evolving standards of decency that mark the progress of a maturing

society." *Id.* at 312 (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). The *Atkins* Court re-

emphasized that evolving standards of decency are best reflected in the various relevant laws

enacted throughout the country:

"Proportionality review under those evolving standards should be informed by 'objective factors

to the maximum possible extent,' We have pinpointed that the 'clearest and most reliable

objective evidence of contemporary values is the legislation enacted by the country's

27

legislatures.'" Id. (internal citations omitted). Moreover, "[i]t is not so much the number of these States that is significant, but the consistency of the direction of change." *Id.* at 315.

The unmistakable trend over the past two decades of condemning the use of neuromuscular blocking agents, such as pancuronium bromide, in euthanasia is clear evidence that the practice violates the Eighth Amendment ban on cruel and unusual punishment. These recent alterations of euthanasia protocols for pets underscore the inhumanity of the chemicals currently used in Texas. It can hardly be disputed that if certain euthanasia techniques are banned as overly cruel to animals, those same practices must violate our current standards of decency regarding the execution of humans.

CONCLUSION AND PRAYER FOR RELIEF

Wherefore, premises considered, the accused, TRAVIS JAMES MULLIS, respectfully requests that this Court:

    1. Hold Texas' capital punishment statute to be unconstitutional because its current method of lethal injection is prohibited by the Eighth Amendment to the UNITED STATES CONSTITUTION; and/or

2. Hold Texas' capital punishment statute to be unconstitutional because its current method of lethal injection violates Article 1, section 13 of the TEXAS CONSTITUTION; and/or

3. Preclude the use of the current lethal injection protocol to execute TRAVIS JAMES MULLIS because it violates prevailing international law and, specifically, the Convention Against Torture and other Cruel, Inhuman or Degrading Treatment or Punishment, to which the United States is a signatory; and

28

4. For other and further relief to which TRAVIS JAMES MULLIS may be entitled in law or in equity.

Respectfully submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorneys' Office, on _____, 2010.

**ROBERT K. LOPER**

29

0333

CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

JASON E. MURRAY
CLERK, DISTRICT COURT
FILED
By Court
JAN 2 0 2011
GALVESTON COUNTY, TEXAS
BY_____
DEPUTY

**ORDER**

BE IT REMEMBERED, that on the ___20___ day of ___Jan.___ ,

2010, came to be considered the Defendant's **MOTION TO DECLARE THE DEATH
PENALTY UNCONSTITUTIONAL BASED ON TEXAS' LETHAL INJECTION
PROTOCOL.** The court is of the opinion the motion should be in all things:

GRANTED _____

DENIED ___✓___

_John Ellison_

JUDGE PRESIDING

30

255

0333

## CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## MOTION FOR HEARING ON ADMISSIBILITY OF ANY STATEMENT BY DEFENDANT WHETHER WRITTEN OR ORAL OR EVIDENCE RESULTING FROM SAME

### TO THE HONORABLE JUDGE OF SAID COURT:

Now comes, Robert K. Loper and Gerald Bourque, Attorneys for the Accused, TRAVIS JAMES MULLIS, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution, and further pursuant to Tex. Code Crim. Proc. art. 28.01 and respectfully requests the Court to hold a hearing, in advance of the trial, on the admissibility of:

(a) statements made by the Defendant;

(b) acts that are tantamount to statements made by the Defendant;

(c) statements made in the presence of the Defendant which Defendant did not deny in response; or

(d) any physical items, statements or witnesses obtained as a result of same, or evidence/testimony discovered from same. In support of this Motion, Defendant respectfully shows the Court as follows:

256

1.  Defendant makes this request based upon the Constitutional provisions cited above and Tex. Code Crim. Proc. art. 38.21, 38.22 and 38.23 and the requirements of *Jackson v. Denno*, 378 U.S. 368, as well as the doctrine of the fruit of the poison tree of *Wong Sun v. United States*, 371 U.S. 471 (1963).

2.  Defendant further alleges that at the time of various conversations with certain police officers, the Defendant was either under arrest or substantially deprived of Defendant's freedom by the attendant conduct of the officers and the surrounding circumstances.

3.  In addition, Defendant would show that said statements and/or acts were the fruit of illegal arrest and/or search and seizure, and are therefore inadmissible.

4.  This motion is sought by the defendant as a continuing motion to suppress any and all statements or acts.  It is sought to suppress evidence as the same exists at the time of the hearing on this motion to suppress, or at any time during trial when evidence appears, subsequent to the initial suppression hearing, to be the subject of this motion.  Defendant moves this honorable court to consider this motion as continuing from the date of filing to the time this case is finally concluded.

5.  Defendant further requests the Court to instruct the District Attorney and his assistants to ask no questions in the presence of the jury concerning:

    (a)  statements made by the Defendant;

(b) acts or the failure to act that may be considered tantamount to statements made by the Defendant; and

(c) statements made in the presence of Defendant which he did not deny in response, whether oral or written, or whether incriminating or exculpatory until hearing has been given the Defendant with findings of fact and conclusions of law made by this Court.

6. It is further urged, that this hearing be held prior to the empaneling of the jury. The jury would not then be needlessly idle during the time that this Motion would be heard outside the presence of the jury. This reasoning was endorsed by the Court of Criminal Appeals in *Martinez v. State*, 437 S.W.2d 842 in a parallel suppression situation.

7. Furthermore, a hearing on this Motion in advance of trial will avoid misleading and potentially harmful *voir dire* regarding the prospective jurors' attitudes toward a confession that may found to be inadmissible.

**WHEREFORE, PREMISES CONSIDERED**, Defendant respectfully requests that this Motion be in all things granted, and that a hearing be conducted prior to trial on the admissibility of any statements by Defendant, at the conclusion of which, such statements by Defendant be found to be inadmissible.

Respectfully submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorneys' Office, on _____, 2010.

**ROBERT K. LOPER**

259

0333

## CAUSE NO. 08-3872

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

### ORDER

BE IT REMEMBERED, that on the _____ day of _____, 2010, came

to be considered the defendant's **MOTION FOR HEARING ON ADMISSIBILITY OF ANY**

**STATEMENT BY DEFENDANT WHETHER WRITTEN OR ORAL OR EVIDENCE**

**RESULTING FROM SAME.** The court is of the opinion the motion should be in all things:


     GRANTED   _____

     DENIED   _____


                                _____

                                  **JUDGE PRESIDING**

0333

**CAUSE NO. 08-~~3872~~**

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

### MOTION PRECLUDE THE OFFER OF EVIDENCE OF EXTRANEOUS OFFENSES (RING V. ARIZONA)

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, Robert K. Loper and Gerald Bourque, Attorneys for the accused, TRAVIS JAMES MULLIS, and pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 3, 10, 13 and 19 of the Texas Constitution, moves this Court to preclude the offer of extraneous offenses during any penalty phase of this case because of the constitutionally defective indictment against him. In support of his motion, Mr. Mullis states as follows:

1. Mr. Mullis was indicted for the offense of capital murder. The State is seeking the death penalty.

2. The Eight Amendment requires a greater degree of accuracy and fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333 (1993); *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). The courts of this state are bound by the law to make certain that a death sentence is not wantonly or freakishly imposed and that the purposes of Art. 37.071

1

261

are accomplished in a constitutional manner. *Ellason v. State*, 815 S.W.2d 656 (Tex. Crim. App. 1991).

3.  The maximum penalty for the offense of capital murder is life without parole. Tex. Penal Code § 12.31 ( 2005). It is only when the state seeks the death penalty that the prescribed statutory maximum can be exceeded and then only if the jury concludes, beyond a reasonable doubt, that "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc. Ann. art. 37.071, § 2(b)(1) (West 2002). The Texas legislature has created two offenses: (1) a Capital Felony where the state seeks the death penalty, and (2) a Capital Felony where the state does not seek the death penalty. Tex. Penal Code § 12.31(a) (2005).

4.  Mr. Mullis has the constitutional right to be accused of Capital Murder only on an indictment of a grand jury. Tex. Const. art I, § 10 ("no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary"); *Cook v. State*, 902 S.W.2d 471, 475 (Tex. Crim. App. 1995) (holding that Texas Constitution guarantees right to indictment by grand jury for all felony offenses). Further, Mr. Mullis has the right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, sections 10, 13, and 19 of the Texas Constitution, to be informed of the specific nature of the accusations against him. *See In re Oliver*, 333 U.S. 257, 273 (1948) ("A person's right to reasonable notice

2

262

of a charge against him, and an opportunity to be heard in his defense ... are basic in our system of jurisprudence...").

5.   Indictment by grand jury protects citizens against arbitrary accusations by the government. *King v. State*, 473 S.W.2d 43, 45 (Tex. Crim. App. 1971). The most "celebrated purpose" of the grand jury "is to stand between the government and the citizen" and protect individuals from the abuse of arbitrary prosecution. *United States v. Mara*, 410 U.S. 19, 33 (1973).

6.   An indictment is essential to vest the trial court with jurisdiction. Tex. Const. art. V, § 12(b); *Cook*, 902 S.W.2d at 475. The purpose of an indictment is to provide notice of the charged offense so that the presumptively innocent accused may prepare, before trial, an informed and effective defense. *Riney v. State*, 28 S.W.3d 561, 565 (Tex. Crim. App. 2000). "The accused is not required to anticipate any and all variant facts the State might hypothetically seek to establish." *Brasfield v. State*, 600 S.W.2d 288, 295 (Tex. Crim. App. 1980) (overruled on other grounds by *Janecka v. State*, 739 S.W.2d 813, 819 (Tex. Crim. App. 1987)).

7.   Therefore, an indictment must aver all the elements of the crime with which it charges. *Campbell v. State*, 5 S.W.3d 693, 701 (Tex. Crim. App. 1999); *Garcia v. State*, 981 S.W.2d 683, 685 (Tex. Crim. App. 1998) ("[A]n indictment must allege, in plain and intelligible language, all the facts and circumstances necessary to establish all the material elements of the offense charged."); *Ward v. State*, 829 S.W.2d 787, 794 (Tex. Crim. App. 1992) (overruled on other

3

grounds, *Riney*, 28 S.W.3d at 566); *Labelle v. State*, 720 S.W.2d 101, 110 (Tex. Crim. App. 1986); *Ex parte County*, 577 S.W.2d 260, 261 (Tex. Crim. App. 1979); *Benoit v. State*, 561 S.W.2d 810, 813 (Tex. Crim. App. 1977); *State v. Draper*, 940 S.W.2d 824, 826 (Tex. App.—Austin 1997); *cf. Hamling v. United States*, 418 U.S. 87, 117 (1974). Indeed, the Texas Legislature has mandated that an indictment must contain all material elements of the offense charged: "Everything should be stated in an indictment which is necessary to be proved." Tex. Code Crim. Proc. Ann. art. 21.03 (West 2002); *see also* Tex. Code Crim. Proc. Ann. art. 21.11 (West 2002).

8. In the past, Texas courts have rejected the contention that, where the State seeks the death penalty, the failure of the capital murder indictment to allege the punishment criteria—the special issues for the jury, mandated by Article 37.071, section 2(b), of the Texas Code of Criminal Procedure—renders a subsequent death sentence constitutionally invalid. *See, e.g., Moore v. State*, 969 S.W.2d 4, 13 (Tex. Crim. App. 1998).

9. Those courts justified their holdings with two arguments. First, the courts reasoned that since the purpose of an indictment is to provide notice, the punishment special issues need not be alleged in the indictment because "the very fact of a capital murder indictment places the defendant on notice that conviction will result in either life imprisonment or the death penalty" *Aranda v. State*, 640 S.W.2d 766, 770 (Tex. App.—San Antonio 1982); *see also, Moore*, 969 S.W.2d at 13; *Callins v. State*, 780 S.W.2d 176, 187 (Tex. Crim. App. 1986) ("a defendant who is charged under capital murder indictment is effectively put on notice that the special questions

4

under Article 37.071, . . . will be issues in the case and that such procedural provisions need not be alleged in the indictment") (citations omitted); *Castillo v. State*, 739 S.W.2d 280, 298-99 (Tex. Crim. App. 1987); *Vigneault v. State*, 600 S.W.2d 318, 330 (Tex. Crim. App. 1980) (observing that "the fact that the issues to be submitted to the jury are in every capital case identical and wholly independent of the varying fact situations which may come to trial places the capital defendant in a substantially different posture as regards notice thereof, from that of a civil litigant," and therefore holding that the failure to allege the special issues in the indictment did not deprive the appellant of notice) (footnote omitted).

9.   The argument that capital defendants are already provided all the notice constitutionally required of the punishment special issues by a capital murder indictment that does not allege the facts to support the issues cannot seriously be maintained. With respect to Mr. Mullis's rights under the Texas Constitution, that notice must "come from the face of the indictment. Indeed the accused is not required to look elsewhere." *Ward*, 829 S.W.2d at 794; *Labelle*, 720 S.W.2d at 110 (observing that Article I, section 10, of the Texas Constitution requires that notice must come from the face of the indictment); *Benoit*, 561 S.W.2d at 813 (holding that defendant's knowledge of the offense with which he was charged does not obviate inquiry into whether the charge, in writing, furnished that information in plain and intelligible language). An indictment that does not allege, for example, that a probability exists that Mr. Mullis would commit criminal acts of violence that constitutes a "continuing threat to society" fails to provide notice of that accusation from its face.   Likewise, an indictment that fails to allege that no circumstance exists that would justify a life sentence fails to provide notice of that

5

allegation.    Mr. Mullis is not clairvoyant; he cannot use the indictment sworn out against him as a crystal ball to read the prosecutor's mind and foresee the State's intention to prove at trial that Mr. Mullis is a "continuing threat to society" and that there is nothing that will justify a life sentence.


10.    The clear purpose of the state in offering evidence of extraneous offenses is to convince the jurors that each should agree to elevate the level of the Defendant's punishment above the maximum of life, and return a verdict of death.    The extraneous offenses are used by the state as "non-statutory aggravators" which function as the equivalent of an element of a greater offense.  *Ring*, 122 S. Ct.at 2443.  The relevant inquiry is one of form, but of effect. *Apprendi*, 530 U.S. at 494.

It doesn't make any difference what you call them, it is what effect they have on the sentencing process.  Accordingly, evidence of extraneous offenses must be presented to the grand jury, and if true billed the extraneous offenses must be alleged in the indictment.  At trial, each of them must be submitted to the jury and proven beyond a reasonable doubt.  *Jones v. United States*, 526 U.S. 227, 243, n.6. (1999)  However, the indictment returned by the grand jury against this defendant fails to allege any extraneous offenses that the jurors may be asked to consider in determining if the level of punishment should be raised above the maximum. Therefore, this court should preclude the state from offering evidence of extraneous offenses.


11.  The Texas Court of Criminal Appeals has held that a capital defendant is not entitled to notice (absent unfair surprise) of the state's intent to offer extraneous offenses at the

6

punishment phase under either article 37.07 or rule 404(b) because neither of these provisions applies to the punishment phase of a capital trial. This penalty phase is instead governed by Article 37.071 and Rule 404(c), neither of which have notice requirements. *Guidry v. State*, 9 S.W.3d 133,153 (Tex. Crim. App. 1999). This result oriented opinion in *Guidry*, not only fails to provide justification for further depriving the Defendant of due process and equal protection of the laws, but it also fails to provide justification for the prosecutors who fail to properly give notice to an accused by indictment   This ruling (and many others of the Court of Criminal Appeals) cannot stand under the weight of *Jones, Apprendi and Ring*.

**WHEREFORE, PREMISES CONSIDERED**, Mr. Mullis prays that this Court preclude the death penalty as a sentencing option in this case.

Respectfully submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

7

267

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same on _March 8_, 2010.

ROBERT K. LOPER

0333

## CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

JASON E. MURRAY
CLERK DISTRICT COURT
FILED
Pay Court
JAN 2 0 2011
GALVESTON COUNTY, TEXAS
BY_____
DEPUTY

## ORDER

BE IT REMEMBERED, that on the 20 day of _____Jan._____,

2011, came to be considered the Defendant's **MOTION PRECLUDE THE OFFER OF EVIDENCE OF EXTRANEOUS OFFENSES (RING V. ARIZONA).** The court is of the opinion the motion should be in all things:

GRANTED   _____

DENIED    ___✓___

John Ellison

JUDGE PRESIDING

9

0333

**CAUSE NO. 08-3872**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## MOTION TO PROHIBIT COMMENT ON THE WEIGHT TO BE GIVEN OR CREDIBILITY OF TESTIMONY DURING TRIAL

**COMES NOW**, TRAVIS JAMES MULLIS, the Defendant, by counsel, and pursuant to 5th, 6th, 8th and 14th Amendments to the United States Constitution, Article 1, Sections 3, 10, 13, 19 and 29 of The Texas Constitution and Tex. Code. Crim. Proc. arts. 1.03, 1.04, 1.05, 38.04 and 38.05 and moves the Court to refrain from commenting on the weight to be given to evidence and in particular the credibility of testimony of any witness for the State or Defendant and in support thereof would show:

1. The Defendant has been indicted by the county grand jury for capital murder.

2. The State is seeking the death penalty. The Eighth Amendment to the United States Constitution requires a greater degree of accuracy and fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993); and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

3. Upon information and belief, the Defendant anticipates that the State will offer testimony from a witness who will attempt to offer one or more opinions pursuant to Tex. R. Evid. 702.

4. A determination by the Court that any witness who testifies for the State or the Defendant is an expert should be made outside of the hearing of the jury. Announcing to

1

270

the jury that a witness is accepted by the Court as an "expert" is an inappropriate and
unfair comment by the Court on the credibility of the testimony and the weight that
should be given to testimony by the witness and violates Tex. Code Crim. Proc. arts.
38.04 and 38.05. "Consequently, a jury more readily accepts the opinion of an expert
witness as true simply because of her or her designation as an expert." *Gammill v. Jack
Williams Chevrolet, Inc.*, 972 S.W.2d 713, 722 (Tex. 1998) (citing *E.I. du Pont de
Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995); *see also, Flores v. Johnson*,
210 F.3d 456, 465-6 (5th Cir. 2000) (Garza, J. specially concurring) "the problem here is
not the introduction of one man's opinion on another's future dangerousness, but the fact
that the opinion is introduced by one whose title and education [not to mention
designation as an 'expert'], gives him significant credibility in the eyes of the jury as one
whose opinion comes with the imprimatur of scientific fact.

5. Tex. Code Crim. Proc. art. 38.04 provides, in part:

> "[t]he jury is the **exclusive** judge of the facts proved, and of the weight to be given
> to the testimony...". (emphasis added)

6. Tex. Code Crim. Proc. art. 38.05 provides in part:

> "In ruling upon the admissibility of evidence, the judge shall not discuss or
> comment upon the weight of the same or its bearing in the case, **but shall simply
> decide whether or not it is admissible**..." (emphasis added)

**WHEREFORE, PREMISES CONSIDERED,** Movant prays that upon hearing herein,
this Court make its Order that any determination that a particular witness qualifies as an "expert"
shall be made outside of the presence of the jury. Further, that the Defendant have such other

2

relief as he may show himself to be justly entitled.

Respectfully submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same on March 8 2010.

**ROBERT K. LOPER**

3

0333

**CAUSE NO. 08-3872**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

JASON E. MURRAY
CLERK DISTRICT COURT
FILED
Dip Court
JAN 2 0 2011
GALVESTON COUNTY, TEXAS
BY
DEPUTY

**ORDER**

BE IT REMEMBERED, that on the 𝟸𝟶 day of _____ Jan ._____,

2010, came to be considered the **MOTION TO PROHIBIT COMMENT ON THE WEIGHT**

**TO BE GIVEN OR CREDIBILITY OF TESTIMONY DURING TRIAL.** The court is of

the opinion the motion should be in all things:

**GRANTED** _____

**DENIED** _____

_____
**JUDGE PRESIDING**

4

272

0333

**CAUSE NO. 08-3872**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

### MOTION IN LIMINE
### (Guarantee of No Violence)

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, TRAVIS JAMES MULLIS, Defendant, by and through his attorneys of record, and pursuant to Rule 104 of the Texas Rules of Evidence and the 5th, 6th, 8th, and 14th Amendments to the United States Constitution and Article 1, Sections 1, 3, 10, 13, 19 and 29 of the Texas Constitution and Tex. Code Crim. Proc. arts. 1.05 and 1.09 and makes this his Motion in Limine. In support thereof, Defendant would show:

1. The Defendant has been indicted for capital murder.

2. The state is seeking the death penalty. The Eighth Amendment to the United States Constitution requires a greater degree of accuracy, fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993); and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

3. It is the duty of this Court and the Texas Court of Criminal Appeals to make certain that the death sentence is not "wantonly or freakishly" imposed and that the purposes of Art. 37.071 are accomplished. *Ellason v. State*, 815 S.W.2d 656 (Tex. Crim. App. 1991).

4. A fact ("future dangerousness") that increases the penalty for a crime beyond the prescribed statutory maximum( a sentence of LWOP-40 increased to death) must be alleged in

1

274

the indictment and proved to the jury beyond a reasonable doubt. *Jones v. United States* 526 U.S. 227 (1999); *Apprendi v. New Jersey*, 530, U.S.466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). In *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002), the Supreme Court held that the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), applies to capital cases.

5.   The burden is on the state to prove, beyond a reasonable doubt, that a probability exists that the accused will commit criminal acts of violence that will constitute a continuing threat to society.   Any attempt by the State, to shift that burden, whether it be through the introduction of evidence, direct or cross examination of witnesses or argument to the jury is a violation of the rights of the accused as guaranteed by the 5th, 6th, 8th and 14th Amendments to the United States Constitution.

6.   Just as a juror would be challengeable for cause because he would assign a burden (or greater or lesser burden) to the State or Defendant than is provided by the law so too is it improper when a prosecutor attempts to confuse the jury by improperly imputing a burden to the defense through its cross-examination of a defense witness.

7.   Just as it would be improper for a judge in his or her charge to the jury, to improperly assign to a party a burden that is contrary to the law, so too is it improper when a prosecutor attempts to confuse the jury by improperly imputing a burden to the defense through its cross-examination of a defense witness.

8.   The Defendant anticipates that a prison classification witness will be called to testify should this case proceed to the mitigation phase.   This witness will, among other things describe the classification, security and safety policies within TDCJ for an inmate who has been convicted of capital murder.   This witness cannot "guarantee" or "insure" to the jury that this defendant or

2

any other defendant will not commit some act of violence in the future. Not only is this not within the capability of this witness, it is not relevant to the issues as they are framed by Art. 37.071. The jury must decide if there is a "probability" that the defendant will commit criminal acts of violence that will constitute a continuing threat to society. Therefore, any questioning concerning violence within TDCJ should be limited to the "probability" of any such violence occurring.

9. Any cross-examination wherein the witness is asked if he can "guarantee" or "insure" or similar language will not only serve to confuse the jury and the issue, but will be an impermissible shifting of the burden to the defendant, all in violation of the Constitutional protections cited above.

**WHEREFORE, PREMISES CONSIDERED,** Defendant prays that this Motion be sustained and relief be granted by appropriate Order.

Respectfully submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

3

276

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has

been hand delivered to the District Attorney's Office, on _____ , 2010.

ROBERT K. LOPER

4

277

0333

### CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

JASON E. MURRAY
CLERK DISTRICT COURT
FILED
Pay Court
JAN 2 0 2011
GALVESTON COUNTY, TEXAS
BY_____
DEPUTY

### ORDER

BE IT REMEMBERED, that on the ___20___ day of ___Jan._____,

2010, came to be considered the foregoing **MOTION IN LIMINE (Guarantee of No**

**Violence).**

After consideration, the court has determined that the motion shall be, and is hereby,

_____ GRANTED.

___✓___ DENIED.

SIGNED the ___20___ day of _____Jan._____, 2010.

_____
**JUDGE PRESIDING**

5

278

0333

## CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

### MOTION IN LIMINE
#### (Victim Impact Type Evidence)

## TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, TRAVIS JAMES MULLIS, Defendant, by and through his attorneys of record, and pursuant to Rule 104 of the Texas Rules of Evidence and the 5th, 6th, 8th, and 14th Amendments to the United States Constitution and Article 1, Sections 1, 3, 10, 13, 19 and 29 of the Texas Constitution and Tex. Code Crim. Proc. arts. 1.05 and 1.09 and makes this his Motion in Limine. In support thereof, Defendant would show:

1. The Defendant requests that this Court order the State and its counsel, witnesses, and agents, to refrain from making any mention, reference, argument, or interrogation, either directly or indirectly, in any manner whatsoever, concerning any of the matters hereinafter set forth. In the alternative, Movant asks the Court to instruct the aforesaid individuals by appropriate order to refrain from making any such motion, reference, argument, or interrogation without first approaching the Bench and obtaining a ruling from the Court. The Court should further order that any argument as to the admissibility of any of the evidence set out below should be made outside of the presence of both prospective jurors and those jurors who are sworn to hear this case.

1

2.  The State and its counsel, witnesses and agents, during the **guilt/innocence** phase of this trial, are not to allude to any evidence regarding the physical or psychological effect of the alleged crime on victims or their families or friends, including, but not limited to, any testimony that could be considered as "victim impact" as defined in *Lane v. State*, 822 S.W.2d 35, 41 (Tex. Crim. App. 1991). Such evidence does not make more or less probable any fact that is of consequence during the **guilt/innocence** phase of the trial. *Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990).

3.  Further, the State, its witnesses and agents should be prevented by Order of this court from offering, at  the guilt/innocence **OR** the penalty phase of the trial, any characterizations or opinions about the crime, the Defendant or the appropriate sentence. *Booth v. Maryland*, 482 U.S. 496 (1987) (overruled) and *Payne v. Tennessee*, 501 U.S. 808 (1991) or any evidence that tends to measure the worth of the victim as compared to other members of society. *Mosley v. State*, 983 S.W.2d 249, 262 (Tex. Crim. App. 1998); *accord Jackson v. State*, 992 S.W.2d 469, 480 (Tex. Crim. App. 1999).

4.  Prior to the offer of any evidence, the court should perform an analysis under Rule 403 of the Texas Rules of Evidence to determine if the evidence is relevant. If the evidence is found not to be relevant, it should be inadmissible. If the evidence is found to be relevant, the Court should determine if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice, confusion or the issues or misleading the jury. This analysis should consider the (a) nature of the testimony, (b) the relationship between the witness and the victim, (c) the amount of testimony to be

2

280

introduced, (d) the availability of other testimony relating to victim impact and character and (e) mitigating evidence introduced by the defendant. Further, the Court should prevent evidence that is cumulative and place appropriate limits upon the amount, kind and source of victim impact and character evidence *Mosley*, 983 S.W.2d at 262. Specifically, the Court should preclude the use of friends and family to prove facts which can be established through less prejudicial witnesses. As to "victim impact" evidence that is found to be relevant, the Court should appropriately instruct the jury on the limited purpose for which each juror may consider that evidence.

5. Further, the State should be precluded from offering, at any time during the course of this trial, any "victim impact" evidence from an alleged victim of an offense for which the Defendant is not indicted in this cause. Such "extraneous victim impact evidence" is irrelevant to the special issues under Rule 401 of the Texas Rules of Evidence and Tex. Code Crim. Proc. art. 37.071. The danger of unfair prejudice from such evidence is unacceptably high. *Cantu v. State*, 939 S.W.2d 627, 635-38 (Tex. Crim. App. 1997).

6. So as to provide the Defendant with effective assistance of counsel and due process of law, as guaranteed to him by the 6th and 14th Amendments to the United States Constitution and Article 1, Sections 10 and 13 of the Texas Constitution and Art. 1.09 of the Tex. Code Crim. Proc., the Defendant moves the Court to require the prosecutor to provide to counsel for the Defendant, well in advance of trial, the names of family and friends of the deceased who will testify and any other witnesses that will offer evidence that is any way related to what is described herein as "victim impact" evidence and the substance of that testimony. Such notice is necessary so that counsel for the Defendant

3

can effectively advocate on behalf of the Defendant during the trial of this case generally, and specifically, when the court conducts its Rule 403 analysis.

**WHEREFORE, PREMISES CONSIDERED,** Defendant prays that this Motion be sustained and relief be granted as prayed for herein by appropriate Order of the Court.

Respectfully submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorney's Office, on March 8 , 2010.

**ROBERT K. LOPER**

4

**CAUSE NO. 08-3872**

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED, that on the _____ day of _____,

2010, came to be considered the foregoing **MOTION IN LIMINE** (Victim Impact Type

Evidence).  After consideration, the court has determined that the motion shall be, and is hereby,

_____ GRANTED.

_____ DENIED.

SIGNED the _____ day of _____, 2010.

_____
**JUDGE PRESIDING**

5

0333

**CAUSE NO. 08-3872**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122nd JUDICIAL DISTRICT |

## MOTION TO LIST WITNESSES
## AND REQUEST FOR CRIMINAL HISTORIES

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, TRAVIS JAMES MULLIS, Defendant in the above-entitled and

numbered criminal action, respectfully requests that the court instruct the prosecution to list for

the Defendant all witnesses along with their addresses, including expert witnesses whose

testimony will be offered pursuant to Rules 702, 703, and 705 of the Texas Rules of Evidence,

which the State may, in good faith, expect to use during the case-in-chief or rebuttal, during

either the guilt/innocence stage or the punishment stage of trial, at least thirty (30) days prior to

commencement of jury selection. *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993)

(en banc); TEX. CODE CRIM. PROC. art. 39.14. Additionally, the Defendant requests the

prosecution to provide the defense with a complete criminal history for each of these witnesses.

*See* TEX. R. EVID. 609. It is necessary for the prosecution to provide a criminal history because

the Defendant does not have access to NCIC or TCIC as does the District Attorney's Office.

Moreover, ordering the District Attorney to provide a criminal history is not unduly burdensome.

This information is necessary for the defense to properly prepare for trial, to exercise his

allotted peremptory strikes intelligently, and to impeach the State's witnesses. Absent a witness

list and a criminal history concerning each witness the Defendant will be deprived of due course

and process of law as guaranteed in the Texas and United States Constitutions, as well as his

rights under Tex. Code Crim. Proc. art. 1.04, 1.05, and 1.051(a).

**WHEREFORE, PREMISES CONSIDERED**, the Defendant moves this court to grant this motion directing the prosecuting attorney to list all witnesses who are reasonably subject to use by the State, and that the State be further required to provide, before trial, a criminal history on each such witness.

Respectfully submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave, # 660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same on March 8 2010.

**ROBERT K. LOPER**

285

0333

**CAUSE NO. 08-3872**

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Vs.** | § | **GALVESTON COUNTY, TEXAS** |
| | § | |
| **TRAVIS JAMES MULLIS** | § | **122nd JUDICIAL DISTRICT** |

## ORDER

      **BE IT REMEMBERED**, that on the _____ day of _____,

2010, came to be considered the Defendant's **MOTION TO LIST WITNESSES AND**

**REQUEST FOR CRIMINAL HISTORIES.**  The court is of the opinion the motion should be

in all things:


      **GRANTED**   _____

      **DENIED**   _____


                                      _____
                                      **JUDGE PRESIDING**

286

0333

## CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## MOTION TO HOLD THAT TEX. CODE CRIM. PROC.
### ART. 37.01 IS UNCONSTITUTIONAL
37.071
### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, TRAVIS JAMES MULLIS, the Accused, by and through his attorneys

of record and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution

and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution and TEX. CODE. CRIM. PROC.

art. 2.03 and 38.03 (Vernon) and makes this his motion to hold that TEX. CODE CRIM. PROC. art.

37.071 is unconstitutional and as grounds therefore would show the Court as follows:

1.  The Defendant has been indicted by the county grand jury for capital murder.

2.  The State is seeking the death penalty.  The Eighth Amendment to the United States

    Constitution  requires a greater degree of accuracy and fact-finding than would be true in

    a noncapital case.  *Gilmore v. Taylor,* 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306

    (1993) and *Woodson v. North Carolina,* 428 U.S. 280, 305 (1976).

3.  The Eighth Amendment's prohibition of "cruel and unusual punishment" must be

    interpreted in light of "evolving standards of decency."  *Atkins v. Virginia,* 122 S. Ct.

    2242 (2002).  It is settled law that the 5th Amendment's broad guarantee of "due process"

    must be interpreted in light of evolving standards of fairness and ordered liberty.  *See, e.g.*

*Planned Parenthood v. Casey*, 505 U.S. 833, 846-851 (1992); *Rochin v. California*, 342 U.S. 165, 171-172 (1952) (overruled on other grounds).

4. More than 100 inmates from the country's death rows have been exonerated. That a citizen of this country can be exonerated by the "system" is not comforting when one realizes that it is the same "system" that decided that this person was not only guilty of the charged offense, but deserved to die. The unfairness of this alarming scenario is magnified by the lack of protections that are afforded to defendants in capital trials in Texas and the extent to which the state will go to "win." Tactics that are customarily used include the offering to the court and jury "predictions" by witnesses whose own "scientific community virtually unanimously agree that psychiatric testimony on future dangerousness is, to put it bluntly, unreliable and unscientific." *Flores v. Johnson*, 210 F.3d 456, 463 (5th Cir.Tex. 2000).

If protection of innocent people from state-sponsored execution is a protected liberty, and if such protected liberty includes the right of an innocent person not to be deprived, by execution, of the opportunity to demonstrate his innocence, then Congress may not override such liberty absent a far more clear and compelling need than any presented here. *United States v. Quinones*, 205 F. Supp. 2d 256 (S.D.N.Y. 2002). This Court can no longer have a high degree of confidence in any verdict because of the fallible nature of the manner in which evidence has been collected by the state, the length of time between the date of the offense and the time of arrest, the intentional misrepresentation to the jury of the effect of its inability to reach a verdict in the punishment phase of a capital trial and

the many other inequities that plague the system, which include:

> Failure of the state to codify a Juror Bill of rights that would insure that a juror that wanted to vote for life would be free from harassment from pro-death jurors;

The "death qualification" process of the venire in a capital case results in a jury that is more conservative, is more inclined to view death as the appropriate "default" option, more inclined to shift the burden to the defendant that life is the appropriate sentence and is less receptive of to merits phase issues that are raised by the defense.

A rule that says that 10 jurors must agree to return a verdict of life when the law requires only one (1) juror for a life vote.. The law says that an inability to agree on any of the issues then the result is a life sentence, not a hung jury. Jurors are not told this, in fact they are intentionally misled;

The state continues to sponsor testimony (and state judges continue to allow such testimony) from supposed professionals who provide clinical opinions as to the probability that the defendant will commit criminal acts of violence that will constitute a continuing threat to society. There is no science that supports a psychiatrist's ability to make long term clinical predictions of violent conduct in a prison setting.

In this regard, judges have completely abandoned their role as gate keepers in keeping out evidence that is scientifically unreliable;

Failure of the state to ban the execution of juveniles while at the same time prohibiting someone of the same age from consuming alcohol or smoking cigarettes on the basis that they are not wise enough to make the proper decision about their **lives**;

Failure of the state to ban the execution of juveniles when the pre-frontal cortex of the brain of a juvenile may be no better developed than one who suffers from mental retardation;

Failure to require that prior to execution, there be some finding that defendant has, in fact, been a continuing threat to prison society and that unless executed he will continue to be a continuing threat to society and that no mitigating circumstances have arisen. Even if an individual is guilty of a heinous crime, that person may have been redeemed and no longer be the "same person" when he is killed by the state;

Fails to adequately provide definitions for terms: probability, society, future,

continuing threat;

Allows the state to introduce evidence of extraneous, unadjudicated offenses during the penalty phase of a capital trial–even offenses for which the accused has been found not guilty;

Fails to require that the state prove beyond a reasonable doubt all of the elements of the alleged unadjudicated offenses

Fails to allege unadjudicated offenses in the indictment returned against the accused;

Fails to allege in the indictment returned against the accused that there is a probability that he will commit criminal acts of violence that will constitute a continuing threat to society.

Fails to allege in the indictment returned against the accused that there is an absence of a circumstance that would justify a sentence of life.

Failure to require prior notice of all prior unadjudicated offenses that the state will offer during the penalty phase of the trial;

Allowing introduction of victim impact evidence during the penalty phase of a capital trial. This evidence severely prejudices the defendant and encourages the jurors to seek revenge in their sentencing.

Failure to allow an accused in a capital case to have the same right of discovery that is allowed a litigant in a civil case;

Failure to require in a capital case that the any extraneous defense be proven beyond a reasonable doubt and by special issue as to each alleged offense.;

Failure to require proportionality review in death sentences;

makes one who attempts to aid another in the commission of a capital crime eligible for the death penalty and does not require the state to allege the actual role of the accused in the offense.

requiring that a jury consider the defendant's moral culpability along with mitigating circumstances after the jury has already found the defendant legally culpable of capital murder;

Failure to place burden on state that they must negate existence of any mitigating circumstance beyond a reasonable doubt;

Failure to provide that a Defendant in a capital case is entitled to every benefit that a

defendant in a non- capital case would;

Failure to insure that the jury and grand jury that hears evidence properly reflects the cross section of the community in which the defendant is tried;

Failure of this county to adequately compensate jurors so that a fair cross section of jurors can afford to sit and hear evidence for the length of time that is required to decided if this accused lives or dies;

5. The Accused is presumed innocent. TEX. CODE CRIM. PROC. art. 2.03 and art. 38.03 The execution of a legally and factually innocent person would be a constitutionally intolerable event. *Herrera v. Collins*, 506 U.S. 390 (1993). Because of the number of exonerations due to DNA and non-DNA evidence and numerous unconstitutional and unfair of the Death Penalty Scheme in Texas, this Court can no longer have confidence in the verdicts in the culpability stage of this trial which is much less than a decision by a jury to kill the Defendant. *See* Joseph S. Liebman, et al., <u>A Broken system, Part II: Why There Is So Much Error in Capital Cases, And What Can Be Done About it</u>. (2002), at 25.

6. The system that determines who should die in Texas is truly "broken." The execution of a legally and factually innocent person would be a constitutionally intolerable event. *Herrera v. Collins*, *supra*. The Court should find that TEX. CODE CRIM. PROC. art. 37.071 violates the protections afforded to the Accused by the 8th and 14th Amendments to the United States Constitution and that the option to sentence the Accused to die for a crime that he did not commit should be precluded as a sentencing option.

**WHEREFORE, PREMISES CONSIDERED,** Defendant prays this court will hold this statute unconstitutional, and for such other relief as Defendant may be entitled.

Respectfully submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of on _____ , 2010.

**ROBERT K. LOPER**

0333

## CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

JASON E. MURRAY
CLERK DISTRICT COURT
FILED
By Court
JAN 20 2011
GALVESTON COUNTY, TEXAS
BY_____
DEPUTY

### ORDER

BE IT REMEMBERED, that on the 20 day of ___Jan.___, 2010,

came to be considered the defendant's **MOTION TO HOLD THAT TEX. CODE CRIM.**

37.071
**PROC. ART. 37.01 IS UNCONSTITUTIONAL.** The court is of the opinion the motion

should be in all things:

GRANTED      _____

DENIED       _____✓

_John Ellison_
JUDGE PRESIDING

303

0333

CAUSE NO. 08-3872

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
|---|---|---|
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122nd JUDICIAL DISTRICT |

## MOTION FOR COMPLETE RECORDATION OF ALL PRE-TRIAL AND TRIAL PROCEEDINGS

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Robert K. Loper and Gerald Bourque, Attorneys for the Accused, Travis James Mullis, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution and moves this Court enter an order that a court reporter take down in shorthand or by any other reliable method, and record all of his pre-trial and trial proceedings. In support of his motion, states as follows:

1. This is a capital murder case. Travis James Mullis is indigent and faces the death penalty.

2. The State is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and procedural safeguards than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993) and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

3. In any capital case, there is a critical need for a complete record. This record should include, but not be limited to:

■ a complete transcript of all pre-trial proceedings (with the sole exception of telephone calls reasonably necessary to the establishment of an agenda);

1

■ all bench conferences;

■ all discussions of any sort concerning the case which are held in chambers with or without one or more of the counsel in the case;

■ all objections and rulings thereon;

■ all voir dire and the exercise of challenges for cause or peremptory challenges;

■ the race of every venire person called for jury duty or excused from jury duty for any reason;

■ the race of all witnesses;

■ all testimony of all witnesses, including a careful record of all exhibits relating to each witness, and the inclusion of copies of all exhibits proffered, submitted and admitted into evidence;

■ all arguments, both to the jury and to the trial court;

■ all contacts between the jury and any other person, except for contacts explicitly and carefully allowed by the trial court, at a hearing, after consultation with defense counsel;

■ any and all questions or written statements made by jurors;

■ anything else which may transpire in the course of this case.

## A. **The need for a total record of the case**.

4. The State bears the burden of establishing a clear and complete record of criminal proceedings. *Wright v. Lacy*, 664 F. Supp. 1270, 1275 (D. Minn. 1987) (citing *Golden v. Newsome*, 755 F.2d 1478, 1479 (11th Cir. 1985)).

5. In light of the judge's role as arbiter of the accused's constitutional right to a fair trial, the duty to ensure the complete recordation of the case rests with the court. See *United States v. Garner*, 581 F.2d 481 (5th Cir. 1978). "The trial judge has a duty to see that the reporter makes a

2

true, complete and accurate record of all proceedings." American Bar Association, Standards Relating to the Trial Judge Section 2.5 (1972).

6. A record must be made of all portions of the proceedings needed to ensure an adequate defense or meaningful appeal. *See, e.g., Doby v. State*, 557 So. 2d 533, 536 (Miss. 1990) (voir dire examination); *Suan v. State*, 511 So. 2d 144, 147 (Miss. 1987) (bench and chambers conferences); *Fountain v. State*, 269 Ark. 454, 601 S.W. 2d 862 (Ark. 1980) (bench conferences); *Sheffield v. State*, 777 S.W.2d 743, 744 (Tex. App.—Beaumont 1989) (exhibits); *Bond v. State*, 694 S.W. 2d 622, 623 (Tex. App.—Beaumont 1985) (closing arguments); *Harris v. State*, 552 So. 2d 866, 873 (Ala. Crim. App. 1989) (coram nobis proceedings).

## B.  Transcription of Pre-trial proceedings.

7. In *Roberts v. La Vallee*, 389 U.S. 40, 88 S. Ct. 194, 19 L. Ed. 2d 41 (1967), the Supreme Court recognized the right of the indigent accused in any criminal case (not simply those where life is at stake) to a free copy of the preliminary hearing. This transcript must be made prior to trial, to honor the accused's right to equal protection and to foster his right to effective assistance of counsel.

8. As the Fifth Circuit recently explained in *Tague v. Puckett*, 874 F.2d 1013 (5th Cir. 1989): A state must provide an indigent with a transcript of prior proceedings when needed for an effective defense. *Id.* at 1014 (quoting *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S. Ct. 431, 433, 30 L. Ed. 2d 400 (1971)); *see also Fisher v. State*, 532 So. 2d 992, 999 (Miss. 1988) ("[t]here can be no doubt . . . that the state must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense"); *State v. Johnson*, 261 LA. 620, 260 So. 2d 645, 649 (1972); *Carter v. State*, 156 Ga. App. 633, 275 S.E.2d 716,

3

296

718 (1980) (transcript of prior trial); *Harris v. State*, 582 So. 2d 857 (Ala. Crim. App. 1987);

*People v. Wells*, 776 P.2d 386 (Colo. 1989); *In re Bullabough*, 89 N.C. App. 171, 365 S.E.2d

642, 646 (1988); *State v. Moss*, 44 540 N.E.2d 747, 748 (Ohio 1988); *Billie v. State*, 605 S.W.2d

558, 562 (Tex. Crim. App. 1980).

9. Applying Roberts and Britt, many courts have ordered the transcription of pre-trial

hearings in preparation for trial. *See, e.g.*, *State v. Lewis*, 215 N.W.2d 293, 295 (Iowa 1974);

*Hunter v. District Court of Twentieth Judicial Dist.*, 184 Colo. 238, 519 P.2d 941, 943 (1974);

*Hawkins v. State*, 486 P.2d 743 (Okla. Crim. App. 1971); *People v. Montgomery*, 18 N.Y.2d 993,

224 N.E.2d 730 (1966); *Graham v. State*, 296 Ark. 400, 757 S.W.2d 538, 541 (Ark. 1988);

*Gardner v. State*, 296 Ark. 41, 754 S.W.2d 518, 524 (Ark. 1988).

**WHEREFORE**, premises considered, Travis James Mullis moves that his motion be

granted, and that all proceedings be recorded, both prior to and during the trial.

Respectfully submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000 (office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave, # 660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

4

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same on March 8, 2010

ROBERT K. LOPER

2010 MAR -8  AM 10:01

5

0333

**CAUSE NO. 08-~~3872~~**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122nd JUDICIAL DISTRICT |

JASON E. MURRAY
CLERK DISTRICT COURT
FILED
JAN 19 2011
GALVESTON COUNTY, TEXAS
BY_____ DEPUTY

## ORDER

BE IT REMEMBERED, that on the __19__ day of ____Jan.____,

2010, came to be considered the Defendant's **MOTION FOR COMPLETE RECORDATION OF ALL PRE-TRIAL AND TRIAL PROCEEDINGS.**  The court is of the opinion the motion should be in all things:

GRANTED     ✓

DENIED     _____

_John Ellison_

JUDGE PRESIDING

6

0333

## CAUSE NO. 08-3872

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## DEFENDANT'S MOTION FOR A RESTRICTIVE ORDER REGULATING NEWS ACCOUNTS, COMMENTS AND EDITORIALS CONCERNING CERTAIN CIRCUMSTANCES OF THE CASE

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, TRAVIS JAMES MULLIS, Defendant in the above-entitled and numbered criminal action, moves the court to issue a protective order directed to newspapers, television stations, and broadcasting stations which circulate, communicate, or disseminate, any or all information relating to this case within the boundary of Galveston County, Texas. The order would bar and restrict aforementioned news media in the following particulars:

1.      Bars the pre-trial publication of any witness accounts which identify the Defendant as having committed the alleged crime;

2.      Bars the publication of names and addresses of prospective witnesses until they have testified at trial;

3.      Bars the publication of the names and addresses of the selected, excused and/or prospective jurors;

4.      Bars the publication of testimony adduced at any hearing on the Defendant's motion to suppress illegally seized evidence;

5.      Limits the news comment and reporting of the afore stated members of the news media during the trial of the accused for the crime of capital murder to a factual account of the evidence and trial proceedings which are a part of the trial jurors knowledge by virtue of the introduction of such information and/or exhibits into evidence in open court in the presence of the jury;

6.      Bars any courtroom broadcasting and televising during the trial and prohibits sound, broadcasting and television equipment within the courtroom during the trial;

1

300

7.      Bars any courtroom photography, both while court is in session and in recess and prohibits photographers from taking photographs in the courthouse, especially photographs of the Defendant and witnesses;

8.      Bars the making of sketches in the courtroom;

9.      Arranges the physical accommodations for the news media in the courtroom but outside the bar in such manner that the activities of the reporters present will be as unobtrusive to the jurors and the parties as possible and excludes members of the media from physically appearing and being within the bar in the courtroom while the trial in this case is held during the time when court is in session in such trial, and

10.     Bars the press from handling or photographing any exhibits during the course of the trial.

This case involves circumstances which may cause it to receive the concentrated attention of the news media and thereby to receive the concentrated attention of the news media and thereby to receive great notoriety and publicity, especially in the local community of Galveston County, Texas, where the offense allegedly took place.

Unless some procedural rules and guide lines are immediately propounded by the court to the news media of Galveston County, Texas, it can be expected that the community will be exposed to massive dosages of pre-trial and trial publicity and reports concerning the facts of the case and the Defendant's implication therein.  News editors, reporters and commentators cannot be relied upon to subject their reports to the standards which due process and procedural rules impose on the admissibility of evidence.  Therefore, to avoid the clear and present danger that the Defendant's right to fair trial in Galveston County, Texas will be violated, the court should take preventative action to avoid prejudicial new media reporting from the commencement of the trial until the rendering of the verdict.

**WHEREFORE, PREMISES CONSIDERED**, the Defendant prays that the court will

2

301

issue a protective regulatory order and injunctive order encompassing the specific particulars herein above designated as well as any other regulatory measures that will protect the Defendant's right to a fair trial.

Respectfully submitted,

ROBERT K. LOPER
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

GERALD BOURQUE
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same on March 8 2010

ROBERT K.LOPER

3

0333

## CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## ORDER

**BE IT REMEMBERED**, that on the _____ day of _____,
2010, came to be considered the Defendant's Motion for a Restrictive Order Regulating News
Accounts, Comments and Editorials Concerning Certain Circumstances of the case.  The court is
of the opinion the motion should be in all things:

**GRANTED**  _____

**DENIED**  _____


_____
**JUDGE PRESIDING**

4

0333

**CAUSE NO. 08-3872**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## MOTION TO PROTECT THE PRIVACY AND CONFIDENTIALITY OF ALL LAWYER AND CLIENT COMMUNICATIONS

COMES NOW, TRAVIS JAMES MULLIS, by counsel, and pursuant to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article 1, Sections 10, 13 and 19 of the Texas Constitution and Article 1.051 of the Texas Rules of Criminal Procedure and Rule 5.03 of the Texas Rules of Evidence moves the Court to protect the privacy and confidentiality of all communications between TRAVIS JAMES MULLIS his lawyer and all of those who assist the lawyer in rendition of professional legal service.

1. TRAVIS JAMES MULLIS has been indicted by the county grand jury for capital murder.

2. Tex.C.Crim.P. Art. 1.051 provides in part:

(a) A defendant in a criminal matter is entitled to be represented by counsel in an adversarial judicial proceeding. The right to be represented by counsel includes the right to consult *in private* with counsel sufficiently in advance of a proceeding to allow adequate preparation for the proceeding. (emphasis added)

3. This Court should take all steps necessary to protect TRAVIS JAMES MULLIS's right to be represented by counsel including his right, and the right of his representatives, to consult with his lawyer and all representatives of the lawyer in a private and confidential manner.

204

TRAVIS JAMES MULLIS is a "client" as defined in 5.03.(a)(1) given [his/her] receipt of professional legal services. Further, his lawyer as well as any and all, members of Green's defense team fulfill the definitions of "lawyer" and/or "representative of the lawyer" as set out in 5.03.(a)(3) and 5.03(a)(4) respectively.

A "representative of the client" is (A) a person having authority to obtain professional legal service or to act on advice thereby rendered on behalf of the client, or (B) any other person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting the scope of employment for the client.
Tex.R.Evid.. 503(a)(2)(A)(B)

A "representative of the lawyer" is: (A) one employed by the lawyer to assist the lawyer in rendition of professional legal service; or (B) an accountant who is reasonably necessary for the lawyer's rendition of professional legal services.
Tex.R. Evid. 503(a)(4)(A)(B)

The representative of the lawyer necessary includes, but is not limited to, all members of the defense team, investigators, mitigation specialists, consultants and testifying experts

4.   TRAVIS JAMES MULLIS also has the privilege to prevent his/her lawyer or lawyer's representative(s) from disclosing any other fact which came to the knowledge of the lawyer or the lawyer's representative by reason of the attorney client relationship.  Tex.R. Evid. 503(b)(2). This provision expands the privilege to include not only privileged communications, but also confidential communications that come during the course of the extension of legal services.

5.   TRAVIS JAMES MULLIS states to this Court, and all representatives of the City of Galveston, the County of Galveston and the State of Texas, that he does not waive any right and/or privilege granted to him by law and that all of his communications between his lawyer and

all representatives of his lawyer are not made with the intent that such communications be disclosed to third parties other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication. Tex.R. Evid. 503(a)(5). Further, TRAVIS JAMES MULLIS expects that all communications of any kind with his lawyer and representatives of his lawyer, whether in custody or not shall be considered privileged and confidential.  This is to cover communications of any kind, including those made in writing, by telephone or face-to-face, in any location including the courthouse and any facility in which he is detained.

6. The overhearing of, the eavesdropping on, or recording of, any communications between TRAVIS JAMES MULLIS and his/her lawyer and any representatives of the lawyer, including but not limited to any and all, members of [his/her] defense team violates not only Tex.R.Evid. 5.03 that guarantees  "lawyer-client privilege" and but also TRAVIS JAMES MULLIS'S right to Due Process as guaranteed by the Fifth and Fourteenth Amendments as well as the Sixth Amendment right to the effective assistance of counsel.

8.  The recording of a defendant's communications, howsoever made, with his lawyer and the lawyer's representative violates the Sixth Amendment of the United States Constitution. In order to invoke one's Sixth Amendment rights one must establish an "expectation of confidentiality". *United States v. Melvin*, 650 F.2d 641 (5th Cir.1981). Any and all inmates have such a "reasonable expectation of confidentiality" as regards their communication with their lawyers and the representatives of their lawyers.

9.  By way of example, both Houses of the Texas State Legislature have unanimously endorsed the proposition that attorney-client telephone communications are not only confidential, but also they should be free from recording and/or monitoring given the sanctity of attorney-client

privilege. The Texas Department of Criminal Justice will install telephones for inmates to call those outside the prison system, including their lawyers and representatives of their lawyers. Tex. Gov't Code Ann.§495.025(1)(B).

In order to protect the confidential and privileged nature of such communications between the inmate and lawyer and lawyer representative, the act stipulates that "the department shall ensure that no confidential attorney-client communication is monitored or recorded by the department or any person acting on the department's behalf". Tex. Gov't Code Ann §495.025(9)(g).

Wherefore premises considered, TRAVIS JAMES MULLIS moves the this Court to make those orders necessary to protect the privacy and confidentiality of all communications between he and his lawyer and representatives of his lawyer, wherever they take place. Specifically, he moves the court to:

(a) preclude the recording by the Harris County Sheriff's Office and/or office of the District Attorney of Harris County or anyone acting in concert with such offices or centers, of any and all communications, between TRAVIS JAMES MULLIS his lawyer and any representatives of his lawyer;

(b) preclude the opening and inspection of any legal mail addressed to TRAVIS JAMES MULLIS, mail sent by TRAVIS JAMES MULLIS so long as that mail is marked as "legal mail";

c) ensure that TRAVIS JAMES MULLIS and his lawyer and representatives of his lawyer are provided with privacy in their face to face communications whether the same be held in the local detention facility or courthouse, and;

(d) to make any other orders necessary to protect the privacy and confidentiality of all lawyer and client communications.

Respectfully submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same on March 8, 2010

**ROBERT K. LOPER**

208

# 333

## CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## ORDER

**BE IT REMEMBERED**, that on the _____day of _____,

2010, came to be considered the Defendant's **MOTION TO PROTECT THE**

**PRIVACY AND CONFIDENTIALITY OF ALL LAWYER AND CLIENT**

**COMMUNICATIONS.** The court is of the opinion the motion should be in all things:


**GRANTED** _____

**DENIED** _____


_____
**JUDGE PRESIDING**

0533

**CAUSE NO. 08-3872**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | **IN THE DISTRICT COURT OF** |
| | § | |
| Vs. | § | **GALVESTON COUNTY, TEXAS** |
| | § | |
| TRAVIS JAMES MULLIS | § | **122ND JUDICIAL DISTRICT** |

## MOTION PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION AND DECLARE ARTICLE 37.071 UNCONSTITUTIONAL (*JONES V. UNITED STATES*; *APPRENDI V. NEW JERSEY*; AND *RING V. ARIZONA*)

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, TRAVIS JAMES MULLIS, Defendant in the above cause, by and through counsel and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13 and 19 of the Texas Constitution.

1. The Defendant has been indicted for the offense of capital murder.

2. The State is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993) and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

3. The maximum penalty for the offense of capital murder is life in prison without the possibility of parole for 40 years. Texas Penal Code 12.31. It is only when the state seeks the death penalty that the prescribed statutory maximum can be exceeded and then only if the finder of fact concludes, beyond a reasonable doubt, that "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc. art. 37.071(2)(b)(1).

1

210

4. A fact ("future dangerousness") that increases the penalty for a crime beyond the prescribed statutory maximum ( a sentence of LWOP-40 increased to death) must be alleged in the indictment and proved to the jury beyond a reasonable doubt. *Jones v. United States*, 526 U.S. 227 (1999); *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The Texas legislature has created two offenses, one is a Capital Felony where the state seeks death and a Capital Felony where the state does not seek death, Texas Penal Code Section 12.31 (a). Evidence of the Defendant's future dangerousness must be presented to the grand jury, and alleged in the indictment, if such dangerousness is found to be true by the grand jurors. If the indictment does not make the proper allegation, then the Court does not have jurisdiction to prosecute the Defendant for anything other than a non-death capital felony and death should be precluded as a sentencing option.

5. In *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002), the Supreme Court held that the rule of *Apprendi v. New Jersey*, applies to capital cases: Where a sentence of death is authorized only upon the finding of certain facts, those facts "operate as 'the functional equivalent of an element of a greater offense . . . .'" *Ring*, 122 S. Ct. at 2443 (quoting *Apprendi*, 530 U.S. at 494 n. 19). In *Ring*, the Sixth Amendment's jury trial guarantee thus required that the Arizona death penalty statute's aggravating factors be treated as elements: "Because Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense, the Sixth Amendment requires that they be found by a jury.'" *Ring*, 122 S. Ct. at 2443 (quoting *Apprendi*, 530 U.S. at 494 n. 19). Ring did not "contend that his indictment was constitutionally

2

defective" because the Fourteenth Amendment "has not been construed to include the Fifth Amendment right to 'presentment or indictment of a Grand Jury.'" *Ring*, 122 S. Ct. at 2437 n.4 *(quoting Apprendi*, 530 U.S. at 477 n.3).

Article 1, Section 10 of the Texas Constitution provides, in part:

> ". . . no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary. . . ."

6. The State of Texas is trying to kill the accused. The issues relating to future "criminal acts of violence" and mitigation are submitted to the jury. In violation of the rule of *Ring*, Tex. Code Crim. Proc. Art. 37.071 treats the special issue questions not as elements, but as sentencing factors, and provides for proof of these facts without indictment by a grand jury. Because the procedures that are set out (or omitted from) Art. 37.071, the statute violates the rule of *Jones*, *Apprendi*, and *Ring*, and it is facially unconstitutional. *Cf. Vasquez v. Hillery*, 474 U.S. 254, 263 (1986) ("In the hands of the grand jury lies the power to charge a greater offense or a lesser offense . . . a capital offense or a noncapital offense — all on the basis of the same facts."); *Campbell v. Louisiana*, 523 U.S. 392, 399 (1998) (grand jury controls "whether to charge a greater or lesser offense, including the important decision to charge a capital crime"). Because Art. 37.071 is fatally defective and the indictment fails to make the allegations that are necessary before the jury can even consider to impose death, death must be excluded as a sentencing option for the jury that will hear this case.

3

7. Tex. Code Crim. Proc. art 37.071(2)(3)(e)(1) requires the Court to instruct the jury as follows:

> Whether, taking into consideration of all of the evidence including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

If the jury finds that a probability exists that the defendant will commit future acts of criminal violence and an affirmative finding on the "anti-parties" instruction, the jury must consider the "mitigation" issue. However, Art. 37.071 does not state who has the burden on this issue. This omission has been approved by the Texas Court of Appeals which added that it will not review the sufficiency of the evidence offered in support of the issues. *Colella v. State*, 915 S.W.2d 834 (Tex. Crim. App. 1995).

The burden on this instruction is clearly not on the prosecution. *Barnes v. State*, 876 S.W.2d 316, 329-330. In fact of practice, however, the defendant has the burden of proof for two reasons. First, the Defendant must convince the jury that it is more likely than not that at least one circumstance exists that would justify a life sentence. Secondly, the jury is instructed to consider the "moral culpability of the defendant" against mitigating evidence presented. This death qualified jury has just found the defendant guilty of intentional murder (legal culpability). It is not possible for a jury then to eliminate "legal culpability" from its deliberation and distinguish "legal culpability" from "moral culpability". The jury is even instructed to consider the circumstances of the offense

4

which makes it impossible for them to find a circumstance that would justify a life sentence without also finding that such circumstances exceed the legal/moral culpability of the defendant.

Ap*prendi* and *Ring* both require that "If a state makes an increase in defendant's authorized punishment contingent on the finding of a fact, that fact–no matter how the State labels it–must be found by a jury beyond a reasonable doubt. *Apprendi*, 530 U.S. at 482-483. *Art.37.071 fails to require that the state prove the absence of a circumstance that would justify a life sentence and is therefor in violation of the 8th Amendment to the United States Constitution and should be found to be unconstitutional.*

**WHEREFORE, PREMISES CONSIDERED**, the Defendant prays that this Court preclude the death penalty as a sentencing option in this case and further the Article 37.071(2)(e)(1) is unconstitutional.

Respectfully submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

5

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorney's Office, on _____, 2010.

ROBERT K. LOPER

6

0333

## CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

JASON E. MURRAY
CLERK DISTRICT COURT
FILED
By Court
JAN 3 0 2011
GALVESTON COUNTY, TEXAS
DEPUTY

## ORDER

BE IT REMEMBERED, that on the ___20___ day of ___Jan___, 2011, came to be considered the foregoing **MOTION PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION AND DECLARE ARTICLE 37.071 UNCONSTITUTIONAL (*JONES V. UNITED STATES; APPRENDI V. NEW JERSEY;* AND *RING V. ARIZONA*).**

After consideration, the court has determined that the motion shall be, and is hereby,

_____ **GRANTED.**

___✓___ **DENIED.**

**IT IS THEREFORE ORDERED** that the statute is declared unconstitutional and the State is precluded from seeking the death penalty against the defendant.

SIGNED the ___20___ day of ___Jan.___, 2011.

John Ellison
JUDGE PRESIDING

7

0333

CAUSE NO. 08-3872

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Vs.** | § | **GALVESTON COUNTY, TEXAS** |
| | § | |
| **TRAVIS JAMES MULLIS** | § | **122ND JUDICIAL DISTRICT** |

## MOTION PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION (UNEQUAL FUNDING)

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, TRAVIS JAMES MULLIS, Defendant in the above cause, by and through counsel and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13 and 19 of the Texas Constitution.

1. The Defendant has been indicted for the offense of capital murder.

2. The State is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993) and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). This Court and the Court of Criminal Appeals are bound by the law to make certain that a sentence of death is not wantonly or freakishly imposed and that the purposes of Art. 37.071 are accomplished in a constitutional manner. *Ellason v. State*, 815 S.W.2d 656 (Tex. Crim. App. 1991).

3. The Fourteenth Amendment to the United States Constitution guarantees to this

1

Defendant the Equal Protection of the Laws. The right is further secured by Article 1, Section 3, 13 and 19 of the Texas Constitution. The Texas death penalty scheme denies Equal Protection of the law to this Defendant because of the way that indigent defense is funded by the State.

4. The Sixth Amendment imposes on the States the obligation of providing counsel to an indigent person charged with most criminal offenses. *Gideon v. Wainwright*, 372 U.S. 335 (1963). The State has put this entire burden upon the county where the indictment was returned by a grand jury. However, pursuant to Tex. Code Crim. Proc. art. 104.004, the criminal justice division of the governor's office may distribute money appropriated by the legislature for the extraordinary costs of investigation or prosecution of an offense under Section 19.03 of the Texas Penal Code (Capital Murder). The county is not eligible for reimbursement for costs of the defense of one who is charged with an offense under Section 19.03.

5. The funding of the defense for the indigent accused must therefore compete with the other needs of the County that are identified by the county judge and commissioners. Expenditures for the defense of the indigent accused are closely monitored by county government and often taxpayers, voters as well as those who have political ambitions. As an example of the harm that to this Accused, the Court has denied or limited, funding for a mitigation investigator. Specifically, this Court has:

    (a) denied the motion of the Accused that requested (or reduced the funding

2

requesting) the appointment of a mitigation investigator who would compile a psycho-social history and help the defense develop evidence in mitigation of punishment. This denial comes in spite of the language of the recent opinions of the United States Supreme Court. Counsel was found to have been ineffective for failing to adequately investigate and present mitigating evidence. *Williams (Terry) v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). Counsel's strategic choices concerning what mitigating evidence to present at trial must be informed choices. *Strickland v. Washington*, 466 U.S. 668 (1984) and in *Wiggins v. Smith*, 509 U.S. 510 (2003) where a trial judge was quoted in the *Wiggins* state *habeas* proceeding held in 1994 as saying "[n]ot to do a social history, at least to see what you have got, to me is absolute error. I would be flabbergasted if the Court of Appeals said anything else". The United States Supreme Court has agreed and found trial counsel ineffective for failure to have a thorough mitigation investigation performed.

6. The foregoing magnifies the inherent advantage that the state has in prosecuting those charged with capital crimes. While the state prosecutes the indictment with a full-time district attorney, aided by local, county, state (and at time federal) agencies of law enforcement, the indigent Defendant must look to funding that is approved by the presiding judge and paid from county coffers. If the county experiences a deficit as a result of its *prosecution* of the capital offense, county commissioners can look to the governor's discretionary fund described in Tex. Code Crim. Proc. art. 104.004. If the

3

219

county experiences a deficit because of indigent defense expenditures, there is no state fund to which the county can resort. Accordingly, there is no equality of resources between those that want to kill this Defendant and those who are trying to prevent his execution.

**WHEREFORE, PREMISES CONSIDERED**, the Defendant prays that this Court preclude the death penalty as a sentencing option in this case.

Respectfully Submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorney's Office, on _____, 2010.

**ROBERT K. LOPER**

4

0333

## CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | JASON E. MURRAY |
| Vs. | § | CLERK DISTRICT COURT |
| | § | FILED |
| TRAVIS JAMES MULLIS | § | JAN 2 0 2011 |

GALVESTON COUNTY, TEXAS

GALVESTON COUNTY, TEXAS

BY_____

DEPUTY

122ND JUDICIAL DISTRICT

### ORDER

BE IT REMEMBERED, that on the _20_ day of _Jan._, 2010,

came to be considered the foregoing **MOTION PRECLUDE THE DEATH PENALTY AS A**

**SENTENCING OPTION (UNEQUAL FUNDING).**

After consideration, the court has determined that the motion shall be, and is hereby,

_____ **GRANTED.**

___✓___ **DENIED.**

SIGNED the _20_ day of _Jan._, 2010.

_____
**JUDGE PRESIDING**

5

0533

CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## MOTION TO DECLARE ARTICLE 37.071 § 2(a) OF THE TEXAS CODE OF CRIMINAL PROCEDURE UNCONSTITUTIONAL ON ITS FACE

### TO THE HONORABLE JUDGE OF THIS COURT:

**COMES NOW,** TRAVIS JAMES MULLIS, Defendant in the above-entitled and numbered criminal action, files this motion to declare Article 37.071 § 2(a) of the Texas Code of Criminal Procedure unconstitutional on its face. In support, the Defendant will show the court the following.

Background

The Defendant has been indicted by the Harris County Grand Jury for Capital Murder. The State of Texas is seeking the death penalty. Article 37.071 of the Texas Code of Criminal Procedure sets out the framework for the trial of this criminal case.

Analysis

Article 37.071, § 2(a) of the Texas Code of Criminal Procedure provides in pertinent part:

In the proceeding, evidence may be presented by the state and the Defendant or the Defendant's counsel as to any matter *that the court deems relevant to sentence*, including the evidence of the Defendant's background or character or the circumstances of the offense that mitigates against the imposition of the death penalty. This subsection shall not b construed to authorize the introduction of any evidence secured in violation of the Constitution or the United States or of the State of Texas.

1

332

TEX. CODE CRIM. PROC. art. 37.071 § 2(a) (emphasis added). This provision fails to set objective standards regarding the possible universe of relevant considerations for the imposition of the death penalty.

Texas jurists disagree about the meaning of this statute and published case law has not imposed any consistent limitations restricting admission of evidence during Texas death penalty punishment phase trials. Judge McCormick, for instance, argues that the rules of evidence have no bearing on the question of admissibility of such evidence. "Article 37.071, Section 2 makes the trial court the decision-maker on what evidence to admit at the punishment phase of a capital murder trial, subject to reversal by [the Court of Criminal Appeals] only if the Defendant shows a constitutional violation and harm." *Mosley v. State*, 983 S.W.2d 249, 267 (Tex. Crim. App. 1998) (McCormick, J. concurring). Further, in the current debate on the admissibility of victim impact evidence, the Court of Criminal Appeals has held, inconsistently, that victim impact evidence is relevant only insofar as it related to the mitigation issue, *id.* at 263, but in subsequent cases, upheld the trial court's admission of victim impact evidence without any limitation. *Cf. id.* and *Solomon v. State*, 49 S.W.3d 356, 365-66 (Tex. Crim. App. 2001). As the Honorable Judge Clinton put it, "what is 'relevant' to determining proper punishment is more a question of policy than of logic. In creating the separate punishment proceeding in 1965, the Legislature clearly intended to remove the blinders inherent in a unitary trial. Unfortunately . . . it has given no clear guidance as to what considerations should inform the jury's [or judge's] punishment decision." *Murphy v. State*, 777 S.W.2d 44, 63 (Tex. Crim. App. 1988). The statute is unconstitutional because neither the statute itself, nor the case law interpreting it, set any discernable standards guiding the admissibility of evidence at a capital murder punishment phase trial. As such, Article

2

37.071 § 2(a) violates the separation of powers requirement of the Texas Constitution, Art. II § 1, the Defendant's right to due course of law under Texas Code of Criminal Procedure, Art. 1.04 and the Texas Constitution, Article I, § 19, the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the right to trial by jury guaranteed by Texas Code of Criminal Procedure Arts. 1.05, 1.12, 1.15, Article I, §§ 10, 15 and 15a of the Texas Constitution, the Sixth and Fourteenth Amendments to the United States Constitution, as well as the Defendant's right to be free of cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

A.    Sixth Amendment

On June 24, 2002, the Supreme Court declared that Arizona's capital sentencing scheme violates the Sixth Amendment's jury trial guarantee because it entrusts to the trial judge the determination whether aggravating factors exist that will justify the imposition of the death penalty. *Ring v. Arizona*, 536 U.S. 584, 609 (2002).  Applying the holdings from its previous decisions in *Jones v. United States*, 526 U.S. 227 (1999) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held that "[u]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Jones*, 526 U.S. at 243 n.6.  The Supreme Court in *Ring* rejected the distinction between elements of an offense and sentencing factors that it had relied on in *Walton v. Arizona*, 497 U.S. 639 (1990), because that analysis was obviated by the holding of *Apprendi*. *Ring*, 536 U.S. at 604.  "If a State makes an increase in a Defendant's authorized punishment contingent on the finding of a fact, that fact – no matter how

3

the State labels it – must be found by a jury beyond a reasonable doubt." *Apprendi*, 530 U.S. at 482-83. Thus, "when the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." *Id.* at 495. Because Arizona's aggravating factors operated as the functional equivalent of an element of the greater offense of capital murder, the Sixth Amendment required that they be found by a jury. *Ring*, 536 U.S. at 609. The Supreme Court concluded that Arizona's capital sentencing scheme violated the Sixth Amendment's guarantee of a right to trial by jury on every element of the offense charged, because, under Arizona law, the trial judge alone determined the existence or nonexistence of the enumerated aggravating factors. *Id.*

The Supreme Court has distinguished "sentencing factors," that is, any fact that is not an element of the offense but that serves to enhance a sentence, allowing such factors to be found by the sentencing body by a lower standard of proof, typically by a preponderance of the evidence. *See McMillan v. Pennsylvania*, 477 U.S. 79, 91092 (1986). In *McMillan*, the Supreme Court considered the constitutionality of a Pennsylvania statute that provided that anyone convicted of certain enumerated felonies was subject to a mandatory minimum sentence of five years in prison if the sentencing judge found, by a preponderance of the evidence, that the person "visibly possessed a firearm" during the commission of the offense. *Id.* at 81. The Supreme Court concluded that the visible possession of a firearm was not an element of the offense but a sentencing factor, stressing that a legislature's characterization is dispositive if it does not transgress constitutional limits. *Id.* The Court identified several features that indicated that Pennsylvania's characterization of visible possession of a firearm as a sentencing factor was

4

constitutionally permissible. The most significant feature was the fact that the statute "neither altered the maximum penalty for the crime committed nor created a separate offense calling for a separate penalty. *Id.* at 87-88.

In 1999, the Supreme Court took up the question whether the federal car jacking statute, 18 U.S.C. § 2119, set out three separate offenses by providing for a fifteen year maximum penalty; a 25 years maximum penalty if serious bodily injury resulted; and a maximum penalty of life imprisonment if death resulted. *Jones*, 526 U.S. at 230. The Court noted, "it is at best questionable whether the specification of facts sufficient to increase a penalty range by two-thirds, let alone from 15 years to life, was meant to carry none of the process safeguards that elements of an offense bring with them for a Defendant's benefit." *Id.* at 233. Further,

> if a potential penalty might rise from 15 years to life on a nonjury determination, the jury's role would correspondingly shrink from the significance usually carried by determination of guilt to the relative importance of low-level gatekeeping: in some cases, a jury finding of fact necessary for a maximum 15-year sentence would merely open the door to a judicial finding sufficient for life imprisonment.

*Id.* at 243-44.

The following year the Supreme Court put to rest the element versus sentencing factor debate. *Apprendi*, 530 U.S. 466, involved a New Jersey "hate crime" statute that provided for a longer term of imprisonment if a trial judge found, by a preponderance of the evidence, that a Defendant committed a crime with a biased purpose, as described in the statute. The Court held that the Due Process Clause required that such a factual determination be made by a jury on the basis of proof beyond a reasonable doubt and, therefore, struck down the statute. *Id.* at 469.

*Apprendi* was extended to capital prosecutions in *Ring*. Ring was convicted of felony murder in the course of armed robbery. Under Arizona law, he could not be sentenced to the

5

statutory maximum penalty of death unless further factual determinations were made by the sentencing judge concerning the presence of absence of aggravating and mitigating circumstances. Only if the court found at least one statutory aggravating circumstance beyond a reasonable doubt and no mitigating circumstances, "sufficiently substantial to call for leniency," could it impose the death penalty. *Ring*, 536 U.S. 593. The United States Supreme Court reversed Ring's death sentence holding that, under *Apprendi*, "because Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a grater offense,' the Sixth Amendment requires that they be found by a jury. *Ring*, 536 U.S. at 609.

In sum, this line of cases, read together, means that those facts setting the outer limits of a sentence, and of the judicial power to impose it, are elements of the crime for the purposes of the constitutional analysis. *Harris v. United States*, 536 U.S. 545, 549 (2002). Regardless of whether particular statutory factors have been labeled, considered or construed as elements or sentencing factors, they must now be treated as elements under the authority of *Jones*, *Apprendi* and *Ring*.

The Supreme Court's holding that death-eligibility factors are the functional equivalents of elements of the offense, requires that all fair trial guarantees be imported into the fact-finding process for these factors. Article 37.071 § 2(a) permits the jury to consider any information which the judge "deems relevant" to the proceedings. Using this relaxed evidentiary standard for the determination of death-eligibility factors violates the demands of the Fourteenth Amendment's guarantee of due process and the Sixth Amendment rights of confrontation and cross-examination because under the current state of Texas law, a trial judge can "deem relevant" and admit almost anything, including untrustworthy hearsay. The rights to confront and cross-examine witnesses . . . have long been recognized as essential to due process." *Chambers v.*

6

*Mississippi*, 410 U.S. 284, 294 (1973). Indeed, "the absence of proper confrontation at trial calls into question the ultimate integrity of the fact-finding process." *Ohio v. Roberts*, 448 U.S. 56, 64 (1980) (internal quotation omitted) (overruled on other grounds by *Crawford v. Washington*, 158 L. Ed. 2d 177, 199 (2004)). Likewise, trial courts have "deemed relevant" the admission of an accomplice's out of court statement implicating the Defendant, which is impermissible unless the Defendant is afforded his rights of confrontation and cross examination. *E.g.*, *Schepps v. State*, 432 S.W.2d 926, 940 (Tex. Crim. App. 1968) (citing *Bruton v. United States*, 391 U.S. 123 (1968)).

Given the unique and momentous interest at stake – the death-eligibility determination is the stage at which the penalty of life imprisonment can be converted to a death sentence – procedural rights that will ensure the highest degree of reliability in the fact-finding process are imperative. *United States v. Fell*, 217 F. Supp. 2d 469 (D. Vt. 2002) (striking down the Federal Death Penalty Act because of relaxed evidentiary standards employed in the determination of aggravating and mitigating factors).

B.    Separation of Powers

Article II, § 1 of the Texas Constitution states:

The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be to a separate body of magistracy, to wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another, *and no person*, or collection of persons, *being of one of these departments, shall exercise any power properly attached to either of the others*, except in the instances herein expressly permitted.

7

TEX. CONST. art. II, § 1 (emphasis added).   Article 37.071, § 2(a) of the Code of Criminal Procedure violates this provision because it fails to provide an objective standard for determining the admissibility of punishment evidence, and impermissibly allows the judiciary, indeed, each individual judge, to set a standard for the admission of evidence including extraneous offense evidence, when determination of such standard properly belongs to the legislature.

The separation of powers provision not only prevents the accumulation of excessive power in a single branch of government, but it "also has the incidental effect of promoting effective government by assigning functions to the branches that are best suited to discharge them." *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990).   Under this statute, admissibility of evidence is determined entirely by an individual trial judge based on what he or she deems relevant, rather than what is relevant under Rule 401 of the Texas Rules of Evidence. *See Grunsfeld v. State*, 843 S.W.2d 521, 547 (Tex. Crim. App. 1992) (Clinton, J., concurring) ("[T]he Legislature still has not supplied . . . any 'polestar' . . . by which the trial court can make the essential 'relevancy' determination.").   The legislature, not judges, should determine what class of evidence should be admitted. *See* TEX. RULE OF EVID. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

While not controlling, the United States Supreme Court's interpretation of the federal separation of powers doctrine is helpful.   The United States Supreme Court has said that so long as the legislative branch lays down "'by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform, such legislative action is not a

8

forbidden delegation of legislative power.'" *J. W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409 (1928). *See also Grunsfeld*, 843 S.W.2d at 547. Under this statute, the phrase "any matter the court deems relevant" constitutes an improper delegation of authority to the judiciary because the legislative branch has delegated to trial courts to decide ad hoc punishment relevancy without first declaring a policy or fixing a standard. *See Ex parte Granviel*, 561 S.W.2d 503, 514 (Tex. Crim. App. 1978). By essentially delegating to the trial courts the function of declaring punishment policy case-by-case, the legislative branch has delegated power belonging to its own governmental branch, and thereby violated the Texas separation of powers provision.

C.     Due Process of Due Course of Law

By permitting trial court to decide case-by-case what issues are deemed relevant to punishment without first declaring a policy or fixing a standard by which the courts may decide admissibility, Article 37.071, § 2(a) of the Code of Criminal Procedure deprives the Defendant of due course of law under Article I, § 19 of the Texas Constitution and due process under the Fourteenth Amendment to the United States Constitution because it introduces arbitrariness into punishment proceedings and it eliminates the Defendant's right to appellate review of the trial court's decisions. It also violates the prohibition against overly-vague criminal laws.

1.     Arbitrariness

Article 37.031 § 2(a)'s phrase "any matter the court deems relevant" meets the very definition of arbitrariness. *See Black's law Dictionary*, p. 96 (West 5th ed. 1989) (arbitrariness is "Conduct or acts based alone upon one's will, and not upon any course of reasoning and exercise of judgment;" "Without adequate determining principle."). Arbitrary punishment is that punishment "which is left to the decision of the judge, in distinction from those defined by

9

statute." *Id.* What is admissible is left completely to the unfettered whim of each different trial judge in Texas. Each trial court may admit not only evidence which *is* relevant, but also any evidence a particular judge *deems* relevant. Each judge under this statute is a legislature unto himself. Under any definition, there is no more arbitrary statute than the one in question here.

    2.    <u>Right to Appeal Eliminated</u>

The Defendant has a right to a meaningful review of decisions complained of at the trial court level. *See Evitts v. Lucey*, 469 U.S. 387, 396-99 (1985); *see also* TEX. CONST. Art. V, § 6. Under this statute, however, there can be no meaningful appellate review of trial court decisions as to the admissibility of evidence because no objective standard exists. Whatever a particular court subjectively "deems" relevant to the proceedings is admissible. There is no standard against which the trial court's decision may be measured. If the trial court admits the evidence, the decision can never be error, whether there is an objection or not, because such evidence *is* relevant whenever the judge *deems* it relevant. By eliminating any objective standard by which to guide trial courts, Article 37.071, § 2(a) also eliminates any methods by which an appellate court may gauge the propriety of the trial court's evidentiary decisions, thereby precluding any meaningful review of trial court decisions regarding admissibility of punishment evidence.

    3.    <u>Due Process – Void for Vagueness</u>

The statute in question violates the due process prohibition against vague criminal laws.

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. *Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic*

10

> *policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.* Third, but related, where a vague statute abut[s] upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of [those] freedoms.

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)(emphasis added) (footnotes and quotation marks omitted).  The Defendant challenges the constitutionality of Article 37.071 § 2(a) of the Code of Criminal Procedure on the second and "more important aspect of the vagueness doctrine . . . , [namely] 'the requirement that a legislature establish minimal guidelines to govern law enforcement.' [citation omitted] Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors and juries to pursue their personal predilections.'" *Kolender v. Lawson*, 461 U.S. 352, 538 (1983) (quoting *Smith v. Goguen*, 415 U.S. 566, 574-75 (1974)).

The phrase "any matter the court deems relevant to sentencing," is as uncertain a "standard" as the English language can produce.  From this statutory wording no one can know what is relevant at the punishment phase of a Texas criminal trial.  "[A] law must be sufficiently definite that its terms and provisions may be known, understood and applied; otherwise, it is void and unenforceable." *Floyd v. State*, 575 S.W.2d 21, 23 (Tex. Crim. App. 1978); *Ex parte Granviel*, 561 S.W.2d 503 (Tex. Crim. App. 1978).  Indeed, the judiciary itself is at a loss to know the relevant matters of a criminal punishment trial without legislative guidance. *See Grunsfeld v. State*, 843 S.W.2d 521, 547 (Tex. Crim. App. 1992) (Clinton, J., concurring) (reviewing same provision for non-death penalty cases).  If the courts themselves are unable to know what is prohibited from admission as evidence in a criminal punishment trial from the face of the statute, then the law is void for vagueness because it makes it impossible for the judiciary

11

to construe the statute and tell when it has been violated. Because the legislature has failed to declare exactly what matters in Texas death penalty punishment trials are admissible, but instead shifted the policy issues to the judiciary, the statute is void for vagueness under Article I, § 19 of the Texas Constitution, and under the Fifth and Fourteenth Amendments to the United States Constitution. *See May v. State*, 765 S.W.2d 438 (Tex. Crim. App. 1989) (finding harassment statute unconstitutionally vague).

D.      Cruel and Unusual Punishment

The Eighth Amendment proscribes the infliction of "cruel and unusual punishment." U. S. CONST. amend. VIII.    Article I, § 13 of the Texas Constitution forbids cruel or unusual punishment. *See e.g.*, *Francis v. State*, 877 S.W.2d 441 (Tex. App.—Austin, 1994, pet. ref'd). Because Article 37.071, § 2(a) gives no guidance whatsoever to the admissibility of evidence, sentences imposed under this state are "cruel and unusual in the same way that being struck by lightning is cruel and unusual." *Furman v. Georgia*, 408 U.S. 238, 309 (1972) (Stewart, J., concurring).  The Defendant's sentence will be determined on an unconstitutionally unreliable basis because the trial judge "deemed" certain evidence relevant and admissible.

> The exact scope of the constitutional phrase "cruel and unusual" has not been detailed by this Court. . . . The basic concept underlying the Eighth Amendment is nothing less than the dignity of man. *While the State has the power to punish, the Amendment stands to assure that this power be exercised within the limits of civilized standards*. . . . [T]he words of the Amendment are not precise, and . . . their scope is not static.  The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.

12

*Trop v. Dulles*, 356 U.S. 86, 99-101 (1958) (emphasis added) (footnotes omitted).  The Eighth Amendment requires that punishment be assessed within the limits of "civilized standards." Article 37.071, § 2(a) violates Article I, § 13 of the Texas Constitution and the Eighth and Fourteenth Amendments to the United States Constitution because it does not contain a standard.

<u>CONCLUSION</u>

Based on the forgoing, the Defendant urges this court to declare Article 37.071, § 2(a) of the Texas Code of Criminal Procedure unconstitutional on its face, and preclude the State from employing this unconstitutional provision in seeking the death penalty against the Defendant. The Defendant prays for all other relief to which he shows himself justly entitled.

Respectfully submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorney's Office, on this the ____ day of _____, 2010.

ROBERT K. LOPER

14

CAUSE NO. 08-3872   0333

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF Bay court |
| | § | JAN 2 0 2011 |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

JASON E. MURRAY
CLERK DISTRICT COURT
FILED
GALVESTON COUNTY, TEXAS
BY_____ DEPUTY

## ORDER

BE IT REMEMBERED, that on the ___20___ day of ___Jan.___,

2010, came to be considered the foregoing motion to declare Article 37.071, § 2(a) of the Texas

Code of Criminal Procedure unconstitutional on its face.   After consideration, the court has

determined that the motion shall be, and is hereby, ~~GRANTED.~~ DENIED.

IT IS THEREFORE ORDERED that the statute is declared unconstitutional and the

State is precluded from seeking the death penalty against the Defendant.

SIGNED the ___20___ day of ___Jan.___, 2010.

_John Ellison_

JUDGE PRESIDING

1

CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## MOTION TO DECLARE ARTICLE 37.071, § 2(b)(1) OF THE TEXAS CODE OF CRIMINAL PROCEDURE UNCONSTITUTIONAL ON ITS FACE

TO THE HONORABLE JUDGE OF THIS COURT:

TRAVIS JAMES MULLIS, Defendant in the above-entitled and numbered criminal action, files this motion to declare Article 37.071 § 2(b)(1) of the Texas Code of Criminal Procedure unconstitutional on its face. In support, the Defendant will show the court the following.

Background

The Defendant has been indicted by the Galveston County Grand Jury for Capital Murder. The State of Texas is seeking the death penalty. Article 37.071 of the Texas Code of Criminal Procedure sets out the framework for the trial of this criminal case.

Analysis

A.    The Future Dangerousness Provision of the Texas Death Penalty Statute

Article 37.071, § 2(b)(1) of the Code of Criminal Procedure provides in pertinent part:

(b)    On conclusion of the presentation of the evidence, the Court shall submit the following issues to the jury:

(1)    whether there is a probability that the Defendant

would commit criminal acts of violence that would

constitute a continuing threat to society

1

TEX. CODE CRIM. PROC. art. 37.071 § 2(b)(1).

B.    The Statute Violates the Defendant's Right to Trial by Jury and Presumption of Innocence

On June 24, 2002, the Supreme Court declared that Arizona's capital sentencing scheme violates the Sixth Amendment's jury trial guarantee because it entrusts to the trial judge the determination whether aggravating factors exist that will justify the imposition of the death penalty. *Ring v. Arizona*, 536 U.S. 584, 609 (2002).  Applying the holdings from its previous decisions in *Jones v. United States*, 526 U.S. 227 (1999) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held that "[u]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Jones*, 526 U.S. at 243 n.6.  The Supreme Court in *Ring* rejected the distinction between elements of an offense and sentencing factors that it had relied on in *Walton v. Arizona*, 497 U.S. 639 (1990), because that analysis was obviated by the holding of *Apprendi*. *Ring*, 536 U.S. at 604. "If a State makes an increase in a Defendant's authorized punishment contingent on the finding of a fact, that fact  – no matter how the State labels it – must be found by a jury beyond a reasonable doubt." *Apprendi*, 530 U.S. at 482-83. Thus, "when the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." *Id.* at 495.  Because Arizona's aggravating factors operated as the functional equivalent of an element of the greater offense of capital murder, the Sixth Amendment required that they be found by a jury. *Ring*, 536 U.S. at 609.  The Supreme Court concluded that Arizona's capital sentencing scheme violated the Sixth

2

Amendment's guarantee of a right to trial by jury on every element of the offense charged, because, under Arizona law, the trial judge alone determined the existence or nonexistence of the enumerated aggravating factors. *Id.*

The Supreme Court has distinguished "sentencing factors," that is, any fact that is not an element of the offense but that serves to enhance a sentence, allowing such factors to be found by the sentencing body by a lower standard of proof, typically by a preponderance of the evidence. *See McMillan v. Pennsylvania*, 477 U.S. 79, 91092 (1986). In *McMillan*, the Supreme Court considered the constitutionality of a Pennsylvania statute that provided that anyone convicted of certain enumerated felonies was subject to a mandatory minimum sentence of five years in prison if the sentencing judge found, by a preponderance of the evidence, that the person "visibly possessed a firearm" during the commission of the offense. *Id.* at 81. The Supreme Court concluded that the visible possession of a firearm was not an element of the offense but a sentencing factor, stressing that a legislature's characterization is dispositive if it does not transgress constitutional limits. *Id.* The Court identified several features that indicated that Pennsylvania's characterization of visible possession of a firearm as a sentencing factor was constitutionally permissible. The most significant feature was the fact that the statute "neither altered the maximum penalty for the crime committed nor created a separate offense calling for a separate penalty." *Id.* at 87-88.

In 1999, the Supreme Court took up the question whether the federal car jacking statute, 18 U.S.C. § 2119, set out three separate offenses by providing for a fifteen year maximum penalty, a 25 years maximum penalty if serious bodily injury resulted, and a maximum penalty of life imprisonment if death resulted. *Jones*, 526 U.S. at 230. The Court noted, "it is at best

3

questionable whether the specification of facts sufficient to increase a penalty range by two-thirds, let alone from 15 years to life, was meant to carry none of the process safeguards that elements of an offense bring with them for a Defendant's benefit." *Id.* at 233.  Further,

> if a potential penalty might rise from 15 years to life on a nonjury determination, the jury's role would correspondingly shrink from the significance usually carried by determination of guilt to the relative importance of low-level gatekeeping: in some cases, a jury finding of fact necessary for a maximum 15-year sentence would merely open the door to a judicial finding sufficient for life imprisonment.

*Id.* at 243-44.

The following year the Supreme Court put to rest the element versus sentencing factor debate. *Apprendi*, 530 U.S. 466, involved a New Jersey "hate crime" statute that provided for a longer term of imprisonment if a trial judge found, by a preponderance of the evidence, that a Defendant committed a crime with a biased purpose, as described in the statute.  The Court held that the Due Process Clause required that such a factual determination be made by a jury on the basis of proof beyond a reasonable doubt and, therefore, struck down the statute. *Id.* at 469.

*Apprendi* was extended to capital prosecutions in *Ring*. Ring was convicted of felony murder in the course of armed robbery.  Under Arizona law, he could not be sentenced to the statutory maximum penalty of death unless further factual determinations were made by the sentencing judge concerning the presence of absence of aggravating and mitigating circumstances.  Only if the court found at least one statutory aggravating circumstance beyond a reasonable doubt and no mitigating circumstances, "sufficiently substantial to call for leniency," could it impose the death penalty. *Ring*, 536 U.S. 592-93.  The United States Supreme Court reversed Ring's death sentence holding that, under *Apprendi*, "because Arizona's enumerated

4

aggravating factors operate as 'the functional equivalent of an element of a grater offense,' the Sixth Amendment requires that they be found by a jury." *Ring*, 536 U.S. at 609.

In sum, this line of cases, read together, means that those facts setting the outer limits of a sentence, and of the judicial power to impose it, are elements of the crime for the purposes of the constitutional analysis. *Harris v. United States*, 536 U.S. 545, 549 (2002). Regardless of whether particular statutory factors have been labeled, considered or construed as elements or sentencing factors, they must now be treated as elements under the authority of *Jones, Apprendi* and *Ring*.

The Supreme Court's holding that death-eligibility factors are the functional equivalents of elements of the offense dictates that all fair trial guarantees be imported into the fact-finding process for these factors. Article 37.071 § 2(b)(1) permits the jury to find the Defendant death eligible – that is, that there is a probability that he will commit criminal acts of violence that would constitute a continuing threat to society – even if the State does not prove this fact beyond a reasonable doubt. Although Article 37.071(2)(c) purportedly requires that the State prove this element beyond a reasonable doubt, it is logically inconsistent to find that a person will "beyond a reasonable doubt, probably be a future danger." Not only is this burden of proof illogical and incomprehensible, it deprives the Defendant of his presumption of innocence and allows the jury to sentence the Defendant to death without finding all of the essential elements of the offense beyond a reasonable doubt.

The right to the presumption of innocence is not specifically articulated in the United States Constitution, but it has been recognized by the Supreme Court as a "basic component" of the right to a fair trial secured by the Fourteenth Amendment. *Estelle v. Williams*, 425 U.S. 501, 503 (1976). Further, the Texas Code of Criminal Procedure provides, "[a]ll persons are presumed

5

to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt." TEX. CODE CRIM. PROC. art. 38.03. Because death-eligibility is contingent on a jury finding of future dangerousness, this finding is an element of the offense and must, therefore, be accorded full constitutional protection, including the presumption of innocence and proof beyond a reasonable doubt.

Given the unique and momentous interest at stake – the death-eligibility determination is the stage at which the penalty of life imprisonment can be converted to a death sentence – procedural rights that will ensure the highest degree of reliability in the fact-finding process are imperative. *United States v. Fell*, 217 F. Supp. 2d 469 (D. Vt. 2002).

C.   The Statute is Arbitrary and Capricious and Violates the Defendant's Due Process Rights

The Texas requirement that a jury make a factual determination that there is a probability that the Defendant will commit criminal acts of violence is arbitrary and capricious because whether or not a person will commit future criminal acts of violence is not within the ability of the lay people on the jury to accurately predict. The probability that a person will commit future violence is not a prediction that even the psychiatric community can make, particularly in the long run. The unreliability of psychiatric predictions of long-term future dangerousness is by now an established fact within the profession. *See, e.g.,* CLINICAL ASPECTS OF THE VIOLENT INDIVIDUAL" (American Psychiatric Association Task Force on Clinical Aspects of the Violent Individual, ed. 1974); Amicus Brief of the American Psychiatric Association (APA) filed before the Supreme Court in *Barefoot v. Estelle*, 463 U.S. 880 (1983). The APA, in its brief, said that the primary finding of the task force was that judgments concerning the long-run potential for future violence and the dangerousness of a given individual are fundamentally of very low

6

reliability, adding that the state of the art regarding predictions of violence is very unsatisfactory. *Id.*

The unreliability of long term predictions of future dangerousness is acknowledged even today by those who take the position that there is some ability to predict dangerousness. "Using modern assessment tools, however, there is a growing body of data to suggest that psychiatrists can, in fact, predict violence more accurately than many believe – at least in the short term. KEN HAUSMAN, "PREDICTING VIOLENCE RISK POSSIBLE BUT COMPLEX" *Psychiatric News*, Vol 36, Number 13 (2001). These predictions of violence, even if more accurate than in the past, come in a civil setting where a determination is made about possible civil commitment, not in the context of a capital murder case where the issue is whether the Defendant is going to live or die, and not simply whether to suspend or limit their civil liberties for a short period of time.

> Despite the pervasiveness of violence risk assessment in mental health law, research continues to indicate that the unaided abilities of mental health professionals to perform this task are modest at best.

*MacArthur Research Network on Mental Health and the Law,* "Executive Summary," at 1. (April, 2001). The consideration for the jury must necessarily be a long-term consideration, as a Defendant who is given a life sentence will not be eligible for parole for 40 calendar years. The ability to make such long-term predictions is rendered more unreliable by the propensity for violence to "age out" as a person grows older. *See* SORENSEN, JONATHAN R. AND ROCKY L. PILGRIM, CRIMINOLOGY: AN ACTUARIAL RISK ASSESSMENT OF VIOLENCE POSED BY CAPITAL MURDER DEFENDANTS, *Journal of Law and Criminology*, 90 J. Crim. L. & Criminology, 1251, 1255 (2000).

7

## Conclusion

Based on the reasons discussed above, Article 37.071(b)(1) must be found to be unconstitutional and the death penalty must be precluded as a sentencing option.

Respectfully submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorneys' Office, __March 8__, 2010.

**ROBERT K. LOPER**

8

0333

**CAUSE NO. 08-3872**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

JASON E. MURRAY
CLERK DISTRICT COURT
FILED
By Court
FEB 9 2011
COUNTY, TEXAS
BY
DEPUTY

## ORDER

**BE IT REMEMBERED**, that on the ___20___ day of ___Jan.___ ,

2010, came to be considered the foregoing motion to declare Article 37.071, § 2(b)(1) of the

Code of Criminal Procedure Unconstitutional on its face.   After consideration, the court has

determined that the motion shall be, and is hereby, ~~GRANTED.~~ DENIED

**IT IS THEREFORE ORDERED** ~~that the statute is declared unconstitutional and the~~

~~State is precluded from seeking the death penalty against the Defendant.~~

SIGNED the ___20___ day of ___Jan.___ , 2010.

John Ellison

JUDGE PRESIDING

1

0033

CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## MOTION FOR COURT TO FIND ART. 37.071 OF THE TEXAS CODE OF CRIMINAL PROCEDURE UNCONSTITUTIONAL AS APPLIED TO TRAVIS JAMES MULLIS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, TRAVIS JAMES MULLIS, the Accused in the above-cause, by and through counsel and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 10, 13, and 19 of the Texas Constitution and applicable Rules of Criminal Procedure. In support thereof the Accused would show:

The Accused has been indicted for the offense of capital murder.

The State is seeking the death penalty. The Eighth Amendment of the United States Constitution requires a greater degree of accuracy and fact-finding than would be true in a non capital case. *Gilmore v. Taylor,* 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993); *Woodson v. North Carolina,* 428 U.S. 280, 305 (1976).

The courts of this state are bound by the law to make certain that the death sentence is not wantonly or freakishly imposed and that the lawful purposes of Art. 37.071 are accomplished. *Ellason v. State*, 815 S.W.2d 656 (Tex. Crim. App. 1991).

The courts of this state are required by law to limit capital punishment to a "small group of narrowly defined and particularly brutal offenses" and "for the same type of offenses which occur under the same types of circumstances." *Jurek v. Texas*, 428 U.S. 262, 270 (1976).

Statutory rules on capital punishment must guide the states so that the death penalty is reserved for the most heinous and serious crimes. *Zant v. Stephens,* 462 U.S. 862 (1983).

"When a severe punishment is not inflicted elsewhere, or when more serious crimes are punished less severely, there is a strong inference that the State is exercising arbitrary, unrestrained power.'" *Furman v. Georgia*, 408 U.S. 238, 276 (1972).

**Expansion of Capital Eligible Crimes**

Texas has expanded its list of capital eligible crimes from five aggravating circumstances in 1974 to eleven at the present time. In 1974, capital eligible crimes included: (1) murder of a peace officer or fireman who was on duty; (2) murder committed intentionally during the course of kidnapping, burglary, robbery, forcible rape, or arson; (3) murder for remuneration; (4) murder committed during an escape from a penal institution; and (5) murder of a prison employee by a prison inmate. Tex. Penal Code Art.1257 (Vernon 1974). (That article has been superseded by § 19.03 of the Texas Penal Code, which is substantially similar to Art. 1257. )

The crimes eligible for capital punishment have been expanded to now include: (1) prison inmates serving death or life sentences who kill a fellow inmate; or (2) prison inmates serving death or life sentences who murder with the intent to participate in the profits of a combination; (3) murder of more than one person during the same criminal transaction; or (4) murder of more than one person during different criminal transactions related to the same scheme; and (5) murder of an individual under six years of age. TEX. PENAL CODE ANN. § 19.03 (Vernon 2003).

The Massachusetts Council Report recommended limiting capital murder to eight aggravating circumstances. While the proposed Massachusetts capital murder statute would make political terrorism and intentional torture a crime, it did not include felony murder and the murder of individuals under six years old as aggravating circumstances as does Texas. Massachusetts Council Report on the Death Penalty, p. 12, at www.mass.gov/Agov2/docs/5-3-04%20Mass DPReportFinal.pdf.

The Illinois Commission on the Death Penalty recommended narrowing the death penalty from its current list of twenty eligibility factors to five; (1) murder of a peace officer or firefighter killed in the line of duty; (2) murder of any person (inmate, staff, visitor, etc.) at

a correctional facility; (3) murder of two or more persons; (4) intentional murder of a person involving torture; and (5) murder by a person charged or convicted of a crime of anyone involved with the investigation, prosecution or defense of that crime. Illinois Commission on the Death Penalty, p. 23-24, at http://www.state.il.us/defender/summary_ recommendations.pdf.

The Constitution Project recommended that the states must meaningfully narrow the class of death-eligible offenders to prevent capital punishment in cases involving questionable categories of Defendants and homicides. Constitution Project, p. 11, at http://www.constitutionproject.org/dpi

The Supreme Court found the death penalty can not be applied to every murder case and that mandatory application was unconstitutional. *Roberts v. Louisiana,* 428 U.S. 325 (1976).

The state of Texas has now broadened its definition of an "individual" to a "human being who is alive, including an unborn child at every stage of gestation from fertilization until birth." TEXAS PENAL CODE ANN. § 1.07 (a) (26). The previous definition of "individual" was "a human being who has been born and is alive." The change in definition means a person who murders a pregnant woman now can be held accountable for the death of two people, which is an aggravating circumstance for the death penalty. Therefore, the broader definition is yet another expansion of capital eligible crimes.

This recent redefinition of who is an "individual" conceivably expands the State's application of the death penalty to anyone who intentionally or knowingly causes the "death" of a fertilized egg.  Texas Penal Code §19.03(a)(8) defines capital murder to include someone who "..murders an individual under six years of age". Any fertilized egg is now and "individual" and anyone who intentionally or knowingly causes the destruction of that egg could conceivably be charged with capital murder.  The actions of the Texas legislature in expanding the definition of who an individual is, does irreparable harm to the constitutionality of the Texas Death Penalty Statute.

The Illinois Commission on the Death Penalty found that the expansion of the list of aggravating circumstances creates problems in the consistency of the application of the

death penalty. "Prosecutors and courts struggle to fairly apply the ever evolving list of factors making a Defendant eligible for the death penalty. The resulting capital prosecutions have over-taxed the resources of the criminal justice system, and more important, reflect a degree of arbitrariness, when decisions across the state are compared." Illinois Commission on the Death Penalty, p. 68, at http://www.state.il.us/defender/report/chaper_04.pdf.

Aggravating circumstances must genuinely narrow the class of capital eligible crimes and must reasonably justify the imposition of a death sentence compared to others found guilty of murder. That prevents an arbitrary and capricious sentencing pattern found in *Furman. Zant v. Stephens,* 462 U.S. 862, 877 (1983).

A state that authorizes capital punishment has a "constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty. Part of a State's responsibility in this regard is to define the crimes for which death may be the sentence in a way that obviates 'standardless [sentencing] discretion.'" *Gregg v. Georgia,* 428 U.S. 153, 196. (1976).

## No Longer is Specific Intent or a Knowing State of Mind Required

A person commits murder in the state of Texas if he: (1) intentionally or knowingly causes the death of an individual; TEX. PENAL CODE §19.02 (b).

The Supreme Court found the new Texas Penal Code narrowed the scope of its laws by limiting capital homicides to committing "intentional and knowing murders." *Jurek v. Texas,* 428 U.S. 262, 268 (1976). But the expansion of the death penalty statute means some of the crimes do not require intent.

A form of strict liability in some instances has replaced specific intent for some crimes. For example, a person who accidentally kills an individual under six years old can receive the death penalty. *Ramos v. State,* 961 S.W.2d 637 (Tex. App.—San Antonio 1998). Now that an "individual" is now a fertilized egg, will the accidental destruction of a fertilized egg also result in a possible death sentence?

The courts of Texas do not ensure the death penalty would be limited "for the same type of offenses which occur under the same types of circumstances." In the example cited above, a person who does not intend to kill an infant but does so during a drive by shooting, *Ramos v. State,* 961 S.W.2d 637 (Tex. App.—San Antonio 1998), can receive the same sentence as a person who intends to kill and torture an infant. *Wyatt v. State,* 23 S.W.3d 18, 25 (Tex. Crim. App. 2000).

The Eighth Amendment requires that the death penalty be reserved for murders that show a high degree of culpability, and that the "culpability of the average murderer is insufficient to justify the most extreme sanction available to the State." *Atkins v. Virginia,* 563 U.S. 304, 319 (2002).

The courts of the United States are bound by law to vacate the death sentence if the severity of the appropriate punishment does not reflect the culpability of the offender. *Godfrey v. Georgia,* 446 U.S. 420, 433 (1980).

**Law of Parties Unconstitutionally Expands to Class to Which the Death Penalty is a Possible Punishment**

The state of Texas allows the death penalty for a Defendant who took part in a felony where a person was killed during the process. "All conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy." TEX. PENAL CODE § 7.02 (b).

Once a Defendant is convicted under the law of parties rule, he can be sentenced to death if a jury finds he "anticipated that a human life would be taken" during the felony. TEX. CODE CRIM. PROC. art. 37.071 (b) (2). In these situations, anticipation replaces intent.

The Supreme Court found the death penalty is excessive punishment when imposed on a Defendant who participated in a felony but did not actually kill or intend to kill the victim. *Tison v. Arizona,* 481 U.S. 137, 150-151 (1987).

The Supreme Court ruled criminal culpability must be limited to participation in the crime, and the punishment must reflect "personal responsibility and moral guilt." A death sentence for someone who does not kill or does not intend to kill does not satisfy the retribution aspect of capital punishment. *Enmund v. Florida*, 458 U.S. 782, 801 (1982).

The Constitution Project recommended reserving the death penalty for the worst killers by limiting the cases eligible for capital punishment and excluding those people convicted of felony murder who "did not kill, intend to kill, or intend that a killing occur." Constitution Project, p. 11, at http://www.constitutionproject.org/dpi/.

The Massachusetts Commission also recommended limiting capital murder to "Defendants who commit first-degree murder either through their own conduct, or through the conduct of another person whom they directed or controlled, or with whom they entered into agreement to commit the murder." Massachusetts Council Report on the Death Penalty, p. 12, at http://www.mass.gov/Agov2/docs/5-3-04%20MassDPReportFinal.pdf.

The Supreme Court ruled that capital punishment is an excessive penalty for someone who does not take another life. *Coker v. Georgia*, 433 U.S. 584, 598 (1977). Defining an individual as a "human being who is alive, including an unborn child at every stage of gestation from fertilization until birth" unconstitutionally expands the class of those to which the death penalty can be fairly applied.

**WHEREFORE, PREMISES CONSIDERED**, Defendant prays that upon hearing hereof, this court find that:

Texas Penal Code art. 37.071 is unconstitutional as applied to the Accused;

The District Attorney for Galveston County, Texas should be precluded from seeking the death penalty against the Accused;

Such other and further relief to which the Accused, and or his counsel, may show themselves to be justly entitled.

Respectfully submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorneys' Office, on March 8 , 2010.

**ROBERT K. LOPER**

7

CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

**ORDER**

BE IT REMEMBERED, that on _____Jan. 20_____, 2010, came to be considered the foregoing **MOTION FOR COURT TO FIND ART. 37.071 OF THE TEXAS CODE OF CRIMINAL PROCEDURE UNCONSTITUTIONAL AS APPLIED TO TRAVIS JAMES MULLIS**.   After consideration, the court has determined that the motion shall be, and is hereby,

_____     **GRANTED**

___✓___     **DENIED**

IT IS THEREFORE ORDERED that the statute is declared unconstitutional and the State is precluded from seeking the death penalty against the Defendant.

SIGNED the _20_ day of _____Jan._____, 2010.

_John Ellison_

**JUDGE PRESIDING**

8

0333
CAUSE NO. 08-3872

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## MOTION TO HOLD UNCONSTITUTIONAL TEX. CODE CRIM. PROC. ART. 37.071 SEC. 2(e) AND (f) - BURDEN OF PROOF

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, TRAVIS JAMES MULLIS, the Accused, by and through his attorney of record and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution and makes this his Motion to Hold Unconstitutional Tex. Code Crim. Proc. arts. 37.071 Sec. 2(e) and (f) - Burden of Proof, and as grounds therefore would show the Court as follows:

1. Effective September 1, 1991, a jury which has convicted a defendant of capital murder, in which the State is seeking the death penalty, shall be charged as follows:

Tex. Code Crim. Proc. Art. 37.071, Sec. 2

(e)   The court shall instruct the jury that if the jury returns an affirmative finding to each issue submitted under Subsection (b) of this article, it shall answer the following issue:

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death

1

sentence be imposed.

(f)  The court shall charge the jury that in answering the issue submitted under Subsection (e) of this article, the jury:

(1)  shall answer the issue "yes" or "no";

(2)  may not answer the issue "no" unless it agrees unanimously and may not answer the issue "yes" unless 10 or more jurors agree.

2.  This statute is unconstitutional for the following reasons:

(a)    It impermissibly shifts the burden of proof on mitigation to the Defendant in violation of Article I §10 of the Texas Constitution.  The statute requires the jury to consider, along with mitigating evidence, the "moral culpability of the defendant."  This is the jury that has just found the defendant had no defense to the charge of capital murder and that he was guilty of that offense, beyond a reasonable doubt.

The statute then demands that the defense produce "sufficient" mitigation (while considering this same "moral culpability") to warrant a sentence of life imprisonment.  The mitigating evidence must be "sufficient" to overcome "moral culpability" that has already been established in the minds of the jurors.  In death penalty deliberations, "moral culpability" is not evidence, it is a finding that the jury has already made.  The statute places an unfair, undue and unconstitutional emphasis on the finding that the jury has already made.  The Defendant, if he is to save his life, must offer evidence that is somehow greater than the finding of moral culpability beyond a reasonable doubt.

2

(b) Aside from shifting the burden of proof to the Defendant, the statute provides no other guidance to the jury that is called upon to make this life and death decision. As a result, the death penalty is imposed in a wanton and freakish manner in violation of the Defendant's rights to due process and protection from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution, as well as Article I §13 of the Texas Constitution.

(c) This impermissible shift of the burden to the Defendant is made more unconscionable by the language of Tex. Code Crim. Proc. art. 37.071(2)(f) which provides that the jury shall not answer the mitigation issue "yes" (resulting in a life sentence)  unless 10 or more jurors agree.   The Defense, according to the instructions to the jury, must then offer "sufficient" mitigating evidence to not only overcome the "moral culpability" that has already been established in the eyes of the jury, but 10 or those jurors must be convinced of the sufficiency of that evidence.

3.  State Law Violations

The infirmities in the statute discussed above are also in violation of State Constitutional Law.  Under the "due course of the law" provision of the Texas Constitution, Article I §10, the citizens of this state are guaranteed that any punishment for an offense will be in accordance with the law.  *McFarlane v. State*, 254 S.W.2d 136 (Tex. Crim. App. 1953). When the burden of proof is shifted to the Defendant, the State's burden has essentially been

3

reduced. *See e.g., Cobarrubio v. State*, 675 S.W.2d 749 (Tex. Crim. App. 1983) (overruled in part, *Lawrence v. State*, 700 S.W.2d 208 (Tex. Crim. App. 1985)); and *Elliott v. State*, 858 S.W.2d 478, 487-488 (Tex. Crim. App. 1993). Such a punishment, based on a reduced burden, is not in accordance with Texas law and is unconstitutional.

        **WHEREFORE, PREMISES CONSIDERED**, Defendant prays this court will hold this statute unconstitutional, and for such other relief as Defendant may be entitled.

        Respectfully submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

        **ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

        I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorney's Office, on March 8 , 2010.

**ROBERT K. LOPER**

4

0333

**CAUSE NO. 08-3872**

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Vs.** | § | **GALVESTON COUNTY, TEXAS** |
| | § | |
| **TRAVIS JAMES MULLIS** | § | **122ND JUDICIAL DISTRICT** |

JASON L. MURRAY
CLERK DISTRICT COURT
FILED
JAN 2 0 2011
GALVESTON COUNTY, TEXAS
BY_____
DEPUTY

## ORDER

BE IT REMEMBERED, that on the ___20___ day of _____Jan._____, 2010,

came to be considered the **MOTION TO HOLD UNCONSTITUTIONAL TEX. CODE**

**CRIM. PROC. ART. 37.071 SEC. 2(e) AND (f) - BURDEN OF PROOF** After consideration,

the court has determined that the motion shall be, and is hereby,

_____ **GRANTED**

___✓___ **DENIED.**

IT IS THEREFORE ORDERED that the statute is declared unconstitutional and the

State is precluded from seeking the death penalty against the defendant.

SIGNED the ___20___ day of _____Jan._____, 2010.

John Ellison
**JUDGE PRESIDING**

5

0333

## CAUSE NO. 08-~~3872~~

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## MOTION FOR EQUAL ACCESS TO
## BACKGROUND INFORMATION ON PROSPECTIVE JURORS

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Travis James Mullis, Defendant in the above-entitled and numbered

criminal action files this Motion for Equal Access to Background Information on Prospective

Jurors. In support the Defendant would show the following:

The Defendant is indigent and does not have access to private and confidential

information gathered by law enforcement agencies regarding arrests and convictions of

prospective jurors.

The Defendant does not have access to private and confidential information gathered by

law enforcement agencies regarding arrests and convictions of prospective jurors.

The prosecution will generally utilize confidential and restricted information regarding

arrests, convictions and other data collected by law enforcement agencies.  Additionally, the

prosecution has access to statewide data through N.C.I.C. that would provide them background

information on prospective jurors.  The Defendant does not have access to such information and

is specifically prohibited by laws from such access.

The defense also urges this motion on a theory that the prosecution has a state and federal

constitutional statutory duty to reveal evidence or information favorable to the defense pursuant

1

to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article 2.01

of the Texas Code of Criminal Procedure and the principles enunciated in *Brady v. Maryland*,

373 U.S. 83 (1963).

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that the court grant

this motion and provide the defense with equal access to background information on prospective

jurors.

Respectfully submitted,

ROBERT K. LOPER
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-0912 (fax)

GERALD BOURQUE
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Texas 77380
713-862-7766 (office)
832-813-0321 (fax)
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has

been hand delivered to the District Attorneys' Office, on March 8 , 2010.

ROBERT K. LOPER

2

CAUSE NO. 08-3872

JASON E. MURRAY
CLERK DISTRICT COURT
FILED

JAN 2 0 2011

GALVESTON COUNTY, TEXAS

BY_____
DEPUTY

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED, that on the 20 day of _____Jan_____,

2010, came to be considered the Defendant's **MOTION FOR EQUAL ACCESS TO**

**BACKGROUND INFORMATION ON PROPECTIVE JURORS.** The court is of the

opinion the motion should be in all things:

GRANTED    _____✓_____

DENIED    _____

JUDGE PRESIDING

3

0333

CAUSE NO. 08-~~3872~~

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## MOTION FOR DISCOVERY, PRODUCTION, AND INSPECTION OF EVIDENCE

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, TRAVIS JAMES MULLIS, Defendant in the above-entitled and numbered criminal action, files this Motion for Discovery, Production, and Inspection of Evidence under the authority of Article 39.14 of the Texas Code of Criminal Procedure, as well as the United States and Texas Constitutions.

The Defendant moves this court to order the prosecution to produce and permit the inspection, examination, testing, copying, and photographing of the following designated items:

### I. STATEMENTS

1.      All confessions, admissions, statements or comments, in writing, signed by the Defendant, in connection with this offense, or any factually related offense.

2.      All confessions, admissions, statements or comments, oral in nature and set down or otherwise preserved under Article 38.22 of the Texas Code of Criminal Procedure, made by the Defendant in connection with this cause, or any factually related offense.

3.      All oral, written and recorded statements of the Defendant, and any memoranda of such statements made to any investigating officer, law enforcement agency, or third party, which is in the possession or control of the prosecution, or any agent thereof.

1

4.     All statements of a nature as would be arguably admissible as a *res gestae* statement, spontaneous statement, or other utterance which the prosecution intends to introduce in its case-in-chief, either during the guilt/innocence stage or during the punishment stage.

5.     All handwritten or typed notes made by any law enforcement officers, agents or representatives, or any third parties who may be called by the prosecution, which contain any reference to, or content of, any oral statements uttered by the Defendant and recorded therein, which may be used either in the case-in-chief, either during the guilt/innocence or punishment stage, or as rebuttal evidence.

6.     All prior written or recorded statements, or verbatim recitations of oral statements contained in any document, of a witness to the alleged offense, including, but not limited to, the audio recordings of the statements of witnesses, as well as the Grand Jury testimony of any witness.

## II.  REPORTS, STATEMENTS AND RECORDS

7.     All handwritten, typed or otherwise recorded notes of police officers and any agent of the State who investigated or participated in the investigation of this case.  If the State claims that any material responsive to this request is privileged, the Defendant requests the State to finish all records to the court for an *in camera* inspections along with a privilege tag describing the material and identifying the number of pages, if written, or the number of tapes, if recorded.

8.     Offense reports, police reports, arrest reports and records, crime scene investigation reports and records, medical reports and records, psychological and psychiatric reports and records, and scientific reports and reports contained in written memoranda, letters, notes or transcriptions relating to the alleged facts of the offense, the crime scene, or any location which

2

may have a bearing on any issue of the case, the Defendant, the alleged victim, or any matter which may have a bearing on any issue of the case.

### III. OBJECTS AND TANGIBLE THINGS

9.      All documents, papers, books, letters, accounts, objects, buildings or places, or other tangible things which are in the possession of the prosecution, its agent or representative, or any third party subject to the control or guidance of the prosecution as a result of the investigation of the Defendant which are material and relevant to the case involving the Defendant, either in the guilt/innocence stage or the punishment stage, including, but not limited to, all weapons alleged by the State to have been used by the Defendant and any witness or party present at the crime scene, and all articles of clothing allegedly belonging to the Defendant, **including Mr. ~~Green~~'s property at the Texas Department of Corrections (TDC) and in the Harris County Jail**, and that of all other persons present at the crime scene.

10.      Any written waiver alleged by the State to have been signed by the Defendant involving the Defendant's right to counsel, the right to remain silent, or the right to be free from unreasonable search and seizure.

11.      Any search warrant or arrest warrant, supporting affidavits, and returns by law enforcement officers to arrest the Defendant or search the Defendant's residence, vehicle, or any secured premises, person, clothing, bodily fluid and hair subject to the control of the Defendant, or which is charged to the Defendant under any theory of possession, ownership, or control.

12.      Any and all stenographic or telephonic recordings or transcriptions of any electronic eavesdropping, wiretapping, surveillance or other means of obtaining undercover communications in the possession of the prosecution or any agents or representatives thereof,

3

including any tests, enhancements, or analysis of such recordings, in order to properly allow the Defendant to test the validity of such matters.

## IV. **PHOTOGRAPHS**

13.    All photographs, drawings, charts, diagrams, or sketches of the crime scene made by any law enforcement officer or agent, as well as all photographs, drawings, charts, diagrams, or sketches made by the prosecution teams which it either intends to admit or use as a jury aid during either phase of the trial.

14.    Any photographs the Defendant or other relevant person.

15.    Any photographic negatives which are in the possession of the State, but which are not to be used by the State during the trial of its case in chief.

## V. **RESULTS OF TESTS**

16.    All fingerprints, palm prints, foot prints, shoe, tire or other prints made by any means which are material and relevant to the case involving the Defendant, either in the guilt/innocence stage or the punishment stage.

17.    All reports of scientific tests, experiments or comparisons, and all reports of any experts who conducted such tests, experiments or comparisons, concerning, *inter alia*, DNA, blood, blood spatter, weapons, shots, waddings, bullets, cartridge cases, tool marks, gun powder residue, and hand wash results, and the weapons allegedly used by the Defendant and the other weapons discovered at the scene or in the course of the investigation.  Moreover, all evidence concerning any attempt to conduct a scientific test, experiment, or comparison described above.

18.    The autopsy reports concerning the Complainant.

19.    Any medical or psychiatric reports relating to the Defendant and any other witness.

4

20.     Any evidence of insanity, incompetency, incapacity, or mental retardation of the Defendant or any witness.

## VI. "VICTIM IMPACT" EVIDENCE

Summary of any and all victim impact evidence the State intends to offer as evidence.

## VII. IDENTIFICATION

22.     Information regarding the identification of the Defendant whether by photographs, films, line-ups, or show-ups as follows:

A.      Names and addresses of persons identifying the Defendant, specifying the crime for which the Defendant was identified and the corresponding date of the identification and the date of the alleged offense for which the Defendant was identified;

B.

C.      Photographs used in any photographic identification;

D.      Identification and description of persons participating in any and all line-ups or show-ups with the Defendant;

E.      The name and the nature of the particular participation of all officers conducting any and all line-ups or show-ups in which the Defendant was placed for the purpose of identification wherein the Defendant was identified, the corresponding offense and date said offense for which Defendant was identified.

F.      The dates, times and locations of any and all line-ups or show-ups which were conducted wherein the Defendant was identified; and

G.      Any and all waivers of Defendant's right to have counsel present at any line-up or show-up which were signed by the Defendant.

## VIII. GROUNDS

This motion is made pursuant to Article 39.14 of the Texas Code of Criminal Procedure, which provides in relevant part:

5

(a) Upon motion of the Defendant showing good cause therefore and upon to the other parties, the court in which an action is pending may order the State before or during trial of a criminal action therein pending or on trial to produce and permit the inspection and copying or photographing by or on behalf of the Defendant of any designated documents, papers, written statement of the Defendant, (except written statements of witnesses and except the work product of counsel in the case and their investigators and their notes or report), books, accounts, letters, photographs, objects or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody or control of the State or any of its agencies. The order shall specify the time, place and manner of making the inspection and taking the copies and photographs of any of the aforementioned documents or tangible evidence; provided, however, that the rights herein granted shall not extend to written communications between the State or any of its agents or representatives or employees. Noting in this Act shall authorize the removal of such evidence from the possession of the State, and any inspection shall be in the presence of a representative of the State.

This article creates a general rule for the defense to discover, inspect and have copies of a wide variety of documents. Exceptions are also created to the general rule of discovery. The exceptions of relevance to this motion are prosecutor's work product and communications among the State's agents, representatives, or employees. Thus, by the plain language of this statue, there are two categories of evidence implicated by this motion which a trial court may not order disclosed to the defense: (1) the "work product of counsel in the case and their investigators and their notes or report," and (2) "written communications between the State or any of its agents or representatives or employees." TEX. CODE CRIM. PROC. art. 39.14. Police reports fall into neither category.

In support of the foregoing, the Defendant would show the court that the production of all of the above evidence is necessary to the effective assistance of counsel. Such matters are in the possession or under the control of the prosecution, and are relevant, material, and necessary to the defense. The items are not privileged and denial of the same would deny the

6

Defendant a fair and impartial trial. Absent such discovery, the Defendant's rights under Articles 1.04, 1.05, 1.051 and 1.06 of the Texas Code of Criminal Procedure, Article I, Sections 9, 10, and 19 of the Texas Constitution, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States will be violated, to the irreparable injury of Defendant.

**WHEREFORE, PREMISES CONSIDERED,** the Defendant respectfully asks this court to grant this Motion for Discovery, Production, and Inspection of Evidence in all things or, in the alternative, that this court set this matter for hearing, and that after such hearing, the court grant such discovery in all things and order production of this evidence immediately.

Respectfully submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx 77380
713-862-7766(office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorneys' Office, on _March 8_____, 2010.

ROBERT K. LOPER

8

0333

## CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED, that on the _____, 2010, came to be considered the foregoing Motion for Discovery, Production and Inspection of Evidence submitted by Defendant. After consideration, the motion shall be, and is hereby, resolved as follows:

1.      All confessions, admissions, statements or comments, in writing, signed by the Defendant, in connection with this offense, or any factually related offense.

Granted:        _____

Denied:         _____

2.      All confessions, admissions, statements or comments, oral in nature and set down or otherwise preserved under Article 38.22 of the Texas Code of Criminal Procedure, made by the Defendant in connection with this cause, or any factually related offense.

Granted:        _____

Denied:         _____

3.      All oral, written and recorded statements of the Defendant, and any memoranda of such statements made to any investigating officer, law enforcement agency, or third party, which is in the possession or control of the prosecution, or any agent thereof.

<u>1</u>

Granted:    _____

Denied:     _____

4.     All statements of a nature as would be arguably admissible as a "res gestae" statement, spontaneous statement, or other utterance which the prosecution intends to introduce in its case-in-chief, either during the guilt/innocence stage, or during the punishment stage.

Granted:    _____

Denied:     _____

5.     All handwritten or typed notes made by any law enforcement officers, agents or representatives, or any third parties who may be called by the prosecution, which contain any reference to, or content of, any oral statements uttered by the Defendant and recorded therein, which may be used either in the case-in-chief, either during the guilt/innocence or punishment stage, or as rebuttal evidence.

Granted:    _____

Denied:     _____

6.     All prior written or recorded statements, or verbatim recitations of oral statements contained in any document, of a witness to the alleged offense, including, but not limited to, the audio statements of , as well as the Grand Jury testimony of any witness.

Granted:    _____

Denied:     _____

7.     All hand-written, typed or otherwise recorded notes of police officers and any agent of the State who investigated or participated in the preparation of this case for trial.

Granted:    _____

<u>2</u>

Denied: _____

8. Offense reports, police reports, arrest reports and records, crime scene investigation reports and records, medical reports and records, psychological and psychiatric reports and records, and scientific reports and records contained in written memoranda, letters, notes or transcriptions relating to the alleged facts of the offense, the crime scene or any location which may have a bearing on any issue of the case, the Defendant, the alleged victims, or any matter which may have a bearing on any issue of the case.

Granted: _____

Denied: _____

9. All documents, papers, books, letters, accounts, objects, building or places, or other tangible things which are in the possession of the prosecution, its agent or representative, or any third party subject to the control or guidance of the prosecution as a result of the investigation of the Defendant, which are material and relevant to the case involving the Defendant, either in the guilt/innocence stage or the punishment stage, including, but not limited to, all weapons alleged by the State to have been used by the Defendant and any witness or party present at the crime scene, including, but not limited to, and all articles of clothing allegedly belonging to the Defendant, or all other persons present at the crime scene, including, but not limited to,

Granted: _____

Denied: _____

10. Any written waiver alleged by the State to have been signed by the Defendant involving the Defendant's right to counsel, the right to remain silent, or the right to be free from

3

search and seizure.

Granted: _____

Denied: _____

11.     Any search warrant or arrest warrant, search supporting affidavits, and returns by law enforcement officers to arrest the Defendant or search the Defendant's residence, vehicle, or any secured premises, person, clothing, bodily fluid and hair subject to the control of the Defendant, or which is charged to the Defendant under any theory of possession, ownership, or control.

Granted: _____

Denied: _____

12.     Any and all stenographic or telephonic recordings or transcriptions of any electronic eavesdropping, wiretapping, surveillance or other means of obtaining undercover communications in the possession of the prosecution or any agents or representatives thereof, including any tests, enhancements, or analysis of such recordings, in order to properly allow the Defendant to test the validity of such matters.

Granted: _____

Denied: _____

13.     All photographs, drawings, charts, diagrams, or sketches of the crime scene made by any law enforcement officer or agent, as well as all photographs, drawings, charts, diagrams, or sketches made by the prosecution teams which it either intends to admit or use as a jury aid during either phase of the trial.

Granted: _____

<u>4</u>

Denied: _____

14. Any photographs.

Granted: _____

Denied: _____

15. Any photographic negatives which are in the possession of the State but which are not to be used by the State during the trial of its case in chief.

Granted: _____

Denied _____

16. All fingerprints, palm prints, foot prints, shoe, tire or other prints made by any means which are material and relevant to the case involving the Defendant, either in the guilt/innocence stage or the punishment stage.

Granted: _____

Denied: _____

17. All reports of scientific tests, experiments or comparisons, and all reports of any experts who conducted such tests, experiments or comparisons, concerning, inter alia, DNA, blood, blood splatter, weapons, shots, waddings, bullets, cartridge cases, tool marks, gun powder residue, and hand wash and the weapons allegedly used by the Defendant and the other weapons discovered at the scene or in the course of the investigation.

Granted: _____

Denied: _____

18. The autopsy reports.

Granted:     _____

Denied:     _____

19.    Any medical or psychiatric reports relating to the Defendant and or co-Defendants.

Granted:     _____

Denied:     _____

20.    Any evidence of insanity, incompetency, incapacity, or mental retardation of the Defendant or any witness.

Granted:     _____

Denied:     _____

21.    Summary of any and all victim impact evidence the State intends to offer as evidence.

Granted:     _____

Denied:     _____

22.    Information regarding the identification of the Defendant whether by photographs, films, line-ups, or show-ups.

Granted:     _____

Denied:     _____

**SO ORDERED** as reflected above.

**SIGNED** the _____ day of _____, 2010.

_____

**JUDGE PRESIDING**

6

0333

**CAUSE NO. 08-3872**

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
|---|---|---|
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## MOTION FOR THE PRODUCTION OF WITNESS INTERVIEW NOTES

### TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW,** Travis James Mullis, Defendant in the above-cause, by and through

counsel and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution

and Article 1, Sections 3, 10, 13 and 19 of the Texas Constitution and files this Motion For the

Production of Witness Interview Notes and for good and sufficient cause would show the Court

the following:

1. The Defendant has been indicted for the offense of capital murder.

2. The State is seeking the death penalty.

3. The above defendant, by and though his attorney of record, moves the Court for an

Order compelling the State to produce copies of any of the following documents that are

in the possession, custody or control of the State:

(a) Notes or memoranda of interviews conducted by any Assistant District Attorney,

police officer or any agent of the State with any person whom the State expects to

call as a witness at this trial or any hearing relating hereto which record verbatim,

or in substantial detail, the actual words or account of such person and which are

1

relevant to any of the facts or issues pertinent to the instant case, whether or not said writings were acknowledged or signed by the respective witnesses.

(b) Additionally, in the event the prosecuting attorney asserts a work product or similar privilege in regard to some of the contents of the above described writings, the Defendant requests that the Court order the prosecuting attorney to deliver two copies of such writings to the Court for use as follows:

(i) One copy, for the use of the Defendant, sanitized by the excision of any part of the writing for which the claim of a work product or other privilege is accepted by the Court;

(ii) One copy, to be kept by the Court, as part of the record herein, without any excision of portions thereof.

4. In accordance with the decision of the Court in Goldberg v. United States, 425 U.S. 94, 96 S. Ct. 1338, 47 L. Ed. 2d 603 (1976), the notes and memoranda made by government counsel during the interviewing of witnesses whom the government intends to call in support of its case in chief.

5. At a minimum, this trial court is respectfully urged to order that the state preserve all notes and memoranda, including those subsequently taken and/or transcribed to typewritten form, until all proceedings are finally completed in this action.

**WHEREFORE, PREMISES CONSIDERED**, Defendant prays that relief be granted as prayed for herein.

2

Respectfully Submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Texas 77380
713-862-7766 (office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same on _____, 2010.

**ROBERT K. LOPER**

3

0333
**CAUSE NO. 08-3872**

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Vs.** | § | **GALVESTON COUNTY, TEXAS** |
| | § | |
| **TRAVIS JAMES MULLIS** | § | **122ND JUDICIAL DISTRICT** |

## O R D E R

**BE IT REMEMBERED**, that on the _____ day of _____, 2010, came

on to be considered the above and foregoing **MOTION FOR THE PRODUCTION OF**

**WITNESS INTERVIEW NOTES**.  After consideration of the same, it is the opinion of the

Court that Defendant's Motion be:

     ( )    **GRANTED.**

     ( )    **DENIED,** to which ruling the Defendant excepts.

                               _____
                               **JUDGE PRESIDING**

4

CAUSE NO. 08-3872

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## DEFENDANT'S MOTION TO DISCOVER STATE'S EXTRANEOUS AND/OR UNADJUDICATED ACTS OF MISCONDUCT TO BE OFFERED AT GUILT OR PUNISHMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Travis James Mullis, Defendant in the above-styled cause, by and through his attorneys, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13, 15 and 19 of the Texas Constitution makes this his Motion to Discover State's Extraneous and/or Unadjudicated Acts of Misconduct to be Offered at Guilt or Punishment, and as grounds therefore would respectfully show the Court as follows:

1. The Defendant has been indicted by the grand jury for the offense of capital murder. The State is seeking the death penalty.

2. The State may elect to offer evidence of extraneous or unadjudicated acts of misconduct during the trial of this cause. The Defendant must be given prior notice of the intent to offer this evidence at either the guilt/innocence phase or the penalty phase.

3. If the Defendant does not have sufficient time in order to investigate any and all extraneous and/or unadjudicated acts of misconduct that the State may present at trial in this

cause, Defendant will be denied his rights in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, as well as Article I, §10, §13, §15 and §19 of the Texas Constitution.

4. In order for Defendant's counsel to effectively investigate and defend against any and all extraneous and/or unadjudicated acts of misconduct that the State may present, counsel is entitled to discovery of such acts with sufficient notice. Due Process requires that any unfair surprise to the Defendant be avoided by notice to the Defendant of the extraneous offenses that the State intends to offer at trial. *Kinnamon v. State*, 791 S.W.2d 84, 92 (Tex. Crim. App. 1990), *Spence v. State*, 795 S.W.2d 743, 759 (Tex. Crim. App. 1990) and *Matchett v. State*, 941 S.W.2d 922, 931 (Tex. Crim. App. 1996).

5. In order to provide the Defendant with the effective assistance of counsel to which he is entitled under the 6th Amendment to the United States Constitution, counsel must thoroughly investigate each of the alleged offenses and gather any evidence to rebut the allegations and mount appropriate collateral challenges to purported convictions. *Ex parte Tovar*, 901 S.W. 2d 484 (Tex. Crim. App. 1995).

6. Granting Defendant's request for discovery will help to avoid any last minute continuances that may be required to allow the defense to investigate alleged bad acts. The denial of timely notice will hinder Defendant's counsel from properly conducting *voir dire* and other responsibilities during trial.

**WHEREFORE, PREMISES CONSIDERED,** Defendant prays that this Court

require the State to disclose any and all extraneous and/or unadjudicated acts of misconduct to Defendant's counsel on or before ~~Sept. 1~~, 2010.

Respectfully Submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Texas 77380
713-862-7766 (office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same on ~~March 8~~ 2010.

**ROBERT K. LOPER**

0333

**CAUSE NO. 08-3872**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

**ORDER**

BE IT REMEMBERED, that on the 20 day of _____Jan._____,

2010, came to be considered the **DEFENDANT'S MOTION TO DISCOVER STATE'S**

**EXTRANEOUS AND/OR UNADJUDICATED ACTS OF MISCONDUCT TO BE**

**OFFERED AT GUILT OR PUNISHMENT.** The court is of the opinion the motion should be

in all things:

**GRANTED** _____✓_____

**DENIED** _____

JUDGE PRESIDING

0333

**CAUSE NO. 08-3872**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122nd JUDICIAL DISTRICT |

## DEFENDANT'S MOTION FOR DISCOVERY OF EXPERTS

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, the Defendant, **TRAVIS JAMES MULLIS**, by and through his attorneys of record, and pursuant to the 5th, 6th, 8th & 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13 & 19 of the Texas Constitution makes this his Defendant's Motion for Discovery of Experts, and as grounds therefore would show as follows:

1. Tex. Code Crim. Proc. art. 39.14 (b) was amended, effective September 1, 1999, and now provides:

> On motion of a party and on notice to the other party the court in which an action is pending may order one or more of the other parties to disclose to the other party making the motion the name and address of each person the other party may use at trial to present evidence under rules 702, 703, and 705, Texas Rules of Evidence.  The court shall specify in the order the time and manner in which the other party must make the disclosure to the moving party, but in specifying the time in which the other party shall make disclosure the court shall require the other party to make the disclosure not later that the 20th day before the trial begins.

2. The Defendant hereby moves this Court to order the State to disclose to Defendant, the name and address of each person the State may use at trial to present evidence under 702, 703

and 705 of the Texas Rules of Evidence.  By serving a copy of the motion, Defendant has notified the State of the filing of this motion.

   **WHEREFORE, PREMISES CONSIDERED,** Defendant prays that this Court grant the Defendant's Motion for Discovery of Experts and order the State to make disclosure of its experts no later than the 21st day before the trial begins and such other relief to which the Defendant may show himself to be entitled.

Respectfully Submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-860-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Tx. 77380
713-862-7766 (office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

   I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same on March 8 2010.

**ROBERT K. LOPER**

CLERK DISTRICT COURT
FILED

JAN 2 0 2011

GALVESTON COUNTY, TEXAS

DEPUTY

CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122nd JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED, that on the 20 day of _____Jan_____, 2010, came to be considered the Defendant's **MOTION FOR DISCOVERY OF EXPERTS.**  The court is of the opinion the motion should be in all things:

GRANTED ✓ _____

DENIED _____

JUDGE PRESIDING

0333

CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## MOTION FOR DISCOVERY AND LIMITING INSTRUCTIONS TO THE JURY

COMES NOW, TRAVIS JAMES MULLIS, the Defendant, by counsel, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution, Article 1, Sections 3, 10, 13, 19 and 29 and Tex. Code Crim. Proc. arts. 1.05, 1.06 and 1.09 and Rule 404(b) of the Texas Rules of Evidence and move the Court for discovery and jury instructions concerning extraneous offenses and in support thereof would show:

1. The Defendant has been indicted by the county grand jury for capital murder.

2. The State is seeking the death penalty.

3. If the State intends to introduce in its case-in-chief evidence of other crimes, wrongs or acts other than that arising in the same transaction, the Defendant hereby gives timely notice of its right and request to have reasonable notice of such acts, in advance of trial pursuant to Texas Rule of Evidence 404(b). Further, the State should be required to advise the Court and counsel for the Defendant of the specific purpose for which such evidence is being offered. Additionally, notice of any other unadjudicated offenses that the State intends to offer evidence of during the penalty phase of the trial should be given

in order to avoid any unfair surprise to this Defendant.

4.  Movant requests the Court, in performing its "gatekeeping" function with respect to extraneous offenses, to hold a hearing, in advance of trial, to determine if the State's evidence "clearly proves that an offense was committed and that the Defendant was the perpetrator." *Kemp v. State*, 846 S.W.2d 289, 307 (Tex. Crim. App. 1992); and *Kutzner v. State*, 994 S.W.2d 180, 1888 (Tex. Crim. App. 1999). In doing so, the Court should consider whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. The admission of extraneous acts during a capital trial must be closely scrutinized. *Davis v. State*, 597 S.W.2d 358, 361 (Tex. Crim. App. 1980).

5.  Movant requests that if evidence of extraneous, unadjudicated offenses is admitted, that immediately after the admission, the jury be orally instructed that the evidence is to be considered for the limited purpose for which the evidence has been found to be admissible. Further, that the jury cannot consider against the Defendant such collateral crimes, unless it has been shown to their satisfaction, beyond a reasonable doubt, that the Defendant is guilty of those acts. *Mitchell v. State*, 931 S.W.2d 950, 954 (Tex. Crim. App. 1996); and *Ex Parte Varelas*, 45 S.W.3d 627 (Tex. Crim. App. 2001).

6.  Movant further requests that when the jury is instructed upon the whole case, that it further be given written instructions that (a) the evidence of extraneous crimes, wrongs or acts can only be considered for the purpose for which the Court admitted such evidence and (b) it

cannot consider the crimes, wrongs or acts against the Defendant unless it believes, beyond a reasonable doubt, that the acts were committed and the Defendant committed those acts. *Harrell v. State*, 884 S.W.2d 154, 157 (Tex. Crim. App. 1994).

7.  Should the State intend to offer evidence of extraneous, unadjudicated offenses during the penalty phase of the trial, the Court, in addition to the other "gatekeeping" functions should determine if such evidence is relevant to the Defendant's "deathworthiness." *Rachal v. State*, 917 S.W.2d 799, 807 (Tex. Crim. App. 1996).

8.  Movant further requests that the jury be instructed that during any penalty phase deliberations they are not to consider the Defendant's guilt of this indicted charge in determining if he was the perpetrator of the extraneous acts.

9.  In submitting and arguing this motion to the Court, the Defendant does not waive any of his objections to the blatantly unconstitutional practice of allowing the state to use evidence of unadjudicated conduct in its attempt to secure a sentence of death.

**WHEREFORE, PREMISES CONSIDERED**, Movant prays that upon hearing, this Court sustain this Motion and relief be granted as prayed for herein.

Respectfully Submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., # 660
The Woodlands, Texas 77380
713-862-7766 (office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same on March 8 2010.

**ROBERT K. LOPER**

0333
**CAUSE NO. 08-3872**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

**ORDER**

BE IT REMEMBERED, that on the _____ day of _____, 2010, came to be considered the Defendant's MOTION FOR DISCOVERY AND LIMITING INSTRUCTIONS TO THE JURY PURSUANT TO RULE 404(b) OF THE TEXAS RULES OF EVIDENCE. The court is of the opinion the motion should be in all things:

GRANTED    _____

DENIED    _____

_____
**JUDGE PRESIDING**

0333

### CAUSE NO. 08-3872

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

## DEFENDANT'S MOTION FOR DISCOVERY AND INSPECTION

### TO THE HONORABLE JUDGE OF SAID COURT:

Comes the Defendant, Travis James Mullis, by and through Defendant's attorneys of record, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13, 19 and 29 of the Texas Constitution and by authority of Tex. Code Crim. Proc. arts. 28.01 and 39.14; and *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) (exculpatory material); *United States v. Agurs*, 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976)(overruled in part on other grounds)(request not necessary for material evidence); *Giles v. Maryland*, 386 U.S. 66, 87 S. Ct. 793, 17 L. Ed. 2d 737 (1967) (evidence regarding complaining witness); *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) (promise of leniency to state's witness); *Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995); *U.S. v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985); and *Wood v. Bartholomew*, 516 U.S. 1, 116 S. Ct. 7, 133 L. Ed. 2d 1 (1995), and respectfully moves this Honorable Court to order the District Attorney to produce and/or allow defense counsel to inspect and copy and/or photograph the following items which are in the possession and/or within the knowledge of the State of Texas or an agency thereof:

## STATEMENTS BY DEFENDANT

1.    Any statement, including Grand Jury testimony, made by Defendant to the police, District Attorney, or any of his employees, any law enforcement officials, State agency, or any private citizen within the knowledge of the police or the District Attorney, or any of his employees, any law enforcement official or State agency, whether under arrest or not, or whether written or oral.

GRANTED _____                              DENIED _____


## EXCULPATORY/INCULPATORY STATEMENTS

2.    Any and all exculpatory or inculpatory written and/or oral statements, confessions or admissions (whether or not reduced to writing) presently in the possession, custody or under the control of the State, its agents, or agencies, made by the Defendant to any witness or person the State intends to call to testify in this cause of action.

GRANTED _____                              DENIED _____

## PHOTOGRAPHS

3.    Any photographs, drawings or charts made by the police, the District Attorney's Office or anyone else which were made with references to this case, which are in the possession of the police, District Attorney, law enforcement official, State agency or private citizen within the knowledge of the police, District Attorney, any of his employees, any law enforcement official, State agency, or employee or representative of same.

GRANTED _____                              DENIED _____

## SCENE PHOTOGRAPHS

4.      Any and all photographs of the scene that relate to the alleged offense, including but not limited to the interior and exterior of the premises, appurtenances thereto, the curtilage, the street, or surrounding vicinity, including the names and addresses of the individuals who took said photographs and the date said photographs were taken.

GRANTED _____                              DENIED _____

## PHOTOGRAPHS OF COMPLAINANT

5.      Any and all photographs taken of the complainant by or at the request of, or within the knowledge of the police, District Attorney or any if his employees, any law enforcement official, State agency or agents thereof.

GRANTED _____                              DENIED _____

## PHOTOGRAPHS OF DEFENDANT

6.      Any and all photographs which may have been made of the Defendant while in custody and control of the police, District Attorney, their employees, or an agency of the State of Texas.

GRANTED _____                              DENIED _____

## IDENTIFICATION

7.      Information regarding the identification of the Defendant whether by photographs, films, line-ups, or show-ups as follows:

a.      Names and addresses of persons identifying the Defendant, specifying the crime for which the Defendant was identified and the corresponding date of the

identification and the date of the alleged offense for which the Defendant was
identified;

b.    Photographs used in any photographic identification;

c.    Identification and description of persons participating in any and all line-ups or
      show-ups with the Defendant;

d.    The names and their particular participation of all officers conducting any and all
      line-ups or show-ups in which the Defendant was placed for the purpose of
      identification wherein the Defendant was identified, the corresponding offense
      and date said offense for which Defendant was identified;

e.    The dates, times and locations of any and all line-ups or show-ups which were
      conducted wherein the Defendant was identified; and

f.    Any and all waivers of Defendant's right to have counsel present at any line-up or
      show-up which were signed by the Defendant.


GRANTED _____                              DENIED _____

## WITNESSES-INJURIES

8.    The names and addresses of any and all persons relating to or connected
with the making of any notes, medical reports or other reports of the complainant's alleged
injuries that allegedly resulted from this offense and this is to include any statements made by
any complainant to, or in the presence of, any such person in connection with said injuries or the
occurrence of the alleged offense.

GRANTED _____                              DENIED _____

## EXCULPATORY EVIDENCE

9.     Any and all favorable evidence which is in the possession, custody, or control of the State, or investigating body of the State of Texas, or any police department or any of their agencies including, but not limited to the following:

a.     Any prior inconsistent statements of witnesses for the State which are favorable to Defendant or are exculpatory in nature regarding any alleged offense by the Defendant;

b.     The names and addresses of any eyewitnesses to the offenses alleged which are favorable to the Defendant or are exculpatory in nature;

c.     Failure of any witness to identify Defendant either from photographs, films, or in person while in a line-up or show-up; and

d.     Results of any scientific tests conducted which are favorable to the Defendant or exculpatory in nature including, but not limited to ballistic tests or fingerprints at the site of the offense or on other tangible evidence.

GRANTED _____                    DENIED _____

## REAL EVIDENCE

10.     Any papers, objects or real evidence that is in the possession of the police, the District Attorney's Office or their employees or State agencies which may in any way be material to the guilt or innocence of this Defendant.

GRANTED _____                    DENIED _____

## SCIENTIFIC TEST RESULTS

11.     Any written report of any test that is a biological, microscopic or scientific

analysis of any items which was conducted pursuant to the investigation of the instant case regardless of whether said test was prepared or conducted at the request of any law enforcement official, by the State of Texas or its agents, State agency or any private citizen, within the knowledge of the police or the District Attorney, or any of his employees, together with any descriptions, test dates, and any determinations as well as the name and address of the individuals who conducted such tests or analysis.

GRANTED _____                                    DENIED _____

### TEST ON COMPLAINANT

12.     The results of any and all blood tests, electrocardiogram, chemical, or other medical or biological tests run on complainant and/or deceased by whomsoever made.

GRANTED _____                                    DENIED _____

### EVIDENCE OF SCENE

13.     Any and all tests, records, diagrams, charts, or written reports relating to the actual scene of the alleged offense, *e.g.*, diagrams of where any complainant was or where any person was allegedly located at the time of the alleged offense.

GRANTED _____                                    DENIED _____

### POLICE INFORMATION

14.     The names, rank and badge number of all police officers of the State or County law enforcement agents and all employees of the Criminal District Attorney who participated in any way in the investigation of this case, whether at the scene, the police station, county jail or elsewhere.

GRANTED _____                                    DENIED _____

## FINGERPRINT

15.    Any and all fingerprint impressions obtained by whatever means and process from the scene of the alleged offense in question, found as a result of the investigation of this offense, whether such fingerprints were fingerprints of the Defendant or were fingerprints from some other person or persons known or unknown.

GRANTED _____                    DENIED _____

## CONVICTION RECORD

16.    The criminal arrest and/or conviction record of the complainant, together with any juvenile record complainant may have.

GRANTED _____                    DENIED _____

## WEAPON

17.    The weapon or weapons which the State of Texas alleged or may allege was or were used in the commission of the alleged offense.

GRANTED _____                    DENIED _____

## EVIDENCE FROM DEFENDANT

18.    Any and all objects of evidence the State intends to use which was found on Defendant's person at the time of his apprehension or arrest.

GRANTED _____                    DENIED _____

19.    At least five (5) days prior to trial the "pen packets" which will be relied on in order to enhance this Defendant, if any. This is necessary so that defense counsel may have adequate time to review these documents which will be the basis of the State's case on punishment, if any.

As a basis for this Motion, the Defendant states that the objects requested are vital and material to the issue of the Defendant's innocence for the following reasons:

> That the items requested are material to the issue of Defendant's attorney to render effective counsel as is guaranteed to the Defendant by the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States of America and by Sections 10, 19 and 29 of Article I of the Constitution of the State of Texas and are needed in order that the Defendant may be informed of the nature and causes of the accusation against Defendant.

GRANTED _____                           DENIED _____

20.     Should this Court deny the Defendant access to material that is in the possession or control of the State of Texas or its agencies, Movant asks that the Court review such evidence, *in camera*. *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987).  During that inspection, Movant requests the Court to determine if such material contains exculpatory evidence, *Brady, supra*, evidence that could be used to impeach evidence or witnesses of the state, *Bagley, supra*, evidence that lead this Defendant to seek out other evidence. *Wood, supra*.

GRANTED _____                           DENIED _____

21.     Movant further requests that any evidence that the Defendant is denied access to and that is viewed, *in camera*, by the Court, be made a part of the record of this case for the purpose of appellate review and that the Defendant be given such additional hearings as are necessary to preserve that error in the Court's denial of this motion.

GRANTED _____                           DENIED _____

This Motion is made in good faith and not for the purpose of delay.

**WHEREFORE PREMISES CONSIDERED**, the Defendant respectfully prays that this Honorable Court order:

(1)     The District Attorney to permit the Defendant to inspect, copy or photograph the above set out tangible objects prior to the trial in this cause which are in the possession or subject to the control of the State of Texas or any agency thereof pursuant to Articles 39.14, 28.01, 1.03, 1.04 and 1.05 of the Texas Code of Criminal Procedure, Article I, Sections 10 and 19 of the Constitution of the State of Texas and pursuant to the Defendant's right to due process of the law, the effective assistance of Counsel as guaranteed to Defendant by the Fourteenth and Sixth Amendments to the Constitution of the United States respectively;

(2)     That a timely hearing on said Motion be had;

(3)     That an, *in camera* inspection of all evidence sought to be discovered but withheld by the prosecution be had;

(4)     That an inquiry be made of the prosecutors and agents of the State of Texas to determine the extent of compliance with any discovery that is Ordered by this Honorable Court; and

(5)    That any and all evidence requested but not Ordered subject to discovery by this Honorable Court be included in the Appellate record of this cause for review by the Appellate Court; and for any and all further relief to which this Court may deem the Defendant entitled.

**WHEREFORE, PREMISES CONSIDERED**, Movant prays that upon hearing hereof the court order that the jury be instructed as requested herein and that the Accused have such other and further relief to which he may show himself to be just entitled.

Respectfully submitted,

**ROBERT K. LOPER**
SBN: 12562300
111 West 15th Street
Houston, Tx 77008
713-880-9000(office)
713-869-9912 (fax)

**GERALD BOURQUE**
SBN: 02716500
24 Waterway Ave., #660
The Woodlands, Texas 77380
713-862-7766 (office)
832-813-0321 (fax)

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same on March 8 2010.

ROBERT K. LOPER

2010 MAR -8 AM 9:52

0333
### CAUSE NO. 08-3872

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| Vs. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TRAVIS JAMES MULLIS | § | 122ND JUDICIAL DISTRICT |

JASON E. MURRAY
CLERK DISTRICT COURT
FILED
JAN 1 9 2011
Galveston County, Texas
BY_____
DEPUTY

### ORDER

BE IT REMEMBERED, that on the 19 day of _____Jan_____, 2010, came to be considered the Defendant's **MOTION FOR DISCOVERY AND INSPECTION**. The court is of the opinion the motion should be in all things:

GRANTED ✓

DENIED _____

_____
JUDGE PRESIDING