1

REPORTER'S RECORD
VOLUME 35 OF 59 VOLUMES
TRIAL COURT CAUSE NO. 08CR0333
COURT OF CRIMINAL APPEALS CAUSE NO. AP-78,525

| | | |
|---|---|---|
| TRAVIS JAMES MULLIS, | * | IN THE DISTRICT COURT |
| APPELLANT | * | |
| VS. | * | GALVESTON COUNTY, TEXAS |
| THE STATE OF TEXAS, | * | |
| APPELLEE. | * | 122ND JUDICIAL DISTRICT |

FILED IN
COURT OF CRIMINAL APPEALS
OCT 27 2011
Louise Pearson, Clerk

HEARING ON MOTION TO WAIVE

POST-CONVICTION HABEAS REVIEW

On the 11th day of October, 2011, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable John Ellisor, Judge presiding, held in Galveston County, Texas;

Proceedings reported by machine shorthand.

ORIGINAL

```
                                                                    2


 1                       A P P E A R A N C E S

 2

 3   FOR THE STATE OF TEXAS:

 4
         Mr. Jack D. Roady
 5       District Attorney
         SBOT:  2402780
 6       Ms. Donna W. Cameron
         First Assistant District Attorney
 7       SBOT:  03675050
         Ms. Kayla M. Allen
 8       Assistant District Attorney
         SBOT:  24043530
 9       Galveston County District Attorney's Office
         Galveston County Justice Center
10       600 59th Street
         Galveston, Texas  77551
11       Phone:  409.766.2355
         Fax:    409.766.2290
12


13
     FOR THE DEFENDANT:
14
         Travis J. Mullis, Pro se
15
         - AND -
16
         Brad D. Levenson
17       Director
         SBOT:  24073411
18       Robert Romig
         SBOT:  24060517
19       Office of Capital Writs
         1700 N. Congress Avenue
20       Suite 460
         Austin, Texas  78711
21       Phone:  512.463.8502
         Fax:    512.463.8590
22


23


24


25
```

```
1                    VOLUME 35
2                 CHRONOLOGICAL INDEX
3
4  MOTION TO WAIVE POST-CONVICTION HABEAS REVIEW..... 5
5  REPORTER'S CERTIFICATE...........................23
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

VOLUME 35

MOTION TO WAIVE POST-CONVICTION HABEAS REVIEW

EXHIBIT INDEX

| STATE'S EXHIBITS | DESCRIPTION | OFFERED | ADMITTED |
|---|---|---|---|
| 1 | Dr. Scarano's report | 5 | 5 |
| 2 | Copy of hearing on pro se motion | 5 | 5 |
| 3 | CD - video and article GDN | 5 | 5 |
| 4 | Polunsky records | 5 | 5 |
| 5 | TDCJ medical records | 5 | 5 |

**Page 5**

1  OCTOBER 11, 2011
2     (Open court, Defendant present)
3         THE COURT: Cause No. 08CR0833, the State
4  of Texas versus Travis James Mullis. And because we're
5  on the record, I will ask that the attorneys for the
6  State and for the Defense to orally state their names
7  and who they represent.
8         MS. CAMERON: For the State, Your Honor,
9  Donna Cameron.
10        MR. ROADY: And Jack Roady.
11        MS. ALLEN: And Kayla Allen.
12        THE COURT: Thank you.
13        MR. LEVENSON: On behalf of Travis Mullis
14 I'm Brad Levenson, Director of the Office of Capital
15 Writs.
16        MR. ROMIG: And Robert Romig, Office of
17 Capital Writs.
18        THE COURT: Thank you. It is October the
19 11th, 2011, at about 1:15 PM. Good afternoon, Mr.
20 Mullis.
21        THE DEFENDANT: Good afternoon, Judge.
22        THE COURT: I understand we're here today
23 to review the petitioner, Mr. Mullis's motion to waive
24 his post-conviction habeas review.
25        Mr. Levenson, would you like to proceed?

**Page 6**

1         MR. LEVENSON: We wanted to put a couple
2  of things on the record but I don't know if the Court
3  wanted to question Mr. Mullis first and then we could
4  put this on the record after or we could put our
5  thoughts on the record first. I'll leave it up to you.
6         THE COURT: I'm going to begin by allowing
7  you and the State, if they have any questions for
8  Mr. Mullis. Then I'll ask for any followups.
9         I'll state for the record I'm very
10 familiar with Mr. Mullis' case having been the
11 presiding Judge from Day 1 on this case. I have
12 reviewed his affidavit. I've reviewed the report that
13 was written by Dr. Scarano when he was requested to
14 evaluate Mr. Mullis' competency to waive the issue.
15        So, I will begin by deferring to the
16 attorneys to ask some questions if they choose.
17        MR. LEVENSON: I don't have any questions
18 for Mr. Mullis. What I'd like to do is put some of our
19 thoughts on the record.
20        THE COURT: You may proceed.
21        MR. LEVENSON: Thank you, Your Honor.
22        First we'd like to thank you for ordering
23 the evaluation. We appreciate that. I've spoken
24 multiple times to Dr. Scarano before, during, and after
25 the process and I believe he took his job very

**Page 7**

1  seriously and I appreciated that he kept me informed
2  throughout the whole time. And we have read thoroughly
3  his report. We don't have any objections to the report
4  as a whole; so, we certainly have no problems putting
5  it into evidence.
6         What I would like to put on the record is
7  that we have strenuously objected to Mr. Mullis about
8  waiving. We think that's important to state. We
9  started visiting Mr. Mullis in April when he was still
10 in Galveston. Myself or Mr. Romig, who's co-counsel,
11 or the other attorneys in the office or other
12 investigators have visited Mr. Mullis between -- I
13 would say between 8 and 12 times between that time in
14 Galveston and since he's been in Polunsky. We go at
15 least twice a month to Polunsky and visit all of our
16 clients.
17        It was after our first visit that
18 Mr. Mullis wrote me a letter and said that he wanted to
19 waive and I came back to Galveston to see Mr. Mullis
20 and we had a lengthy conversation. It was about the
21 same time that he was waiving his appeal. And I got
22 Mr. Mullis to agree to give us -- I think at that time
23 two weeks to continue working on his case and we've had
24 a lengthy dialogue the last six months where we've
25 gotten an extension of time from Mr. Mullis, a chance

**Page 8**

1  to work on his case.
2         There had been some back and forth in that
3  six months. Travis has pretty much maintained he
4  wanted to waive but would give us the opportunity to
5  review his case and we have had some opportunity to
6  review his case but certainly not enough time.
7         What we have done so far is we have
8  started the investigative process in Texas. It takes
9  about a year and a half between the time someone is
10 convicted and the time their State habeas is due in the
11 convicting court. So, we've had about six months.
12        In that time we have collected trial
13 counsels' file and have interviewed at least one of the
14 trial counsel. We have contacted every defense expert
15 on the case, those who testified and those who did not
16 and received their reports and have talked to them
17 about the case.
18        We have visited and talked with some of
19 Mr. Mullis' family. We went to see his mother in
20 Florida and have talked extensively with his
21 half-brother and half-sister in North Carolina. I
22 believe they came down and testified at trial. And we
23 actually had a visit planned to go to North Carolina.
24 We suspended it when it looked like Mr. Mullis was
25 going to affirmatively waive.

### 9

One thing that we have not had a chance to do yet, which I think is most important, is to review the transcript. The transcript, we understand, will be coming out this week or soon thereafter. It's a very important part of our investigative process. We can read the trial counsels' file, we can talk to trial counsel, we can talk to experts but until we read the transcript of the trial, we can't really put the whole trial into context and come up with a determination of what issues should be raised and what issues are not going to be very fruitful. And because we haven't read the transcript, we haven't had a chance to do that most important part of our job which is to put the trial in context. We have not had time to interview witnesses or jurors. We don't do that until we've read the transcript; so, that's something we would have done later on down the road.

Mr. Romig came here yesterday and began his review of the trial counsels' file and I appreciate all the cooperation from the Galveston District Attorney's Office throughout this whole procedure. Mr. Romig reviewed about 11 boxes but there are a significant number of boxes to go. So, we haven't had a chance to complete that.

We have told this to Mr. Mullis. We had

### 10

that conversation again today, that we would like more time to do our job and to determine what issues can be raised and what issues can't. And we are not near that yet. We just don't have an idea how this investigation will completely gel. And, so, again I asked Mr. Mullis for more time and he can tell you whether he would agree to that.

I've had conversations with Mr. Mullis like I've had conversation with other clients who have told me they don't want a life without parole sentence, but I've seen the end game, Your Honor, and I've seen clients at the last minute, last seconds of their lives who would have given anything for more time. And Travis is 25 and I think most 25-year-olds probably don't know exactly what they want.

So, while I hear Mr. Mullis and believe he truly believes that he does not want a life without parole sentence, if that's the best he could get. I know from experience that clients do change their mind as litigation gets farther down the road. I've also explained this to Mr. Mullis.

So, while I do understand Dr. Scarano's report and I don't have any objections to the content of the report, I would actually ask you to look beyond that report and to look at the age of Mr. Mullis and

### 11

where we are in our investigation at this point and to perhaps kick this can down the road a little bit farther so we can have more time to work on Mr. Mullis' case and he can make even a more informed decision about what this office can do for him. I just don't think he can make that decision right now.

Thank you, Your Honor.

THE COURT: Ms. Cameron.

MS. CAMERON: Briefly, Your Honor, I would like to say that we have tried to cooperate in every way that we can with Mr. Levenson. The State of Texas does not oppose his request for an extension of time, especially considering the review of the transcript and the time that might take.

We have provided our files to Mr. Levenson and to his office. Again, they are voluminous with the exception of the work product. It probably is contained in, give or take, about 15 or so boxes including if they wish to review that information that we have from the voir dire.

In dealing with Dr. Scarano's evaluation, we have done a subpoena. We did subpoenas for any and all records that Dr. Scarano requested. We do have an affidavit of no records regarding any mail. I know that Mr. Mullis had been communicating but at the time

### 12

that we did the subpoena, it was then that we put the request for the mail covers so there are no letters and we specifically excluded anything that might be attorney/client privileged communication.

I would like to offer for the record and for the Court's consideration those things that were provided to Dr. Scarano and also forwarded to Mr. Levenson so that he would have that to review and Dr. Scarano for his review to make his final decision.

For the record, we, of course, would like to provide State's Exhibit No. 1 which is a complete copy of Dr. Scarano's report. Additionally, State's Exhibit No. 2 is a transcript from the hearing that was held on May 20th, 2011 on the hearing for the pro se motion where the Defendant waived his direct appeal attorney, Wayne Hill. And, again, that has also been provided to Mr. Levenson.

Additionally, we have a State's Exhibit No. 3 where the Defendant when he was bench-warranted specifically for this hearing, he granted what is now I believe a second interview with Chris Paschenko where he was asked a lot of questions about his case and his appeal and that was also provided to Dr. Scarano and is referenced in his report and it was also provided to Mr. Levenson.

**Page 13**

1  Additionally, State's Exhibit No. 4 are
2  the records from the Polunsky Unit which are the
3  complete classification file of the Defendant. And
4  State's Exhibit 5, which are the medical records for
5  Travis Mullis from TDCJ Health Services archives that
6  were also provided to Dr. Scarano and to Defense
7  counsel.
8  And at this time that's all I would like
9  to put on the record and I will tender that to the
10 Court.
11 THE COURT: Any objection to the admission
12 of those documents?
13 MR. LEVENSON: No, Your Honor.
14 THE COURT: State's Exhibits 1 through 5
15 are admitted.
16 Well, Mr. Mullis, let's hear from you.
17 What are your thoughts regarding allowing the process
18 to go on and Mr. Levenson and his office continuing to
19 investigate your case and represent you or pressing on
20 with your attempt to waive that process?
21 THE DEFENDANT: Continue with my waiver of
22 the process.
23 THE COURT: Okay. Tell me why.
24 THE DEFENDANT: As I stated to you before
25 when I was waiving my counsel with Mr. Hill, I've

**Page 14**

1  accepted the punishment the jury's given me. I have no
2  issue with that punishment. I accept my consequence
3  for my actions and I'm choosing to stick with it.
4  THE COURT: You are 25 years old today; is
5  that correct?
6  THE DEFENDANT: Yes, sir.
7  THE COURT: All right. And you realize
8  that absent someone taking your life, you have the
9  potential to live many, many more years.
10 THE DEFENDANT: Yes, sir.
11 THE COURT: Okay. Have you thought
12 through that process of -- that as you mature and get
13 older that you might have a different prospective on
14 this a year from now, five years from now, ten years
15 from now, that if you waive the process and are
16 executed, you will never have that opportunity?
17 THE DEFENDANT: I'm aware of that, sir.
18 I've thought about this for the three years leading up
19 to trial, already anticipating the sentence before it
20 came. Then I've had time since then to do legal
21 research including my right under the Code of Criminal
22 Procedure to waive any and all -- anything, any rights
23 that I have in a criminal proceeding.
24 THE COURT: And I know you've discussed
25 this with Mr. Levenson but he and his staff and his

**Page 15**

1  office are educated, trained appellate specialists.
2  They are experienced in reviewing trial transcripts,
3  talking to witnesses and pouring through evidence and
4  discovering things that might change the outcome of
5  your trial.
6  THE DEFENDANT: I'm sure that's the same
7  as the case was with Mr. Hill, sir. I'm aware of that.
8  THE COURT: Okay. And if you waive this,
9  they stop doing that. That's the point. Waive means
10 to give up.
11 THE DEFENDANT: I understand.
12 THE COURT: That they would stop the whole
13 process of working on your behalf, trying to find
14 something that might change the ultimate outcome.
15 THE DEFENDANT: I understand that, sir.
16 THE COURT: Do you have any questions for
17 the Court?
18 THE DEFENDANT: No, sir.
19 THE COURT: Any questions for your
20 counsel?
21 THE DEFENDANT: They've all been answered
22 previously.
23 THE COURT: Okay.
24 Mr. Levenson, do you have anything
25 further?

**Page 16**

1  MR. LEVENSON: I do want to point out that
2  while Mr. Mullis can remove us from the case, he really
3  can't effectuate a habeas waiver until the time comes
4  when the petition would be due which raises again the
5  question. It's unclear at this point when the habeas
6  would be -- what the due date is for the habeas.
7  That's why we filed our Motion for Continuance of time,
8  so that even if Mr. Mullis has removed us as his
9  attorneys, he would still have the opportunity to -- if
10 he changed his mind about filing the habeas, he would
11 have a due date for that habeas.
12 As it stands right now when the transcript
13 comes out, then Mr. Mullis has 30 days in which to file
14 an appeal. Though Mr. Mullis has told me repeatedly
15 that he's not going to file an opening brief, he could
16 change his mind at the last minute and do that. That's
17 why we filed our motion for continuance last week.
18 With no appeal being filed, the statutory
19 time for the petition to be due would be roughly
20 September 19th. Then under 11.071 the Court can give a
21 90-day extension of time and usually does. So, it
22 would take us into the December period.
23 So, we would at least request, if Mr.
24 Mullis does manage to remove us from his case, that the
25 court grant him at least a continuous until that

## Page 17

1  December date so he could make up his mind whether he
2  wanted to file something on his own. That would at
3  least give him a date certain to do that. That date
4  would go away if Mr. Mullis did file an appeal. Then
5  it's up to the State to file a response and then the
6  clock starts ticking again.
7           But again the main point is that Mr.
8  Mullis can't really waive his habeas until the time
9  it's due and that would be another reason for keeping
10 us on the case because we could continue to work on the
11 case during this time. He's going to be sitting either
12 here or at Polunsky and we certainly have the time and
13 energy and the desire to work on Mr. Mullis' case on
14 his behalf.
15          THE COURT: Okay. Regarding that issue of
16 extending the time, do you have any questions about
17 that, Mr. Mullis?
18          THE DEFENDANT: No, sir.
19          THE COURT: Okay.
20          THE DEFENDANT: It would have to actually
21 be a requirement in any case because this hearing is
22 taking place after the writ initial expiration date
23 given the fact that I will not be filing an appeal.
24          THE COURT: Okay. Anything further from
25 the State?

## Page 18

1           MS. CAMERON: Your Honor, the State does
2  not oppose any request for extension. And is it my
3  understanding that Mr. Mullis is not discharging his
4  attorneys, his writ attorneys at this day; he is going
5  with the extension that they have asked for and that
6  would be up until what period?
7           THE COURT: I think the date that the
8  order asked to be extended is December 19th?
9           MR. LEVENSON: December 19th.
10          THE COURT: Okay.
11          MR. LEVENSON: Either with us as his
12 attorneys or without us as his attorneys he would have
13 until that date in which to file a petition if he did
14 not file an appeal. He could still in pro se file a
15 petition even if he discharges us as attorneys. I just
16 wanted to give him a date certain that he had to file a
17 petition if he didn't file an appeal.
18          MS. CAMERON: So, does that mean that
19 Mr. Mullis is discharging you-all today?
20          THE COURT: Well, I think that's the
21 desire that Mr. Mullis has expressed.
22          THE DEFENDANT: Yes, sir.
23          THE COURT: I am going to take that under
24 advisement as to whether I'm going to acquiesce and
25 grant that and go along with it. I am going to grant

## Page 19

1  the extension at least through December 19th, Mr.
2  Mullis, okay?
3           I think -- and again I'm going to review
4  the file some more. I would urge you that the wise
5  thing to do would allow the office of capital writs to
6  continue working on this through that time. If you
7  ultimately waive, fine. At least they won't be behind
8  the game if you change your mind in the next three
9  months. They wouldn't have to kind of crank back up
10 and try to catch up with the time they've lost. Do you
11 understand my reasoning?
12          THE DEFENDANT: I understand, though I
13 have to say I disagree with that, with keeping them on
14 board. Because part of the issue is that we're running
15 a 60-day timeline now or just over 60-day timeline now
16 and we're practically burning time and if it comes down
17 to the last minute, there could be a mistake that could
18 cause me to not be able to waive my appeal. It could
19 affect my right to waive my appeal, violate that right
20 to waive that appeal, if I choose -- or the habeas if I
21 choose to because the deadline ran down to the last
22 minute and the Court did not take action in time.
23          THE COURT: Mr. Levenson, do you have an
24 opinion on that issue?
25          MR. LEVENSON: I think Mr. Mullis can --

## Page 20

1  if we're permitted to stay on this case -- Mr. Mullis
2  has expressed his concerns to me before. If his
3  petition is filed and Mr. Mullis wishes to withdraw it,
4  I do not believe that this Court or the Court of
5  Criminal Appeals will not listen to that. I think
6  we'll be back here again if it's in front of this Court
7  and this Court will have to determine whether Mr.
8  Mullis really intends to at that point waive his habeas
9  because the habeas deadline has passed and something is
10 on file. He can actually seek to withdraw at that time
11 if he is found to be competent.
12          So, I don't share the same fears. Though
13 I'm not standing in his shoes, I don't have the same
14 fears the Court wouldn't let him withdraw the petition
15 if it was filed.
16          THE COURT: Okay.
17          Mr. Mullis, I'm certainly going to take
18 your desires into consideration as I ponder this in the
19 next 24 hours when I make my decision -- okay?
20          Anything further from the State or
21 Defense?
22          Mr. Roady.
23          MR. ROADY: Actually, Judge, to clarify
24 and it's probably already been said -- I want to be
25 sure that everyone is clear on it. Mr. Mullis does

### 21

1  understand that there's a very limited time for him to
2  file his writ application and that if he waits beyond
3  this date in December, then it will be too late. And
4  under the statute an untimely writ application won't be
5  considered and would just ask that the Court verify
6  that with Mr. Mullis.
7       THE COURT: Mr. Mullis, I'm sure Mr.
8  Levenson has gone over this with you. But you just
9  heard what the State had to say. There is kind of a
10 deadline and if you wait beyond that, it's ineffective.
11      THE DEFENDANT: Essentially as I
12 understand it, by law, if Mr. Levenson and his office
13 were to be released and nothing is filed by December
14 19th, that's it. The waiver is officially in effect
15 and it's automatically already been waived and nothing
16 can be filed.
17      THE COURT: Okay. Do you have any other
18 questions or concerns?
19      THE DEFENDANT: No, Your Honor.
20      MR. ROADY: None from the State, Your
21 Honor.
22      MR. LEVENSON: Does the Court need us back
23 here tomorrow for a ruling or are you going to do a
24 ruling and send it out?
25      THE COURT: I will notify you of the

### 22

1  ruling. You're welcome to come back if you would like.
2       MR. LEVENSON: We're going to be up at
3  Livingston tomorrow.
4       THE COURT: All right. Not required.
5  All right. That will conclude this
6  hearing.
7       MS. CAMERON: Just one thing, Your Honor,
8  for purposes -- since we have bench-warranted Mr.
9  Mullis here and they would like to have him transported
10 back for purposes of the jail, is it approved and
11 appropriate at this time to have him bench-warranted at
12 any time after today?
13      THE DEFENDANT: To bring me back if
14 necessary or to send me back up there?
15      MR. LEVENSON: To go back --
16      MS. CAMERON: I'm sorry --
17      THE DEFENDANT: Are you referring to
18 bench-warranting back to Polunsky or bench-warranting
19 for legal purposes?
20      MS. CAMERON: You would be going back to
21 Polunsky.
22      THE DEFENDANT: That's fine as long as the
23 Court would be kind to send me a copy of the final
24 order to Polunsky.
25      THE COURT: Absolutely. And I'm going to

### 23

1  ask that Mr. Mullis not leave until at least -- today's
2  Tuesday -- at least until Thursday until I've had a
3  chance to issue a written order.
4       MR. LEVENSON: If the Court does want us
5  back, we're only a couple hours away.
6       THE COURT: Very good. Thank you.

### 24

1           REPORTER'S CERTIFICATE
2
3  THE STATE OF TEXAS  *
4  COUNTY OF GALVESTON *
5
6     I, Judy Hansen, Official Court Reporter in and for
7  the 122nd District Court of Galveston County, State of
8  Texas, do hereby certify that the above and foregoing
9  contains a true and correct transcription of all
10 portions of evidence and other proceedings requested in
11 writing by counsel for the parties to be included in
12 this volume of the Reporter's Record, in the
13 above-styled and numbered cause, all of which occurred
14 in open court or in chambers and were reported by me.
15    I further certify that this Reporter's Record of
16 the proceedings truly and correctly reflects the
17 exhibits, if any, admitted by the respective parties.
18    WITNESS MY OFFICIAL HAND this the 14th day of
19 October, 2011.
20    /s/ Judy Hansen
21
22    Judy Hansen, Texas CSR 4979
       Expiration Date: 12/31/2012
23     Official Court Reporter
       122nd District Court
24     Galveston County, Texas
       Galveston, Texas
25