United States District Court
Southern District of Texas
**ENTERED**
March 16, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| TRAVIS JAMES MULLIS, | § |
| Petitioner, | § |
| VS. | § CIVIL ACTION NO. 3:13-cv-121 |
| BOBBY LUMPKIN, | § |
| Respondent. | § |

## ORDER

Petitioner Travis James Mullis, an inmate on Texas' death row, has filed a federal petition for a writ of habeas corpus. (Docket Entry No. 94). Respondent Bobby Lumpkin has moved for summary judgment (Docket Entry No. 147) and Mullis has filed a reply (Docket Entry No. 159). For the reasons discussed below, the Court needs additional briefing before deciding whether to authorize factual development or proceed to adjudication. Accordingly, the Court will **DENY** Respondent's motion for summary judgment **WITHOUT PREJDUICE**.

## BACKGROUND

For the purposes of this Order, the Court will not review the crime which led to Mullis' capital conviction and death sentence. The Court, however, will provide a succinct summary of the state proceedings that have given rise to the issues needing development.

A Texas jury convicted Mullis of capital murder. He received a death sentence. After appointed appellate counsel filed a motion for a new trial, Mullis elected to proceed

*pro se* on direct appeal. On May 20, 2011, the trial court held a hearing in which it conducted a colloquy with Mullis regarding his desire to represent himself. The trial court fully interrogated Mullis about his knowledge of the legal process, his decision to waive review, and his mental health. The trial court also questioned appellate counsel about Mullis' decision. The trial court then granted Mullis' request to dismiss his appellate attorney and proceed *pro se*.

Review in the Texas Court of Criminal Appeals is automatic in capital cases. Mullis, nevertheless, asked to waive direct appeal. The State filed a motion indicating that it would not submit an appellate brief. Because Mullis filed no briefing, the Court of Criminal Appeals entered an order on April 25, 2012 finding "no unassigned fundamental error" and "affirming the trial court's judgment." *Mullis v. State*, 2012 WL 1438685 (Tex. Crim. App. 2012) (unpublished).

Under Texas procedure, direct appeal and habeas review proceed concurrently. On the same day that the trial court appointed appellate counsel, Brad Levenson of the Office of Capital Writs ("state habeas counsel") was appointed to represent Mullis on state post-conviction review. Only a few months after the trial court found that Mullis could represent himself on direct appeal, state habeas counsel filed a notice that Mullis wished to waive state habeas review.

The trial court assigned Dr. Victor Scarano to assess whether Mullis was competent to waive habeas proceedings. Dr. Scarano performed a comprehensive evaluation of Mullis. On October 12, 2011, the trial court held a hearing regarding Mullis' waiver. The trial court came to the hearing with broad experience having

presided over trial and Mullis' recent waiver of appellate review. The trial court engaged Mullis in a colloquy similar to, but briefer than, the discussion only months earlier when it found him able to represent himself on appeal. The trial court held that Mullis was "permitted to act po se regarding any decision concerning waiver and/or filing a post-conviction writ of habeas corpus." The trial court allowed state habeas counsel to "investigate and prosecute" a habeas writ, but not file one "if Mr. Mullis persists in electing to waive filings." Mullis, however, soon gave habeas counsel a "standing directive" to "<u>NOT</u> file a writ of habeas corpus."

The parties in the instant lawsuit now debate what responsibilities state habeas counsel held thereafter. Despite the limitations placed by Mullis, the record shows that state habeas counsel sought for, and received, an extension of time to file a habeas application.

The circumstances, however, presented a difficult question about when a habeas application would be due. Texas requires a capital inmate to file his habeas application after the later of two dates: "the 180th day after the date the convicting court appoints counsel" or "not later than the 45th day after the date the state's original brief is filed on direct appeal with the court of criminal appeals, whichever date is later." Tex. Code Crim. Pro. 11.071 §4(a). An inmate waives his claims when he fails to file a timely application. Tex. Code Crim. Pro. art. 11.071 §4(e) ("A failure to file an application before the filing date applicable to the applicant under Subsection (a) or (b) constitutes a waiver of all grounds for relief that were available to the applicant before the last date on which an application could be timely filed, except as provided by Section 4A."). The

3/17

lack of an appellate brief by the State and questions about habeas counsel's role resulted in confusion about the due date for any habeas application.

Eventually it became clear that Mullis would not permit the filing of a habeas application and that he would not file one himself. The state habeas court notified the Court of Criminal Appeals that Mullis had not filed a habeas application. In late August 2012, however, Mullis wrote a letter saying that unspecified "new evidence" caused him to change his mind about pursuing habeas remedies.

In the eyes of the Court of Criminal Appeals, however, that letter came too late. On September 12, 2012, the Texas Court of Criminal Appeals entered an order recognizing Mullis' earlier waiver. Because of uncertainty about the triggering date for the beginning of the period to file Mullis' habeas application, the Court of Criminal Appeals found "[u]nder the best possible scenario" that Mullis' application should have been due in the trial court "on or before July 2, 2012."[1] The Court of Criminal Appeals found that, by failing to file a timely application Mullis "waiv[ed] . . . all grounds for relief." *Ex parte Mullis*, No. WR-76,632-01 (Tex. Crim. App. Sept. 12, 2012).

In its dismissal order, the Court of Criminal Appeals instructed: "[S]hould [Mullis] or pro bono counsel working on his behalf file an untimely writ application or a motion for a new filing date under Article 11.071 § 4A, then the filer will have to show good cause as to why an application was not filed on or before the statutorily applicable due date." *Id.* at 2-3.

---

[1] The parties debate the validity of, and reasoning behind, this computation.

In the next day, however, Mullis wrote a letter indicating that he had made a final decision not to appeal. Still, state habeas counsel (now acting *pro bono*) filed a motion on Mullis' behalf for leave to submit a habeas application. *Ex part Mullis*, WR-76,632-02. State habeas counsel did not submit a proposed habeas application but requested an extension of time to prepare one. State habeas counsel attempted to meet the "good cause" showing for filing a late application by arguing that Mullis had previously been incompetent to waive review.

State habeas counsel had retained a psychologist, Dr. Michael Fuller, to evaluate Mullis for competency on November 1, 2012. Dr. Fuller reviewed the report prepared by Dr. Scarano, evaluated Mullis, and concluded that he "had not been competent to waive his rights in October 2011 due to mental illness, depression, suicidal ideation, and fear of violence in prison outside the locked-down death row unit." (Docket Entry No. 94 at 14). State habeas counsel relied on Dr. Fuller's report to ask for a new habeas filing date.

The Court of Criminal Appeals denied the request to restart habeas review because "neither counsel's motion nor Fuller's report show that applicant was incompetent on August 22, 2012, when he tried to reinstate his appeals or on September 13, 2012, when he again re-urged his desire to waive review of his conviction." *Ex parte Mullis*, No. WR-76,632-01 (Tex. Crim. App. Dec. 12, 2012). Thus, the Court of Criminal Appeals found that "counsel has failed to establish good cause for failing to file a habeas application on or before the statutorily applicable due date." *Ex parte Mullis*, No. WR-76,632-01 (Tex. Crim. App. Dec. 12, 2012).

One additional attempt was made to secure review of Mullis' conviction and sentence. On September 29, 2012, Mullis signed a notice of appearance allowing a *pro bono* attorney from the American Civil Liberties Union Capital Punishment Project to represent him ("ACLU counsel"). On December 3, 2012, ACLU counsel filed a Motion for Leave to File Original Writ of Habeas Corpus seeking relief in the form of an opportunity to file a renewed direct appeal. On January 16, 2013, the Court of Criminal Appeals denied leave to file an original state habeas application.

Federal review followed. Over the years, Mullis has twice attempted to waive federal review, only to retreat from that decision after the Court appointed an independent psychologist and scheduled a hearing. In both instances, the psychologist found that Mullis was competent to waive federal review notwithstanding his history of mental illness. At one point this Court stayed the proceedings to allow state review, but eventually Mullis decided to forgo any effort at exhausting state remedies and proceed in federal court instead. Ultimately, Mullis has filed a consolidated federal petition raising several constitutional claims. (Docket Entry No, 94). This matter is now before the Court on Respondent's motion for summary judgment which argues that all Mullis' claims are procedurally barred from federal review. Alternatively, Respondent argues that all Mullis' claims lack merit.

## ISSUES NEEDING DEVELOPMENT

In his reply to the summary judgment motion, Mullis argues that procedural law does nor bar federal review for three reasons:

1. "Texas's application of Article 11.071 § 4 here is inadequate to foreclose review by this Court."

2. "[S]tate habeas counsel's abandonment of Mr. Mullis and ineffectiveness during state habeas proceedings caused [him] to fail to exhaust his claims in the state courts, excusing any default.

3. Mullis' "purported waiver was not voluntary, but instead was driven by his traumatic sexual history and his fear of being sexually assaulted in prison."

(Docket Entry No. 159 at 2).[2] For the reasons discussed below, the Court needs additional briefing on each of these points. In addition, the parties will explain whether an evidentiary hearing is necessary to resolve the procedural questions and what they each would present in such a hearing.

**I.    Procedural Default and Procedural Law**

Respondent argues that procedural law precludes federal review of all Mullis' claims. Federal law traditionally prohibits the litigation of claims an inmate has defaulted under state law. "[A] federal court may not review federal *claims* that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, — U.S. —, 137 S. Ct. 2058, 2064 (2017) (emphasis added). An adequate state rule is one that has been "firmly established and regularly followed" when the state courts considered an inmate's claim. *Roberts v. Thaler*, 681 F.3d 597, 604-05 (5th Cir. 2012) (quotation omitted).

---

[2] In an earlier pleading, Mullis mentioned that he can show a fundamental miscarriage of justice, which in the habeas context means a showing that an inmate is actually innocent. Mullis' later briefing does not develop that argument.

The parties both address the procedural status of Mullis' claims as a threshold consideration in this case. The parties, however, diverge on what specific state procedural law may preclude federal review.

## A.  Respondent's Argument

Respondent focuses the procedural-bar argument on Mullis' failure to exhaust his claims and the Texas state law that would prevent him from doing so now. Federal law precludes relief if an inmate has not exhausted his state court remedies. 28 U.S.C. § 2254(b). Mullis has never placed any claims before the state courts, much less ones that were then disallowed by the operation of state law. Mullis did not raise any claims on direct appeal, did not advance any potential habeas claims before the Court of Criminal Appeals accepted his waiver, and never proposed any habeas arguments in his request for an extension of time to submit a habeas application.

Early in this case, Mullis argued that a state avenue of relief remained open to present his federal habeas claims. (Docket Entry No. 31). The Court stayed the case to allow a successive habeas action to proceed. (Docket Entry No. 35).[3] Mullis, however, never filed a state habeas application. For whatever reason, Mullis decided not to seek successive state habeas proceedings after the conclusion of his back-and-forth efforts to

---

[3] When asking for a stay Mullis argued that the Court of Criminal Appeals could authorize review under three theories: (1) deficiencies in state habeas counsel's representation amounted to "good cause" under Tex. Code Crim. Pro. art. 11.071 §4A; (2) state habeas counsel's representation should allow successive proceedings under Tex. Code Crim. Pro. art. 11.071 §5; and (3) his earlier waiver of habeas review was not voluntary. (Docket Entry Nos. 31, 46).

waive federal habeas review.[4] Mullis' abandoned effort to return to state court highlights an important distinction in this case—the state courts have never found that Mullis defaulted specific claims, only that he has defaulted the right to file a habeas application.

Respondent argues that the Texas state courts would not allow Mullis to raise his federal habeas claims in state court. When an inmate raises claims for the first time in federal court "and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," his claims are technically exhausted but "there is a procedural default." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Texas' abuse-of-the-writ doctrine found in Tex. Code Crim. Pro. art. 11.071 §5 precludes an inmate from filing a successive state habeas application except in limited circumstance. Respondent argues that Mullis' federal habeas claims are procedurally barred because Texas would not allow for their consideration under Tex. Code Crim. Pro. art. 11.071 §5.

**B. Mullis' Arguments**

Mullis acknowledges Respondent's argument that his claims are procedurally barred because they are unexhausted and thus barred by Tex. Code Crim. Pro. 11.071 §5. (Docket Entry No. 159 at 2). Mullis, however, focuses his procedural arguments on his waiver of, and effort to resurrect, state habeas review. Mullis' arguments relating to a procedural bar discuss (1) the timeline relied on by the Court of Criminal Appeals when

---

[4] Mullis did not file a successive habeas application after the Court stayed this case but instead investigated the possibility of challenging DNA results. (Docket Entry No. 54). It is unclear why Mullis did not expeditiously exhaust the claims found in his federal habeas petition when given the opportunity to do so.

it accepted his waiver of habeas review and (2) its failure to set a new date for filing based on Dr. Fuller's examination.

Mullis first argues that "there was no clear, regularly followed, clearly established or independent rule with respect to cases in which no appellate brief was filed to trigger the deadline set by Article 11.071 § 4(a)." (Docket Entry No. 159 at 10). The pleadings from the parties and the order entered by the Court of Criminal Appeals reveal the struggle to determine the precise date on which Mullis' right to file a habeas application passed. The Court of Criminal Appeals only gave a date "[u]nder the best possible scenario." Mullis argues the "novel application of Article 11.071 § 4 where the conditions precedent had not occurred, and which prevented Mr. Mullis from filing a state habeas application and terminated his state habeas corpus proceedings, is not an adequate state ground and does not foreclose review by this Court of Mr. Mullis's claims." (Docket Entry No. 159 at 11).

Mullis also argues the Court of Criminal Appeals relied on inadequate law when it did not let him resurrect his state habeas proceedings. *See Ex parte Mullis*, No. WR-76,632-01 (Tex. Crim. App. Dec. 12, 2012). When a capital inmate fails to file a timely habeas application, the Court of Criminal Appeals may authorize a new filing date after a showing of good cause under Tex. Code Crim. Pro. art. 11.071 §4A. Mullis argues that the Court of Criminal Appeals' application of section 4A is not adequate to bar federal review because it "has interpreted 'good cause' leniently and typically granted petitioners the opportunity to file otherwise untimely applications under 4A when counsel has made

some mistake." (Docket Entry No. 159 at 7).[5] According to Mullis, his habeas action was only the third in which the Court of Criminal Appeals did not find good cause to allow the filing of an untimely initial habeas action. (Docket Entry No. 159 at 10).

### C. Additional Briefing

In Respondent's view, Mullis' waiver prevented him from filing a state *application*, but the state courts have never applied state procedural law to bar the specific *claims* in his federal petition. *See Gonzales v. Davis*, 924 F.3d 236, 243 (5th Cir. 2019) ("Federal habeas claims are procedurally barred if the last state court to review the petitioner's *claims* unambiguously based its denial on a state procedural bar.") (emphasis added). Respondent argues that Texas' bar on successive habeas applications is the procedural law that bars federal review. In Mullis' view, state procedural law has not adequately addressed how to deal with an inmate who vacillates in his waiver of review.[6] Accordingly, the parties' briefing to date raises questions about what event results in a federal procedural bar of the specific claims in Mullis' federal habeas petition.

The parties each provide extensive briefing bolstering their own perspective, but do not respond to the other's arguments. The Court, therefore, asks the parties to clarify

---

[5] Respondent's briefing to date explores how the Court of Criminal Appeals calculated a final date for the filing of Mullis' initial application but does not sufficiently address Mullis' argument that the computation was inadequate to bar federal review. The Fifth Circuit has upheld a district court ruling that the Court of Criminal Appeals' application of the time calculation in cases involving a waiver of habeas review was not clearly announced or regularly applied. *See Austin v. Davis*, 876 F.3d 757, 777 (5th Cir. 2017). The circumstances in *Austin* where the Court of Criminal Appeals barred a habeas application raising various claims under section 4A may differ because Mullis has never put any claims before the state courts.

[6] While not completely clear from his briefing, it seems that Mullis conflates the adequate and independent requirement to impose a procedural bar with the "cause" requirement that would forgive that bar.

when Mullis procedurally defaulted his claims and which state law bars federal review. The parties must brief what specific state procedural law bars federal review: (1) the Court of Criminal Appeals' September 12, 2012 acceptance of his waiver of habeas review; (2) the Court of Criminal Appeals' December 12, 2012 refusal find good cause, appoint new counsel, and reopen the proceedings; or (3) the presumptive operation of Texas' abuse-of-the-writ doctrine which would disallow any attempt to exhaust his federal claims.[7] Additionally, the parties will each respond to the other's briefing regarding the adequacy and independence of Texas procedural law.

## II. Abandonment or Ineffective Representation by Habeas Counsel

A petitioner can overcome a procedural default if he can show cause for the default and actual prejudice as a result of the alleged violation of federal law. *See Coleman*, 501 U.S. at 750. Cause for the default exists default when "something external to the petitioner, something that cannot fairly be attributed to him . . . 'impeded [his] efforts to comply with the State's procedural rule.'" *Id*. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Mullis claims that he can overcome any procedural bar because his habeas attorneys "abdicated their role as advocates in the competency proceedings," "affirmatively chose not to challenge the expert's report," and did not bring to light information "that, due to his history of sexual abuse and mental illness, he would rather die than face the possibility of being raped in the prison system's general population." (Docket Entry No. 159 at 12). Mullis relies on the opinion of various legal

---

[7] The parties' briefing to date does not focus on the ACLU attorney's request to file an original habeas application that would result in a new direct appeal.

experts to contend that habeas counsel either abandoned him or provided deficient performance in handling his choice to waive federal review.

Under Supreme Court precedent, the representation provided by a state habeas attorney may provide for federal review of otherwise-barred claims in two circumstances. Under *Martinez v. Ryan*, 566 U.S. 1 (2012), specific instances of deficient habeas representation may provide cause for the procedural default of specific claims. Under *Maples v. Thomas*, 565 U.S. 266, 271 (2012), the Supreme Court held that attorney abandonment constitutes an extraordinary circumstance that can be sufficient "cause" to forgive a procedural default in state court. The parties have discussed whether the representation provided by habeas counsel was ineffective, but have not provided briefing "distinguishing attorney abandonment, which satisfies the 'cause' requirement, from attorney negligence, which does not." *Perez v. Stephens*, 745 F.3d 174, 179 (5th Cir. 2014). The parties will provide additional briefing, supported by precedent, describing whether the counsel's representation would be classified as abandonment or negligence. The parties will also discuss whether some fact finding is necessary involving testimony from state habeas counsel by affidavit, interrogatories, depositions, or hearing testimony.

In addition, an inmate only shows cause to forgive a procedural bar by identifying "something external to the petitioner." *Coleman*, 501 U.S. at 753. The Court invites the parties to provide additional insight into whether Mullis' waivers, particularly after Dr. Fuller's report finding him competent, negates any abandonment or negligence by counsel.

## III.   Mullis' Competency and the Voluntariness of his Waiver

Mullis argues that he can overcome any procedural bar because his waiver of state review was not voluntarily and competently made. Mullis explains that his waiver was not "an expression of his own free will; rather, it was the manifestation of his traumatic history of sexual abuse, his fear of revictimization, and his mental illness." (Docket Entry No. 159 at 42). This Court's own experience with Mullis' back-and-forth attempts to waive federal review prove that ascertaining his competency is complex, and all-the-more complicated by his own efforts to manipulate the process. Untangling Mullis' strategy and decisions from his mental illness can be difficult. The Court needs additional briefing concerning whether the factors leading to Mullis' decisions during the state habeas process impaired his competency, as understood by the law.[8]

The Supreme Court has described the standard for determining whether a death row inmate is competent to abandon further appeals: "whether he has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Rees v. Peyton*, 384 U.S. 312, 314 (1966). The Fifth Circuit has set out the following three part test:

> (1) whether that person suffers from a mental disease, disorder, or defect;
> (2) whether a mental disease, disorder, or defect prevents that person from understanding his legal position and the options available to him; and (3)

---

[8]   The briefing focuses on whether Mullis was competent to waive habeas review. Mullis does not extensively challenge his decision not to file a direct appeal, even though that decision was made only a short time before Dr. Scarano assessed his competency.

whether a mental disease, disorder, or defect prevents that person from making a rational choice among his options.

*Mata v. Johnson*, 210 F.3d 324, 328 (5th Cir. 2000) (citing *Rumbaugh v. Procunier*, 753 F.2d 395, 398 (5th Cir. 1985))

Mullis' arguments that he was incompetent to waive habeas review depends on the report prepared by Dr. Fuller. Dr. Fuller found that his "clinical evaluation largely parallel[ed]" that of Dr. Scarano and that "many of the observations and clinical impressions are similar." (Docket Entry No. 119, Attachment 88 at 67). Yet Dr. Fuller found Mullis "had not been competent to waive his rights in October 2011" because he had concealed his "mental illness, depression, suicidal ideation, and fear of violence in prison outside the locked-down death row unit." (Docket Entry No. 94 at 14). Dr. Fuller, in fact, identified "suicidal ideation . . . as the primary motive" for Mullis' choice to waive habeas review. *Id*. at 69. Dr. Fuller explained: "Mullis stated clearly to me that he had lied to Dr. Scarano, that he indeed was depressed, suicidal, and fearful of his fate should he sentence be commutes to life without parole through the appellate process at the time of his examination." *Id*. Mullis now maintains that "the true reason driving Mr. Mullis's desire to waive [was] that, due to his history of sexual abuse and mental illness, he would rather die than face the possibility of being raped in the prison system's general population." (Docket Entry No. 159 at 12

Mullis' concealment of the reasons behind his waiver caused the experts to reach differing conclusions about his competency. Mullis now argues that his fears and suicidal ideation diminished his "capacity to appreciate his position and make a rational

15/17

choice," but Respondent's briefing subtly questions Dr. Fuller's conclusions. Respondent cites law holding that depression and suicidal ideation are an insufficient basis to question a capital prisoner's competence. (Docket Entry No. 147 at 68). Circuit precedent instructs that those factors "must be weighed in conjunction with all other evidence presented with respect to a defendant's mental stability and competence." *Mata*, 210 F.3d at 330.

In that respect, Dr. Fuller's report seems to assume that incompetency necessarily results from fear, suicidal ideation, and depression without examining how those factors discretely impacted Mullis' own understanding and ability to make a rational choice. Dr. Fuller did not criticize Dr. Scarano's understanding of Mullis' mental-history or current diagnostic state. Dr. Fuller drew only one distinction between his examination and that of Dr. Scarano: Mullis' concealment of his motivation. Dr. Fuller's report seems to believe that depression and suicidal intent render a defendant incompetent without linking those factors to the inquiry required by the law. Dr. Fuller specifically stated: "In my opinion, he was depressed, suicidal, and masking or denying these issues [when examined by Dr. Scarano]. If so, it follows that he was experiencing symptoms of a significant mental condition that impaired his rational abilities and decisional capacity at the time that he opposed further appeal." (Docket Entry No. 159, Ex. C).

The Court orders the parties to provide additional briefing on whether Dr. Fuller's psychological opinion sufficiently supports a legal determination of incompetency to waive habeas review. With that briefing, the Court recognizes that soon after Dr. Fuller found him fully competent Mullis then again waived all review—a decision which

16/17

doomed counsel's efforts for the reappointment of counsel and reinstitution of habeas review. Mullis' briefing to date does not provide insight into how his renewed waiver short-circuited any effort by counsel to renew habeas proceedings. Mullis must explain why, no matter what Dr. Fuller concluded, the Court of Criminal Appeals was not justified in finding that he could not reinvigorate habeas review.

## CONCLUSION

Pursuant to the discussion provided above, the Court **DENIES** Respondent's motion for summary judgment **WITHOUT PREJUDICE**. The parties will each provide briefing consistent with this Order within thirty (30) days from the entry of this Order. The parties may also provide briefing on any issue they consider relevant to the disposition of the matters now before the Court. The parties may each respond to the new briefing within thirty (30) days of its filing.

Given the significant briefing already present in the record, the Court at that point will consider rather additional factual development is necessary or whether the briefing on file is sufficient for adjudication of Mullis' federal habeas petition.

SIGNED at Houston, Texas, on ____March 16_____, 2021.

_____George C. Hanks Jr._____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE