United States District Court
Southern District of Texas
**ENTERED**
July 20, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TRAVIS JAMES MULLIS, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 3:13-cv-121 |
| | § | |
| BOBBY LUMPKIN, Director, TDCJ-CID, | § | |
| | § | |
| Respondent. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

In 2011, a Texas jury found Travis James Mullis guilty of capital murder. He was sentenced to death. Soon thereafter, Mullis waived his right to pursue state appellate and habeas remedies. Because of his waivers, Mullis never gave the state courts an opportunity to consider any constitutional challenge to his conviction and sentence. Through appointed counsel, Mullis filed a petition for federal habeas corpus relief in 2013. The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") which governs Mullis' petition requires that inmates fully exhaust all state court remedies before federal habeas relief becomes available. For the reasons discussed below, the Court finds that Mullis has not shown that this Court can reach the merits of his unexhausted constitutional claims. Accordingly, the Court will dismiss Mullis' federal habeas petition. The Court will also not certify any issue for consideration by the Court of Appeals for the Fifth Circuit.

## BACKGROUND

### I.    The Crime and the Trial

In 2008, Mullis lived in a friend's trailer home in Brazoria County with his girlfriend and their three-month-old son Alijah.  On January 28, 2008, Mullis attempted to sexually assault his friend's eight-year-old daughter.  After returning home and bickering with his girlfriend, Mullis put Alijah in the back seat of his girlfriend's car and drove to Galveston.  In the early morning hours of January 29, 2008, Mullis parked his car in a secluded location on the Galveston Seawall and then sexually assaulted his son.

Alijah cried uncontrollably after the assault.  Mullis unsuccessfully tried to quiet him and then began strangling the baby.  Alijah made gurgling sounds until Mullis took him out of the car and stomped on his head several times, crushing his skull.  After throwing the lifeless corpse into the brush, Mullis fled to Philadelphia.

Mullis turned himself in to police officers a few days later.  Mullis voluntarily confessed to the crime.  The State of Texas charged Mullis with capital murder for intentionally causing the death of an individual under six years of age.  *See* Tex. Penal Code Ann. § 19.03(a)(8).

Mullis stood trial in the 122nd Judicial District Court of Galveston County, Texas, with the Honorable John Ellisor presiding.  Trial counsel[1] faced a difficult task in representing Mullis.  The facts of the crime were horrific, and Mullis' written and

---

[1]    The trial court appointed Robert Loper and Gerald Bourque to represent Mullis.  The Court will refer to his trial attorneys collectively as "trial counsel."  Early in the trial process, Mullis unsuccessfully moved to dismiss his attorneys for not providing him a copy of a police report.  Tr. Vol. 2.  In the years that would follow, Mullis would have a complicated relationship with the attorneys who represented him at trial, on appeal, on state habeas review, and in federal court.  At each stage of the process, Mullis has tried to remove his attorneys.  Mullis was successful at doing so on both direct appeal and state habeas, leaving him responsible for his own legal representation.

videotaped confession provided nearly indefensible grounds for conviction.  Tr. Vol. 25 at 224, Vol. 37, SX-36(a).  Trial counsel rested in the guilt/innocence phase without calling any witnesses.  In closing arguments, trial counsel did not minimize the appalling nature of the crime Mullis committed.  *See, e.g.,* Tr. Vol. 27 at 20 ("This is a horrible crime.").  Trial counsel, however, pleaded for jurors to open their minds to "cool reflection" and "consider all relevant facts and circumstances."  Tr. Vol. 27 at 21.  The defense urged jurors to find Mullis guilty only of a lesser offense.  Tr. Vol. 27 at 37.

The jury found Mullis guilty of capital murder on March 11, 2011.  The jury determined Mullis' fate by answering two special issue questions in a separate punishment phase: (1) would Mullis be a future danger to society and (2) did sufficient evidence mitigate against a death sentence?  In the penalty phase, Mullis' background took a prominent role as both State and defense witnesses painted a bleak picture of his early life.  Mullis was born with necrotizing enterocolitis.  Mullis' biological parents were absent from his life: his father abandoned the family soon after his birth and his mother died when he was ten months old.  Mullis' uncle and aunt adopted him but failed to provide a safe environment.  At least by age three, Mullis' adoptive father began sexually assaulting him.

The defense focused its case on Mullis' history of mental illness that first manifested in early childhood.  Mullis spent years in and out of counseling, treatment centers, and state custody.  During that time, mental-health professionals diagnosed him with various psychological conditions, including attention deficit/hyperactivity disorder (ADHD), bipolar disorder, depression, anxiety, oppositional defiant disorder, and post-

traumatic stress disorder (PTSD). As a young teenager, Mullis sexually assaulted his younger female cousin. Mullis was subsequently hospitalized for suicidal threats. Mental-health professionals prescribed psychotropic medication which Mullis stopped taking as he aged.

Mullis exhibited various psychological conditions while incarcerated before trial, including depressive symptoms, flashbacks of past trauma, and hallucinations. Mental-health experts diagnosed him with impulse control disorder and PTSD. A psychological evaluation diagnosed him with reactive attachment disorder, features of narcissistic and antisocial personality disorder, a high likelihood of bipolar disorder, and pedophilia non-exclusive type. Mullis had attempted suicide by overdosing with vitamins. He continued reporting suicidal feelings. Doctors again prescribed psychotropic medications, but Mullis eventually stopped taking them.

The State focused its case on Mullis' history of violence and illegal acts. Mullis had a pattern of sexually assaulting young children. The State portrayed Mullis as someone whose violent tendencies could not be ameliorated with medication, treatment, or incarceration. The State emphasized that Mullis had homicidal thoughts since age 11. He had repeatedly rejected, and victimized, those who reached out to help him. He even assaulted his own grandmother. During his incarcerations as a juvenile and as an adult, Mullis assaulted staff members, feigned suicidal behavior, violated rules, and created a "hit list." The State argued that Mullis' life history proved that he was manipulative, remorseless, and without conscience. And the jury weighed whether the haunting facts of the murder alone justified a death sentence.

On March 21, 2011, the jury answered Texas' special issues in a manner requiring the imposition of a death sentence. Clerk's Record at 846.

## II.    Waiver of Appellate Review

On March 21, 2011, Mullis filed a notice of appeal. Clerk's Record at 836, 874. Two days later, the trial court appointed Wayne Hill to represent Mullis on direct appeal. Clerk's Record at 844. On April 19, 2011, Mr. Hill filed a sealed Motion for New Trial in the trial court. Mullis, however, would prevent his appellate attorney from advocating on his behalf.

### A.    Waiver Hearing

Appellate counsel met with Mullis "numerous times" regarding his appellate rights. Mullis "expressed in no uncertain terms" his desire to "waive his direct appeal" and proceed *pro se*. 34 RR 4-5. At Mullis' urging, Mr. Hill filed a document entitled Waiver of Rights and Invocation of Defendant's Right to Proceed *Pro-Se* on May 20, 2011. Clerk's Record at 903. Mullis himself signed each page of the motion. Clerk's Record at 903-05. The waiver attested that Mullis had "considered and contemplated this matter for a significant period of time" and that he invoked his right to self-representation "voluntarily, intelligently and knowingly, and with full appreciation of the direct and collateral consequences of his actions. Clerk's Record at 904. The document also assured that Mullis was "mentally competent to make the decisions" with "the mental capacity to understand the choice between life and death and to make knowing and intelligent decisions not to pursue further remedies." Clerk's Record at 905.

In the May 20, 2011, hearing initially scheduled to address the motion for a new

trial, the trial court discussed Mullis' desire to proceed *pro se*.  Mr. Hill informed the trial court that he had "talked extensively" with Mullis about his waiver and, "while philosophically [he] disagree[d] with his decision," Mr. Hill believed that Mullis was competent to make it.  Tr. Vol. 34 at 18. [2]

Mr. Hill provided the trial court some observations about Mullis' request:

> . . . I have explained the consequences of proceeding the way [Mullis] wishes to do so. And from the standpoint of whether or not I believe that he is competent in the sense that he has a rational as well as a factual understanding of the proceedings and whether he could communicate with me as his lawyer through this proceeding, I believe that he is. And he has expressed to me without reservation the desire to proceed in this fashion and I told him that I would bring this to the Court's attention.

> He is aware of the fact that basically if this case goes to the Court of Criminal Appeals without the benefit of any type of brief filed by the Defendant should he represent himself pro se and choose not to do that, that there's precedent, which he is aware of because he's read the case, the *Lott* case,[3] where the Court of Criminal Appeals will take the matter up on the record and look at whether there's any fundamental or Constitutional error and in all likelihood that if that occurs and an affirmation of the sentence and the conviction is made by the Texas Court of Criminal Appeals, this Court will then set an execution date at some point in the future on Mr. Mullis.

---

[2]    Mr. Hill told Mullis that not filing an appeal "would be a stupid thing to do."  Affidavit of Wayne Hill, Nov. 19, 2012.  Under the principles announced in *Faretta v. California*, 422 U.S. 806, 835-36 (1975), a competent criminal defendant has a Sixth Amendment right to represent himself *at trial* if he waives his right to counsel, and a trial court cannot deny the defendant's motion to proceed pro se on the ground that the defendant lacks sufficient knowledge or understanding of the law.  "[T]he competence that is required of a defendant is the competence required to waive the right, not to represent himself." *Godinez v. Moran*, 509 U.S. 389, 399 (1993).  The exercise of the right to self-representation is contingent on the defendant's knowing and intelligent waiver of the right to be represented by counsel. An inmate, however, does "has no constitutional right to self-representation on appeal." *United States v. Cockerham*, 396 F. App'x 66, 67 (5th Cir. 2010); *see also Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 163 (2000).  Texas courts have not recognized a state constitutional right to self-representation on appeal. *See Hadnot v. State*, 14 S.W.3d 348, 350 (Tex. App.-Houston [14th Dist.] 2000, no pet.).  Texas courts, however, have the discretion to allow inmates to proceed *pro se*. *Nash v. State*, 2016 WL 7187463, at *2 (Tex.App.-Amarillo, 2016).

[3]    *Lott v. State*, 874 S.W.2d 687, 688 (Tex. Crim. App. 1994) ("Appellant has not filed a brief on his behalf in this appeal.  We therefore submitted the case without the benefit of briefs and, in the interest of justice, reviewed the entire record.  Having found no unassigned fundamental error, we affirm the judgment of the trial court.") (footnotes omitted).

Tr. Vol. 34 at 18–19.

Because he "was present, obviously, during [Mullis'] whole trial and got to hear quite a bit about [his] background, [his] upbringing," the trial judge engaged Mullis in a colloquy that explored his history of mental problems, his knowledge of the legal process, and the reasons for which he wished to terminate judicial review.  Tr. Vol. 34 at 8.  The trial court interrogated Mullis about his understanding of the appellate and habeas process and his reasons for taking over his direct appeal.  The colloquy revealed that Mullis accurately understood the legal options open to him and fully comprehended the effects of not filing an appellate brief.  Tr. Vol. 34 at 12-14, 16-17, 19-22.  Mullis assured the trial court: "Actually, I was the one that did most of the legal research to get where we are here today. I did all the research to get background and ensure that I understood the logistics before I even approached Mr. Hill and explained to him what I desired to do."  Tr. Vol. 34 at 10.  The trial court questioned Mullis about his history of mental illness.  Mullis conceded that mental-health professionals had previously diagnosed him with various mental illnesses and had prescribed medication.  Tr. Vol. 34 at 14-15. Mullis demonstrated a rational and factual understanding of his legal options.  Tr. Vol. 34 at 156.  In sum, the trial court specifically probed Mullis' understanding of his position, his ability to make rational choices, and whether he suffered from anything that would affect his capacity.

The trial court took a brief recess to consider Mullis' request.  Before leaving, the trial judge urged Mullis to consult with Mr. Hill because this was "not something you

want to lightly throw over or give up." Tr. Vol. 34 at 22.   Returning to the courtroom, Mullis assured the trial court that he had not reconsidered his decision.  Tr. Vol. 34 at 23.

The trial court granted Mullis' motion, dismissed Mr. Hill, and allowed Mullis to proceed *pro se*.  Tr. Vol. 34 at 23-24.  Mullis then told the trial court to "vacate" the motion for a new trial.  Tr. Vol. 34 at 24.[4]

### B.    Waiver of Appellate Review

Because the trial court dismissed Mr. Hill, Mullis had full control over his appeal. At Mullis' direction, Mr. Hill mailed a "Voluntary Dismissal of Appeal" to the Court of Criminal Appeals.  (DE 119, Ex. 14).  Mullis' letter stated that he proceeded *pro se* and asked for the dismissal of his appeal.

Mullis did not file any appellate papers that challenged his conviction and sentence.  On February 14, 2012, the State waived its right to file a brief on direct appeal. (DE 174 at 3, n.2).  Because direct appeal is automatic in death-penalty cases, *see* Tex. Code Crim. Proc. Ann. art. 37.071, § 2(h), the Texas Court of Criminal Appeals in the interests of justice reviews the entire record for "unassigned fundamental error when a *pro se* inmate does not file any appellate briefing, *Austin v. State*, 2003 WL 1799020, at

---

[4]        Mullis argues in his sixteenth claim the courts and appellate counsel violated his rights when his waiver was accepted without the benefit of a competency evaluation and full hearing.  (DE 94 at 218-25).  The merits of that claim are not available for federal review.  The Court notes, however, that the Constitution does not require that a court hold a competency hearing every time an inmate waives his rights.  The extent of a court's inquiry into a defendant's mental capacity depends on whether "the evidence raises a bona fide doubt as to competency." *Mata*, 210 F.3d at 329; *see also Pate v. Robinson*, 383 U.S. 375, 385 (1966). "In determining whether there is a 'bona fide doubt' as to the defendant's competence, the court considers: (1) any history of irrational behavior, (2) the defendant's demeanor at trial, and (3) any prior medical opinion on competency." *Mata*, 210 F.3d at 329.  The trial court had heard the trial testimony about Mullis' mental illness, but the record does not contain evidence of irrational behavior contemporaneous with trial.  Mullis does not provide any information about his demeanor that would lead counsel or the court to question his competency.  No expert had previously found Mullis incompetent. Mullis, therefore, does not raise a strong challenge to counsel or the court's actions when he was permitted to represent himself on direct appeal.

*1 (Tex. Crim. App. 2003); *Lott v. State*, 874 S.W.2d 687, 688 (Tex. Crim. App. 1994).

On April 25, 2012, the Court of Criminal Appeals entered an order affirming Mullis's

conviction.  After finding that Mullis "desire[d] to dismiss his court-appointed appellate

counsel, raise no points of error, and waive the instant and all future appeals including

any error," the Court of Criminal Appeals found "no unassigned fundamental error"[5] and

"affirm[ed] the trial court's judgment."  *Mullis v. State*, 2012 WL 1438685 (Tex. Crim.

App. Apr. 25, 2012) (unpublished).

## III.    Waiver of State Habeas Review

Under Texas law, state habeas review proceeds concurrent to a direct appeal in

capital cases.  Tex. Code Crim. Pro. Art. 11.071 § 4.  The state trial court's decision that

Mullis was competent to waive his state habeas action was not independent from his

direct appeal.  The same judge who authorized Mullis to proceed *pro se* eventually

allowed him to waive habeas review.

### A.    Initial Stages of Habeas Proceedings

On March 23, 2011, the same day that the trial court appointed appellate counsel,

the trial court also appointed Brad Levenson of the Office of Capital Writs ("OCW")[6] to

represent Mullis in his state habeas proceedings.  Clerk's Record at 843.  Habeas counsel

met Mullis soon after appointment and visited him regularly.  (DE 95 at 811).  Habeas

---

[5]    The Court of Criminal Appeals' review for fundamental error, however, does not result in the exhaustion of any claims for federal review.  *See Neville v. Dretke*, 423 F.3d 474, 477 n.1 (5th Cir. 2005).

[6]    In 2010 Texas created the Office of Capital Writs ("OCW") to serve as a public defender's office specializing in post-conviction capital litigation.  *See* Tex. Gov't Code § 78.054; Tex. Code Crim. Pro. art. 11.071, § 2.  In 2015, Texas renamed the office Office of Capital and Forensic Writs ("OCFW").  To remain consistent with the record in this case, the Court will refer to the office under its former name or will simply use the phrase "habeas counsel."

counsel communicated with appellate counsel when he learned of Mullis' intention to waive his direct appeal rights, hoping to keep Mullis from waiving habeas review.  (DE 95 at 811).  Habeas counsel began a limited investigation into potential grounds for relief which included briefly interviewing some witnesses.  Habeas counsel, however, felt hampered by the lack of an appellate transcript.  (DE 95 at 811).[7]

During habeas counsel's "numerous visits" in prison, Mullis "weighed the pros and cons of waiving" state habeas review.  (DE 95 at 812).  As described by habeas counsel, Mullis waffled often in his decision:

> Throughout my representation of Travis Mullis, he went back and forth between being hopeful and enthusiastic about his litigation and wanting to waive. It was a roller coaster ride that went up and down with his mental state. His emotionally instability was apparent. I saw his manic side, as well as his sullen, quiet side. Despite his tough outward appearance, [Mullis] was very sensitive and reacted very strongly to any perceived slight by myself and others on his legal team.

(DE 95 at 815).

Habeas counsel came to the realization that "the main thing motivating [Mullis] to

---

[7]     Mullis now strongly and extensively criticizes his habeas attorney for not engaging in a probing and detailed investigation into possible habeas claims.  Mullis' arguments are removed not only from the situation before habeas counsel who had a recalcitrant client, but also from the reality of habeas review.  True, habeas counsel had not generated much material toward a comprehensive habeas application when Mullis waived review.  At the same time, Mullis abandoned his right to habeas early in the process.  When the trial court eventually held a hearing on Mullis' motion, state habeas counsel explained "It takes about a year and a half between the time someone is convicted and the time their State habeas is due in the convicting court.  So, we've had about six months."  Tr. Vol. 35 at 8.  In a normal case, state habeas court had a year left to prepare a habeas writ—the same amount of time federal law allows for the preparation of a federal habeas petition.  *See* 28 U.S.C. 2244(d)(1) (requiring that an inmate file his federal petition within one year of the conclusion of state review).  Further, state habeas counsel faced the conflict between a professional duty and the limitations placed on them by their client.  In the end, Mullis was the master of his own defense.  *See Autry v. McKaskle*, 727 F.2d 358, 361 (5th Cir. 1984) ("By no measure can [a defendant] block his lawyer's efforts and later claim the resulting performance was constitutionally deficient."); *see also Gannett Co. v. DePasquale*, 443 U.S. 368, 382, n. 10 (1979) (the Sixth Amendment "contemplat[es] a norm in which the accused, and not a lawyer, is master of his own defense").  He, not any attorney, is responsible for the decision not to file a timely habeas action.  Mullis now fails to develop any argument explaining why a constitutional obligation should rest on an attorney to prepare a habeas application which his client orders him not to file.

waive was his concern that if he won penalty phase relief he would have to move to general population where he felt he would be a target for sexual and physical abuse by other inmates, due to the nature of his crime and his sexual orientation.  He repeatedly expressed these concerns to me and I believe members of my staff."  (DE 95 at 812).  Mullis, in fact, was "completely obsessed" with that fear.  (DE 95 at 813).  Habeas counsel did "everything in our power to reassure" Mullis, even to the extent of "consult[ing] with a retired TDCJ official who was an expert in prison classification about [Mullis'] eligibility for protective custody and the details of applying for protective custody."  (DE 95 at 812).

Texas state habeas review generally proceeds under a tight schedule: an inmate must file his state habeas application "not later than the 180th day after the date the convicting court appoints counsel . . . or not later than the 45th day after the date the state's original brief is filed on direct appeal with the court of criminal appeals, whichever date is later."  *Id*. at § 4(a).  This case, however, posed a difficult question: what deadline would Mullis face in submitting a habeas application?

The filing of the State's appellate brief generally triggers the due date for a state habeas application.  *See* Tex. Code Crim. Pro. art. 11.071 § 4(a) (setting the filing deadlines for Texas state habeas); *see also Austin v. Davis*, 876 F.3d 757, 776-77 (5th Cir. 2017).[8]  State habeas counsel guessed that any state habeas application would be due

---

[8]     In *Austin v. Davis*, 876 F.3d 757 (5th Cir. 2017), the Texas court applied a novel reading of Texas Code of Criminal Procedure, art. 11.071, § 4(a) which the Fifth Circuit found was inadequate to bar federal review.  As discussed at length below, the application of section 4(a) is not determinative to Mullis' claims because, unlike in *Austin*, the Texas courts did not rely on that section to bar the specific claims in Mullis' federal habeas petition.

in late December 2011.  (DE 119, Attachment # 92 at 7).  Counsel, however, made this estimate before the State waived direct appeal on February 14, 2012.  (DE 174 at 3, n.2). The timeline proved immaterial when Mullis ordered counsel not to file any state habeas application.

### B.      Competency Inquiry and Waiver

On September 14, 2011, about five months after the trial court found Mullis could proceed *pro se* on appeal, Mullis signed an affidavit in which he declined all habeas legal representation.  State habeas counsel Mr. Levenson filed the affidavit in the trial court along with a Motion to Waive Post-Conviction Habeas Review and a request for a court-ordered mental health evaluation.  State Habeas Record at 5.[9]

Texas law allows capital habeas applicants to proceed *pro se*.  *See* Tex. Code Crim. Pro. art. 11.071, §§ 2(a); *see also Ex parte Gallo*, 448 S.W.3d 1, 5 n.23 (Tex. Crim. App. 2014).  If an applicant "has elected to proceed *pro se"* the convicting trial court must "find[], after a hearing on the record, that the applicant's election is intelligent and voluntary."  Tex. Code Crim. Pro. art. 11.071, §§ 2(a).  The Court of Criminal Appeals has also held that "[t]he right to bring a post-conviction application for writ of habeas corpus in felony cases is subject to waiver.  To be enforceable, such a waiver must be made voluntarily, knowingly, and intelligently."  *Ex parte Reedy*, 282 S.W.3d 492, 503 (Tex. Crim. App. 2009); *see also Wardlow v. Davis*, 750 F. App'x 374, 376 (5th Cir. 2018).

---

[9]      Habeas counsel bluntly told the trial court that Mullis' motion put them "in a precarious situation—an uncooperative client verses a duty to investigate."  (DE 119, Attachment No. 92 at 8).

With the motion, habeas counsel later asked the trial court to appoint a mental-health expert to determine whether Mullis was competent to waive review.  Later, habeas counsel confided that he thought Mullis' competency was "questionable."  (DE 95 at 813).  On September 15, 2011, the trial court appointed psychiatrist Dr. Victor Scarano to assess Mullis' competency.[10]  State Habeas Record at 13.  When the trial court appointed Dr. Scarano, habeas counsel "told him about [Mullis'] fear of general population, what the trial experts said about him, and about his previous mental health diagnoses."  (DE 95 at 813).  After examining Mullis, Dr. Scarano submitted a twenty-one-page report on October 6, 2011, finding Mullis competent to waive state habeas review.  Tr. Vol. 40, State's Exhibit No. 1.  The Court will summarize Dr. Scarano's findings.

Dr. Scarano considered various sources such as prison records, court transcripts, and a video interview of Mullis with a local reporter.  State Habeas Record at 40.  Dr. Scarano reviewed Mullis' "psychological issues," including his prior diagnoses of ADHD, PTSD, and bipolar disorder.  Tr. Vol. 40, Ex. 1 at 20-21.

As part of his forensic psychological examination, Dr. Scarano administered seven psychological tests and engaged in a probing interview.  As part of Dr. Scarano's

---

[10]     Dr. Richard G. Dudley, Jr., a licensed psychiatrist who testified as a defense expert at trial, later explained:

> If an attorney had contacted me and let me know Mullis was considering having the attorney removed so he could represent himself, and abandoning his appeal, I would have told the attorney that it would be essential to have Mullis evaluated to determine if his waiver was knowing, voluntary, and intelligent or a product of his mental illness. I would have told the attorney that Mullis's bipolar disorder and history of suicidal thoughts and gestures suggest a substantial risk that Mullis could be attempting to abandon his appeals in order to hasten his own execution. This would be a type of suicide.

(DE 95 at 82).  Likewise, psychologist Dr. Matthew Mendel who testified at trial expressed concern about Mullis being able to develop the "trust required for an attorney-client relationship" with appellate counsel.  Dr. Mendel likewise recommended that a competency evaluation proceed any waiver of rights.  (DE 95 at 571-72).  Without contacting the trial experts, the trial court followed the path they recommended: having Mullis examined.  Mullis' trial experts offered no opinion on whether he was competent at trial or afterwards.

interview, Mullis described his decision to waive review.  Mullis told Dr. Scarano that,

after his death sentence, "he had already decided that he did not want to fight to

conviction and the sentence."  In fact, he "h[ad] been thinking about this for the past 3

years and decided early on that whatever the jury was going to give him he was going to

accept."  Mullis explained he chose not to fight because "his punishment fit the crime."

As reported by Dr. Scarano:

> Mr. Mullis stated that he took a life and there is no question of his guilt.
> Mr. Mullis stated further that he did not believe it would be fair to the
> victim, to the families, to go through years and years of fighting, when he
> believes that he received a just punishment, has made his peace with God
> and himself, and is prepared to go through with his execution, which the
> jury had decided was appropriate punishment for his crime.

Mullis explained that he did not think any appeal would be successful, and the chance of

a life sentence did not factor into his decision.  Mullis said that no pressure was on him to

waive habeas review, but "that it is just the opposite, i.e., others are trying to pressure

him to not waive his right to challenge."   Tr. Vol. 40, Ex. 1 at 5-7.

Dr. Scarano explained that he had questioned Mullis about whether the possibility

that he would receive a life sentence influenced his decision to waive:

> Mr. Mullis was asked if the thought of life in prison without the possibility
> of parole was a motivating factor in his decision to waive his right to
> challenge the conviction and sentence, Mr. Mullis stated that it was not. Mr.
> Mullis added that he does not believe an appeal would ever work, because
> of the nature of the crime he committed and the fact that there is no doubt
> of his guilt. Mr. Mullis stated that if it ever came about that his sentence
> was changed to life in prison without the possibility of parole, he would be
> sent to a general population prison. Mr. Mullis stated that, as a child rapist
> and murderer, he would be at the bottom of the food chain in prison and
> there would be inmates there that would want to kill him.

> When asked if the thoughts of being killed in prison had prompted him in

any way with forging ahead with his execution, Mr. Mullis stated that it did
not, because it is really not relevant to his decision making process.

Tr. Vol. 40, Ex. 1 at 7.

Dr. Scarano made explicit findings regarding Mullis' psychological state as it
relates to its competency.  Dr. Scarano observed that Mullis had not exhibited any signs
or symptoms of mental illness during his four months of incarceration in TDCJ.  Tr. Vol.
40, Ex. 1 at 21.  After performing various tests and interviewing Mullis, Dr. Scarano did
not diagnose him with any current mental impairment or disease.

Dr. Scarano's interview with Mullis also revealed an adequate comprehension of
the legal process, the alternatives available to him, and the consequences of his choice to
forgo habeas review.  Tr. Vol. 40, State's Exhibit No. 1, p. 17-18.   Dr. Scarano opined
that Mullis "possess[ed] sufficient present ability to knowingly, intelligently, and
voluntarily waive his rights to post-conviction habeas review."  Tr. Vol. 40, State's
Exhibit No. 1, at 19-20.

On October 11, 2011, the trial court held a hearing on the motion to waive habeas
review.  Tr. Vol. 35.  State habeas counsel began the hearing by assuring the habeas court
that "we have strenuously objected to Mr. Mullis about waiving."  Tr. Vol. 35 at 6-11.
State habeas counsel described their numerous visits with Mullis during which time he
continually assured that he wanted to forgo habeas review.  Notwithstanding, state habeas
counsel secured from Mullis permission to begin investigating his case.  State habeas
counsel expressed no concerns with Dr. Scarano's report, but pleaded for the state habeas
court to "perhaps kick the can down the road a little bit farther so we can have more time

to work on Mr. Mullis' case and he can make even a more informed decision about what this office can do for him." Tr. Vol. 35 at 11.

The trial court and the parties questioned Mullis about his choice to waive review. Mullis stated that he wanted to "[c]ontinue with [his] waiver of the process." Tr. Vol. 35 at 13. Mullis explained: "I've accepted my punishment the jury's given me. I have no issue with that punishment. I accept my consequence for my actions and I'm choosing to stick with it." Tr. Vol. 35 at 13-14. Mullis assured the habeas court:

> I've thought about this for the three years leading up to trial, already anticipating the sentence before it came. Then I've had time since then to do legal research including my right under the Code of Criminal Procedure to waive any and all—anything, any rights that I have in a criminal proceeding.

Tr. Vol. 35 at 14. Mullis stated that he wanted to dismiss his attorneys, even though the habeas court cautioned him that "they would stop the whole process of working on your behalf, trying to find something that might change the ultimate outcome." Tr. Vol. 35 at 15. Mullis expressed a clear understanding of the consequences of waiving review: "Essentially as I understand it, by law, if Mr. Levenson and his office were to be released and nothing is filed by [the deadline], that's it. The waiver is officially in effect and it's automatically already been waived and nothing can be filed." Tr. Vol. 35 at 21. The state habeas court, nonetheless, still urged Mullis to let his habeas attorneys keep working on the case. Tr. Vol. 35 at 18-19.

On October 11, 2011, the state habeas court entered a written order finding Mullis competent. The state habeas court found that, "[a]fter questioning Mr. Mullis and having reviewed the forensic psychiatric examination/evaluation report of Dr. Victor R.

Scarano, the Court finds that Mr. Mullis is competent to knowingly, intelligently and voluntarily waive his rights to post-conviction habeas review." State Habeas Record at 27. Thus, the trial court held that "Mr. Mullis is permitted to act pro se regarding any decisions concerning waiver and/or filing a post-conviction writ of habeas corpus." State Habeas Record at 27. The state habeas court also made an ambiguous statement about counsel's status: the court said that state habeas counsel "may continue to investigate and prosecute a post-conviction writ of habeas corpus on behalf of Mr. Mullis until the deadline for filing, but must not file the writ if Mr. Mullis persists in electing to waive filing." State Habeas Record at 27.

Mullis himself, however, soon clarified what role habeas counsel would play. In a letter dated October 12, 2011, Mullis instructed his attorneys: "I hereby express my desire and instruct you to NOT file a writ of habeas corpus." Mullis said "[t]hese are standing directives and are placed in effect immediately. If these directions change you will be notified in writing but as of Oct. 12th, 2011 the instructions not to file and to waive habeas stand." (DE 38, Ex. B, at 2). Mullis signed the letter as "defendant acting pro-se." Mullis sent a second letter to "restate [his] instructions more clearly," stating "I hereby direct [habeas counsel] to NOT file a writ of habeas corpus in my case. I understand that by not filing this [it] will place my waiver of habeas review in effect. This is my desire to waive habeas. . .. I hereby elect to waive filing. This is a standing directive." (DE 38, Ex. C, at 2).

Mullis did not file a timely state habeas application. On October 11, 2011, the state habeas court forwarded documents associated with the habeas waiver to the Texas

Court of Criminal Appeals.

### C. Mullis' Attempt to Reinvigorate Post-Conviction Review and Renewed Waiver

Several months passed without any filings in Mullis' habeas action.  In August 2012, however, Mullis confided to habeas counsel that he had "lied to Scarano in order to be found competent."  (DE 95 at 814).  Mullis expressed that he had been thinking about reinitiating his habeas action—but Mullis did not give counsel authorization to act on his behalf.  (DE 95 at 814).  On August 20, 2012, Mullis sent the trial court, the Court of Criminal Appeals, and others a letter explaining that "new evidence" made him want to pursue appellate and habeas review.  Without explaining the nature of the new evidence, Mullis said that he "would not have waived" had he known about the unavailable evidence and claimed that the "waiver decision was based on misleading [and] incomplete information."  Mullis asked the trial court to reappoint his earlier attorneys to file an appeal and state habeas action.  The Texas Court of Criminal Appeals also received a similar letter from Mullis on August 28, 2012.

On September 12, 2012, the Texas Court of Criminal Appeals entered an order accepting Mullis' waiver.  *Ex parte Mullis*, No. WR-76,632-01 (Tex. Crim. App. Sept. 12, 2012).  The order noted that, despite his desire to waive, Mullis "could have changed his mind and filed an application up to and including the date it was due."  The Court of Criminal Appeals calculated "[u]nder the best possible scenario" that Mullis' state habeas application was due by July 2, 2012."  *Id.*  But by failing to file a timely application Mullis "waiv[ed] . . . all grounds for relief."  *Id.* (citing Tex. Code Crim. Proc. art. 11.071

§ 4(e)).[11]

The Court of Criminal Appeals acknowledged that Mullis had written a letter seeking to reinvigorate his habeas action after the due date had passed.  The Court of Criminal Appeals instructed him: "[S]hould [Mullis] or pro bono counsel working on his behalf file an untimely writ application or a motion for a new filing date under Article 11.071 § 4A, then the filer will have to show good cause as to why an application was not filed on or before the statutorily applicable due date."  *Id*. at 2-3.

On September 13, 2012, habeas counsel had a "tumultuous" visit where Mullis got "extremely upset" at learning that the date to file a habeas action had passed.  (DE 95 at 814).  "Later that day, he wrote a letter to [habeas counsel], the DA, and the Court, expressing his desire to withdraw his request to reinstate his appeals."  (DE 95 at 814). Mullis wrote: "[i]n light of the [waiver order] and after discussion of legal options with counsel I have made a final decision on how to proceed. I hereby revoke and withdraw my request to renew any [and] all appeals."  Further, Mullis declared that "[t]his decision is final [and that] NO attorneys pro-bono or otherwise are authorized by me to act or file in this case [and] any and all filings done except by me pro-se are asked to be disregarded."  *Id*. He concluded "I have always admitted guilt [and] justice is deserved for the victim's families."  *Id*.

With his renewed waiver, Mullis included what he termed his "Defendants

---

[11]     Mullis premises his arguments on a belief that the Court of Criminal Appeals "denied relief" when it accepted his waiver and subsequently did not find good cause to reopen the time to file a habeas application.  (DE 170 at 1).  Mullis may have waived the opportunity for *review*, but Mullis has never presented the state courts with any grounds for *relief*.

Admission of Guilt."  In that document, Mullis admitted to killing his son.  Mullis stated that "[t]here has never been any question of innocence in this case," and conceded that "[t]he only arguments made were technical[] [and] some psych issues raised from childhood."  *Id*.  Mullis confessed that "the psych diagnoses are [and] were based on false self reporting [and] acting of symptoms in an attempt to circumvent the legal system at a young age."  *Id*.  Mullis concluded his letter by stating: "[i]t is in the best interests of justice for the victim and the victim's families for this appeal to stop here and execution of this sentence to be carried out in a timely manner."  *Id*.

     **D.**    ***Pro Bono* Efforts to Re-Invigorate Habeas Review by Habeas Counsel**

Acting as pro bono counsel, on November 20, 2012, state habeas counsel filed a motion on Mullis' behalf in the Court of Criminal Appeals entitled Motion to Appoint Counsel and Establish a New Habeas Corpus Application Date under Article 11.071, Section 4A; Good Cause Shown.  (DE 170, Ex. 5; *Ex parte Mullis*, WR-76,632-02).  Habeas counsel argued that "new evidence has surfaced that Mullis's [waiver] was motivated by mental illness, depression, suicidal ideations, and an irrational fear of a life without parole sentence."  Habeas counsel asked for the proceedings to begin anew "[b]ecause Mullis's failure to file an application was caused by the above-mentioned factors, rather than by any rational choice, [the Court of Criminal Appeals] should find good cause . . . to appoint the OCW as counsel and set a new deadline for the filing of Mullis's initial Article 11.071 application."  Habeas counsel, however, did not propose any specific grounds for relief.

State habeas counsel based the request to file an original habeas writ on a

November 1, 2012, competency evaluation by psychiatrist Dr. Michael Fuller. In a written report dated November 8, 2012, Dr. Fuller opined that Mullis was not competent during Dr. Scarano's evaluation. Even though Dr. Fuller stated that his examination of Mullis "largely parallels" the evaluation conducted by Dr. Scarano, Mullis confessed that he had lied by telling Dr. Scarano that "he was not depressed, was not suicidal, and not fearful of a life sentence . . . ." State Habeas Record at 110. Focusing heavily on the suicidal intent, Dr. Fuller opined that Mullis had been "experiencing symptoms of a significant mental condition that impaired his rational abilities and decisional capacity at the time he opposed further appeal." State Habeas Record at 112. Dr. Fuller, however, opined that Mullis was presently competent. Dr. Fuller explained Mullis had regained competency by November 2012 because he was no longer "preoccupied with th[e] fears" of a recent death sentence and the prospect of life on death row.[12]

The Court of Criminal Appeals denied the requests to appoint counsel and restart habeas review because "neither counsel's motion nor Fuller's report show that [Mullis] was incompetent on August 22, 2012, when he tried to reinstate his appeals or on September 13, 2012, when he again re-urged his desire to waive review of his conviction." *Ex parte Mullis*, No. WR-76,632-01 (Tex. Crim. App. Dec. 12, 2012). Thus, the Court of Criminal Appeals found that "counsel has failed to establish good cause for failing to file a habeas application on or before the statutorily applicable due date." *Ex parte Mullis*, No. WR-76,632-01 (Tex. Crim. App. Dec. 12, 2012).

---

[12] From the onset, the Court acknowledges that Mullis has explicitly stated that he does not rely on Dr. Fuller's report as a sufficient basis to find him incompetent to waive state habeas review.

E.     **Final Attempt at State Review**

One additional attempt was made to secure review of Mullis' conviction and sentence.  On September 29, 2012, Mullis signed a notice of appearance allowing a *pro bono* attorney from the American Civil Liberties Union Capital Punishment Project to represent him ("ACLU counsel").  On December 3, 2012, ACLU counsel filed a Motion for Leave to File Original Writ of Habeas Corpus seeking relief in the form of an opportunity to file a renewed direct appeal.  On January 16, 2013, the Court of Criminal Appeals denied leave to file an original state habeas application.

## FEDERAL HABEAS REVIEW

On April 16, 2013, Mullis filed a federal motion for the appointment of counsel. This Court appointed an attorney to prepare and litigate a federal habeas petition. Through appointed counsel, Mullis filed a petition on July 19, 2013, raising seventeen grounds for relief.   (DE 10).  On September 28, 2014, Mullis filed an amended petition for a writ of habeas corpus.  (DE 28).

Mullis faced harsh hurdles to federal review.  The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") requires inmates to exhaust all their claims in state court. *See* 28 U.S.C. § 2254(b)(1).  Mullis' waived all state review without raising any claims. Texas' strict habeas laws, such as its demanding abuse-of-the-writ doctrine, limited any return to state court.  *See* Tex. Code Crim. Pro. art. 11.071 §5.

 The Court ordered Respondent to file an answer.  (DE 30).  Before Respondent could answer, Mullis filed a Motion to Stay and Abey the Federal Habeas Proceeding. (DE 31).  Mullis sought a stay on two main grounds: (1) he was not competent when he

waived state proceedings and (2) habeas counsel provided ineffective representation with regard to his mental state.  On July 28, 2015, the Court stayed and closed this action. (DE 47).  The Court specifically ordered Mullis to "expeditiously seek state review . . .." (DE 47 at 4).

Mullis did not follow the Court's directive.  Mullis never filed a state habeas application.  Instead, Mullis' attorneys pursued a path which led them to delay seeking state habeas relief, thus inserting needless delay into the process.  That delay would preclude all state review when circumstances brought Mullis back to federal court.

On October 21, 2015, Mullis submitted an advisory in this Court.  Mullis explained that the FBI had reported issues that could impact the DNA testing that had occurred in this case.  Mullis retained a DNA expert to test genetic material from his case.  (DE 48).  Mullis, however, had not raised any issue in his federal petition directly relating to DNA testing.  Any challenge to DNA results would not have altered the task Mullis' attorneys had been given by this Court: to exhaust the claims he had raised in his federal petition.

The DNA exploration ended when Mullis revived his federal case.  On November 3, 2015, Mullis submitted a *pro se* filing "asking this Court to revoke the stay and abey order and immediately dismiss the entire habeas action."  (DE 50 at 1).  Mullis also asked the Court to "terminate the appointment of counsel."  (DE 50 at 3).  Respondent filed a motion to lift the stay and begin the procedure necessary to decide if Mullis was competent.  (DE 51).

I.      **Mullis' Back-And-Forth on Deciding Whether to Proceed on Federal Review**

This Court lifted the stay and reopened this case.  (DE 59).  The Court appointed Dr. Timothy James Proctor to determine Mullis' competency.  (DE 64).  After examining Mullis, Dr. Proctor issued a written report dated June 7, 2016, that found Mullis competent in all regards.  The Court scheduled a competency hearing to begin on January 9, 2017.  (DE 70).

On December 5, 2016, Mullis filed a *pro se* Motion to Rescind Previous Motion to Waive Appeal and to Terminate Evidentiary Hearing.  (DE 82).  Mullis indicated that he came to an agreement with his attorneys to continue judicial review.   The Court subsequently ordered Mullis to file "an appropriate pleading . . . informing the Court of whether another stay of proceedings is necessary for the exhaustion of state court remedies. If Mullis elects to proceed again in state court, he will provide a time line for expeditiously filing papers in state court."  (DE 85).  Mullis responded: "Petitioner, through undersigned counsel, hereby informs this Court that he does not plan to exhaust remedies in state court, and therefore a stay of proceedings is not necessary."  (DE 86). Accordingly, federal proceedings resumed.  The Court canceled the hearing (DE 83) and entered a new scheduling order (DE 89).

On July 19, 2017, Mullis filed a Consolidated Petition for Writ of Habeas Corpus through appointed counsel.  (DE 94).  Mullis' petition raises seventeen grounds for relief challenging various matters during his trial and appeal.   Mullis' consolidated petition raises the following grounds for relief:

1.      The State knowingly presented false evidence of extraneous offenses

Mullis committed as a juvenile.  Trial counsel provided ineffective assistance by failing to rebut the false evidence and appellate counsel should have raised a false evidence claim on direct appeal.

2.     Trial counsel provided deficient representation by failing to investigate, develop, and present mitigating evidence.

3.     The State withheld evidence from the defense.  Trial counsel provided ineffective representation by not requesting the withheld evidence.

4.     Mullis' right to an impartial jury was denied by the excusal of one hundred venirepersons by agreement.  The trial court erred by allowing the excusal; trial counsel was ineffective for not objecting to the excusals; the state statute allowing for excusal is unconstitutional; and appellate counsel should have raised the claim.

5.     The prosecution committed misconduct by admitting impermissible victim-impact evidence in the penalty phase.  Trial and appellate counsel should have raised objections on that basis.

6.     The trial court did not provide sufficient jury instructions regarding mitigating evidence.  Trial counsel should have requested a different jury instruction and appellate counsel provide deficient performance by not raising the issue on appeal.

7.     The State repeatedly engaged in misconduct by presenting inflammatory evidence and argument in the penalty phase.  The trial court erred by admitting the evidence.  Trial and appellate counsel provided deficient representation for not litigating the issue.

8.     Texas' death penalty scheme is unconstitutional.  The trial court erred by denying the defense's motion on that ground and appellate counsel should have raised that error on appeal.

9.     Trial counsel provided ineffective assistance by not seeking a change of venue.

10.    The voir dire insufficiently inquired into potential juror's ability to consider mitigating circumstance and a life sentence.  The trial court erred in denying the defense's motion for a full and fair voir dire.  Trial counsel should have ensured an adequate voir dire and appellate counsel should have litigated the issue.

11.    Trial counsel presented improper victim impact evidence in the guilt/innocence phase.  Trial and appellate counsel should have litigated the issue.

12.    Trial counsel was ineffective for failing to investigate, develop and

present evidence of Mullis' mental state to rebut the State's evidence of intent and to challenge the admission of his statement.

13. The State presented inflammatory evidence which the trial court should have excluded. Trial and appellate counsel were deficient in challenging that evidence.

14. The trial court erred by admitting Mullis' statements without adequate pre-trial notice. Trial counsel should have challenged the statements and objected to testimony about Mullis' lack of remorse.

15. Mullis' rights were violated when the prosecutor commented on his silence during the penalty phase.

16. Appellate counsel was ineffective for enabling Mullis' waiver of counsel on direct appeal and then failing to litigate his appeal. The trial court should have held a competency hearing. The Texas Court of Criminal Appeals should have allowed Mullis to restore his appellate proceedings.

17. The cumulative effect of trial counsel's deficient representation, the State's misconduct, and trial court errors violated Mullis' constitutional rights.

Before Respondent could file an answer, however, Mullis filed a Pro-Se Motion to Waive Appeals and Terminate Counsel on July 23, 2018. (DE 105). Mullis again wished to "waive all remaining appeals and to terminate this habeas proceeding fully, and to also upon termination of said proceedings to terminate the appointment of currently appointed counsel." (DE 105 at 1). Mullis assured that "[t]his request to waive is final and will not be withdrawn under any circumstances." (DE 105 at 2).

On September 12, 2018, this Court held a telephonic hearing to question Mullis. (DE 107, 115). Mullis persisted in his choice to waive federal review and represent himself. Pursuant to agreement by the parties and Mullis, the Court appointed Dr. Proctor to reassess Mullis' competency. (DE 108).

Dr. Proctor met with Mullis on November 9, 2018. In a report dated December

21, 2018, Dr. Proctor outlined his findings and ultimately concluded that Mullis is competent to waive federal review. (DE 117). Dr. Proctor's second report again reviewed Mullis' history, described his current mental state, and opined on his competency.[13] With that assessment, Dr. Proctor found that Mullis was aware of his legal situation, understood the role of the various participants in his legal proceedings, and could discuss the options available to him. Specifically, Dr. Proctor concluded that:

1.    Mr. Mullis has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation.

2.    Mr. Mullis is not suffering from a mental disease, disorder, or defect which may substantially affect his capacity in this regard.

3.    Mr. Mullis is competent to waive federal habeas review.

(DE 117).

The Court scheduled a competency hearing for March 6, 2019. As the hearing began, however, Mullis' counsel informed the Court that he no longer wished to waive his right to federal habeas review and wanted to keep his attorneys. The Court questioned Mullis who confirmed his desire to proceed on federal habeas review. The

---

[13]    Dr. Proctor described Mullis' "very difficult childhood" which included health problems and being born into a "very impoverished, dysfunctional, and abusive environment." Mullis was diagnosed with various mental health concerns in his youth: attention deficit/hyperactivity disorder (ADHD), bipolar disorder, depression, anxiety, oppositional defiant disorder, and posttraumatic stress disorder. He was prescribed various medications. While incarcerated before trial "he reported depressive symptoms as well as flashbacks of past trauma and auditory and visual hallucinations related to the Capital Murder offense. His diagnoses while in jail included impulse control disorder and posttraumatic stress disorder." He attempted suicide, though subsequently said he was "just playing." Examinations before and after trial uncovered different forms of mental illness of various severity. Mullis has not received any mental-health treatment since his conviction. Dr. Proctor's description of Mullis' contemporaneous demeanor, presentation, and thought processes did not suggest any major psychological condition. Dr. Proctor did not only not find any of the psychological disturbances observed by previous examiners (such as mood disturbance and posttraumatic stress disorder), Dr. Proctor found it highly questionably that he ever met the criteria for those diagnoses. Acknowledging that those previous experts could take issue with his conclusions, the only diagnosis Dr. Proctor arrived at was Antisocial Personality Disorder with Borderline Traits.

Court, therefore, entered a scheduling order for the federal habeas action.

## II.  **Current Status of Mullis' Federal Proceedings**

On March 2, 2020, Respondent filed a motion for summary judgment.  (DE 147).
Respondent argued that, because Mullis waived all state court review, none of his claims
are available for federal consideration.  Alternatively, Respondent argues that all Mullis'
claims are without merit.

Mullis filed a response to the summary judgment motion.  (DE 159).  Mullis
himself filed a *pro se* pleading urging the Court to grant Respondent's motion for
summary judgment.  (DE 161).

The Court denied Respondent's summary judgment motion and ordered briefing
on specific procedural questions.  (DE 163).  The parties filed have complied.  (DE 170,
171, 173, 174).  In doing so, Respondent filed a renewed motion for summary judgment.
(DE 171).  Having reviewed the parties' briefing and the record, the Court finds that a
hearing is not necessary.  The comprehensive briefing by the parties and the extensive
record provide a satisfactory basis to resolve the matters now before the Court.

**EXHAUSTION OF REMEDIES**

However important the constitutional issues that Mullis raises, the disposition of
his federal petition depends on application of the firmly established procedural law.
Because the States "possess primary authority for defining and enforcing criminal law"
and "hold the initial responsibility for vindicating constitutional rights," *Engle v. Isaac*,
456 U.S. 107, 128 (1982), AEDPA enforces a "'total exhaustion' requirement as
prerequisite for a district court to grant a petition."  *Neville v. Dretke*, 423 F.3d 474, 482

(5th Cir. 2005); *See* 28 U.S.C. § 2254(b)(1)(A).   A habeas petitioner must comply with the exhaustion requirement by "fairly present[ing] the substance of his claim to the state courts."  *Young v. Davis*, 835 F.3d 520, 525 (5th Cir. 2016).  This requirement is not "a procedural hurdle on the path to federal habeas court,"  *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992), but instead "ensure[s] that the state courts have the first opportunity to correct any error with a state conviction and that their rulings receive due respect in subsequent federal challenges."  *Skinner v. Switzer*, 562 U.S. 521, 541-42 (2011).

Federal courts do not have discretion to ignore the exhaustion requirement. Exhaustion is mandatory, regardless of a claim's potential merit.  The exhaustion doctrine is key in this case because Mullis has never given the state courts an opportunity to consider any constitutional claims, much less those in his federal petition. This Court stayed these proceedings when Mullis asked for the opportunity to satisfy AEDPA's mandatory exhaustion requirement.   Mullis, however, made no effort to present his claims to the state courts.  Instead, Mullis chose to investigate new issues unrelated to those raised in his federal petition.

After returning to federal court for a competency evaluation, Mullis' federal attorneys informed the Court that they did "not plan to exhaust remedies in state court." (DE 86).  Mullis' claims, therefore, are completely unexhausted, primarily because he has abdicated the opportunity to avail himself of available state court remedies.   The procedural bar discussion in the section that follows is the direct result of Mullis' strategic decision to bypass the state courts.

AEDPA's exhaustion doctrine, therefore, precludes habeas relief on any of Mullis'

claims.  28 U.S.C. § 2244(b)(1); *see also Allen v. Stephens*, 805 F.3d 617, 625 (5th Cir.

2015) ("If a claim has not been exhausted in state court, AEDPA generally bars relief . . .

."). Mullis' petition is subject to dismissal for being wholly unexhausted. *Coleman v.*

*Thompson*, 501 U.S. 722, 735 (1991) ("This Court has long held that a state prisoner's

federal habeas petition should be dismissed if the prisoner has not exhausted available

state remedies as to any of his federal claims.").

## PROCEDURAL BAR

The federal procedural bar doctrine both forecloses judicial review and sometimes

provides a pathway to merits consideration of an inmate's unexhausted claims.

"The procedural default doctrine is distinct from, though related to, the exhaustion

doctrine." *Berkley v. Quarterman*, 310 F. App'x 665, 672 (5th Cir. 2009); *see also*

*Woodford v. Ngo*, 548 U.S. 81, 92 (2006) (recognizing that "the habeas doctrines of

exhaustion and procedural default are similar in purpose and design and implicate similar

concerns"). As a "fundamental tenet[]" of "federal review of state convictions[,] . . . a

federal court may not review federal claims that were procedurally defaulted in state

court—that is, claims that the state court denied based on an adequate and independent

state procedural rule." *Davila v. Davis*, ___ U.S. ___, 137 S. Ct. 2058, 2064 (2017).

"This doctrine ensures that federal courts give proper respect to state procedural rules."

*Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997). In addition to the exhaustion doctrine

that precludes federal relief, the parties extensively brief the question of whether a

procedural bar prevents a review of the merits.

## I.   __The Default of Mullis' Claims__

The parties apparently agree that Mullis' claims are procedurally barred.   The parties differ, however, on what circumstances caused the default of his federal claims and what state law bars federal review.   In their summary judgment briefing, the parties provided vastly different perspectives on what caused the procedural bar.   Based on the parties' discussion, the Court ordered the parties to provide briefing on "what specific state procedural law bars federal review: (1) the Court of Criminal Appeals' September 12, 2012 acceptance of his waiver of habeas review; (2) the Court of Criminal Appeals' December 12, 2012 refusal find good cause, appoint new counsel, and reopen the proceedings; or (3) the presumptive operation of Texas' abuse-of-the-writ doctrine which would disallow any attempt to exhaust his federal claims."   (DE 163 at 12).[14]

The parties' renewed briefing, placed into the context of the other arguments to date, only emphasizes the procedural imbroglio caused by Mullis' back-and-forth waivers and his refusal to capitalize on a stay of these proceedings.   The extensive briefing ties the state litigation into a gordian knot of procedural law.   Notwithstanding, cutting

---

[14]       The Court based its order on the specific arguments that the parties had made to that point in the proceedings.  Since then, Respondent has shifted his argument somewhat.  Respondent reiterates that "there should be no real dispute that the [Court of Criminal Appeals] will not hear Mullis's claims should he return to state court." (DE 171 at 3).  However, Respondent now attributes any procedural default as dependent on how the Court of Criminal Appeals would characterize any future attempt to file a habeas application: (1) as an untimely initial application based on Mullis' earlier waiver or (2) as a successive application.  In essence, Mullis argues that the Court of Criminal Appeals' orders foreclosing state habeas review are that which ultimately bars the claims he raised for the first time on federal review.  Mullis' arguments focus on two discrete orders, each based on a different provision of state law: when the Court of Criminal Appeals "denied relief based on: (i) "[Mullis'] failure to timely file an application' under Art. 11.071 § 4, *see see* [sic] TM-041 (9/12/12 Opinion at 3); and (ii) his failure 'to establish good cause for failing to file a habeas application on or before the statutorily applicable due date' under Article 11.071 § 4A, *see* TM-063 (12/12/12 Opinion at 4)." (DE 170 at 1-2).  Mullis' focus on a procedural bar based on those two orders is important because he argues that the relevant state law is not sufficient to bar federal review.  Mullis argues that "there was no clear, regularly followed, clearly established or independent rule with respect to cases in which no appellate brief was filed to trigger the deadline set by Article 11.071 § 4(a)." (DE 159 at 10).

through the procedural tangle only requires answering simple questions about the history of Mullis' federal claims.

**First**, the Court must look to the specific claims raised in Mullis' petition and trace the litigation history of each claim. In that manner, the parties' briefing leads the discussion astray—the focus is not on various state procedures unrelated to the specific constitutional claims in Mullis' federal petition. Instead, a federal court looks to when an inmate has litigated his specific federal claims. *See Davila*, 137 S. Ct. at 2064 (focusing on when claims "were procedurally defaulted in state court" and whether the individual "claims [were] denied based on an adequate and independent state procedural rule); *Walker v. Martin*, 562 U.S. 307, 316 (2011) (focusing on the procedural status of individual claims); *Gonzales v. Davis*, 924 F.3d 236, 243 (5th Cir. 2019) ("Federal habeas *claims* are procedurally barred if the last state court to review the petitioner's claims unambiguously based its denial on a state procedural bar."") (emphasis added). In other words, the Court first asks when did an inmate raise his claims and how did the state courts treat them?

Here, the answer is simple. Mullis has never raised any claim in state court, much less the ones in his federal petition. Despite Mullis' arguments about the process afforded him in state court when he waived habeas review, he has never given the state courts an opportunity to consider the procedural adequacy of any claims. Even when afforded the opportunity during a *Rhines* stay, Mullis has chosen to circumvent the state system and only litigate in federal court. Accordingly, this Court's focus is not on the earlier waiver of review, but on the procedural status of the claims specifically before the

Court.

**Second**, a court must assess if a state avenue of relief remains open for the petitioner to exhaust his claims. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) ("The exhaustion doctrine, in other words, turns on an inquiry into what procedures are 'available' under state law."); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."). A court must ask: Can an inmate still raise his claims in state court?

Respondent contends that the Court of Criminal Appeals would not allow Mullis to file a habeas application should he return to state court. Mullis does not argue that the Texas courts would provide a forum for him to raise his constitutional claims. The parties' briefing seemingly agrees that no avenue of state review remains open to Mullis.

**Third**, a court must ask: what procedural law now prevents an inmate from exhausting his claims? *See Bagwell v. Dretke*, 372 F.3d 748, 755 (2004) (asking if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred"); *cf. Coleman*, 501 U.S. at 735 n.1. Although citing that case for other reasons, Mullis fails to acknowledge the "anticipatory procedural default" doctrine established in *Coleman v. Thompson*—a claim is procedurally defaulted if the petitioner "failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally

barred." *Id.*; *see also Williams v. Trammell*, 782 F.3d 1184, 1212 (10th Cir. 2015) (using the phrase "anticipatory procedural default" to describe "where a petitioner fails to exhaust a claim and we, as a federal court, nonetheless conclude that the claim would be procedurally defaulted"). Because Mullis never gave the state courts a chance to decide the procedural viability of the claims raised in his federal petition, a federal court must predict what they would do if Mullis tried to exhaust his claims now.

Only two vehicles could allow for Mullis to present his claims. (DE 174 at 2, n.1). First, because he has never filed any habeas application in state court, Mullis could seek leave to file an out-of-time application under Tex. Code Crim. Pro art. 11.071 § 4A. Under section 4A, an adequate showing of "good cause" may allow an inmate to reopen the time to file an initial habeas application. However, by failing to take advantage of this Court's stay Mullis himself has precluded the state courts from considering whether he could make a stronger showing of "good cause" than he did once before. [15]

Second, Mullis could face application of Texas' abuse-of-the-writ doctrine under Tex. Code Crim. Pro. art. 11.071 §5. Texas courts generally apply the abuse-of-the-writ bar in cases where "a subsequent application for a writ of habeas corpus is filed after filing an initial application." Tex. Code Crim. Pro. art. 11.071 §5(a). The Court of Criminal Appeals, however, has employed section 11.071 in circumstances similar to the instant case. In *Ex parte Gonzales*, 463 S.W.3d 508, 509 (Tex. Crim. App. 2015), for

---

[15]     Mullis does not explicitly argue that he could still raise claims in state court and, in fact, his briefing presupposes that he could not. Contradictorily, though, Mullis also argues that state habeas counsel could have made a stronger showing of "good cause" under Tex. Code. Crim. Pro. art. 11.071 § 4A that would have allowed reopening of the time to file a habeas petition.

instance, an inmate waived his right to state habeas review.  When the federal courts stayed a subsequent federal petition and the inmate filed a state habeas application, the Court of Criminal Appeals found that he "ha[d] failed to satisfy the requirements of Article 11.071, § 5(a)" and thus "dismiss[ed] the application as an abuse of the writ without considering the merits of the claims." *Ex parte Gonzales*, 463 S.W.3d 508, 509 (Tex. Crim. App. 2015); *see also Ex parte Lopez*, 2015 WL 4644657, at *1 (Tex. Crim. App. Aug. 4, 2015) (treating a state habeas application filed after the waiver of state habeas review as a subsequent application under Section 5).[16]  Mullis makes no argument that he could meet any exception to Texas' abuse-of-the-writ doctrine.

In sum, this Court's primary concern is whether "it is clear from state law that any future attempts at exhaustion would be futile." *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999).  Mullis forfeited his right to have the state courts decide what procedural law would govern any state habeas application when he did not file any state court papers after the *Rhines* stay.  However, it is clear that—whether under its abuse-of-the-writ doctrine or its timeliness provisions—Texas law would not allow Mullis to raise his claims in state court.

Despite the parties' extensive briefing about the convoluted state proceedings, the answer to the anticipatory procedural bar question in this case is simple: All Mullis'

---

[16]     When the inmate in *Gonzalez* litigated a federal habeas petition, the Fifth Circuit held that "the TCCA unambiguously held that Gonzales's claims were procedurally barred because he had waived his right to habeas counsel and did not file a habeas claim pro se before the deadline expired." *Gonzales*, 924 F.3d at 243.  A close reading of the Court of Criminal Appeals' decision, however, indicates reliance on a different procedural basis for its decision.  Gonzales had waived his right to state habeas review and the Court of Criminal Appeals cited its 2010 decision recognizing that waiver.  In its decision after the federal courts stayed his federal habeas petition, the Court of Criminal Appeals found that Gonzales "ha[d] failed to satisfy the requirements of Article 11.071, § 5(a)" and thus "dismiss[ed] the application as an abuse of the writ without considering the merits of the claims." *Ex parte Gonzales*, 463 S.W.3d 508, 509 (Tex. Crim. App. 2015).

claims are technically exhausted because no state habeas vehicle exists for the consideration of his federal claims.  Accordingly, Mullis has defaulted his claims and federal review is barred unless Mullis can make an adequate procedural showing.  The Court will first examine whether Mullis has shown that state procedural law is inadequate to prevent federal review before turning to whether he can overcome the procedural bar.

## II.     Adequate and Independent State Law

Federal law traditionally prohibits the litigation of claims an inmate has defaulted under state law.  *See Davila*, 137 S. Ct. at 2064.  An adequate state rule is one that has been "firmly established and regularly followed" when the state courts considered an inmate's claim.  *Roberts v. Thaler*, 681 F.3d 597, 604-05 (5th Cir. 2012) (quotation omitted); *see also Ford v. Georgia*, 498 U.S. 411, 424 (1991). "The petitioner bears the burden of 'demonstrat[ing] that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself.'"  *Fratta v. Davis*, 889 F.3d 225, 228 (5th Cir. 2018) (quoting *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997)).  Mullis argues that any state law which may preclude review is inadequate.

In doing so, however, Mullis contends that the Court of Criminal Appeals did not apply adequate and independent law when it accepted the waiver of habeas review and then subsequently did not find good cause to reopen the proceedings.  As discussed above, however, Mullis did attempt to raise his federal claims in those proceedings.  He did not default his specific claims when he waived review.  This Court must look to the independence and adequacy of the state law that would apply if he tried returning to state court.

Circumstances such as those presented by the instant case are not common, and the state courts may have difficulty categorizing any pleadings Mullis would file in state court. As discussed previously, two separate state procedural laws may preclude future state review. Federal courts have regularly and consistently held that Texas' abuse-of-the-writ bar found in section 11.071 § 5 is a bar to federal review. *See Hughes v. Quarterman*, 530 F.3d 336, 342 (5th Cir. 2008). Additionally, the timeliness provisions of section 11.071 §4 are adequate and independent to bar review. *See Gonzales*, 924 F.3d at 243-44; *Wardlow v. Davis*, 750 F. App'x 374, 376-77 (5th Cir. 2018). The Court has fully reviewed Mullis' arguments and finds the he has not shown that Texas law is insufficient to bar federal review.

## III.   <u>Cause and Prejudice</u>

The anticipatory procedural bar "prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Gray v. Netherland*, 518 U.S. 152, 162 (1996).[17] In this context, cause for the default exists when "something external to the petitioner, something that cannot fairly be attributed to him . . . 'impeded [his] efforts to comply with the State's procedural rule.'" *Coleman*, 501 U.S. at 750 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). An inmate must rely on objective factors such as "'interference by officials' that makes compliance with the State's procedural rule impracticable, . . . 'a showing that the factual

---

[17]     An inmate may also overcome a procedural bar by showing a "fundamental miscarriage of justice," which in this context means actual innocence. *See Schlup v. Delo*, 513 U.S. 298 (1995). Mullis argued his petition that he "can establish a 'fundamental miscarriage of justice' to overcome any procedural bar," but has subsequently not made effort to prove his innocence. (DE 94 at 17).

or legal basis for a claim was not reasonably available to counsel', . . . [and] 'ineffective assistance of counsel.'" *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Murray*, 477 U.S. at 488). Even then, Mullis must still make one more showing before federal review becomes available. Mullis must show actual prejudice. *Coleman*, 501 U.S. at 745. Mullis must show more than "a possibility of prejudice," but that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 168 (1982); *see also Ramey v. Davis*, 942 F.3d 241, 255 (5th Cir. 2019).

Before turning to Mullis' arguments for cause and prejudice, however, the Court observes that Mullis has not shown that he is a sympathetic candidate for the operation of equity. *See Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("[W]e have recognized an equitable exception to the bar when a habeas applicant can demonstrate cause and prejudice for the procedural default."); *Wainwright v. Sykes*, 433 U.S. 72, 96 n.4 (1977) (noting that the procedural bar doctrine is "a matter of equitable discretion rather than a question of statutory authority"). Regardless of what transpired in state court, Mullis submitted a federal petition raising unquestionably unexhausted claims. The Court offered Mullis an opportunity to exhaust those claims. Nothing external impeded his federal attorneys' ability to file a state habeas application raising the claims contained in Mullis' federal habeas petition. Instead of attempting to exhaust his federal claims, Mullis perplexingly investigated DNA issues unrelated to any matter contained in his federal petition. Mullis rejected the opportunity to exhaust his claims. Any uncertainty about the application of state procedural law is Mullis' own fault for deliberately

bypassing state review.

Because of his litigation strategy, Mullis is not a sympathetic candidate for the operation of equity in his behalf. *See Neville*, 423 F.3d at 480 (describing cause and prejudice as "an equitable exception to the bar on federal review of procedurally defaulted claims"). Equity should not be available when an attorney makes the deliberate, conscious decision to reject opportunities at judicial review. With the concerns about equity in mind, the Court will turn to the specific arguments Mullis makes to overcome the procedural bar.

As the Court summarized in an earlier Order, Mullis argues that federal review is available despite his failure to exhaust for the following reasons:

· "[S]tate habeas counsel's abandonment of Mr. Mullis and ineffectiveness during state habeas proceedings caused [him] to fail to exhaust his claims in the state courts, excusing any default.

· Mullis' "purported waiver was not voluntary, but instead was driven by his traumatic sexual history and his fear of being sexually assaulted in prison."

(DE 159 at 2).[18]   As discussed below, the Court finds that neither of these arguments

---

[18]      Mullis also makes extensive arguments about the adequacy and independence of state procedural law among his other arguments for cause. The adequate-and-independent law requirement is distinct from the anticipatory procedural bar doctrine's cause-and-prejudice test. Be that as it may, the Court has considered Mullis' arguments about the operation of state law and finds that they do not provide for federal habeas review. Also, the Court observes that Mullis made several arguments for cause in his petition (DE 94 at 17-19), but in his reply he argued that he was only "entitled to a merits review of his claims for three reasons," unrelated to his earlier briefing. (DE 159 at 2). Mullis' more recent briefing does not renew the arguments in his petition. The Court considers Mullis to have abandoned his earlier arguments but pauses to briefly comment on those contentions. Mullis made the conclusory argument in his petition that "[a]ppellate counsel's failure to raise the available record-based claims for relief and to secure Petitioner's appellate rights" should provide cause to forgive the procedural bar. (DE 94 at 18). Mullis does not develop that argument in later briefing. The Court notes, however, that Mullis has not provided any evidence to find that he was not competent when he waived direct appeal, negating any claim that counsel provided ineffective assistance on direct appeal. Mullis also argued that he can show cause because of the "erroneous and confusing procedures followed by the Court of Criminal Appeals" and the "denial of pro bono counsel's application to reinstate the direct appeal." (DE 94 at 18-19). Mullis, however, does not develop these

provides for federal review of Mullis' claims.

## A.      Representation by State Habeas Counsel

Mullis contends that deficient representation by his state habeas attorneys should forgive the procedural bar. Post-conviction counsel's representation may establish cause under two circumstances. First, the complete abandonment by counsel during state post-conviction proceedings may provide grounds for cause. *Maples v. Thomas*, 565 U.S. 266, 288-89 (2012). Second, deficient performance by habeas counsel may cause the procedural default of specific claims under *Martinez v. Ryan*, 566 U.S. 1 (2012).

### 1.      Abandonment

Relying on *Maples*, Mullis argues that his state habeas attorneys abandoned him. In *Maples*, "the defendant's pro bono attorneys left their employment at their law firm and discontinued representation of the defendant without informing either the defendant or the court." *Perez v. Stephens*, 745 F.3d 174, 179 (5th Cir. 2014). The *Maples* Court reasoned that, where an attorney's actions have "severed the principal-agent relationship, an attorney no longer acts, or fails to act, as the client's representative," and "[h]is acts or omissions therefore 'cannot fairly be attributed to the client.'" *Maples*, 565 U.S. at 281 (alteration omitted) (quoting *Coleman*, 501 U.S. at 753). Mullis argues that "[b]y October 2011, state habeas counsel abandoned Mr. Mullis, abdicating their principal duties to investigate and develop his habeas claims." (DE 159 at 12).

Mullis bases his argument on three main premises. First, Mullis asserts that

---

arguments in later briefing and fails to describe why his own waiver of habeas review does not supersede any alleged state error. The Court summarily rejects the arguments for cause that Mullis has not developed in his more-recent pleadings.

habeas counsel "abdicat[ed] their principal duties to investigate and develop his habeas claims." (DE 159 at 12). Relying on federal law, state statutes, and state bar guidelines, Mullis argues that his state habeas attorneys ignored their basic duty to investigate potential claims for relief.

Second, Mullis argues that habeas abandoned him with regard to the competency evaluation. Mullis argues that counsel did not ensure that Dr. Scarano had "thousands of pages of mental health records that would have informed [his] evaluation," failed to inform the court that Dr. Scarano did not have all relevant records, and then did not "inform the court of the true reason driving Mr. Mullis's desire to waive—that, due to his history of sexual abuse and mental illness, he would rather die than face the possibility of being raped in the prison system's general population." (DE 159 at 12). Mullis contends that counsel "abdicated their role as advocates in the competency proceedings and affirmatively chose not to challenge the expert's report or bring this information to light." (DE 159 at 12).

Third, Mullis claims that habeas counsel stood in the way of any review. Mullis argues that habeas counsel created a conflict of interest by performing deficiently but still remaining on the case. Mullis makes the unique argument that allegedly conflicted counsel abandoned Mullis by "affirmatively assisting" him "in waiving state habeas review." (DE 170 at 7). With that conflict, counsel could not seek reinvigoration based on their own ineffectiveness when Mullis briefly wanted to pursue remedies in 2012.

In short, Mullis contends that habeas counsel was derelict in investigating his case, deficient in challenging his competency, and conflicted by their own ineffective

assistance.  Mullis paints a picture of counsel who sat by and, instead of developing habeas claims, let a mentally ill client unknowingly waive his rights based on an inadequate psychological evaluation.  Mullis' arguments treat any lapse in counsel's representation as a form of abandonment.

The core of Mullis' argument does not allege abandonment, but deficient representation.  Mullis does not describe circumstances similar to the severing of the attorney/client relationship in *Maples*.  *Maples* did not create a standard involving "word games" which would "serve as a template for future habeas petitioners" who "allege, not that counsel was ineffective, but rather that counsel's ineffectiveness demonstrates that he was not a genuinely representative agent."  *Maples*, 565 U.S. at 298-99 (Scalia, J., dissenting); *see also Young v. Westbrooks*, 702 F. App'x 255, 266 (6th Cir. 2017) (distinguishing between abandonment and ineffectiveness).  As argued by Respondent, "Mullis's complaints are quintessential ineffectiveness claims—that OCW didn't investigate enough and didn't challenge Mullis's waiver enough." (DE 171 at 11).

Additionally, Mullis' arguments that habeas counsel had completely stopped acting on his behalf tends to ignore what counsel did.  Respondent accurately summarizes how the circumstances of this case differ from true abandonment:

> Mullis cannot equate the actions of OCW with an attorney who has abandoned their client.  For one, Mullis voluntarily, knowingly, and intelligently waived his right to counsel and the state habeas process, making this case distinguishable from any true abandonment case.  Answer 28–37.  If anything, Mullis abandoned his counsel, as was his right, but Mullis's choice does not turn OCW's actions into abandonment.  For another, OCW maintained communication with Mullis pre- and post-waiver.  Answer 31-44.  It investigated Mullis's case until that waiver. *Id* at 63–65, 72–76.  And to ensure that the waiver was valid, OCW moved for

the appointment of an expert to evaluate Mullis's competence and spoke with the expert multiple times during the evaluation process. *Id*. at 65–72. Importantly, OCW opposed Mullis's discharge of it as state habeas counsel. 35.RR.6.  In short, OCW actively worked on Mullis's behalf until Mullis, after being found competent, told them to stop. And, even then, when Mullis vacillated and wanted to reengage the state habeas process, OCW continued to work on Mullis's behalf, albeit in a pro bono capacity. In no rational world does OCW's actions fit the dictionary definition of abandonment.

(DE 171 at 9-10).  The Court finds that Mullis' attorneys did not abandon their client, but rather, made efforts to preserve his rights in a difficult situation.

### 2. *Martinez*

Mullis argues that, even if counsel did not abandon him under *Maples*, they still provided deficient representation under *Martinez v. Ryan*, 566 U.S. 1 (2012).  Mullis argues that "state habeas counsel's . . . ineffectiveness during state habeas proceedings caused Petitioner to fail to exhaust his claims in the state courts, excusing any default." (DE 159 at 2).  As an initial matter, the Supreme Court has explicitly held that *Martinez* "treats ineffective assistance by a prisoner's state postconviction counsel as cause to overcome the default of a single claim—ineffective assistance of trial counsel—in a single context—where the State effectively requires a defendant to bring that claim in state postconviction proceedings rather than on direct appeal."  *Davila*, 137 S. Ct. 2058, 2062-63 (2017); *see also Speer v. Stephens*, 781 F.3d 784, 785 & n.4 (5th Cir. 2015) (noting the "limited nature" and "narrowness" of the *Martinez* exception). In that respect, *Martinez* can only afford Mullis relief on this ineffective-assistance-of-counsel claims.[19]

---

[19]     Mullis relies on *Tabler v. Stephens*, 591 F. App'x 281 (5th Cir. 2015) to argue that habeas counsel's representation can forgive a procedural bar when it shuts down the state habeas process.  In *Tabler*, the Fifth Circuit

Even if *Martinez* did provide an exception to the procedural-bar doctrine in this case, Mullis has not shown that his arguments allow for full federal consideration of his claims. Mullis' *Martinez* arguments focus on state habeas counsel's failure to investigate and prepare habeas claims. State habeas counsel made some effort to investigate claims early in the habeas process. Not long after their appointment, habeas counsel spoke with trial counsel, collected files and records, interviewed the trial experts, contacted some family members, and started reviewing the State's files. Habeas counsel, however, did not engage in a deeply probing investigation of potential claims. Habeas counsel felt impeded in beginning a full-fledged investigation because the court reporter had not yet prepared the trial transcripts for their review. (DE 95, Ex. 60 at 811). The habeas investigation would completely end, however, when the state habeas court found Mullis competent to waive habeas review.

Mullis, nonetheless, argues that habeas counsel had a continuing obligation to continue an investigation after the state habeas court found Mullis competent. Mullis' arguments primarily depend on ambiguity in counsel's responsibility after the state habeas court found him competent. The trial court found that "Mr. Mullis is permitted to act pro se regarding any decisions concerning waiver and/or filing a post-conviction writ of habeas corpus," but that habeas counsel "may continue to investigate and prosecute a post-conviction writ of habeas corpus on behalf of Mr. Mullis until the deadline for filing,

---

held that "the equitable rule established in *Martinez* . . . logically extends to ineffective assistance of habeas counsel that prevents an initial-review collateral proceeding from ever taking place." *Id.* at 281. The Fifth Circuit, however, limited *Tabler* to circumstances in which an inmate "had the same counsel for both his state and federal habeas proceeding." *Allen v. Stephens*, 619 F. App'x 280, 290 (5th Cir. 2015). More importantly, the subsequent holding in *Davila* that *Martinez* only applies to the procedural bar of a certain kind of claim in a specific circumstance persuasively limits its holding in this case.

but must not file the writ if Mr. Mullis persists in electing to waive filing." State Habeas Record at 27; DE 93 at 27. Mullis sent two letters to habeas counsel and the trial court in the days following that order (1) informing counsel that an investigation into his claims could continue; (2) giving a directive that no habeas application be filed, particularly one submitted against his wishes; (3) and declaring his *pro se* status. (DE 149, Exs. B, C). The parties now dispute what counsel should have done when faced with a somewhat ambiguous order from the habeas court.

Mullis has not identified any authority that clearly outlines the steps counsel should have taken when faced with a difficult client who wishes to waive, and then actually waives, representation and review.[20] The Texas Court of Criminal Appeals has provided some guidance to attorneys faced with a situation similar to the one in this case. The Texas Court of Criminal Appeals recognized that counsel would have dualling obligations:

> as a matter of policy and practicality, when a defendant steadfastly professes that he does not wish to have an attorney represent him for the purpose of pursuing habeas relief, then he should not have to endure, nor should the taxpayers of the State of Texas have to pay for, such an appointment knowing that any attorney appointed would be statutorily required and ethically bound to investigate the case to the best of his ability

---

[20] Mullis extensively relies on ABA and Texas bar guidelines that define an attorney's role in habeas review. The guidelines inform counsel not to acquiesce immediately to an inmate's decision, but they do not direct counsel's path with an insistent client. The relevant state bar guidelines provide counsel encouragement to look past a client's wishes to abdicate review. The Guidelines state: "It is a dereliction of habeas corpus counsel's duty to simply acquiesce to a capital client's insistence that he or she wishes to be executed or wants to challenge only the conviction but not the sentence. Counsel must try to identify the source of the client's feelings about these matters. Counsel should consult lawyers, clergy, mental health professionals, the client's family or others who have worked with similarly situated death row inmates." Guidelines § 12.2(b)(2)(c). But the Guidelines do nothing more than advise counsel of the duty to ensure the client is making a competent, informed decision. Here, counsel ensured that Mullis understood the consequences of his decision, was evaluated, and was competent. The Guidelines do not instruct counsel on what to do if an inmate leaves some room for further investigation, as Mullis may have here, but who is adamant about not filing any habeas application.

despite the defendant's wishes.

*Ex parte Reynoso*, 257 S.W.3d 715, 720 n.2 (Tex. Crim. App. 2008).  In such a case, an attorney should "either (1) move to withdraw from the case, or (2) diligently pursue the investigation despite his client's protests."  *Id*. at 720.

Here, however, habeas counsel did not have to withdraw or continue investigation—Mullis took charge of the case himself.  The Court of Criminal Appeals found that Mullis had "waived the appointment of habeas counsel, and he expressed his desire to waive habeas review altogether."  *Ex parte Mullis*, No. WR-76,632-01 (Tex. Crim. App. Set. 12, 2012).  The Court of Criminal Appeals assessed the facts of this case and found that the state habeas court's order waived counsel's representation.  Mullis disputes this finding by providing legal argument and the opinion of experts,[21] but this Court's obligation under AEDPA is to defer to state court fact findings.  *See* 28 U.S.C. § 2254(e)(1).   Mullis has not shown by clear and convincing evidence that the Court of Criminal Appeals was wrong when it found that he waived habeas representation, leaving him *pro se*.

In the end, Mullis himself chose to end state habeas review.  Mullis' personal decisions placed state habeas counsel in a difficult position, caught between an attorney's

---

[21]     Mullis relies on affidavits from law professors and other legal experts.  For example, Mullis relies on an affidavit from Robert P. Schuwerk, a law professor, who reviewed some of the records and opined that "the OCW remained as the habeas counsel" for Mullis throughout the whole habeas process.  (DE 159, Exh, E).  Affidavits from legal experts are not useful, however, because courts are the ultimate adjudicators of the law without the need for opinions of legal experts.  *See Johnson v. Quarterman*, 306 F. App'x 116, 129 (5th Cir. 2009); *see also Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998) ("[I]t would not matter if a petitioner could assemble affidavits from a dozen attorneys swearing that the strategy used at his trial was unreasonable. The question is not one to be decided by plebiscite, by affidavits, by deposition, or by live testimony. It is a question of law to be decided by the state courts, by the district court, and by this Court, each in its own turn.").  Mullis also fills in details about habeas counsel's representation with affidavits based on hearsay, which does not provide a strong enough evidentiary foundation for federal consideration.  (DE 170, Ex. 112).

professional judgment and the client's self-defeating behavior.  Still, state habeas counsel took steps to ensure that Mullis was competent and fully understood the consequences of his decision.   Counsel even tried to restart the habeas process when Mullis briefly indicated that he would allow habeas review to proceed.[22]   Mullis now places the blame elsewhere, charging counsel with ineffective assistance and challenging Texas procedural law.   Mullis claims that those factors "terminated [his] state habeas proceedings and prevented him from filing a state habeas application."  (DE 159 at 6).  But Mullis himself made the decision to waive review and instructed counsel to act accordingly.   In that regard, Mullis faults counsel for only doing what his client asked him to do.  *See United States v. Masat*, 896 F.2d 88, 92 (5th Cir. 1990) ("Cutting through the smoke, it is apparent that [this Court is] being asked to permit a defendant to avoid conviction on the ground that his lawyer did exactly what he asked him to do. That argument answers itself.").

Mullis has not shown that any additional actions by habeas counsel would have changed his choice to waive review.   A court cannot fault counsel for not investigating matters which his client will never let him litigate.  *See Harrington v. Richter*, 562 U.S. 86, 108 (2011) ("An attorney need not pursue an investigation that would be fruitless . . .").  Mullis has not shown that any investigation early in the habeas process or after his waiver would have caused him not to forgo state review.   Mullis was adamant that

---

[22]         Mullis argues that habeas counsel provided ineffective representation in seeking for the reappointment of counsel and the reinstatement of habeas review.  Mullis bases his argument on an alleged conflict resulting from habeas counsel's earlier efforts in the case. Mullis, however, has not provided any law showing that such a conflict existed or any law supporting his argument that the Court of Criminal Appeals would have allowed habeas review to proceed on those grounds.

47/61

counsel not file a habeas application; he has not presented any evidence that a deep, probing investigation into potential habeas claims would have caused him to retreat from that position.[23]

In conclusion, the Court finds that state habeas counsel's representation does not provide a pathway to federal consideration of Mullis' exhausted claims. Mullis' arguments under *Martinez* are unavailing because Mullis' "failure to seek state habeas relief was caused solely by his refusal to accept state habeas counsel and his failure to file a timely *pro se* [application]," thus "he cannot point to a cause external to his defense to excuse procedural default." *Gonzales*, 924 F.3d at 244. With that reasoning, "[b]ecause [Mullis] failed to accept counsel for habeas . . . he may not avail himself of the *Martinez/Trevino* exception to cause and prejudice, which is contingent on counsel's failings." *Id*. at 244 n.3.

## B.    Mullis' Competency and his Waiver of Review

Mullis argues that he can overcome the procedural bar of his claims because his "purported waiver was not voluntary, but instead was driven by his traumatic sexual history and his fear of being sexually assaulted in prison." (DE 159 at 2). Essentially, Mullis argues that "Dr. Scarano did not consider how Mr. Mullis's mental illness and

---

[23]    In a letter to habeas counsel dated October 12, 2011, Mullis stated: "I hereby express my desire and instruct you to NOT file a writ of habeas corpus." Mullis said "[t]hese are standing directives and are placed in effect immediately. If these directions change you will be notified in writing but as of Oct. 12th, 2011 the instructions not to file and to waive habeas stand." (DE 38, Ex. B, at 2). Mullis sent a second letter to "restate [his] instructions more clearly," stating "I hereby direct [habeas counsel] to NOT file a writ of habeas corpus in my case. I understand that by not filing this [it] will place by waiver of habeas review in effect. This is my desire to waive habeas . . . I hereby elect to waive filing. This is a standing directive." (DE 38, Ex. C, at 2). Throughout his repeated *pro se* filings in this Court, Mullis has never hinted that a full-fledged investigation by habeas counsel would have changed his mind.

history of trauma impacted his decision to waive." (DE 159 at 42). Mullis' competency, however, is only of tangential importance—Mullis' waiver did not directly result in the anticipatory procedural bar that forecloses review of his claims. The procedural bar in this case comes from what would happen if Mullis tried to litigate again in state court.

Nevertheless, Mullis argues that his "waiver was involuntary and there is a reasonable probability that the court would have found [him] incompetent and his waiver involuntary had it" received information about his "history of sexual abuse and trauma, diagnosis of PTSD, and fear of being sexually assaulted in general population." (DE 159 at 41). The Court finds that Mullis' alleged incompetency at the time he waived his habeas proceedings does not open a path to federal review for several reasons.

First, the Fifth Circuit has held that an inmate's claim that his "alleged mental incompetency satisfies the 'cause' requirement . . . claim fails . . . because it is not a cause external to the petitioner." *Gonzales*, 924 F.3d at 244; *see also Schneider v. McDaniel*, 674 F.3d 1144, 1154 (9th Cir. 2012) ("[A] *pro se* petitioner's mental condition cannot serve as cause for a procedural default, at least when the petitioner on his own or with assistance remains able to apply for post-conviction relief to a state court.") (quotation omitted).[24] Whether or not this Court accepts Mullis' argument about the correctness of Dr. Scarano's evaluation, circuit law precludes incompetency from serving as cause to overcome a procedural bar.

Second, no expert has rendered a legally sufficient opinion that Mullis was

---

[24] Other courts have similarly recognized that mental illness is not an external factor for purposes of the cause-and-prejudice inquiry. *See Morgan v. Chandler*, 367 F. App'x 700, 703 (7th Cir. 2010) *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988); *Cawley v. DeTella*, 71 F.3d 691, 696 (7th Cir. 1995).

incompetent when he waived habeas review.   After the Court of Criminal Appeals
accepted Mullis' waiver of habeas review, state habeas counsel—acting as *pro bono*
counsel—made efforts to revive the state habeas process.   Habeas counsel's strategy
hinged on proving that Mullis was not presently competent.   To that end, state habeas
counsel retained Dr. Fuller to evaluate Mullis on November 1, 2012.   Dr. Fuller reviewed
the report prepared by Dr. Scarano and drew only one distinction between his
examination and that of Dr. Scarano: Mullis' concealment of his motivation.   Dr. Fuller
identified "suicidal ideation . . . as the primary motive" for Mullis' choice to waive
habeas review.   *Id*. at 69.   Dr. Fuller explained: "he true reason driving Mr. Mullis's
desire to waive [was] that, due to his history of sexual abuse and mental illness, he would
rather die than face the possibility of being raped in the prison system's general
population."  (DE 159 at 12).   However, both Mullis and Respondent agree that "Dr.
Fuller's report is insufficient to establish incompetency as a legal matter."  (DE 173 at
13).[25]   The state courts never had before them information that would seriously call into

---

[25]      Dr. Fuller's report seems to indicate that depression and suicidal intent render a defendant incompetent
without linking those factors to the inquiry required by the law.   Suicide attempts alone do not create the need to
inquire into a defendant's competency.   *See United States v. Davis*, 61 F.3d 291, 304 (5th Cir. 1995).   Instead,
suicidal gestures "must be weighed in conjunction with all other evidence presented with respect to a defendant's
mental stability and competence." *Mata*, 210 F.3d at 330.   Important differences exist between an active, physical
attempt to end one's life and allowing the State to carry out a death sentence.   *See Smith by and through Missouri
Public Defender Com'n v. Armontrout*, 812 F.2d 1050, 1059 (8th Cir. 19870 (rejecting the argument that waiving
federal habeas review constitutes "state-aided suicide").   As the Fifth Circuit has observed, a defendant's choice to
accept his punishment does not necessarily indicate incompetence:

> The idea that the deliberate decision of one under sentence of death to abandon possible additional
> legal avenues of attack on that sentence cannot be a rational decision, regardless of its motive,
> suggests that the preservation of one's own life at whatever cost is the summum bonum, a
> proposition with respect to which the greatest philosophers and theologians have not agreed and
> with respect to which the United States Constitution by its terms does not speak.

*Autry v. McKaskle*, 727 F.2d 358, 363 (5th Cir. 1984) (quoting *Lenhard v. Wolff*, 443 U.S. 1306, 1313 (1979)
(Rhenquist, J., in chambers)).

questions Mullis' competency.

Third, Mullis has not shown that the state habeas court's inquiry into his competency was insufficient. Mullis' arguments challenge both the adequacy of counsel's efforts relating to the competency inquiry and the substantive determination that he was not competent to waive his rights. Mullis, however, has not shown any error in the inquiry into or the state court's conclusions relating to his competency.

Mullis claims that habeas counsel did not provide Dr. Scarano or Dr. Fuller with sufficient background information and supporting evidence, such as that relating to the sexual abuse Mullis suffered as a child to find him incompetent. Accordingly, Mullis claims that state habeas counsel left the experts "to rely primarily on [his] self-reporting as the basis for [their] opinions." (DE 170 at 26). Nevertheless, the record shows that state habeas counsel informed Dr. Scarano about Mullis' background and concerns, such as telling "him about Travis's fear of general population, what the trial experts said about him, and about his previous mental health diagnoses. (DE 170, Ex. 23 at TM-140). Because Mullis state habeas counsel "felt [Mullis'] competency was questionable," state habeas counsel "was surprised when Dr. Scarano issued his report finding that Travis had no Axis I or Axis II diagnoses and stating that Travis expressed no fear of general population." (DE 170, Ex. 23 at TM-140). When questioned, Dr. Scarano "said that his findings were based upon his current observations . . . ." (DE 170, Ex. 23 at TM-140). Mullis claims that state habeas counsel at that point should have aggressively challenged his competency.

Despite Mullis' extensive federal arguments about the impact of various mental

health concerns and traumas on his competency, his briefing loses sight of the precise inquiry a court makes into competency.    While Texas courts require an inmate to be competent before waiving state habeas review, *see Ex parte Reynoso*, 228 S.W.3d 163, 164 (Tex. Crim. App. 2007), neither party has identified a precise state standard used to assess competency.    In federal cases, a court asks whether an inmate "has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation[.]" *Rees v. Peyton*, 384 U.S. 312, 314 (1966).    The *Rees* standard considers a three-part test:

> (1)    Is the person suffering from a mental disease or defect?
>
> (2)    If the person is suffering from a mental disease or defect, does that disease or defect prevent him from understanding his legal position and the options available to him?
>
> (3)    If the person is suffering from a mental disease or defect which does not prevent him from understanding his legal position and the options available to him, does that disease or defect, nevertheless, prevent him from making a rational choice among his options?

*Rumbaugh v. Procunier*, 753 F.2d 395, 398 (5th Cir. 1985); *see also Mata v. Johnson*, 210 F.3d 324, 328 (5th Cir. 2000).    The Fifth Circuit has described how the answer to each question informs the competency inquiry:

> If the answer to the first question is no, the court need go no further, the person is competent.  If both the first and second questions are answered in the affirmative, the person is incompetent and the third question need not be addressed.  If the first question is answered yes and the second question is answered no, the third question is determinative; if yes, the person is incompetent, and if no, the person is competent.

*Id.* at 398.

Mullis' arguments fail because no mental health expert has considered Mullis' competency as a legal matter and found that he has been incompetent at any stage of the proceedings. Mullis challenges Dr. Scarano's conclusions, and attacks the sufficiency of Dr. Fuller's report, by "rely[ing] on the report of Dr. Victoria Reynolds, supported by the report of Dr. Richard Dudley, for th[e] purpose" of showing that he "was incompetent to waive state habeas review." (DE 170 at 25). Both psychologists have produced various reports identifying areas in the earlier experts' reports that allegedly needed additional development, pointing out factors the other experts may have missed, and highlighting things that would have emphasized if they had been conducting the competency evaluation. (DE 170, Ex. 20, 21, 22, and 24). But neither Dr. Reynolds nor Dr. Dudley rendered a psychological opinion that Mullis was incompetent to waive review at any point in time.

Mullis' federal experts do not engage in a fulsome examination of whether Mullis was (or is) competent under the legal standards. Dr. Reynolds plainly explains that she was not tasked with the duty to examine Mullis for past or present competency. Dr. Reynolds explicitly stated that "it was not the purpose of my assessment to evaluate Travis's competence in a legal sense." (DE 170, Ex. 21 at TM-135). Instead, Dr. Reynolds specifies that she was asked to "offer perspective, based on Travis Mullis's history of trauma, as to whether and how this history impacted his decision to waive his right to post-conviction habeas review." (DE 170, Ex. 20 at TM-115). After reviewing Mullis' history in the context of the trauma he experienced, Dr. Reynolds stated: "I cannot say with confidence that Travis's decision to waive his appeals at any time in the

past or currently is voluntary." (DE 170, Ex. 22 at TM-136).

Dr. Dudley had performed a psychiatric examination of Mullis before trial. Dr. Dudley also could not say any more than that he had "considerable concern about whether or not his mental illness has impaired his ability to make a rational choice among his options." (DE 170, Ex. 21 at 7). Dr. Dudley states that "Mr. Mullis' decision to waive his appeals in response to these issues is consistent with and most likely the product of [his] mental health difficulties." (DE 170, Ex. 21 at TM-126).

Mullis' experts detail various mental diseases or defects from which he may suffer—the first factor in a court's competency evaluation. Mullis experts explain how trauma or other factors may have influenced his decisions, but they do not give their professional opinion that any mental disease or defect prevented him from understanding his legal position and the options available to him. Nor do they render a professional opinion that a mental disease or defect prevents him from making a rational choice among his options. Mullis' new experts render no conclusive opinion on whether he was competent when he waived state habeas review.

In short, Mullis relies on experts to identify concerns with previous examinations or point out possible problems that existed, but Mullis does not produce any expert report finding him retroactively competent when he waived habeas review. Thus, even if state habeas counsel had performed the same investigation and retained the same experts as Mullis has done on federal review, Mullis has not shown that the result would have been different.

In the end, Mullis now relies on two experts who will not say that he was

incompetent to waive habeas review and explicitly does not rely on the only psychological expert (Dr. Fuller) who said that he was incompetent to waive habeas review.[26]   Against that tepid showing, the Court weighs with great deference the state court's finding that he was competent to waive review.   *See* 28 U.S.C § 2254(e)(2).   The required deference is even stronger in this case where the same judge presided over trial and his later proceedings.   *See Mays v. Stephens*, 757 F.3d 211, 214 (5th Cir. 2014).   The trial judge was intimately familiar with Mullis and his mental health.   The trial judge had extensive opportunities to assess Mullis' mental state and ability to communicate with his attorneys.   The trial judge twice considered Mullis' competency after sentencing.   Mullis does not extensively challenge his competency to waive direct appeal.   The judge made every required effort to honor Mullis' desires to waive habeas review while preserving his rights.   After ordering an evaluation and holding a hearing, the state habeas court found Mullis competent to waive review.   AEDPA and traditional principles of habeas law prevent this Court from calling the decisions into question on the basis of tentative psychological reports which show, at best, that some mental-health experts could consider things in a different manner (but without saying they would reach a different result).

---

[26]   Mullis' arguments only highlight the procedural posture in which he has placed himself.   Mullis concedes that Dr. Fuller's review was insufficient to show legal incompetency.   To overcome that deficiency, Mullis has developed new mental-health evidence on federal review.   Mullis argues that, had counsel done the same in state court, the Court of Criminal Appeals would have found "good cause" to allow his state habeas application to proceed.   Mullis would presumably have to meet that same standard if he wanted to exhaust his claims in state court under section 11.071 § 4 now, but he does not suggest that a state avenue of relief is open to him.   Mullis faces a procedural quagmire of his own making—first by waiving state habeas relief and then by refusing to exhaust his claims after a *Rhines* stay.   An inmate cannot deliberately evade the state court system and then use that evasion as an excuse to allow federal review.   The "cause" element of the procedural-bar doctrine relies on the operation of equity.   Mullis has not shown that he merits equitable forgiveness of the strict requirements of the exhaustion doctrine.

This Court's experience with Mullis is consistent with the record of the state court colloquies.  This Court has twice engaged Mullis in questioning after filed *pro se* motions to waive federal habeas review.  (DE 65, 115).  Throughout his both colloquies, Mullis presented himself as being competently aware of his legal situation.  Mullis not only understood that a psychological examination would follow his motion, but he understood the reason for and underlying mechanics of that process.  Throughout the questioning, Mullis did not express any hint of incompetency as he discussed his capital conviction and death sentence.  Mullis clearly understood the roles and responsibilities of individuals associated with his case.  Mullis could factually and rationally discuss the options available to him.  After both hearings, this Court appointed a neutral mental-health expert who found Mullis competent.  This Court's own experience with Mullis mirrors the hearings after which the state courts found his competent to waive his rights.

Mullis unquestionably has experienced trauma in his life and suffers from some mental illness.  Even under the best circumstances the interplay between an inmate's mental illness and his rights is complex, nuanced, and not easy to classify.  *See Lokos v. Capps*, 625 F.2d 1258, 1267 (5th Cir. 1980) ("One need not be catatonic, raving or frothing, to be unable to understand the nature of the charges against him and to be unable to relate realistically to the problems of his defense.").  Mullis, however, has never submitted adequate expert testimony or evidence showing that he has been or is currently incompetent in a legal sense.  The Court finds that Mullis' alleged incompetency does not provide cause to overcome the procedural bar of his federal claims.

## MOTION TO PROCEED *PRO SE*

Mullis has moved to dismiss his federal appointed attorneys and proceed *pro se* in this action. (DE 172). Mullis suggests that, if the Court removes his attorneys from this case, he would then likely waive his federal habeas petition. Mullis asks this Court to appoint Dr. Proctor to assess his competency for the third time. For the reasons discussed below, the Court will deny Mullis' motion to proceed *pro se*.

Federal law explicitly entitles a death-sentenced inmate to appointed attorneys. 18 U.S.C. § 3599(a)(1)(B)(2). The relevant statute, however, does not mention a right to self-representation. No legal authority has recognized a federal constitutional right to self-representation in federal habeas proceedings. *Cf. Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 163 (2000) (holding that States have no obligation to "recognize a constitutional right to self-representation on direct appeal from a criminal conviction."). The Court, therefore, finds that it is entirely within the Court's own discretion to remove counsel and allow Mullis to represent himself.

If he is a competent individual, Mullis is the master of his own case and an attorney should follow his wishes. *See Faretta v. California*, 422 U.S. 806, 820 (1975) ("The counsel provision . . . speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant."); *Lowenfield v. Phelps*, 817 F.2d 285, 292 (5th Cir. 1987) (finding that a "competent defendant's "directions [are] entitled to be followed."). If an inmate understands the drastic consequences of his choices, courts preserve "that respect for the individual which is the lifeblood of the law." *Faretta*, 422 U.S. at 834 (quotation omitted). Mullis may "conduct his own defense ultimately to his own

detriment," but it is still "his choice must be honored[.]" *Id.* Because the core issues in the case flow from Mullis' ability to make his own decisions, the Court is sensitive to Mullis' request to dismiss his attorneys and proceed on his own. Mullis has repeatedly expressed concern about his relationship with his own attorneys. Mullis' submissions to this Court have been coherent, logical, and lacking indicia of incompetence. The prior two evaluations by Dr. Proctor left no concern about Mullis' competency. Nothing has come to the Court's attention in recent years that would question his ability to make knowing and intelligent decisions about legal strategy. Without any present indicia of incompetence, a hearing on Mullis' motion to represent himself may not even be necessary. *See Lopez v. Stephens*, 783 F.3d 524, 525 (5th Cir. 2015).

The parties have provided extensive briefing regarding the complex legal and factual matters which are now before the Court. Appointed counsel has represented Mullis for many years and has deep experience addressing the multifaceted issues raised by the matters at issue. Removing counsel at this late date would insert delay into an already protracted proceeding, thus diminishing the State's valid interest in finality and in carrying out an otherwise-valid criminal sentence. While giving serious consideration to Mullis' motion—particularly in the context of his previous complaints about counsel's representation—the Court nonetheless finds that removing his attorneys would not be appropriate at this time. The Court, therefore, will deny Mullis' motion to dismiss counsel and proceed *pro se*.

## CERTIFICATE OF APPEALBILITY

Under AEDPA, a prisoner cannot seek appellate review from a lower court's

judgment without receiving a Certificate of Appealability ("COA"). *See* 28 U.S.C. § 2253(c). Mullis has not yet requested that this Court grant him a COA, though this Court can consider the issue *sua sponte*. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A court may only issue a COA when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 482 (2000). The Fifth Circuit anticipates that a court will resolve any questions about a COA in the death-row inmate's favor. *See Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

The Supreme Court has explained the standard for evaluating the propriety of granting a COA on claims rejected on their merits as follows: "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484; *Miller-El I*, 537 U.S. at 336-38. On the other hand, a district court that has denied habeas relief on procedural grounds should issue a COA "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484; *Miller-El I*, 537 U.S. at 336-38. Unless the prisoner meets the COA standard, "no appeal would be warranted." *Slack*, 529 U.S. at 484.

Having considered Mullis' petition and arguments, and in light of AEDPA's standards and controlling precedent, this Court determines that a COA should not issue.

## CONCLUSION

Mullis is a disturbed individual whose mental illness has permeated his life. Questions about mental illness have colored this whole case—from the commission of the crime, to the various waivers, to federal review.  As concerns about Mullis' mental health have come up at each stage, state counsel and various courts have acted with competence and zeal to assure that Mullis has enjoyed all the process he is due.

Mullis waived state representation and chose not to avail himself of state judicial remedies.  However, unwise that choice, the law allows a defendant to make his own decisions.  But the abdication of review is not only Mullis' fault—federal habeas counsel rejected an opportunity to place Mullis' claims before the state courts.  Those choices have cascaded to this end point: Mullis has never given the state courts an opportunity to consider the merits of his federal habeas claims.

Mullis' decisions have resulted in a procedural bar of all constitutional claims. Equity cannot forgive that procedural barrier to federal review—Mullis repeatedly competently chose to waive review and his federal attorneys strategically eschewed review.  However uncomfortable it may be, this case is left where Mullis himself has chosen it to be.

Accordingly, the Court grants summary judgment in Respondent's favor and dismisses Mullis' habeas petition.  The Court denies Mullis' request to dismiss counsel and proceed *pro se*.  The Court will not certify any issue for appellate review by the Fifth Circuit.

The Clerk will provide a copy of this order to the parties.

SIGNED this 20th day of July, 2021.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE